UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

2004 MAR 16 P 1:14

U.S. DISTRICT COURT
HARTFORD, CT.

INDYMAC BANK, F.S.B.
                Plaintiff

V.

MOSTAFA REYAD AND WAFA REYAD
                Defendants

**CIVIL ACTION NO.
3:00CV835 (CFD)**

**DATE: MARCH 16, 2004**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWAL MOTION TO DEFENDANTS' MOTION TO DISMISS PURSUAT TO RULE 12(b)(6)

This is Defendants' Memorandum of Law in Support of the concurrently filed Defendants' Renewal Motion to Dismiss pursuant to Rule 12(b)(6). Defendants filed on January 14, 2004 "Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6); (Doc # 325), and it is on and between March 9-11, 2004, Plaintiff and Defendants exchanged the actual exhibits of the pre-trial Memorandum. Defendants prior to March 9, 2004 had no access to Plaintiff's exhibits. Specifically exhibit # 40 labeled "Damages Charts".

**See**, exhibit # 40 attached hereto; **attachment # 1**; it reads on the top left corner "IndyMac Mortgage Holdings, Inc. and *IndyMac, Inc*. v. Mostafa Reyad and Wafa Reyad Estimated Loss on Principal 2/24/01"; and **see** the Chart which was

1

filed by the **two (2) Plaintiffs** as exhibits "B" attached to **Plaintiffs'** Memorandum of Law in Opposition to Defendant Mostafa Reyad's Motion to Dissolve the Prejudgment Remedy and For Expedited Consideration, which includes Declaration of Brian E. Ainslie; although it are one document; it was docketed by the District Clerk as Doc # 96 and Doc # 97. **See**, also this Court's Endorsement Order dated 3/7/01 related to Doc # 97; The attached chart to Doc # 97, reads at the top left corner, the same exactly as it reads at the top left corner of exhibit # 40, except the date is different "IndyMac Mortgage Holdings, Inc and **IndyMac, Inc**. v. Mostafa Reyad and Wafa Reyad Estimated Losses, February 9, 2001". The difference of dollar losses is 42% higher than the chart dated February 24, 2001, (in a period of two (2) weeks apart), makes it clear indication that both of these charts are false fabricated by Plaintiff. **see**, **attachment # 2** attached hereto.

It is very clear that each of the **two (2) Plaintiff's**, namely IndyMac Mortgage Holdings, Inc. and **IndyMac, Inc**. claimed the same alleged 33 loans in the amount of approximately of $ 5.7 million. In their said memorandum p.1 **"Plaintiffs'** IndyMac Mortgage Holdings, Inc. and **IndyMac, Inc**. (now known as IndyMac Bank, F.S.B.) (collectively referred to as **"Plaintiffs"** or "IndyMac"), and at p.2 "based upon a current estimate of **Plaintiffs'** probable damages in this case", and at p.3 "It is important to note that **Plaintiffs'** current loss estimated are just that-estimates.

***Plaintiffs'*** document (Doc # 96), shows that the same cause of action had been alleged by each Plaintiff. The dismissed Plaintiff ***IndyMac, Inc***. claimed the same 33 loans and had been dismissed. This Court Dismissed Plaintiff ***IndyMac, Inc***. pursuant to Rule 12(b)(6); on its Order (Order # 150) dated August 10, 2001. Pursuant to Rule 41(b); that Order pursuant to Rule 12(b)(6) is a final judgment on the merits; is not subject to collateral attack, **see**, Defendants' Motion and its memorandum (Doc # 325 & # 326). Defendants reiterate their motion and their prior defenses concerning res judicata incorporated herein by reference.

## CONCLUSION

For the demonstration above, the Honorable Court should Grant Defendants' motion and Dismiss Entire Plaintiff's Amended Complaint as a matter of law.

The Defendant
Mostafa Reyad

By: /s/ Mostafa Reyad
Mostafa Reyad
2077 Center Ave # 22D
Fort Lee, NJ 07024
Day Phone 203-325-4100

The Defendant
Wafa Reyad

By: /s/ Wafa Reyad
Wafa Reyad
2077 Center Ave # 22D
Fort Lee, NJ 07024
Home Phone 201-585-0562

## CERTIFICATE OF SERVICE

The undersigned certifies that he mailed on the captioned date a true and correct copy to Attorney David Schaefer at 271 Whitney Avenue, New Haven, CT 06511

/s/ Mostafa Reyad
Mostafa Reyad

# ATTACHMENT # 1


PLAINTIFF'S EXHIBIT 40
3:00CV835(CFD)
ALL-STATE LEGAL®

| Total | Net Realizable Value | Market Value | Loss | Comments |
|---|---|---|---|---|
| 142,246.26 | N/A | N/A | 1,928.25 | Loan purchased by third party |
| 155,500.00 | N/A | N/A | (69.03) | Loan refinanced through another lender |
| 186,725.17 | N/A | N/A | (137.13) | Loan purchased by third party |
| 97,644.83 | N/A | N/A | (589.18) | Loan purchased by third party |
| 190,653.86 | N/A | N/A | (2,610.95) | Loan refinanced through another lender |
| 62,696.44 | N/A | N/A | 450.39 | Loan refinanced through another lender |
| 510,223.75 | N/A | N/A | (1,258.81) | Loan refinanced through another lender |
| 37,513.73 | N/A | N/A | 361.63 | Loan refinanced through another lender |
| 513,478.14 | N/A | N/A | (7,816.37) | Loan refinanced through another lender |
| 187,733.42 | N/A | N/A | (5,204.95) | Loan refinanced through another lender |
| 13,321.66 | N/A | N/A | 2,691.28 | Loan purchased by IndyMac |
| 54,278.62 | N/A | N/A | (999.68) | Loan purchased by IndyMac |
| 49,433.23 | N/A | N/A | (3,770.44) | Loan purchased by IndyMac |
| 74,407.06 | N/A | N/A | 4,175.48 | Loan purchased by IndyMac |
| 265,027.42 | N/A | N/A | (16,219.20) | Loan purchased by IndyMac |
| 207,336.97 | N/A | N/A | (14,306.35) | Loan purchased by IndyMac |
| 38,284.46 | N/A | N/A | (4,423.94) | Loan purchased by IndyMac |
| 263,534.25 | N/A | N/A | (820.47) | Loan refinanced through another lender |
| 50,669.66 | N/A | N/A | (3,073.73) | Loan purchased by third party |
| 87,721.96 | N/A | N/A | (8,542.33) | Loan purchased by third party |
| 227,858.61 | N/A | N/A | (24,642.12) | Loan purchased by third party |
| 129,835.43 | N/A | N/A | (12,094.43) | Loan purchased by third party |
| 92,618.95 | N/A | N/A | 931.29 | Loan refinanced through another lender |
| 12,637.37 | N/A | N/A | 592.52 | Loan refinanced through another lender |
| 723,104.01 | N/A | N/A | (24,491.76) | Loan refinanced through another lender |
| 369,673.52 | N/A | N/A | 6,400.20 | Loan refinanced through another lender |
| 163,225.95 | N/A | N/A | (11,758.04) | Loan purchased by third party |
| 161,641.77 | N/A | N/A | (18,200.37) | Loan purchased by third party |
| 213,203.02 | N/A | N/A | (59,481.18) | Loan purchased by third party |
| 268,624.03 | N/A | N/A | (38,084.49) | Loan purchased by third party |
| 347,572.86 | N/A | N/A | (23,012.63) | Loan purchased by third party |
| 18,114.02 | - | 60,000.00 | (40,000.00) | Loan still outstanding |
|  | N/A | (58,476.83) | (58,476.83) | Loan refinanced; Reyad converted funds. |
| 5,916,540.43 |  |  | (362,553.37) |  |

Estimated Losses:         (362,553.37)
Less Cash Collateral:       51,100.00
Plus Attorney's Fees       (208,617.99)
Total Estimated Losses:   (520,071.36)

# ATTACHMENT # 2

96497

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| INDYMAC MORTGAGE HOLDINGS, INC. and INDYMAC, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MOSTAFA REYAD and WAFA REYAD, <br><br> Defendants. | CIVIL ACTION NO. 3:00CV835(CFD) <br><br> FEBRUARY 15, 2001 |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MOSTAFA REYAD'S MOTIONS TO DISSOLVE THE PREJUDGMENT REMEDY AND FOR EXPEDITED CONSIDERATION

Plaintiffs IndyMac Mortgage Holding, Inc. and IndyMac, Inc. (now known as IndyMac Bank, F.S.B.) (collectively referred to as "Plaintiffs" or "IndyMac") submit this memorandum of law in opposition to "Defendant, Mostafa Reyad's Motion, Pursuant To Federal Rule Of Civil Procedure 64 And CONN. GEN. STAT. Sec. 52-278K, To Dissolve The Prejudgment Remedies Issued Against Defendants On Or About May 16, 2000", and "Defendant, Mostafa Reyad's Motion, Pursuant To 28 U.S.C. 1657(a) For Expedited Consideration Of The Accompanying Motion To Dissolve The Prejudgment Remedies", both dated January 24, 2001. (Doc. ## 88, 91.) Mr. Reyad's latest challenge to the prejudgment remedy ordered by Judge Garfinkel on May 17, 2000 (Doc. # 19) should be denied because the prejudgment remedy was obtained based upon a truthful estimate of Plaintiffs' potential damages at the time of the prejudgment remedy hearing on May 16, 2000, and the prejudgment remedy remains a necessary

vehicle to secure Defendants' assets based upon a current estimate of Plaintiffs' probable damages in this case.

Contrary to Mr. Reyad's unfounded assertions in his most recent motions, Plaintiffs provided a truthful estimate of their damages in this action at the prejudgment remedy hearing before Judge Garfinkel on May 16, 2000, which information led Judge Garfinkel to conclude that there was "probable cause that a judgment in the amount of the prejudgment remedy sought will be rendered in the plaintiffs' favor, taking into consideration the defenses available to the defendants." Ruling and Order dated 5/17/00 (Doc. # 13), at 1. Importantly, the Court concluded "that the plaintiffs have demonstrated there is a reasonable basis for the amount of their damages." Id.[1] Consequently, the Court entered a prejudgment remedy in the amount of $1,600,000 against each Defendant and further ordered Defendants "to disclose property in which each or both of them has an interest or debts owing to either or both of them sufficient to satisfy the prejudgment remedy." Id. at 2.

Since initiating this action, Plaintiffs have attempted to mitigate their damages by either purchasing or allowing Mr. Reyad to refinance many of the loans that are the subject of this action. In addition, Plaintiffs have sought out third party purchasers for

---

[1] Plaintiffs offered the Declaration of Brian E. Ainslie in support of their request for a prejudgment remedy, in which Mr. Ainslie estimated the amount of the losses that Plaintiff IndyMac Mortgage Holdings, Inc., doing business as Warehouse Lending Corporation of America, would incur as a result of Mr. Reyad's fraudulent actions in this case. However, Mr. Ainslie's Declaration makes clear that this estimate was based upon "preliminary property valuation information" that was subject to revision depending upon the extent of Mr. Reyad's false representations in many of the subject loan files. 5/8/00 Ainslie Dec. ¶ 13-16.

the majority of Mr. Reyad's remaining warehouse loans.[2] Exhibit B, attached hereto, reflects the current status and the actual or estimated losses for each of the thirty-three loans outstanding on Mr. Reyad's warehouse line of credit when this action was commenced. Plaintiffs currently estimate their losses on these loans, including their legal fees incurred as a result of Mr. Reyad's breach of his warehouse lending agreement,[3] to be $700,359.72.

It is important to note that Plaintiffs' current loss estimates are just that—estimates. Mr. Reyad has frustrated Plaintiffs' attempts to ascertain and/or limit their losses on the outstanding loans by: (1) admittedly converting mortgage repayment proceeds to his own personal use, thereby preventing Plaintiffs from receiving the proceeds of that loan;[4] (2) by refusing to consent to the sale of many of the loans to third party purchasers; (3), by allowing his former employees to take original loan files; (4) by failing to provide Plaintiffs with current payment histories on many of the loans

---

[2] Attachment 1 to Defendant's memorandum in support of the instant motions reflects the preliminary bid price Plaintiffs' received from a prospective third party purchaser for the collateral for 13 outstanding warehouse loans. The Attachment does not, however, reflect Plaintiffs' losses or potential losses on 20 other warehouse loans that Plaintiff IndyMac Mortgage Holdings, Inc. financed through Mr. Reyad, nor does it take into account outstanding interest or legal fees. Moreover, the preliminary bid prices reflected in the Attachment may overstate the ultimate market value of these remaining loans because the prospective buyer has yet to review the credit files, review complete payment histories (that Mr. Reyad has been unable to provide in many cases), or run its own credit report and obtain its own appraisal (that may differ significantly from the appraisals furnished by Mr. Reyad).

[3] Defendants are personally liable for Plaintiffs' legal fees incurred in enforcing the warehouse lending agreement pursuant to the Master Revolving Loan and Security Agreement and Variable Terms Letter executed by Mr. Reyad and the Individual Credit Guaranties executed by both Defendants. See Exhibits A-D, attached to 5/8/00 Dec. B. Ainslie (Doc. # 10).

[4] In this respect, Plaintiffs do not "have Defendant's Collateral", as alleged on page 3 of Mr. Reyad's support memorandum, because Mr. Reyad has already demonstrated his ability to circumvent this protection by retaining mortgage repayment proceeds on at least one occasion in the past.

(an important factor in determining the resale value of mortgages); and (5) by failing to adequately service the loans in accordance with RESPA (potentially making Plaintiffs liable to the mortgagors). Indeed, Plaintiffs' current estimate is based upon the assumption that Mr. Reyad will deal ethically with respect to the outstanding loans in the future, which he has failed to do in the past, notwithstanding the Court's orders to the contrary. Mr. Reyad has admitted that, after the prejudgment remedy was issued by the Court, he took over $60,000 paid by borrower Jaku to retire a mortgage when such funds belonged to IndyMac. Should Mr. Reyad divert mortgage payoff funds in the future, Plaintiffs' losses in this matter could increase dramatically. Nevertheless, Plaintiffs have in good faith provided the attached estimate to the Court on the assumption that Mr. Reyad will not repeat such wrongful conduct.

The calculation of losses on the warehouse line of credit provided to the Court herewith of $700,359.72 does not include Plaintiffs' losses arising from the purchase of loans by Plaintiff IndyMac, Inc. from Mr. Reyad, separate from the warehouse financing provided by Plaintiff IndyMac Mortgage Holdings, Inc. Such losses themselves are likely to be over one million dollars. Plaintiffs are preparing detailed documentation supporting these losses and will provide it to the Court within fourteen days.

With respect to Mr. Reyad's allegations that Plaintiffs inflated their initial damage estimates by presenting to the Court unrealistic property evaluations, the attached Declaration of Brian Ainslie attests that drive-by and field review appraisals are customary in the mortgage industry to support the value of an original appraisal. However, the current estimate of losses related to the warehouse line of credit (Exhibit B) does not rely upon appraisals to quantify Plaintiffs' damages. Rather, Plaintiffs'

estimates rely upon the market price of the subject properties proposed by unbiased, third party prospective purchasers.

Plaintiffs deny Mr. Reyad's remaining allegations, but will not take any more of the Court's time in responding thereto because the remaining allegations do not relate to the appropriate amount of the prejudgment remedy in this matter, nor do they realistically undermine the Court's May 17, 2000 ruling with respect to the likelihood that Plaintiffs will recover a judgment against Defendants in the amount of the prejudgment remedy.

In conclusion, Mr. Reyad's most recent motions seeking to dissolve the prejudgment remedy in this case should be denied summarily without the requested evidentiary hearing because Mr. Reyad has not provided the Court with any material evidence that would have justified the Court in denying the prejudgment remedy at the initial hearing. In particular, Mr. Reyad's motions do not undermine the Court's conclusion with respect to Plaintiffs' likelihood of success on the merits. Moreover, there remains probable cause to support the prejudgment remedy in its current amount.

For the foregoing reasons, Defendant's most recent motions challenging the

prejudgment remedy issued in this case should both be denied without an evidentiary hearing.

PLAINTIFFS INDYMAC MORTGAGE
HOLDINGS, INC. AND INDYMAC, INC.

By: *[signature]*
David R. Schaefer (ct04334)
Rowena A. Moffett (ct 19811)
BRENNER, SALTZMAN & WALLMAN LLP
Their Attorneys
271 Whitney Avenue
P.O. Box 1746
New Haven, CT  06507-1746
Tel. (203) 772-2600

A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INDYMAC MORTGAGE HOLDINGS, INC.
and INDYMAC, INC.,
                 Plaintiffs,

v.

MOSTAFA REYAD and WAFA REYAD,
                 Defendants.

CIVIL ACTION NO.
3:00CV835(CFD)

## DECLARATION OF BRIAN E. AINSLIE

I, Brian E. Ainslie, declare under the pains and penalties of perjury as follows:

1. I am over the age of 18 and understand my obligation to tell the truth under the pains and penalties of perjury under the laws of the United States.

2. I am employed as a Corporate Credit Manager at IndyMac Bank, F.S.B., successor-in-interest to IndyMac Mortgage Holdings, Inc. and IndyMac, Inc. (collectively referred to as "Plaintiffs"). In that capacity I am responsible for overseeing credit risk management generally and for approving, monitoring and overseeing, among others, the credit facility made to Defendant Mostafa Reyad.

3. Drive-by and field review appraisals are customary in the mortgage industry to support the value of an original appraisal.

4. The spreadsheet attached as Exhibit B to Plaintiffs' memorandum in opposition to Defendant's motions to dissolve the prejudgment remedy and for expedited consideration accurately reflects the current status and the actual or

estimated losses for each of the thirty-three loans outstanding on Mr. Reyad's warehouse line of credit when this action was commenced.

5. Mr. Reyad has frustrated Plaintiffs' attempts to ascertain and/or limit their losses on the outstanding loans by admittedly converting mortgage repayment proceeds to his own personal use, thereby preventing Plaintiffs from receiving the proceeds of that loan, by refusing to consent to the sale of many of the loans to third party purchasers, by allowing his former employees to take original loan files, by failing to provide Plaintiffs with current payment histories on many of the loans (an important factor in determining the resale value of mortgages), and by failing to adequately service the loans in accordance with RESPA (potentially making Plaintiffs liable to the mortgagors).

The foregoing is declared by me to be true to the best of my knowledge and belief under the pains and penalties of perjury under the laws of the United States.

Dated: February 15, 2001.

_____
Brian E. Ainslie

2

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served by United States first-class mail, postage prepaid, this 15th day of February, 2001 upon:

Mostafa Reyad
2077 Center Avenue
#22D
Fort Lee, NJ 07024

Wafa Reyad
2077 Center Ave
#22D
Fort Lee, NJ 07024.

David R. Schaefer

B

| | Interest Received | Principal Reduction | Total | Net Realizable Value | Market Value | Loss | Comments |
|---|---|---|---|---|---|---|---|
| 26 | - | - | 142,246.26 | N/A | N/A | 1,928.25 | Loan purchased by third party |
| 17 | - | - | 186,725.17 | N/A | N/A | (137.13) | Loan purchased by third party |
| 33 | - | - | 97,644.83 | N/A | N/A | (589.18) | Loan purchased by third party |
| 24 | 1,312.09 | 318.53 | 190,653.86 | N/A | N/A | (2,610.95) | Loan refinanced through another lender |
| 29 | 486.88 | 122.47 | 62,696.44 | N/A | N/A | 451.39 | Loan refinanced through another lender |
| 23 | 10,866.37 | 1,528.15 | 510,223.75 | N/A | N/A | (1,258.81) | Loan refinanced through another lender |
| 70 | 1,319.36 | 70.67 | 37,513.73 | N/A | N/A | 361.63 | Loan refinanced through another lender |
| 30 | 7,348.19 | 483.95 | 513,478.14 | N/A | N/A | (7,816.37) | Loan refinanced through another lender |
| 18 | 8,539.37 | 541.87 | 187,733.42 | N/A | N/A | (5,204.95) | Loan refinanced through another lender |
| 30 | 489.56 | 3,032.10 | 13,321.66 | N/A | N/A | 2,691.28 | Loan refinanced through another lender |
| 39 | 16,707.18 | 2,060.68 | 263,534.25 | N/A | N/A | (820.47) | Loan refinanced through another lender |
| 30 | - | - | 155,500.00 | N/A | N/A | (13,722.91) | Loan refinanced through another lender |
| 14 | 820.98 | 62.50 | 54,278.62 | N/A | N/A | (999.68) | Loan purchased by IndyMac |
| 29 | 745.99 | 953.15 | 49,433.23 | N/A | N/A | (3,770.44) | Loan purchased by IndyMac |
| 38 | 1,887.89 | 4,698.79 | 74,407.06 | N/A | N/A | 4,175.48 | Loan purchased by IndyMac |
| 52 | 6,074.24 | 456.66 | 265,027.42 | N/A | N/A | (16,219.20) | Loan purchased by IndyMac |
| 37 | 5,850.48 | 516.12 | 207,336.97 | N/A | N/A | (14,306.35) | Loan purchased by IndyMac |
| 12 | 673.36 | 36.98 | 38,284.46 | N/A | N/A | (4,423.94) | Loan purchased by IndyMac |
| | 9,150.86 | 409.79 | 9,560.65 | N/A | 139,889.06 | (15,362.87) | Loan still outstanding |
| | 9,546.56 | 833.05 | 10,379.61 | N/A | 141,867.16 | (17,119.59) | Loan still outstanding |
| | 2,974.82 | 255.06 | 3,229.88 | N/A | 46,057.76 | (3,336.57) | Loan still outstanding |
| | 12,276.40 | 986.58 | 13,262.98 | N/A | 193,045.68 | (50,598.77) | Loan still outstanding |
| | 9,532.52 | 747.04 | 10,279.56 | N/A | 219,239.18 | (59,311.85) | Loan still outstanding |
| | 4,481.13 | 330.47 | 4,811.60 | N/A | 80,442.90 | (9,017.06) | Loan still outstanding |
| | 4,066.24 | 432.37 | 4,498.61 | N/A | 78,453.45 | (6,511.06) | Loan still outstanding |
| | - | 312.89 | 312.89 | N/A | 257,936.99 | (85,725.90) | Loan still outstanding |
| | 13,376.75 | 960.69 | 14,337.44 | N/A | 207,262.63 | (25,642.32) | Loan still outstanding |
| | 6,878.65 | 574.90 | 7,453.55 | N/A | 124,206.49 | (7,309.11) | Loan still outstanding |
| | 864.65 | 136.30 | 1,000.95 | N/A | 7,067.28 | (3,424.27) | Loan still outstanding |
| | 38,389.29 | 2,698.89 | 41,088.18 | 692,085.63 | N/A | 20,869.16 | Loan still outstanding |
| | 7,825.75 | 224.43 | 8,050.18 | - | N/A | (102,152.01) | Loan still outstanding |
| | 21,557.69 | 1,257.75 | 22,815.44 | N/A | 300,217.53 | (22,575.86) | Loan still outstanding |
| | - | - | - | N/A | - | (64,359.45) | Loan refinanced; Reyad converted funds. |
| 71 | 204,043.25 | 25,042.83 | 3,201,120.79 | | | (513,849.88) | |

| | | | |
|---|---|---|---|
| Estimated Future Bills | | Estimated Losses: | (786,897.92) |
| 4) (100,000.00) | | Less Cash Collateral: | 86,538.20 |
| | | Total Estimated Losses: | (700,359.72) |