UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

INDYMAC BANK, F.S.B.

Plaintiff

**CIVIL ACTION NO.
3:00CV835 (CFD)**

V.

MOSTAFA REYAD AND WAFA REYAD
Defendants

**DATE: NOVEMBER 7, 2006**

---

## <u>DEFENDANTS' BRIEF</u>

Defendants Mostafa Reyad and Wafa Reyad, hereby respectfully submit the instant brief for the three (3) motions; 1) [470] Motion For Reconsideration, re [466] Order; 2) [474] Motion to Set Aside [466] Order; and 3) [471] Motion to Dismiss. The hearing Ordered November 14, 2006. Thereafter, the Court Ordered to reschedule. The majority of the issues raised in this brief as well as the motions are supported by provisions of law and certain portions of precedents, should be presented to the adverse party before the hearing, and also to avoid the difficulty of the Court's Reporter to accurately record it, due to Defendant's English accent. This brief for the said three motions is complementary to and part of Defendants' Proposed findings of facts and conclusion of law dated June 16, 2005 (Doc # 458) [hereafter "*Defendants' Proposed*"]

## [470] MOTION FOR RECONSIDERATION

Defendant Mostafa Reyad filed Motion For Reconsideration raising the following issues:

1. Misappropriation of application of FRCP Rule 8(b) or presumably Rule 8(c) titled "Affirmative Defenses".

2. Res judicata is a non-waivable defense.

3. The defense of failure to state a claim upon which relief can be granted is permissible up to and at trial.

4. CUTPA claims not applicable in this action, and if applicable, it is barred by its statute of limitations.

5. IndyMac Mortgage Holdings, Inc. not properly registered to do business under the name of Warehouse Lending Corporation of America.

6. The Court over-estimated Plaintiff's alleged damages.

7. The Court overlooked Defendants' evidence of their counterclaims.

Plaintiff filed memorandum in opposition attacking Defendant entitlement for reconsideration, claiming that all Defendants' issue had been repeatedly raised and rejected by the Court prior to trial. In sum, Plaintiff fails to respond to any legal defense proffered by Defendant in his motion for reconsideration, Plaintiff did the same at pretrial, however, Defendant replied and the Court Ordered hearing.

# 1.

**The Court Decision** dated July 26, 2006 (Order # 466)(hereafter "**The Decision**") p. 11 Denied Defendant's defenses based on FRCP Rule 8 (b), or presumably Rule 8 (c); titled "Affirmative Defenses", reasoning that, Reyads did not plead all of their defenses in their amended answers, as required by Rule 8 (c). It appears that, the Court Denied all Defendants' legal defenses presented by Defendants in "_Defendants Proposed_".

The records of this action includes all Defendant's defenses had been filed at pretrial and all those defenses had been Denied, provided that Plaintiff had objected to all those defenses by mere objection and never support his objection by any authority, except multiple misplaced citations for CUTPA claims, and citation of another misplaced three cases. Plaintiff to the first time cited one California Precedent and Cal. Civ. C. Sec. 3300, in their Post-Trial Memorandum.

More specifically, Defendant has raised, the defense that, Plaintiff never registered to do business as Warehouse Lending Corporation of America as mandated by both California and Delaware laws, Plaintiff did not offer any legal explanation, to the documents of California Secretary of State and instead filed affidavit by Brian E. Ainslie declaring that IndyMac Mortgage Holdings, Inc. did

transact intrastate business under the name of Warehouse Lending Corporation of America. Thus, Plaintiff had ample opportunity to respond, and never did. Plaintiff relies only on the Ruling Denying Defendant's motions.  The Ruling did not articulate the reasons for Denial, accordingly, Plaintiff reliance is not legally proper, and it does not establish the law of the case, as Plaintiff repeatedly stating.  **See Mark S. Rose  and Frederic G. Rose v. AmSouth Bank of Florida**, Docket No. 04-0389 (December 1, 2004)(2nd Cir.)citing **Curry v. City of Syracuse** 316 F. 3d. 324, 331 (2nd Cir. 2003)(holding that unpleaded affirmative defense was properly considered by the district court where plaintiff had notice of the defense and an opportunity to respond). The Court should Reconsider Defendants' defenses to all affirmative defenses raised and responded by Plaintiff.


**2**


Defendant raised the issue of *res judicata* in pretrial and well pleded it, Defendant included that specific defense in joint trial memorandum, and separate motions thereafter, supported it by multiple citations from the Second Circuit and the Supreme Court, Plaintiff responded only by mere objection. The mere objection to a legal defense renders Plaintiff's response as frivolous. Ordinarily, Plaintiff's failure to respond to a legal defense should be granting Defendant's motion, however, for reasons unknown to Defendant, this Court reversed the ordinary to denial, entitles Defendant's motion for reconsideration to be granted,

pursuant to the authority of **Salahuddin v. Jones**, 992 F. 2d 447,449 (2nd Cir.

1993).

Res judicata is not only related to the merits, but also it is a non-waivable

jurisdictional issue can be raised at any time even after the entry of a judgment if

circumstances warrant. At pretrial stage *res judicata* proper vehicle is motion to

dismiss pursuant to Rule 12 (b)(6), which is  permissible up to and at trial, and

Ruling upon *res judicata* has the same priority as motion to dismiss for lack of

subject matter jurisdiction pursuant to Rule 12 (b)(1); **Nevada v. United States**,

463 U.S. 110, 128-30 (requiring courts to first decide whether the "same cause of

action" is being sued upon). Defendant well pleaded *res judicata* defense

repeatedly, in joint trial memorandum, separte motions to dismiss and in

"*Defendants' Proposed"* p. 37-39. Again, Plaintiff never controvert except by only

mere meaningless objection. Most notably, Defendant defense of *res judicata*

and its preclusion effect is steming from the records of the instant action, the

finality of the cause of action has determined by the same court, the same judge,

and the same case docket number. The Honorable Judge is under certain

obligation to raise it now *sua sponte,* pursuant to **Arizona v. California**, 530 U.S.

392 [On exceptions to report of special master] (Decided June 19, 2000).

Finally, the State parties argue that even if they earlier failed to raises the
preclusion defense, this Court should raise it now *sua sponte*. Judicial initiative of
this sort might be appropriate in special circumstances. Most notably, "If a court
is on notice that it has previously decided the issue presented, the court may
dismiss the action *sua sponte*, even though the defense has not been raised.
This result is fully consistent with the policies underlying *res judicata*: it is not
based solely on the defendant's interest in avoiding the burdens of twice
defending a suit, but is also based on the avoidance of unnecessary judicial

waste. **United States v. Sioux Nation**, 448 U.S. 371,432 (1980). **Id, Sec. A, 10th paragraph.**

That special circumstances are here in this action. The three days trial assured that Plaintiff's cause of action and all the evidence, are the same cause of action and evidence obtained from the dismissed plaintiff IndyMac, Inc. and no more.

**See**  Maria Borger Declaration, Para. 1, 13 and 14 as follows:

Para. 1 I am a resident of the State of California...... I have been employed as Assistant Vice President for Credit Risk SFR 1-4 and post purchase quality control at IndyMac, Inc. ("IMI").

Para. 13 . . . the VOD (Verification of Deposit) forms in at least four of the loan files contained forged signatures (loan. Nos. 629522 . . . . 599162 . . . . 645391 . . . .). The first is the loan number of FLORES, the second ZUIEWSKI, the third MARLEWSKI. . . . .  In addition, the VOD . . . . invalid bank account numbers (600120 . . . . 649447 . . . . 648121 . . . . 644170 . . . . 650184 . . . . 644195)

The first is the loan number of MISHALL, the second CASELLA, the third ORTIZ, the fourth MCENROE, the fifth CHAMPAGINE, and the six PEREZ

Para. 14. IMI quality review. . . . employment information . . .  was inaccurate (loan nos 613068 . . . . 625872 . . . . 630890 . . . . 644195 . . . . 644301 . . . . 649447)

The first is SILVA, the second WILKINSON, the third KIRBY, the fourth
PEREZ, the fifth NAYAKANA, and the six CASELLA.

Maria Borger Declaration was the affidavit to support IndyMac, Inc. claim,
as you can see above. IndyMac, Inc. cause of action for 15 loans of thirty-three
loans of the instant action. At trial, Plaintiff provided alleged evidence of ten
loans; nine of the ten loans are the same allegations of Maria Borger Declaration,
and the tenth loan at trial was also allegation of IndyMac, Inc., **see** Plaintiff
exhibit # 37; MOAZED. This is the assurance that the cause of action of the
dismissed Plaintiff, IndyMac, Inc. is typical the same cause of action of IndyMac
Mortgage Holdings, Inc., **see Interoceanica Corporation and Turbana
Corporation v. Sound Pilots, Inc**. Doc # 96-7883, 2nd Cir. (February 21, 1997).

> "the doctrine of *res judicata* provides that when a final judgment had been
> entered on the merits of a case. [i]t is a finality as to the claim or demand
> in controversy, concluding parties and those in privities with them, not only
> as to every matter which was offered and received to sustain or defeat the
> claim, but as to any other admissible matter which might have been
> offered for the purpose." **Id third paragraph at discussion**

Simply put, if the dismissed plaintiff IndyMac, Inc. reached the advanced
trial on the merits, he would offer the same claim, the same cause of action and

the same evidence of the present Plaintiff. Accordingly, the entire amended complaint must be dismissed as a matter of law.

## 3

There is no doubt, that, if the Court applied the timelines of Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, as stipulated in Rule 12 (h)(2), the Court must Dismiss Plaintiff's entire complaint. All legal defenses stated on "*Defendants' Proposed*" are defenses for Plaintiff's failure to state a claim upon which relief can be granted pursuant to FRCP Rule 12(b)(6) as stated on "*Defendants' Proposed*", p. 3.

1. Plaintiff's complaint is uncurably defective. The Court determined that the applicable substantive law is California law, **see** This Court Order dated August 10, 2001 (Order # 150). Thereafter, On September 7, 2001, Plaintiff filed its Amended Complaint (Doc # 165), based on Connecticut State Law, and no more. The only provision of law stated by Plaintiff in the 9 pages of the Amended Complain is C.G.S. Sec. 42-110 a **et seq** affirming that the entire complaint is based on the legal ground of Connecticut CUTPA provisions. Pursuant to Rule 12(b)(6), Plaintiff fails to state a claim upon which relief can be granted, pursuant to the authority of **Valley Juice Ltd v.  Evian Waters of France**, Docket # 94-7813, 7817 and 95-7709 (2nd Cir. 1996), **see** "*Defendants' Proposed*" p. 3-4 (the valid written agreement provides

that New York law shall apply, a claim based on Massachusetts law is

barred).

2. Plaintiff cannot maintain any action pursuant to California Corporations

Code Sec. 2203(c), 2105 and 2106.

    (i)    Cal. Corp. C. Sec. 2203(c)

    A foreign corporation subject to the provision of Chapter 21 (commencing with Section 2100) which transacts intrastate business without complying with Section 2105 shall not maintain any action or proceeding . . . .

    (ii)    Cal. Corp. C. Sec. 2105 (a)

    A foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification.

    (iii)    Cal. Corp. C. Sec. 2106 (b)(2)

    A foreign corporation agrees that it will transact business in this state under an assumed name disclosed to the Secretary of State and that assumed name in all of its dealings with the Secretary of State and in the conduct of its affairs in this State"

The records of this Court, Defendants' exhibit # 14 and # 15 does not

show a certificate of qualification having the name of the Plaintiff namely IndyMac

Mortgage Holdings, Inc. as stipulated in Plaintiff's Amended Complaint which

state "Plaintiff IndyMac Mortgage Holdings, Inc. doing business as Warehouse

Lending Corporation of America, Pursuant to Cal. Corp. C. Sec 2105(a),

2106(b)(2) and 2203(c). It is a defective complaint must be dismissed as a matter

of law.

The defense of this paragraph was raised at the time of filing and included in the joint trial memorandum dated November 18, 2003 almost three years ago, and on November 24, 2003. Defendant filed another motion to dismiss, labeled Second Motion in Limine (Doc # 308) and attached the certificates authenticated by California Secretary of State, the two certificates were acknowledged at trial as exhibit # 14 and #15. The first is the certificate of Warehouse Lending Corporation of America certifying that it has changed its name on October 5, 1994 to Independent Lending Corporation, and the certificate declares that the name of Warehouse Lending Corporation has been relinquished effective that date, it shows also that Independent Lending Corporation has surrendered its certificate to transact intrastate business effective February 23, 1998, and revoked its designation of agent. Nothing in the certificate show that Independent Lending Corporation has the right to use the relinquished name of Warehouse Lending Corporation of America. Exhibit # 15 which is the certificate of IndyMac Mortgage Holdings, Inc., shows nothing about neither Warehouse Lending Corporation of America, nor Independent Lending Corporation. Plaintiff responded by asking the Court to award him 20 days after ruling on the motion (Doc # 308) the Court Denied Plaintiff's request, Plaintiff thereafter filed a vague response, and the Court Denied the motion and proceeded to trial.

Defendant herein apologizes to the Court in advance for the following statement "The Court Ruling Denying Defendant's motion to dismiss dated November 24, 2003 (Doc # 308), that motion includes the two attachment of the

two certificates issued by California Secretary of State; 1) Certificate of

Warehouse Lending Corporation showing that name has been relinquished on

October 5, 1994, and it became Independent Lending Corporation, and the latter

surrendered its certificate on February 23, 1998 and revoked its agent of service.

There is nothing in the certificate shows that Independent Lending Corporation

has the right to do business under the name of Warehouse Lending Corporation

or any other name; and 2) Certificate of IndyMac Mortgage Holdings, Inc. which

has nothing about either Warehouse Lending Corporation nor Independent

Lending Corporation. The Court Denial of motion Doc # 308 is erroneous, must

be reversed retroactively, and all proceedings followed that Denial must be set

aside in its entirety including the proceedings of the trial as a matter of law."


The Court, certainly, has the jurisdiction to adjudge this action, however,

the two (2) certificates evinced that Plaintiff lacks standing, and hence the Court

lacks subject matter jurisdiction and must dismiss Plaintiff's entire complaint,

pursuant to Article III of the United States Constitution; **see Ruhrgas Ag v.**

**Marathon Oil Co. et al**, U.S. Supreme Court Case Number 98-470 (May 17,

1999). **Ruhrgas** Ruled **Steel Co. v. Citizens for Better Environment**, 523 U.S.

83 in which this court held that Article III generally requires a federal court to

satisfy itself of its subject matter jurisdiction before it considers the merits of the

case), pursuant to **Ruhrgas** and **Steel** authorities, all the proceedings followed is

a judicial error must be corrected and the Court must dismiss Plaintiff's entire

action, and a hearing to determine Defendants excessive damages should be held.

3. Defendant raised various defenses pursuant to California anti-deficiency laws, the Decision Denies that defenses as untimely pursuant to Rule 8 (c), **see Interoceanica v. Pilots**, supra. However, it may be, the Court sustained Plaintiff's objection, that anti-deficiency laws is not applicable to Warehouse Lending, as Attorney Schaeffer stated in the Court on October 14, 2005. Certainly, it is applicable, **see** para. 7 of the guaranty which refers to the waiver of Section 580 (d) of the California Code of Civil Procedure, that waiver is invalid, **see** C.Civ. C. Sec. 2953, stipulating sections 2924, 2924b, 2924c of the Civil Code, and 580 (a) or 726 of the Code of Civil Procedure; **Florio v. Lau** (1998) 68 Cal. App. 4th 637, 645 [80 Cal. Rptr. 2d 409] (For instance, creditors cannot obtain deficiency judgments for purchase money transactions or after non-judicial foreclosure sale pursuant to a deed of trust. **See** Code Civ. Proc. 580 b, 580 (d) . . . . )

It is undisputedly that, Plaintiff performed all his sale non-judicially i.e. without court order, pursuant to the law; Cal. C. Civ. Proc. Sec. 580(a) through Sec. 580(d), and Sec.726 Plaintiff cannot obtain deficiency judgment due to his failure to comply with the procedure of California anti-deficiency laws.

Defendant raised repeatedly that the non-judicial foreclosure sale estopped any and all claims for the guaranty, however, after Defendants filed their "*Defendants Proposed*", California Appellate Court revisited the anti-deficiency laws and its relation to guaranty, **see Trust One Mortgage Corp. v. Invest America Mortgage**, 134 Cal. App. 4th 1302, 1310-11 (December 15, 2005).

> The Commonwealth Mortgage court found analogous ***Gradsky***, supra, 265 Cal. App. 2d 40. In ***Gradsky***, the Plaintiff bank made a construction loan to a property owner [134 Cal. App. 4th 1311] and secured the loan with a first trust deed on the property. (Id at p. 41). As additional security for the loan, the defendant, a general contractor, guaranteed the property owner's note (Ibid) when the property owner defaulted, the bank just foreclosed the trust deed nonjudicially and then sued the defendant/guarantor to recover {Slip Opn. Page 11} the unpaid balance on the loan after application of sale proceeds. (Id. at p. 42). The ***Gradsky*** court held the bank was estopped from recovering the unpaid loan balance from the guarantor because the election to foreclose nonjudicially destroyed the guarantor's right of reimbursement from the principal debtor (Id at pp. 46-47). The ***Gradsky*** court determined, as between the bank and the guarantor, the loss ultimately should fall on the bank because it made the election to pursue a nonjudicial foreclosure and owed the guarantor a duty not to impair the guarantor's remedies against the principal debtor. *(Ibid).* ***Id***.
>
> Accordingly, Plaintiff is estopped from claiming any and all

guaranties. Plaintiff non-judicial sale destroyed the guaranties.

Accordingly, the claims of guaranty against Mostafa Reyad and Wafa Reyad stated on Count Two of Plaintiff's Amended Complaint must be Dismissed as a matter of Law.

**4**

CUTPA claims, is not applicable in this action, the alleged contract's choice of law is California law, **see Mastrobouno v. Shearon Lehman Hutton, Inc**., 514 U.S. 52 (1995) (Thus, the choice-of-law provision covers the right and duties of the parties); **Valley Juice v. Evian**, Supra. Indeed the entire complaint based on CUTPA; a Connecticut law invalidate the entire complaint.

Attorney Schaeffer during the trial denied any knowledge about C.G.S. 42-110 (g)(c), which mandates that Plaintiff must mail a copy of the complaint to the Attorney General and to the Commissioner of Consumer Protection upon the commencement of the action. The action commenced on May 8, 2000. Attorney Schaefer mailed on June 17, 2004, **see** (Doc # 402). It is more than four full years and CUTPA statute of limitation is jurisdictional three years; C.G.S. 42-110(g)(f). **See** "*Defendants' Proposed*" p. 40-43. Even in the absence of any other defense, the defense of statute of limitations which is a non-waivable defense must apply and Plaintiff's Count Three of the Complaint must be dismissed as a matter of law. Moreover, the entire complaint based on Connecticut CUTPA, must be Dismissed as a matter of law.

**5**

Contrary to **the Decision** p. 12, IndyMac Mortgage Holdings, Inc. is not properly registered to do business under the trade name of Warehouse Lending Corporation of America. In the context, the meaning of proper is pursuant to the law or regulation has the same power of law. California law is very thoughral, **see** Cal. Bus. & Prof. C. Division 6 Chapter 3, Trade Names and Designations (Section 14401-14418). Section 1441 allows filing pursuant to 17910, Section 14415 explains obtaining the name pursuant to Section 2105 and 2106 of the Corporation Code. Section 2105 mandates maintaining the certificate of qualifications, and Section 2106 mandates that the name to be disclosed to the Secretary of State and in the conduct of the corporation affairs.

The two (2) certificates issued and authenticated by the Secretary of State does not show any registration for any trade name. It means if there is or there are any registration exist in somewhere else, it would be improper and has no effect. Furtherly, it deprives Plaintiff from standing, and pursuant to Article III the Court lacks jurisdiction over the subject matter. **See** also, Cal. Bus. & Pro. C. Section 17910.5 (a), it forbids filing a name includes "corporation" unless that fictitious business named corporation is organized pursuant to the law of California or some other jurisdiction. Indeed, the above legal authorities mandates Dismissing Plaintiff's entire complaint.

**6**

The ***Court Decision*** properly stipulated p. 3-4 "At the time of filing of this litigation, Reyad had borrowed approximately $ 5,700,000 to fund thirty-three mortgage loans." **Id**, however, "*Defendants' Proposed"*, p. 58-60 includes six (6) analytical charts to demonstrate the dollar calculations. On October 14, 2005 Plaintiff did not object or comment, the Court Decision was also silent on it. The passing over those six charts which is very relevant to damages calculations resulted in miscalculations and a reversible error, entitles Defendant for reconsideration of damages calculations, leads the Court to judgment in Defendants' favor and Defendants elgibility for monetary and punitive damages.

**6A**

During the three (3) days trial, the Court acknowledged for Plaintiff, Plaintiff exhibits 1-10 at no Defendant's objection. The Court acknowledged Plaintiff's exhibits 32-39 as per Defendant request. The Court also acknowledged Plaintiff's exhibits 28,40A,41,42,47-54,62-72,74,78-83,85,93-99,128 and 129. The latter exhibits are related to the alleged breach of contract of ten (10) loans, and no more out of the disputed thirty-three loans. Verified by consumer names on "*Defendants' Proposed*" p. 59 Chart II.

CHART NUMBER II

| Name | Loss | Prejudgment Interest |
|------|------|----------------------|

| | | |
|---|---|---|
| Perez | (12,094.43) | (3,568.69) |
| Lyon | ( 1,258.81) | ( 435.93) |
| Ortiz | (24,642.12) | (7,271.11) |
| Marlewski | 931.29 | |
| Zbylut | 450.39 | |
| Champagne | ( 3,073.73) | ( 906.96) |
| Kirby | ( 8,542.33) | ( 2,520.57) |
| Silva | 592.52 | |
| Zuiewski | 6,400.42 | |
| Moazed | (7,816.37) | (2,651.14) |
| Total | (49,053.17) | (17,354.40) |
| **Grand Total** | | **($ 66,407.57)** |

The chart includes all Plaintiffs' claim of damages, as per plaintiff's exhibits and evidence, and no more, as of April 6, 2004. For the sake of demonstration, and without waiving any defense or claim, Defendant will proceed in this demonstration as if all the above is true, which it are not.

Pursuant to California Contract Law, Plaintiff has the burden to show the nature and source of these alleged damages. Plaintiff showed the nature of damages. Plaintiff also declared the source from it Plaintiff obtained the alleged evidence to show the nature of damages and that source is IndyMac, Inc., the dismissed Plaintiff. Plaintiff's witness admitted that he received copies from IndyMac, Inc., **see** Tr. 4/6/04 p. 168 line 16 to p. 169 line 10. Careful review reveal that these 10 loans were the same per se the claims of IndyMac, Inc., 9 loans verified in section -**2**- above, and the 10th loan for Moazed verified by IndyMac, Inc. on Plaintiff's exhibit 37, provided that the 9 loans verified by Maria Borger Declaration dated May 8, 2000 and the date of exhibits 37 is June 8th, 2000. The two dates are before the merging of IndyMac, Inc. and IndyMac Mortgage Holdings, Inc. on July 1st , 2000. It is the concrete evidence that it is the

same cause of action and it is the same transaction or at least it is series of

connected transactions. This Court dismissed Plaintiff namely IndyMac, Inc.

pursuant to Rule 12(b)(6) on August 10, 2001. Dismissal by Rule 12 (b)(6) is final

adjudication on the merits with *res judicata* effect; **Exchange Nat'l Bank of**

**Chicago v. Touch Ross & Co.,** 544 F. 2d 1126, 1130-31 (2nd Cir.

1976)(Friendly, J.)("[J]udgments under Rule 12(b)(6) are on the merits, with res

judicata effect . . . "); **Sweater Bee by Banff Ltd. v. Manhattan Indus., Inc**., 754

F. 2d 457, 462 (2nd Cir 1985). **See**, also Plaintiff's exhibits 32-38, all the seven

documents for the seven loans have the following common phrases:

> THE ABOVE REFERENCED LOAN WAS PURCHASED BY INDYMAC
>
> UNDER THE PRIOR APPROVAL UNDERWRITING PROGRAM AND AS
>
> SUCH WAS UNDERWRITTEN BY INDYMAC PRIOR TO PURCHASE
>
> Despite this prior approval, all IndyMac Seller/Servicer Guide
>
> requirements and representations and warranties apply.

The above indicates that the underwriting of all the thirty-three loans

based on the standard of IndyMac Seller/Servicer guide, and that was the reason

to dismiss IndyMac, Inc., because the Seller Contract based on the

Seller/Servicer guide. It is another evidence that Plaintiff's complaint and its

cause of action is the same cause of action of the dismissed plaintiff, and either it

is the same transaction or a connected series of transactions, mandates

dismissing Plaintiff's complaint on the ground of *res judicata*. **See Majaraj v.**

**Bank America Corp**. docket number 96-7021 (2nd Cir. October 17, 1997)

"*Defendants' Proposed*" p. 37-38 **See** also **C.I.R. v. Sunnen**, 333 U.S. 591,597

(1948) (the judgment put an end to the cause of action, which cannot again be

brought into litigation between the parties upon any ground whatsoever absent

fraud or some other factor invalidating the judgment); **Federated Dep't Stores v.**

**Moitie** 452 U.S.394,398 ([We have observed that]"[T]he indulgence of a contrary

view would result in creating elements of uncertainty and conclusive character of

judgments, consequences which it was the very purpose of the doctrine to avert".

**Reed v. Allen** 286 U.S 191, 201 (1932); and at page 401 of Federated (The

Court of Appeals also rested its opinion on what it viewed as "simple justice". But

we do not see the grave injustice which would be done by the application of

accepted principles of *res judicata*). Accordingly, Plaintiff is precluded to provide

evidence obtained from the dismissed Plaintiff for the same cause of action. In

other words, Plaintiff is precluded from presenting the evidence of the dismissed

plaintiff. The present Plaintiff and the dismissed plaintiff cause of action are from

the same 10 loans, per se and no more.


As explained above, Plaintiff's source of damages is inadmissible, deny its

ascertainability as Defendant stated in his brief on the hearing dated October 14,

2005, Defendant invoked Cal. C. Civ. Sec. 3301.


*No damages can be recovered for a breach of contract which are not*
*clearly ascertainable in both nature and source.*

The origin of claims of damages is precluded by *res judicata*, pursuant to Section 3301 the ascertainability of Plaintiff's alleged damages of the 10 loans cannot be existed under any theory or circumstances. It should be noted that Plaintiff since November 2003 to the present time never respond legally to the defense of *res judicata*, nor cites any authority or inference opinion, and relies only on the Court Ruling Denying Defendant's motion. Plaintiff mistakenly interprets those Denials as the law of the case. The law of the case cannot be interpreted from denials of motions without articulations. As a conclusion the Court must Reconsider the alleged damages of the 10 loans as it were not submitted. The Court has the power to strike any evidence, at any time.

## 6B

More importantly, **the Court Decision** is for the dispute of thirty-three loans, but Plaintiff false evidence is for 10 loans, and by reviewing the 10 loans, the Court will find that Plaintiff cannot request relief for 4 of them, because no monetary damages, and the false claims is only for 6 loans and no more. It appears to be that the Court agreed with the implicit theory of Wholesale damages, or the Court accepted Plaintiff's exhibit 40A, which is a statement of damages equivalent to affidavit. In either case it would be contrary to the ascertainability of Sec. 3301, and certainly it is contrary to Article III of the United States Constitution, because Plaintiff fails to provide evidence of "injury-in-fact",

the first of the three elements of satisfying standing, **see Lujan v. Defenders of**

**Wildlife**, 504 U.S.555,560,561.

> Over the years, our cases have established that the irreducible
> constitutional minimum of standing contains three elements. First, the
> plaintiff must have suffered an "injury-in-fact" – an invasion of a legally-
> protected interest which is (a) concrete and particularized, see id., at 756;
> Warth v. Seldin, 422 U.S. 490, 508 (1972); Sierra Club v. Morton, 405
> U.S. 727,740-741, n. 16 (1972); 1 and (b) "actual or imminent, not
> 'conjectural' or 'hypothetical', "'Whitmore, supra, at 155 (quoting Los
> Angeles v. Lyons, 461 U.S. 95, 102 (1983). Second, there must be a
> causal connection between the injury and the conduct complained of – the
> injury has to be "fairly  . . . trace[able] to the challenged action of the
> defendant, and not . . .  th[e] result [of] the independent action of some
> third party not before the court". Simon v. Eastern K. Welfare [504 U.S.
> 555,561] Rights Organization, 426 U.S. 26, 41-42 (1976). Third it must be
> "likely", as opposed to merely "speculative", that the injury will be
> "redressed by a favorable decision". Id., at 38,43.

> The party invoking federal jurisdiction bears the burden of establishing
> these elements. See FW/PBS, Inc. v. Dallas, 493 U.S. 215,231 (1990);
> Warth, supra, at 508. Since they are not mere pleading requirements, but
> rather an indispensable part of the plaintiff's case, each element must be
> supported in the same way as any other matter on which the plaintiff bears
> the burden of proof, i.e., with the manner and degree of evidence required
> at the successive stages of the litigation. See Lujan v. National Wildlife
> Federation, 497 U.S. 871, 883-889 (1990); Gladstone, Realtors v. Village
> of Bellwood, 441 U.S. 91, 114-115, and n. 31 (1979); Simon, supra, at 45,
> n. 25; Warth, supra, at 527, and n. 6 (Brennen, J., dissenting). At the
> pleading stage, general factual allegations of injury resulting from the
> defendant's conduct may suffice, for on a motion to dismiss, we
> "presum[e] that general allegations embrace those specific facts that are
> necessary to support the claim." National Wildlife Federation, supra, at
> 889. In response to a summary judgment motion, however, the plaintiff
> can no longer rest on such "mere allegations", but must "set forth" by
> affidavit or other evidence "specific facts", Fed. Rule Civ. Proc. 56 (e),
> which for purposes of the summary judgment motion will be taken to be
> true. And at the Final stage, those facts (if controverted) must be
> "supported adequately by the evidence adduced at trial." Gladstone,
> supra, at 115, n. 31.

Accordingly, Plaintiff lacks standing for the remaining 23 loans, and as

stated in the previous paragraph 6A is precluded by *res judicata* for the 10 loans.

It means that the Court miscalculated damages, not over-estimated damages.

Indeed, the only damage occurred in this action is Defendants' damages.

# 6C

During the trial Plaintiff's witness explained, pursuant to the Court own inquiry, that, there were a cushion of 4% of the amount provided to Defendant in each loan, Defendant can withdraw it after paying back the warehouse line of Credit, **see** Tr. 4/6/04 p. 43 line 10-18., it means the 5,700,000 includes approximately $ 228,000 due to Defendant if performance is running as a matter of course. In actuality Defendant was in excess of the line in the total amount of $ 288,315 at the time of commencing the dispute on April 19, 2000, and was maintaining the cushion at the rate of 5 %, and that can explain Plaintiff's admission of Defendant's cash collateral of $ 78,703.59 stated on exhibit 40A, because Defendant at that time has an advance cash collateral about $ 65,000. Defendant is unable to state the precise amount, because the computer connection which includes all the accounts controlled by Warehouse Lending Corporation was shut without notice on April 19, 2000. In any event Defendant has the right of the remaining of $ 288,315 even Plaintiff claiming "injury-in-fact" in the amount of $ 66,407.77. It means Defendant is entitled to the excess of $ 141,296 approximately after deducting $ 81,000 for Jaku's loan and its interest. The amount due to Defendant as follows:

## CHART NUMBER I

Based on Defendant's exhibit 25, Defendant is entitled to the moneys at the time

of delivering the 7 loans outlined in Plaintiff's exhibits 32-38 as follows:

| Name | Amount |
|------|--------|
| 1. Dellasal, Jr. | $ 2,509.70 |
| 2. Elseedy | $ 4,175.48 |
| 3. Zlybut | $ 3,729.14 |
| 4. Antoine | $ 5,627.50 |
| 5. Giraldo | $17,293.22 |
| 6. Moazed | $19,006.16 |
| 7. Zuiewski | $12,742.80 |
| Total due at inception | $65,084.00 |
| Interest* | $25,092.94 |
| TOTAL | **$90,176.94** |

*Interest calculated using/same mathematical factor "0.385547" as Plaintiff
Exhibit 40A

## CHART III

The evidence provided at Trial presented by Plaintiff, and the evidence provided

by Defendant out of Plaintiffs premarked exhibits as follows:

| | |
|---|---|
| Chart I. Due Defendant | $ 90,176.94 |
| Chart II. Due from Defendant | $(66,407.57) |
| Net due to Plaintiff's admitted Evidence | **$ 23,176.94** |

Plaintiff admitted that he is holding Defendant's cash collateral $ 78,703.59 which

he calculated interest $ 30,963.93.

## CHART IV

| | |
|---|---|
| Chart Number III due to Defendant | $23,769.37 |
| Defendant Cash Collateral | $78,703.59 |
| Interest on Collateral | $30,963.93 |
| Due to Defendant | **$133,436.69** |

## CHART V

| | |
|---|---|
| 1. Drazel | 1,928.25 |
| 2. Barren | (    95.60) |
| 3. Tahir | (   189.77) |
| 4. Bakry | (   813.08) |
| 5. Smorczewski | ( 3,553.04) |
| 6. Abreu | 361.63 |
| 7. Browne | 6,703.20 |
| 8. Browne | 2,691.28 |
| 9. Mishall | 9,338.61 |
| 10.Nyakana | 7,748.72 |
| 11.Wilkinson | 1,806.80 |
| 12.Babenski | 8,848.68 |
| 13.Tarzia | 22,412.00 |
| 14.Calderon | 5,507.08 |
| 15.Casella | 5,832.04 |
| 16.Flores | 7,958.80 |
| 17.McEnroe | 10,848.24 |
| 18.Tarzia | 0 |
| 19.Jaku | (81,675.31) |
| Due to Defendant at inception | 5,658.53 |
| Interest * | 2,181.62 |
| Total | **7,840.15** |

## CHART VI

| | |
|---|---|
| Chart IV due to Defendant | $ 133,436.69 |
| Chart V due to Defendant | $    7,840.50 |
| **Total Net to Defendant** | **$ 141,277.19** |

Defendant is entitled to the interest of 10% annually on the amount $ 141,277.19 as to the period from April 6, 2004 to December 6, 2006 equal to $ 37,673.90, making the total of **$ 178,951.09** as of December 6, 2006 and **$ 39.24** for each day thereafter.

Thus, the amount due to Defendant as of April 6, 2004, under all theories or circumstances, the excess of **$ 141,277.19** out of the proceeds of the

warehouse line of credit, even if the Court would calculate all plaintiff evidence as true. The Court must Reconsider these calculations.

# 6D

Turning back to section 6A, the paragraph followed Chart II, Defendant in that section stated; the Defendant will proceed in demonstration as if, Plaintiff's evidence is true, which it are not. Indeed all evidence acknowledged for Plaintiff with the exception of Plaintiff's exhibits 1-10, are meaningless and must be considered null. Plaintiff lacks standing to present all that evidence.

Evidence by evidence, none can be against Mostafa Reyad, there is no single evidence attacked Mostafa Reyad personally, no evidence bearing his signature, nor even having his name, e.g. verification of deposit has the name of independent contractor working with Mostafa, signature of the consumer, and signature of the financial institution. None of these persons was a party to the action. If Plaintiff's allegation is against the independent contractor, no independent contractor was in the Court, and no allegation against certain name ever was in any pleading, and if it was, it would be only against that person, and not against Mostafa Reyad.

**See**, **Lujan**, supra, the second element bars any conclusion may be drived from the evidence, at p. 560, the Supreme Court Ruled "there must be a casual connection between the injury and the conduct complained of the injury has to be 'fairly' . . . trace [able] to the challenged action of the defendant, and

not . . . . th[e] result [of] the independent action of some third party not before the court".

Indeed, if Plaintiff was successful to satisfy the first element, "injury-in-fact", Plaintiff fails in the second element of causual connection, because all evidence provided for injury demonstration are caused by independent action of third party not before the Court; Lujan at 561 Rules "The party invoking federal jurisdiction bears the burden of establishing these elements . . . . . Since they are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the Plaintiff bears the burden of proof. . . ."

The above makes it clear, that Plaintiff's evidence was against no body in the Court, and Plaintiff lacks standing to sue Defendant in any and all of the evidence provided to demonstrate injury, pursuant to Article III of the United States Constitution. Thus, Plaintiff has no case, and this Court must Dismiss Plaintiff's entire complaint as a matter of law.

**7**

Defendants are entitled to be awarded damages and punitive damages for their Counterclaims, **the Court Decision**, p. 13 Ruled that Defendants have not provided sufficient evidence to prove their counterclaims by a preponderance of the evidence, the plaintiff prevails as to these claims. Defendants presented and the Court acknowledged exhibit # 17 and # 18 as full exhibits, the two exhibits shows that Mostafa Reyad and Wafa Reyad had lost two(2) insurance policies in the amount of two (2) million dollar. It should be a clear fact, the major issue of

Defendants' counterclaims for damages caused by the unlawful nuclear prejudgment, garnishment and attachments, directly caused Defendant to close his business indefinitely, and the shock to his wife caused her to attempt to take her life, followed by putting Defendants as dependents on their children for the last six and half years.

The cause of action demonstrated in the counterclaims was reflected in "*Defendants' Proposed*", it is the nuclear amount of prejudgment and its effect as an unlawful injunction, in some respect has the effect of a judgment. Certainly, there is no need for witness to proof the proceedings of this Court or to demonstrate the prejudgment remedy issued by the New Jersey District. Defendant is not asking the Court to Rule or Overrule New Jersey action, but only to recognize it as a matter of law in its occurrence. In other words, to be aware about, it is for the same cause of action and between the same parties before the Court, and to be aware about its extension of devastation and damages.

This Court entered on the docket, Order of prejudgment remedy against Defendants on May 17, 2000 (Doc # 13) in the amount of $ 1.6 million. The Court Order, stipulates very clearly word by word that Defendant is permitted to conduct his business and Defendants are permitted to maintain their business and bank accounts. Contrary to the entered Order, and opposite to it, had occurred on May 18, 2000, the same Court and the same Federal Magistrate

Judge issued on May 17, 2000 at least eight (8) garnishment orders, each order in the amount of $ 1.6 million, in the total of $ 12.8 million, these orders are maintained in the case file, but not reflected on the docket sheet as mandated by Rule 79(b). A copy of certified orders attached hereto. It should be noted that these copies are not evidence, because there is no evidence allowed after trial. Indeed  it is an integral part of the dockets to adjudicate this litigation.

It appears to be, that, there is, some kind of frustration in the application of Rule 64 and Rule 65, the former is to the application of state law relating to prejudgment within the state where the Court held. The latter is for injunction, a federal power not related to state law. This Court, Honorable Droney, U.S.D.J. Issued injunction on May 9, 2000 and Dissolved it on April 18, 2001 retroactively as ten (10) days of its issuance (Order # 118).

The eight (8) orders in the total amount of $ 12.8 million had the effect of injunction, if not the effect of judgment, the commentators names it, injunction has the label of prejudgment, which is immediate appealable. The first two orders, each order directed to a bank to garnish up to $ 1.6 million. The first order to the then Fleet Bank caused all personal and business accounts to be seized, because there were no $ 1.6 million in any and in all accounts. The Second order to Hudson United Bank, returned a check to Wafa Reyad on May 18, 2000, she was shocked and attempted to take her life.

All these orders issued upon the application of Plaintiff's complaint and Plaintiff filing of prejudgment remedy application. The application for the prejudgment remedy will be rejected by any court, unless it includes affidavit to establish probable cause. At the commencement of this action, it was two Plaintiffs. Each Plaintiff filed an affidavit. IndyMac, Inc. filed its application supported by Maria Borger affidavit, and IndyMac Mortgage Holdings, Inc. filed its application supported by Brian E. Ainslie. The former plaintiff was dismissed, the latter is the present Plaintiff, **see** Ainslie's affidavit, under penalty of perjury dated May 8, 2000 (Doc # 10) p. 5 para 13.

> Based upon the review performed by IndyMac, IndyMac has determined that several of Reyad's employees prepared and submitted these falsified documents to IndyMac. 13. Furthermore, IndyMac had obtained preliminary property valuation indicating that the properties securing the mortgage loans financed on Reyad's WLCA warehouse line are over-valued by an average of 22.27%.

> The affidavit at p. 6  para. 15
> WLCA estimates that it will lose at least 22.27% of the outstanding amount advanced to Reyad. Based on the information reviewed to date, WLCA's loss is at least $ 1,271,000 and WLCA believes there is probable cause to obtain a judgment against the Reyads for this amount.

Simply put, the affidavit established the probable cause, based on the over value by an average of 22.27%, which according to Plaintiff's affiant in the amount of $ 1,271,000. Mr. Ainsle multiplied the 22.27% times the outstanding amount of $ 5.7 million resulted in the amount $ 1,271,000. Now, it is more than five years, Defendant's motion claiming the perjury committed by Mr. Ainslie is pending before the Court. Defendant is insisting on his claims of the perjured affidavit, because it entitles Defendant to punitive damages. Furtherly, Plaintiff's attorney,

Mr. Schaeffer defended Mr. Ainslie's affidavit, and repeated twice that he is not

sure that the affidavit was on original papers.

> **See**, Tr. 4/7/04 p. 150 line 1-6
> And this is within _ _ I believe this affidavit was filed with the prejudgment
> _ _ the request to the court. And I'm not sure, but was it on original
> papers? Part of MR. Ainslie affidavit, but I'm not sure.

> **See**, Fed. R. Civ. P. 11(b) 3
> The allegations and other factual contentions have evidentiary support or,
> if specifically so identified, are likely to have evidentiary support after a
> reasonable opportunity for further investigation or discovery.

> And **see**, Notes of Advisory Committee on 1983 amendment to Rule 11

> The amended rule attempts to deal with the problem by building upon and
> expanding the equitable doctrine permitting the court to award expenses,
> including attorney's fees, to a litigant whose opponent acts in bad faith in
> instituting or conducting litigation, **see** e.g. **Roadway Express, Inc. v.
> Piper**, 447 U.S. 752 (1980); **Hall v. Cole**, 412 U.S.1,5 (1973).

The advisory Committee talking about bad faith, but the situation here

above  is a claim for perjury. To achieve justice, Defendant's motion must be

Ruled upon [Doc # 240], to determine Defendant eligibility to be awarded punitive

damages.


Finally, the Honorable Court should Grant this Motion For

Reconsideration, and upon Consideration, the Court should Order Dismissal of

Entire Plaintiff's Complaint. Justice mandates Vacating All Prejudgment

Remedies.  Order should be issued in the hearing upon motion for

reconsideration. Ordering vacating all prejudgment orders issued by this Court.

Defendants are entitled to it as a matter of law.

The Court to Order Scheduling a hearing for Defendants' damages, or in the alternative, the Court to determine the proper amount of damages.

## [474 ]  MOTION TO SET ASIDE 466

***The Court Decision*** dated July 26, 2006 (Doc # 466) p. 12 established Plaintiff's standing. The Court adopted Plaintiff's statement of Plaintiff's Post-Trial Memorandum, p. 6 dated December 21, 2004 (Doc # 441). Defendant filed this motion to set aside the Court Decision, pending Ruling upon this motion. Defendant claims that the two (2) attorneys, namely, David R. Schaefer and Rowena A. Moffett have committed "Fraud Upon The Court", effectuated this Court Decision, and caused the Court not to perform in the usual manner its impartial task of adjudging the action.

Defendant filed his motion for reconsideration dated August 2, 2006 (Doc # 470), Defendant raised multiple issues, among the issues, Plaintiff's standing, Plaintiff filed its opposition, but instead of discussing the issue, Plaintiff made reference to the Court Denials of numerous Defendant's motions. That motions were Denied without articulation, blocking Defendant request for Reconsideration. All Defendant's motions were supported by provisions of law and supported by legal authorites. But Plaintiff did not discuss any legal issue at all, and in two (2) oppositions requested to be permitted to file legal memorandum in opposition to Defendant's motions twenty-one days following the Court's determination that it deems such a response necessary, **see** Doc # 316

31

dated December 15, 2003 p. 3-4., the Court Denied, Plaintiff filed his opposition for the same motions, and again Plaintiff avoided any discussion. **<u>See</u>** Doc # 324 dated January 12, 2004. Plaintiff's oppositions Doc # 316 and Doc # 324 includes the opposition to Second Motion in Limine dated November 24, 2003 (Doc # 308), which includes the Certificates of California Secretary of State for Warehouse Lending Corporation of America, certifying it became relinquished on October 5, 1994 by changing its name to Independent Lending Corporation, and furtherly Independent Lending Corporation surrendered its certificate on February 23, 1998 and became defunet. The other certificate of IndyMac Mortgage Holdings, Inc., does not have any relation to either Warehouse Lending Corporation of America, or Independent Lending Corporation. There is nothing in either certificate show that any corporation has a fictitious business name, nor trade name. Defendant supported his motion by numerous provisions of California and Delaware laws, Plaintiff did not respond to any. The Court Denied Doc # 308 motion. On August 23, 2006 Plaintiff filed his opposition for motion for reconsideration  (Doc # 472) and repeated again his tactics of not discussing the issue relying heavily on the Court Denials of Defendant's motions, that was the reason to trigger the instant motion. Indeed, Plaintiff was successful to divert ***the Court Decision***, to accept his statement and the court set aside the Certificates of California Secretary of State.

Plaintiff at Doc # 472 p. 2 repeated the Denial of Doc # 308 as the law of the case stricking Defendant's defense of Plaintiff's standing. The Court Denial without articulation never establish the law of the case.

Plaintiff filed his opposition to this motion dated August 30, 2006 (Doc # 475) and repeated the Denial of Doc # 308. Plaintiff made reference to the transcript of the trial dated April 6, 2004, that Defendant answered the Court "Yes, I agree, because I signed it", the Court asked Defendant "Do you agree those are to be considered by me as true, right?", Defendant answered "Yes, your Honor".

Defendant unintentionally mistakenly answered yes to the Court question, Defendant was confused, Defendant answered to his stipulation of facts and law, not to the facts and law stipulated by Plaintiff. Defendant is ready to swear on the stand, that he discovered his mistake for the first time when he received Plaintiff's Post-Trial Memorandum, and this is the reason that, Defendant corrected his mistake on "*Defendants' Proposed*" dated June 16, 2005 (Doc # 458) p. 4.

> Plaintiff is unethically attempts to implement that he did not read or understand the joint trial memorandum dated November 18, 2003. Article "B". Indeed, Defendant admitted in the Court that he signed the stipulation of fact and law, Article number 5. Defendant affirms that he signed that stipulation only to the extend explained thoroughly in Article "B" p. 3-43 of the joint trial memorandum. Article number 5 and Article number 4 section "B" are supporting and complementing each other. Thus, Defendant signed Article 5 as explained in section "B" affirming the authenticity of the documents assuring that this action is not actionable.

Defendant included in the joint trial memorandum multiple defenses, including that Plaintiff lacks standing, because there is no existence for a corporation has two-names at any point of time, and that was the basis of his defense in his Summary Judgment motion. Again, Defendant is ready to swear that he did not prepare or was aware that, that statement of facts and law was in joint trial memorandum at the time of trial. It is also impossible to believe that Defendant agree and disagree for the same issue in the same document, and Defendant writes all that defense in the same document.

**See**, joint trial memorandum (Doc # 306) Article "B", p. 10

> Trade names and designations (Section 14401-14418), 14411 allows filing any fictitious business name pursuant to section 17910 . . . . section 14415 . . . . the obtaining of a certificate of qualification pursuant to section 2105 and 2106 . . . that the corporation has the exclusive right to use a trade name in the state the corporate name set forth in the article or certificate.

> And, at p. 11
> Plaintiff provided a trade name registration is New Castile County, Delaware. Plaintiff registered a trade name in the place designated for partnerships and assossiations, which is a county recorder office; the place has nothing to do with corporations. A corporation is a state creature, not county or town creature, and that illegal registrations collectively does not change the State Records.

1-The History of the case shows that, Plaintiff has commenced this action, six and half years ago by perjured affidavit, **see** Brian Ainslie Declaration (Doc # 10) para. 13 and para. 15, Mr. Ainslie stated in his declaration under penalty of perjury that IndyMac had obtained preliminary property valuation indicating that the properties securing the mortgage loans financed on Reyad's WLCA warehouse line are over-valued by an average of 22.27% . . . . WLCA believes

there is probable cause to obtain a judgment against the Reyads for this amount. Defendant raised the perjurious issues for more than five (5) years, and Defendant's motion # 240 is pending before the Court. At trial attorney Schaeffer defended his client Mr. Ainslie, and repeated twice that he was not sure that the affidavit was on original papers. Indeed, if it was or was not on original papers, it was the only document, the Court relied upon to issue the massive devastated prejudgment remedy, not only in this Court, but also in New Jersey District. At trial the Court Decided to put it at the end of the trial. Again, the ***Court Decision*** was silent on it. The Court must consider motion # 240, which entitles Both Defendants to prevail on "**abuse of process**" counterclaim.

2- In the first day of trial, Plaintiff provided forged copy documents, most probably prepared by IndyMac, Inc.'s underwriting team. They did that to convert those loans from reduced documentations to full documentations to be sold by higher prices. Defendant was looking to one of the documents, Defendant believes the impossibility of its contents, and asked to review the original, it was not available. The second day of trial, Mr. Schaeffer and the witness on the stand announced that they have  all the originals of the alleged forged documents except one, **see**, Tr. 4/7/04 p.3-4. Mr. Schaeffer played the three card monte inside the Court Room, and let the Honorable Judge and Defendant believed him, that they have the original alleged forged documents. The attorney and the witness committed the fraud upon the Court. To that extent, it becomes an easy task to the Court to determine, who is right and who is in trouble. Those documents which have been acknowledged by the Court as full exhibits for

breach of contract for the alleged ten (10) loans. It are not new evidence, Plaintiff

can bring it to the hearing. Defendant assumes that, the Court in its wise

Decision, may not agree with every request a litigant may ask, but the Court

applies the Rules of Evidence, and the case-in-chief ordinarily include original

documents? If yes, Defendant is the bad guy, if not and Plaintiff will not bring it to

the hearing, then Plaintiff is the bad person, and Defendant using the word

"imposter" was proper. This brief is to give Plaintiff a loud notice to defend

himself if he can. Defendant allegations herein is a serious fraud upon the United

States, entitles Both Defendants to be awarded punitive damages for **1)**

**intentional  infliction of emotional distress; 2) loss of consortium ; and 3)**

**vexatious litigations**.


3- It is more than two and half years, the Court Denied Defendant Second

Motion in Limine (Doc # 308) which contains the two (2) certificates issued and

authenticated by California Secretary of State.  Plaintiff used it as denial to the

two (2) certificates, and was successful to implicit that impression towards the

Court, not to review it again. Unforetunately, the Court disregarded Defendant's

exhibits # 14 and # 15, and reached in error the Conclusion that Independent

Lending Corporation was properly registered to do business under the name of

Warehouse Lending Corporation of America, while exhibit # 14 does not show

that, and furtherly Concluded that IndyMac was properly registered to do

business under the name of Warehouse Lending Corporation of America, while

exhibit # 15 has nothing to that effect, and both Conclusions are contrary to

California law, accordingly, Plaintiff lacks standing to sue. Plaintiff's success to

divert the **Court Decision,** can be explained by what Defendant stated in his

motion. "the two attorneys acted as "imposters". Now, Plaintiff's attorneys have

enough time to respond in the hearing, to show the originals of the alleged forged

documents for examination, if any. The Honorable Court would determine who is

the defrauder, and punish him.


## 471 MOTION TO DISMISS

Defendant Mostafa Reyad filed on August 4, 2006, this Motion to Dismiss

Pursuant to F.R.Civ.P. Rule 12(b)(1), claiming that, Plaintiff lacks standing.

Plaintiff filed opposition memorandum on August 30, 2006 (Doc # 475). As

Plaintiff did throughout this long litigation, he did not support his opposition by

any authority, and made reference to the Ruling Denying numerous Defendant's

motion, however, although those motions were Denied by the Court, Plaintiff

never respond legally to any authority cited by Defendant. It means that, Plaintiff

never respond to Defendant's legal claims, neither in the numerous motions he

cited on his opposition, nor the instant motion. Remarkably, Plaintiff offer

misplaced defense unexpected from a licensed attorney. Plaintiff referenced to

Joint Trial Memorandum (Doc # 306) Section 5, para. 7-16; 4/6/04 Transcript at

22-23, in which Defendant mistakenly answered the Court that Defendant agreed

to Plaintiff's prepared stipulation of fact and law. Defendant has corrected that

mistake in "_Defendants' Proposed_", p. 4 (Doc # 458). In last opposition, Plaintiff

claims that Defendant may not now dispute these facts in a belated effort to avoid liability following the issuance of the Court's Decision. Indeed, Plaintiff is totally wrong, that defense never can by applicable in motion to dismiss for lack of subject matter jurisdiction. It is the obligation of the court to satisfy itself of its jurisdiction even though the parties are prepared to concede it. **See** **Steel Co. v. Citizens For A Better Environment, Supreme Court** Case No. 96-643 (March 4,1998)

> " [E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. **Michell v. Maurer**, 293 U.S. 237, 244 (1934). **See** **Juidice v. Vail**, 430 U.S. 327,331-332 (1977)(standing). And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not on the merits by merely for the purpose of correcting the error of the lower court in entertaining the suit. **United States v. Corrick**, 298 U.S. 435,440 (1936)(Footnotes omitted)" *Id*. **Part III. 4th paragraph.**

Defendant's instant motion is also a motion pursuant to Article III. of the United States Constitution. This action initiated by Plaintiff, namely, IndyMac Mortgage Holding, Inc. doings business as Warehouse Lending Corporation of America. If the Court applied **Steel** authority, supra, the Court would dismiss that action *sua sponte* in day one, because as Defendant repeatedly saying "it is impossible for a corporation to have two corporate names at any point of time". Plaintiff presented himself as a corporation but has two names ; 1) IndyMac Mortgage Holdings, Inc. ; and 2) Warehouse Lending Corporation of America. It is contrary to Corporations Laws in the fifty states, and more specifically

California Corporations Code Section 2106 (b)(2), the provision stipulates "an

assumed name", Defendant relied on Cal. Bus. & Prof. C. Section 17910.5(a) in

Defendant's defense in "Summary Judgment"., and repeated again in

"*Defendants' Proposed*" p. 11, as well as numerous motions all Denied; Sec.

17910.5 (a).

> No person shall adopt any fictitious business name which includes
> "Corporation", "Corp.", "Incorporated", or "Inc." unless that person is a
> corporation organized pursuant to the law of this state or some other
> jurisdiction.

> It is undisputedly that, Warehouse Lending Corporation of America, has

been relinquished in 1994, and the use of the word corporation is contrary to the

above provision, and contrary to 14415 and Cal. Corp. C. 2105 & 2106., and

2203 (c). Corporations are not free to enter into contracts using a different name

not in its articles of incorporation, nor its certificate of qualification maintained by

Secretary of State. Plaintiff's filing registration contrary to the law by using a

different corporate name in the town or county records, is two violations, the first

is a different corporate name, the second is filing in the wrong place, it is

equivalent to a litigant sued in this Federal District of Connecticut, filing his

answer in the State Court of Hartford. Plaintiff filing in the wrong place to be

unreachable, and cannot be served. Moreover, Defendant's exhibit # 14 shows

that Independent Lending Corporation has surrendered its certificate on February

23, 1998, revoked its designation of agent, and consents that process against it

in any action upon any liability or obligation incurred within the State of California

prior to the surrender may be served upon the Secretary of State of California. It

is a constructive notice that, it died, and will not engage in any business after that date, and no one can serve it.

California law is clear and unambiguous; 2203 (c), a corporation has no certificate, cannot maintain any action or proceeding. Is there a certificate for Warehouse Lending Corporation of America, to enter into contract after October 5, 1994? the answer of course, No. Is there a certificate for Independent Lending Corporation after February 23, 1998? The answer of course, No. Does the records maintained with the California Secretary of State has anything showing merger or acquisition of Independent Lending Corporation to any other corporation? The answer is No. Accordingly, the entire contract, namely, the Credit Facility Documents is unenforceable, null and void as a matter of California law, and Plaintiff lacks Standing to maintain the action, and all proceedings including the trial proceedings is unjustifiable under any circumstances. There is no proper party to sue this case, because the underlying contract is invalid. Pursuant to Article III, Plaintiff lacks standing and the Court has the jurisdiction to Dismiss Plaintiff's entire complaint, and lacks jurisdiction on the merits pursuant to **Steel**, supra.

The Defendant                                    The Defendant
Mostafa Reyad                                    Wafa Reyad


By:_____     By:_____
   Mostafa Reyad                                    Wafa Reyad
   2077 Center Ave # 22D                    2077 Center Ave # 22D
   Fort Lee, NJ 07024                          Fort Lee, NJ 07024
   Day Phone. 203-325-4100             Home Phone. 201-585-0562
   Home Phone. 201-585-0562



## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the caption date of this document, he mailed a

true and correct copy to Attorney David R. Schaefer at 271 Whitney Avenue,
New Haven,

CT 06511.


                                                 _____
                                                        Mostafa Reyad