UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INDYMAC BANK, F.S.B.
                  Plaintiff

V.

MOSTAFA REYAD AND WAFA REYAD
                  Defendants

**CIVIL ACTION NO.
3:00CV835 (CFD)**

**DATE: NOVEMBER 21, 2006**

## **DEFENDANTS' BRIEF ON DAMAGES**

Defendant Mostafa Reyad and Co-Defendant Wafa Reyad hereby respectfully submit the instant Brief On Damages pursuant to the Court Order Issued on November 17, 2006 (Doc # 481). Hearing on Damages allows each party to provide their own damages if that party is entitle to damages, e.g. a party who lacks standing is not entitled to discovery, is not entitle to provide evidence and is not entitle to demand damages, simply, a Plaintiff who lacks standing is not entitle to a day in Court. Furthurly, a Plaintiff whose complaint is legally defective is not entitle to a hearing, pursuant to the authority of, **Allen Dotson v. The Honorable Thomas P. Griesa et al**, docket number 01-6248 (February 2, 2005, 2nd Cir.)

> *The first three points may be disposed of without discussion. First, a district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.* ***See generally***

1

> **AD/SAT v. Associated Press**, 181 F. 3d. 216, 226 (2nd Cir. 1999). Second, a plaintiff is not entitled to discovery if his pleadings are fatally and incurably defective as a matter of law. See, e.g., M.B. # 11072-054 v. Reish, 119 F. 3d 230, 232 (2d Cir. 1997) (per curiam); **Flaherty v. Coughlin**, 713 F. 2d 10, 13 (2d Cir. 1983). Third, contrary to Dotson's argument, the district court's ruling assumes the truth of all allegations pleaded in Dotson's complaint. In any event, where pleadings are legally defective, dismissal is warranted without regard to the factual merits of a plaintiff's underlying claim. **See, e.g., Steel Co. v. Citizens for a Better Env't**, 523 U.S. 83 (1998). **Id**. p. 3 of 49

The Dotson's Court Concluded that plaintiff's 42 U.S.C. 1981 claim is legally defective because the statute applies only to person acting under color of state, not federal law, **Id**. p. 3-4 Second Circuit Official Website. **See** Plaintiff's Amended Complaint dated September 7, 2001 (Doc # 165), Plaintiff's complaint is based on Connecticut CUTPA, and was filed after this Court determination that California law is the applicable law of the challenged Credit Facility Documents, **See Mastrobouno v. Shearson Lehman Hutton, Inc**. 514 U.S. 52 (1995) (Thus, the choice-of-law provision covers the right and duties of the parties); **Valley Juice Ltd. v. Evian Waters of France** docket number 94-7813 and 95-7709 (2nd Cir. 1996).

### D. Massachusetts Unfair Trade Practices Act

Valley also brings a claim under MUTPA. **See** Mass. Gen. L. ch. 93A, Section 1 **et seq**. The district court directed a verdict against Valley on this claim, followingthe authority of **Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys**. Co., 986 F. 2d 607 (1st Cir. 1993), and **Worldwide Commodities, Inc. v. J.Amicone Co**., 630 N.E.2d 615, 36 Mass. App. Ct. 304 (1994). In **Northeast Data**, the court reasoned that, with respect to MUTPA claims that are in essence reframed contract claims, a contractual choice of law clause specifying that the rights and obligations of the parties. . . shall be governed by and construed in accordance with the laws of California, would apply to MUTPA claims as well as ordinary contract claims. **Northeast Data**, 986 F. 2d at 609. Since California had no statute that paralleled MUTPA, the **Northeast Data**

2

court affirmed dismissal of the claims. <u>Id</u>. at 611. The district court ruled that this was a parallel case, and directed verdict against Valley - - finding that since "the valid written agreement provides that New York law shall apply, a claim based on Massachusetts law is barred . . . ."

Furthermore, Plaintiff's complaint is legally defective on its face, in its first paragraph by reading the name of the Plaintiff. Plaintiff introduced himself as IndyMac Mortgage Holdings, Inc. doing business as Warehouse Lending Corporation of America, thus Plaintiff has two distinct corporations names at the same point of time, contrary to every corporations law in every State in the United States, it is used to be ***unreachable***, and ***not be served***. Moreover, Plaintiff is not the proper party to bring this action pursuant to **Cal. Corp. C. Sections, 2203 (c), 2105(a) and 2106 (b)(2)** and precluded to provide any evidence by the application of *res judicata*, <u>**see**</u> Defendants' Brief dated November 7, 2006 (Doc # 480) p. 22 "The only damages occurred in this action is Defendants' damages".

Defendants' damages caused by the nuclear prejudgment remedy ordered by this Court as well as the attachment orders issued by the Federal District Court at Newark, New Jersey. Pursuant to the law, there is no jurisdiction in this Court over the New Jersey Court, accordingly, Defendants' claims of damages herein is the damages occurred by the instant action, <u>**see**</u> eight garnishment orders attached to Defendants' brief (Doc # 480). The $ 12.8 million garnishment orders exceeds by far Defendants net worth, that is to say, the garnishment orders deprived Mostafa Reyad (Defendant) and Wafa Reyad (Co-Defendant) from every dollar they could claim for a period exceeds six full years. On May 18,

2000 Defendant lost his business by the closing of all his business bank accounts. On the same exact day, the bank returned Co-Defendant a check unpaid, she attempted to take her life. She was admitted in Englewood Hospital under suicidal watch till May 22, 2000, and continued manic depression for long period thereafter. All the above occurred caused by one reason, that reason is the nuclear garnishment orders. Plaintiff obtained the nuclear garnishment orders by committing a federal offense. Plaintiff obtained the said orders by submitting a perjured declaration under penalty of perjury under the laws of the United States **see** Brian Ainslie Declaration dated May 8, 2000 (Doc # 10).

**Defendant Mostafa Reyad's Statement of Damages**

1. Defendant lost his business, caused by closing all his business bank accounts on May 18, 2000 pursuant to this Court's Order to garnish the then Fleet Bank accounts up to $ 1.6 million, the garnishment order was drafted and prepared by Attorney David R. Schaeffer on Mr. Schaeffer's computer, **see** the fine prints in the lower left corner on each page. Honorable Garfinkel executed the orders on May 17, 2000, entered in the case file, but not docketed as mandated by Rule 79. Twelve days later, Defendant closed his office at 800 Summer Street, Stamford, Connecticut and moved to another office of his operation at 777 Summer Street, and continued renting the office located at 838 High Ridge Road, Stamford, CT, to wind up his operation, about one year later, all Defendant's efforts

4

to reinstate his operation completely failed. Defendant lost any and all income derive from his business for the last six and half years.

2. At the end of the year 2001, Defendant's business assets were gone, and Defendant became dependent on his children to support him, his son David Sherif Reyad sold one condominium in Greenwich, Connecticut and another condominium in Manhattan, New York. Defendant's daughter sold her house in Skilman, New Jersey and moved to a less expensive house in Princeton Junction. Neither Defendant, nor his children were able to make payments of the insurance policies, they elected to support the life needs of Defendant and Co-Defendant, and the following policies have been liquidated:

   (i)    The Equitable Variable Life Insurance Policy, number 48 230 202, issued on July 28, 1998 in the amount of One Million Dollar, insuring Mostafa Reyad and Wafa Reyad.

   (ii)    The Prudential Insurance Policy number B4 035 880 contract date November 3, 1999, that policy was a renewal of the previous policy in the same amount of $ 600,000 issued on November 3, 1994, insuring Mostafa Reyad.

   (iii)    The Prudential Insurance Policy number B4 035 883 contract date November 3, 1999, that policy was a renewal of the previous policy in the same amount of $ 400,000 issued on November 3, 1994, insuring Mostafa Reyad.

3. Defendant suffers deep emotional distress caused by the unlawful detention of all his assets resulted in deterioration of his health conditions. The unlawful action created more emotional distress when he was recommended to be sanctioned by customers, investors and lawyers representing customers.

4. Plaintiff's infliction of emotional distress on Defendant's wife, caused Defendant loss of consortium and a disruption of marital relationship.

Plaintiff's conduct described hereabove was willful, wanton and malicious warrant awarding Defendant punitive damages in the amount of $ 20 million, pursuant to the authority of **TXO Production Corp. v. Alliance Resources** 509 U.S. 443 (1993).

**Co-Defendant Wafa Reyad's Statement of Damages**

1. Co-Defendant lost numerous opportunities to invest her own money, in a time she was preparing for her retirement. In this Court, Co-Defendant is under seize in the amount of $ 12.8 million, however, Co-Defendant does not have, or even close to this amount, that is to say, she is under seize for every thing as follows:

    a. The Co-op apartment where she lives, value about $ 400,000. Co-Defendant was unable to sell or to mortgage for a period of six years. In order to calculate the actual damage for this fixed asset, ten percent of its value per year is consistant with the law, the monetary damage will be $ 240,000.

    b. Co-Defendant is under seize for the five liquid accounts:

        (i) Equi-Vest account number 98 501 73

        In the amount of         $ 158,549.14

        (ii) American Express account number 0930 0599 5771

        In the amount of         $ 82,733.70

        (iii) Aetna Annuity account number 0032

        In the amount of         $ 80,709.40

        (iv) Valic, account number 4550744

        In the amount of         $ 89,600.58

        (v) New England Financial account number V435143

        In the amount of         $ 24,242.83

        **TOTAL**         **$ 435,835.65**

The unlawful detainer of these four liquid assets is $ 435,835.65 should be calculated, utilizing 24% per year, that is the average rate of borrowing from credit cards, the lowest rate is 17.99% and the heighest rate is 32.99%.

    435,835.65 x 24% = $ 104,600.55 per year

    104,600.55 x 6.5  = $679,903.57

Thus, the total monetary damage occurred in this District caused by the unlawful detainer

    679,903.57 + 240,000 = **$ 919,903.57**

      c. Co-Defendant should be compensated in the amount of two (2) million dollar for her suffering emotional distress caused her to attempt to take her life and continued distress for six and half years.

      d. Plaintiff's abuse of process entitle Co-Defendant to punitive damages in the amount of ten million dollar, pursuant to **TXO**, supra.

| | |
|---|---|
| The Defendant<br>Mostafa Reyad | The Defendant<br>Wafa Reyad |
| By:_____<br>  Mostafa Reyad<br>  2077 Center Ave # 22D<br>  Fort Lee, NJ 07024<br>  Day Phone. 203-325-4100<br>  Home Phone. 201-585-0562 | By:_____<br>  Wafa Reyad<br>  2077 Center Ave # 22D<br>  Fort Lee, NJ 07024<br>  Home Phone. 201-585-0562 |

## CERTIFICATE OF SERVICE

The undersigned certifies that on the caption date of this document, he mailed a

true and correct copy to Attorney David R. Schaefer at 271 Whitney Avenue, New Haven,

CT 06511.

_____
Mostafa Reyad