UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INDYMAC BANK, F.S.B.
                  Plaintiff

V.

MOSTAFA REYAD AND WAFA REYAD
                  Defendants

**CIVIL ACTION NO.
3:00CV835 (CFD)**

**DATE: NOVEMBER 30, 2006**

## **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT FOR MOTION FOR SANCTIONS**

Defendant Mostafa Reyad and Co-Defendant Wafa Reyad respectfully submit the instant Memorandum Of Law in Support of their Motion For Sanctions against Plaintiff, namely IndyMac Bank, F.S.B., Attorney David R. Schaeffer, and Attorney Rowena A. Moffett. Ordinarly, Sanctions is against officers of the Court, however, the unusual circumstances of this action as well as the substantial amounts of monetary damages necessitate invoking this Court inherent power in imposing sanctions pursuant to the authority of **Chambers v. Nasco, Inc**. 501 U.S. 32 (1991), at 55 (Based on the circumstances of this case, we find that the District Court acted within its discretion in assessing as sanction for chambers' bad-faith conduct the entire amount of NASCO's attorney's fees). **Id**.

1

The extraordinary circumstances of the instant action are ugly than bad-faith mandates invoking this Court inherent power to sanction the Plaintiff. Plaintiff initiated this action to forefeit money due to Defendant and to put Defendant out of the mortgage market after Plaintiff established his operation on the internet. Plaintiff commenced the action by perjured affidavit and obtained unlawful prejudgment remedy, Plaintiff's attorney in the following day multiplied the prejudgment remedy at least eight (8) times, and defrauded the Magistrate to issue orders of garnishments in an opposite to the order entered on the records, furtherly Plaintiff's attorneys unlawfully used this Court's power and exceeded its jurisdiction to garnish the pension of Co-Defendant in the State of New Jersey. Opposite to the Court Order (Doc # 13) Plaintiff defrauded the Magistrate and obtained garnishment orders to freeze the personal and business accounts, caused defendant to close his business and caused Co-Defendant to attempt to take her life.

During pretrial which lasted for about four (4) years, Plaintiff did not disclose the nature of his claims or the source of it, and at trial presented false documents, when the Court Ordered him to present the original, Attorney Schaeffer with the help of attorney Moffett, and Brian Ainslie sitting at the stand played the three card monte, falsely claiming that they were reading from the original forged documents, Defendant requested the documents, attorney Moffett refused, leading Defendant to believe that they destroyed the forged documents which are the evidence that they commit the forgery

**PREJUDGMENT REMEDY ISSUED BASED ON PERJURED AFFIDAVIT**

The prejudgment remedy issued by this Court on May 16, 2000, and the attachment and garnishment orders issued by New Jersey District, were based in its entirety on the perjured affidavits of Brian E. Ainslie (Doc # 10) and Maria Borger (Doc # 8). Maria Borger's affidavit was in support of the Dismissed plaintiff; IndyMac, Inc., accordingly it is an inadmissible evidence. Practically, providing it to the Court as Plaintiff's marked exhibits, or citing it in support of Mr. Ainslie's affidavit are precluded by res judicata.

**see**, Tr. 4/6/04 P. 16 line 16-21

*MR. SCHAEFFER: Well, your honor, what it is is what we preremarked as Plaintiff's Exhibit 39 in the exhibit book that Mr. Reyad has and the declaration of Maria Borger which was filed with the Court as an affidavit on May 8, 2000. So those are the two documents that he relied on in preparing that estimate.*

Thus, Plaintiff relies on Plaintiff's Exhibit 39 and Maria Borger's inadmissible evidence. Furtherly, Plaintiff did not offer his exhibit 39. Accordingly Plaintiff does not have any evidence to support the perjured affidavit of Mr. Ainslie. This affidavit is the only affidavit of the instant action, and this Court based its prejudgment remedy on its contents, the same as New Jersey District. This affidavit and the unlawful prejudgments in the total amount of $ 18.5 million caused Defendant to close his business, and costed him an actual damage in the amount exceeds fifteen million dollar.

On May 8, 2000, Plaintiff initiated this action and filed, inter alia, Brian E. Ainslie's affidavit (Doc #10) [hereafter the affidavit ]. The affidavit p. 5 para. 13.

Based upon the review performed by IndyMac, IndyMac has determined that several of Reyad s employees prepared and submitted these falsified documents

to IndyMac, 13. Furthermore, IndyMac has obtained preliminary property valuation information indicating that the properties securing the mortgage loans financed on Reyad s WLCA warehouse line are over-valued by an average of 22.27%.

The affidavit at p. 6 para. 15

WLCA estimates that it will lose at least 22.27% of the outstanding amount advanced to Reyad. Based on the information reviewed to date, WLCA's loss is at least $ 1,271,000, and WLCA believes there is probable cause to obtain a judgment against the Reyads for this amount.

Simply put, the affidavit established the probable cause, based on the over-value by an average of 22.27%, which according to Plaintiff in the amount $ 1,271,000. Mr. Ainslie multiplied the 22.27 % to the outstanding loan amount of $ 5.7 million to reach the amount of $ 1,271,000. Plaintiff could not support this perjured information, he testified under oath in his affidavit under penalty of perjury. Plaintiff's attorney defended Mr. Ainslie's affidavit, and repeated twice that he is not sure that the affidavit was on original papers.

**See**, Tr. 4/7/04 P. 150 line 1-6

*And this is within _ _ I believe this affidavit was filed with the prejudgment _ _ the request to the court. And I'm not sure, but was it on original papers? Part of Mr. Ainslie affidavit, but I m not sure.*

It does not need a sienter to say that without this perjured affidavit, a prejudgment remedy would be ever issued, either in this Court or in the New Jersey District. This false information entitle Defendants to be awarded all their Actual damages, and be awarded punitive damages.

**See**, FRCP, Rule 11 (b)(3)

The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

And **see**, Notes of Advisory Committee on 1983 amendments to Rule 11

The amended rule attempts to deal with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney s fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation, **See**, e.g. Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980); Hall v. Cole, 412 U.S. 1, 5 (1973).

Plaintiff established the false probable cause and its amount, pursuant to FRCP, Rule 11 Defendants are entitled for the full amount of damages to Defendant in the amount in the excess of approximately fifteen million dollar, and Co-Defendant in the amount of one million dollar.

It is impossible for this Court to reach a fair judgment by setting aside Defendant's motions related to this false affidavit, in fact Defendant raised this issues for more than five years and ruling upon it, is still pending. Plaintiff after he obtained the nuclear prejudgment remedy never respond to the issues of over-valued properties, and sold the 33 loans by its value and no over-valuation ever stated in anywhere.

Defendant at Trial, received from Plaintiff his exhibit 39, and Defendant requested that exhibit to be his exhibit 19 and attached to it other Plaintiff s documents.

**See** Defendant s Exhibit 19, p. 1 of 5 which is Plaintiff s Exhibit 39, marked by red color B Estimated net realizable value (78%). There is no basis for that estimate, if Plaintiff estimated 68% the difference will be 32% and so on,

it means that Plaintiff has nothing called property information valuation. It is perjured informations only to obtain prejudgment remedy. It is fraud upon the United States, Defendants are entitled to punitive damages.

**PREJUDGMENT ATTACHMENTS ARE UNLAWFUL**

Indeed, it is unlawful for a court to issue prejudgment remedy based on speculations. It is more unlawful that this Court denied Defendant's request for Plaintiff to post a bond despite Defendant's citation of **Mexicano**. According to Plaintiff's statement, none of the mortgage loans was in foreclosure,

**See**, Tr. 4/6/04 p. 119 line 15-17

A That would pertain to the value of a property assuming it was in foreclosure which was not the case on any of these loans.

And **see**, Tr. 4/7/04 p. 149 line 10-19

MR. SCHAEFFER: Yes, your honor. I guess we are making argument with respect to the contents of the documents. If I could point out to the court that the estimated loss, this is within days of finding out about the widespread fraud, was estimated at 22 percent of the outstanding amount. This is where they didn't know if people were going to purchase. So they were looking at a worst case scenario what happens if we have to go to foreclosure with respect to these loans.

The transcript stipulations above is clearly indicates that the prejudgment remedy which devastated Defendants relied only on speculations of foreclosures which never happened, and no bases for any estimates. Despite the undisputable fact that Plaintiff unjudicially sold loans at discount, Plaintiff's false claims of losses; 13th column Loss , in the total of $ 322,553.37. Simply put, Plaintiff s claim Accrued interest received at Pay off is $ 381,916.84, provided that no loan was in foreclosure, is the evidence that Plaintiff is charging

6

Defendant a differential interest in the amount of $ 267,108.40. Plaintiff initiated this action on a bad faith speculations, has no right for differential interest caused by Plaintiff s seizure on these mortgage loans and furtherly sold it in nonjudicial foreclosure without obtaining Court order to do so.

**THE EIGHTH AMENDMENT VIOLATIONS**

It is fact evinces by documents provided to this Court, that, Defendant and Co-Defendant severally and collectively are under seize for a period of more than six and half years for every dollar they claim. The documents read the total of eighteen and half million dollar ($ 18.5 million) in garnishments against Defendants, while Plaintiff stating falsely $ 243,849.78 in actual damages and providing evidence for only $ 66,407.57. Simple calculation reveal that this District and New Jersey District garnishment orders for the same cause of action, are equal to a little more than two hundred seventy-five (275) times of plaintiff s false unactionable claims, and even if it actionable claims, is still grossly excessive, and therefore unconsistutional.

Moreover, Plaintiff also admitted that they hold $ 109,667.52 in cash and interest for Defendant, that is to say that Plaintiff owes Defendant $ 43,259.95.

Accordingly, Plaintiff's has no case in this Court.

**See Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,** No. 99-2035, U. S. Supreme Court May 14, 2001.

The Court has enforces those limits in cases involving deprivation of life, *Emmund v. Florida* 458 U.S. 782, 787, 801
(1982) (death is not a valid
penalty under the Eighth and Fourtheen Amendments for one who neither took life, attempted to take life, nor intended to take life ); *Coker v. Georgia*, 433 U.S. 584, 592 (1977) (opinion of White, J.)(sentence of

7

death is grossly disproportionate and excessive punishment for the crime of rape); deprivations of liberty, **Solem v. Helm**, 463 U.S., at 279, 303 (life imprisonment without a possibility of parole for nonviolent felonies is significantly disproportionate ); and deprivations of property, <u>United States v. Bajakajian</u>, 524 U.S. 321, 324 (1998)(punitive forfeiture of $ 357,144 for violating reporting requirement was grossly disporpational to the gravity of the offense); Gore, 517 U.S.,
At 585-586 ($ 2 million punitive damages award for failing to advise customers of minor predelivery repairs to new automobiles was grossly excessive and therefore unconstitutional). <u>Id</u>. page 5 of 14.

Plaintiff who lacks capacity to sue pursuant to California law; Cal. Corp. C. Sec. 2203 (c) falsely providing evidence for $ 66,407.57, based on Connecticut CUTPA, and never cites a single provision of California law is precluded to invoke California law after the expiration of the California Statute of limitation of contract claims, in other words Plaintiff is precluded to amend his complaint by citation of Cal. Civ. C. Sec 3300. Plaintiff s post-trial memorandum p. 23. Nevertheless, Plaintiff's attorney sanctionably citing the provision and deleting *except where otherwise expressly provided by this Code* , <u>see</u> **Cal. Civ. C. Sec. 3301**; it stipulates.

***No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.***

The section is making it clear, that, in a dispute of breach of contract like the unactionable allegations of Plaintiff in this action, a plaintiff would not recover any damages unless he provides ascertainable evidence. Plaintiff provides at Trial Plaintiff s Exhibit 40A is not an ascertainable evidence. Plaintiff was successful to acknowledge certain exhibits for only 10 loans out of the 33 loans, and Defendant was successful to acknowledge

exhibits obtained from Plaintiff's premarked exhibits for 3 loans out of the 10 loans acknowledged for Plaintiff. The end result, Plaintiff owes Defendant $ 23,176.94 as per Plaintiff's exhibits alone. That same Plaintiff destroyed Defendant, Co-Defendant and their children by the devastated nuclear attachments and garnishment for a period exceeding six and half years.

## THE FOURTEENTH AMENDMENT VIOLATIONS

It is undisputed fact that Defendant suffered actual damages in the amount of fifteen million dollar caused by closing his business for the past five years when his business bank account was garnished. The Court had been provided by documents, and it are attached hereto evincing that Honorable William I. Garfinkel, U.S.M.J., issued eight garnishment orders in the total amount of $ 12.8 million. These eight orders undisputedly issued not only without notice to Defendants, but also without the knowledge of the United States. Surprisingly, Defendants appear in Court at all times, and more surprisingly that the docket sheet shows nothing about these eight orders. Shuckingly, the District Judge knows nothing about it for a period of four years, and when he became aware about it, he denied reviewing it, that denial is another depreviation of equal protection of law granted by the Fourteenth Amendment, Section 1., **see Peralta v. Heights Medical Center, Inc**. 485 U.S. 80, 84-85 (1988)

In opposition to summary judgment, appellant denied that he had been personally served and that he had notice of the judgment. The case proceeded through the Texas courts on that basis, and it is not denied by appellee that under our cases, a judgment entered without notice or service is constitutional infirm. An elementary and fundamental requirement of due process in any proceeding which is to be accorded

9

finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objection. Mullan v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Failure to give notice violates the most rudimentary demands of due process of law. Armstrong v. Manzo, 380 U.S. 545, 550 (1965). See also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969); Pennoyer v. Neff, 95 U.S. 714, 733 (1878). **Id**. In addition to the above deprivation of the Constitutional rights of the Eighth and Fourteenth Amendments, the prejudgment remedy applied in this action for a contract dispute is contrary to the Supreme Court decitions in its long history.

**See De Beers Consol. Mines v. United States**, 325 U.S. 212,222,223 (1945) And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a socalled injunction sequestrating his opponent s assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence. **Id**.

**See**, also **Grupo Mexicano De Desarrollo, S.A. v. Alliance Bond Fund**, 527

U.S. 308 (1999); n6 and n7.

As we stated in *Adler v. Fenton, 65 U.S. 407, 24 HOW 407, 411, 412, 16 L. Ed. 696 (1891*). Our laws determine with accuracy the time and manner in which the property of a debtor ceases to be subject to his disposition, and become subject to the rights of his creditor. A creditor acquires a lien upon the lands of his debtor by a judgment; and upon personal goods of
the debtor, by the delivery of an execution to the sheriff. It is only by these liens that a creditor has any vested or specific right in the property of his debtor. Before these liens are acquired, the debtor has full dominion over his property; he may convert one species of property into another, and he may alienate to a purchaser *Id*. n6.


Several States have adopted the Uniform Fraudulent Conveyance Act (or its successor the Uniform Fraudulent Transfer Act), which has been interpreted as conferring on a nonjudgment creditor the right to bring a fraudulent conveyance claim. See generally P. Alces, Law of Fraudulent Transactions P5.04[3], p. 5-116 (1989). Insofar as Rule 18 (b) applies to such an action, the state statute eliminating the need for a judgment may have altered the common-law rule that a general creditor has no interest in

his debtor s property. *Id*. n7.

Since day one of this action, May 8, 2000, Defendants due process have been violated. Indeed, it is a severe damageable violations, ended up by an actual damages to Defendant in the amount in excess of fifteen million dollar, and actual damages to Co-Defendant in an amount approximately one million dollar, and extended by unfair trial to damage Defendants daughter who is unable to sell her owned real estate property, which was purchased and owned by her.

## **ATTORNEY SHAEFFER'S ABUSE OF PROCESS**

1) On May 9, 2000 Honorable Droney, U.S.D.J. Ordered The defendants are ORDERED to restrain from transferring or otherwise disposing of their property out of the ordinary course of business pending said hearing *Id*. p. 1 (Doc # 11). The order is contrary to FRCP 65(c), the order issued without ordering Plaintiff to post a bond or some type of security denies due process. The Court's Order relied on C.G.Stat Sec. 52-278(c), that provision of Connecticut Law specifically per se pronounced by the Supreme Court as unconstitutional, if it applied without posting a bond **see Connecticut v. Doehr**, 501 U.S.1 (1991).

He doubted that the judge could reliably determine probable cause when
presented with only the plaintiff s version of the altercation. Because the
risk of a wrongful attachment is considerable under these circumstances,
we conclude that dispensing with notice and opportunity for a hearing until
after the attachment, without a showing of extraordinary circumstances,
violates the requirements of due process 898 F. 2d, at 856. Judge Pratt
went on to conclude that, in his view, the statute was also constitutionally
infirm for its failure to require the plaintiff to post a bond for the protection
of the defendant in the event the attachment was ultimately found to have
been improvident.

2) On May 10, 2000, the District Judge Ordered (Doc # 12) referring Plaintiff s motion for prejudgment remedy; Doc # 6 and Plaintiff s motion for disclosure of Property; Doc # 5 to Magistrate William I. Garfinkel, U.S.M.J., that order is contrary to 28 U.S.C. 636 (b)(1)(A), because the last two motions are injunctive relief, not in the province of the Magistrate jurisdiction, therefore, any order issued is a nullity; **Reynaga v. Cammisa**, case number 91-15468 (9th Cir 1992), and **see** its comment citing **Taylor v. Oxford**, 575 F. 2d 152, 154 (7th Cir 1978). Accordingly, the Court s order (Doc # 12) is a reversible error, and any ruling related to must be vacated as a matter of law.

3) On May 16, 2000, pursuant to the Court s Order Doc # 12, hearing was held before the Magistrate, immediately after the parties declared their appearance, and before any statement of either party. The Magistrate pronounced his predisposition against Defendants; **see** the transcript dated May 16, 2000, p. 3 line 10.

The Court: Yes, Ms. Borger affidavit. And it is clear from that affidavit that some sort of PJR is warranted. I don t think there s really any question about it.

The Magistrate statement is a strong reflect of deep-seated favoritism to Plaintiff, and antagonism against Defendants. It reflects a predisposition; readiness; and willingness to rubber stamp whatever demands may be suggested by Plaintiff, **see United States v. John Doe**, docket number 02-1362 (2nd Cir. October 19, 2003).

The record there reflected willingness to rubber stamp any suggestion

12

made by the United States Attorney_an act inconsistence with the exercise of an informed discretion. **Id**. p. 2 line 19.

4) On May 17, 2000 the Magistrate issued his memorandum of decision and very clearly permitting Defendant to conduct his business and to maintain business and personal bank accounts. The Presiding Judge did not indorse the Magistrate decision in any respect.

5) In the morning of May 18, 2000, contrary to the Magistrate order that Defendants are permitted to maintain business and business bank accounts, all bank accounts became garnished, and all Defendants checks returned back unpaid. Defendant had to close his business on the spot. Defendant called the law clerk of the Magistrate Chamber and received no comments. Todate, Defendant's actual damages caused by closing his business exceeds fifteen million dollar. Defendant filed numerous motions for relief, all motions denied without opinion.

Defendant searched the Court Records repeatedly, and did not find except the memorandum of decision of the Magistrate dated May 17, 2000. Although Defendant filed with the District Court requesting relief, he could not obtain the evidence of the nuclear orders of attachment and garnishment in the amount of $ 18.5 million. It is only on May 4, 2004, almost four (4) years after the issuance of the Magistrate order, Defendant obtained the evidence. On May 7, 2004 Defendant provided the Court with the evidence evincing that the Magistrate issued orders without the knowledge of the Court.

On May 17, 2000, the Magistrate violated the Code of United States Judges and

13

engaged in unilateral communications with Plaintiff s attorney David R. Schaeffer.

Mr. Schaeffer drafted on his own, on his computer eight (8) writs of garnishment including its memorandum and handed it to the Magistrate. The Magistrate executed it and handed it to Mr. Schaeffer, the docket sheet shows that none was entered on the records, and Defendants was never notified. Mr. Schaeffer executed the garnishments promptly and effectuated closing Defendant's business promptly. The nonauthorized orders are as follows:

1. Writ of Garnishment to the value of $ 1,600,000 to Fleet Bank dated May 16, 2000.

2. Writ of Garnishment to the value of $ 1,600,000 to Hudson United Bank dated May 16, 2000.

3. Writ of Garnishment to the value of $ 1,600,000 to Aetna Life Insurance Annuity Company dated May 16, 2000.

4. Writ of Garnishment to the value of $ 1,600,000 to New England Financial Annuities dated May 16, 2000.

5. Writ of Garnishment to the value of $ 1,600,000 to American Express Financial Advisors, Inc. d/b/a IDS, dated May 16, 2000.

6. Writ of Garnishment to the value of $ 1,600,000 to VALIC dated May 16, 2000.

7. Writ of Garnishment to the value of $ 1,600,000 to The Equitable a/k/a The Equitable Life Assurance of the United States dated May 16, 2000.

8. Writ of Garnishment to the value of $ 1,600,000 to IDS Life Insurance

Company, dated June 6, 2000.

The total of the non-authorized writs of garnishments is $ 12.8 million.

Defendants fixed assets at the time of garnishment was not enough to absorb these huge amounts, that in addition to the ex parte order of New Jersey duplicate action for the same alleged cause of action. Defendant became seized in the total amount of $ 18.5 million. That is to say Plaintiff unlawfully seized every dollar Defendants had, and Defendant closed his business, by Plaintiff filing his complaints in the two (2) Districts, the effect of the orders issued was not only as an injunction, it had the same effect of a judgment. The attachments and garnishments issued against Defendant and his wife Wafa Reyad, extended to effectuate a lis pendence on the property purchased by and owned by his daughter Dina R. Abousabe. Todate the following attachments are in place.

1. The Defendants daughter real property $ 1,200,000.00

Located at 1452-1454 River Road, Edgewater, NJ

2. The Defendant s wife own residence located at $ 500,000.00

2077 Center Ave # 22D, Fort Lee, NJ

3. The Defendant s insurance policy; Equitable $ 170,000.00

4. The Defendant s wife insurance policy; Equitable $ 165,000.00

5. The Defendant s insurance policy; IDS $ 1,000,000.00

6. The Defendant s wife 401k; VALIC $ 72,000.00

7. The Defendant s wife annuity; Equitable $ 124,000.00

8. The Defendant s wife annuity; Aetna $ 76,000.00

9. The Defendant s wife annuity; New England $ 23,000.00

**TOTAL $ 3,395,000.00**

Defendant s total losses as of November 2004, caused by the unlawful orders

i) Defendant s business $ 10,000,000.00

ii) Defendant s loss of income $ 2,925,000.00

iii) Defendant s Loss of investment $ 150,000.00

iv) Defendant s Loss of Insurance coverage $ 2,000,000.00

**TOTAL $ 15,075,000.00**

The actual damages caused by the first writ of garnishment which garnished Defendant s Fleet Bank account, which in effect closed his business. It is well known that no business can be conducted in the absence of bank account. Defendant was also deprived from any source of living provided that Plaintiff does not have any interest in any of the seized assets. All the above damages caused by the unauthorized writs of garnishment, executed without the knowledge of the United States, and without notification to neither Defendant. The writs of garnishments issued by the Magistrate and executed by Plaintiff s attorney, David R. Schaefer. The Magistrate violated the Code of United States Judges, and furtherly abused his power, and violated the duties of his Court, he must be disqualified, and all his orders must be vacated. Plaintiff's named attorney must be immediately disqualified and be punished for his crime for executing orders without the knowledge of the United States.

Defendant filed on September 7, 2004 with the District Court his motion to disqualify the Magistrate, on October 11, 2004. Judge Droney ordered referring the motion to the Magistrate. On February 1, 2005 the Magistrate denied the

motion as moot and stipulates in that the undersigned is no longer involved with this case , indeed, the Magistrate is no longer with this case, but his unauthorized orders are still in effect, and its damages are continued hammering.

WHEREFORE

Plaintiff and his attorneys should be sanctioned.

The Defendant                                    The Defendant
Mostafa Reyad                                    Wafa Reyad


By:_____                  By:_____
   Mostafa Reyad                                  Wafa Reyad
   2077 Center Ave # 22D                           2077 Center Ave # 22D
   Fort Lee, NJ 07024                              Fort Lee, NJ 07024
   Day Phone. 203-325-4100                         Home Phone. 201-585-0562
   Home Phone. 201-585-0562


**CERTIFICATE OF SERVICE**

The undersigned certifies that on the caption date of this document, he mailed a

true and correct copy to Attorney David R. Schaefer at 271 Whitney Avenue,

New Haven, CT 06511.


                                                                        _____
                                                                             Mostafa Reyad