No Charge will be deducted in the event of:

- Maturity of the Contract; or
- Payment of the Death Proceeds; or
- Surrender 30 days or more from the Contract Date, if the proceeds are applied: for a period of at least 15 years to the Income for Specified Number of Years Option or to the Income Payment to Age 100 Option; or to the Life Income Option; or to the Life Income for Two Lives Option.

In each contract year, the Free Surrender Amount will be exempt from any Contingent Deferred Sales Charge. The Free Surrender Amount is equal to the greater of: 10% of the Contract Value on the first day of the contract year; and the excess of the Contract Value over purchase payments subject to the Contingent Deferred Sales Charge on the date of surrender.

In no event will the total Charges exceed 8% of the first $50,000 of purchase payments made under the Contract plus 6.5% of purchase payments in excess of $50,000 made under the Contract.

**State Premium Tax Charge**

A State Premium Tax Charge, as required by law, will be deducted from: proceeds applied to a Payment Option; Death Proceeds; and partial and full surrenders. The charge will equal the proceeds times the appropriate state premium tax rates. The Company reserves the right to deduct state premium taxes from purchase payments. (See the Net Purchase Payment provision of Section 3.)

## 7. Owner, Beneficiary and Contingent Annuitant

**Owner**
The Owner of the Contract is named in the Application (see copy attached); but, with the consent of the Company the Owner can be changed. The new Owner will succeed to all rights of the Owner, including the right to make a further change of Owner. Joint Owners can be named. In this Contract "you" means the Owner, whether an Owner is a person, a partnership, a corporation, a fiduciary or any other legal entity. At the death of an Owner, Death Proceeds will be paid unless the Contract is continued under the Continuation provision.

If an Owner is not a person, the Annuitant will be treated as the Owner for the purposes of the Death Proceeds provision. (See Section 8.)

**Beneficiary**
The Death Proceeds will be paid to the Beneficiary if an Owner dies before the Maturity Date, unless the Contract is in force under a Payment Option or is continued under the Continuation provision. The Beneficiary is named in the Application (see copy attached); but, the Beneficiary can be changed before the Death Proceeds become payable. The Beneficiary has no rights in the Contract until the death of an Owner. A person must be living when the Death Proceeds become payable to qualify as Beneficiary. If none survives and the Contract had joint Owners, the proceeds will be paid to the surviving Owner; otherwise, the proceeds will be paid to the estate of the Owner. The Beneficiary can also be a corporation, a partnership, a fiduciary, or any other legal entity.

**Change of Owner or Beneficiary**
A change of Owner or Beneficiary must be in written form satisfactory to the Company, and must be dated and signed by the Owner making the change. The change will be subject to all payments made and actions taken by the Company under the Contract before the signed change form is received by the Company at its Home Office.

**Assignments**
An absolute assignment of the Contract by the Owner is a change of Owner and Beneficiary to the assignee; but upon an absolute assignment after the Annuitant's death, the Contingent Annuitant must be an Owner of the Contract. A collateral assignment of the Contract by the Owner is not a change of Owner or Beneficiary; but their rights will be subject to the terms of the assignment. Assignments will be subject to all payments made and actions taken by the Company before a signed copy of the assignment form is received by the Company at its Home Office. The Company will not be responsible for determining whether or not an assignment is valid.

**Designation of Owner and Beneficiary**
A numbered sequence can be used to name successive Beneficiaries. Co-Beneficiaries will receive equal shares unless otherwise stated. Joint Owners have equal rights under the Contract.

In naming Owners or Beneficiaries, unless otherwise stated:

- "Child" includes an adopted or posthumous child;
- "Provision for issue" means that if a Beneficiary is not living when Death Proceeds are paid, the share of that Beneficiary will be taken by his or her living issue by right of representation; and
- A family relation such as "wife", "husband", or "child" means the relation to the Annuitant.

At the time for payment of benefits the Company can rely on an affidavit of any Owner or other responsible person to determine family relations or members of a class.

**Contingent Annuitant**
A Contingent Annuitant must be named in the Application: if the Annuitant is not an Owner of the Contract; and if an Owner is a person. The Contingent Annuitant must be an Owner of the Contract. The Contingent Annuitant cannot be changed after the death of the Annuitant.

**Death of Annuitant**
If the Owner is a person and if the Annuitant dies before the Contract is in force under a Payment Option, the Contract will continue for the benefit of the Contingent Annuitant. The Maturity Date will then be the contract anniversary on which the older Owner will be the maximum maturity age allowed by the Company.

If the Owner is not a person, the Annuitant will be treated as Owner for the purposes of the Death Proceeds provision. (See Section 8.)

## 8. Payment of Benefits

**Maturity Date**
The Maturity Date is shown in Section 1.

**Maturity Proceeds**
The Maturity Proceeds will be equal to: the Contract Value on the Maturity Date; less any Administration Fee; and less any State Premium Tax Charge (see Section 6).

If the annuitant who is to receive monthly income benefits under the Contract is living on the Maturity Date, the Company will apply the Maturity Proceeds to the Payment Option shown in Section 1, with that individual as Payee.

Before the Maturity Date you can elect in writing that on the Maturity Date the Maturity Proceeds will instead be:

- Paid in one sum; or
- Applied to any other Payment Option.

**Death Proceeds**
If an Owner is not a person, the Annuitant will be treated as the Owner for the purposes of the Death Proceeds provision.

If an Owner dies before the Maturity Date, the Company will pay a death benefit to the Beneficiary, unless the Contract is in force under a Payment Option or is continued under the Continuation provision. The Death Proceeds will equal the greater of:

- The Contract Value as of the Death Valuation Date; and
- The Minimum Guaranteed Death Benefit.

On the date the first purchase payment for the Contract is received, the Minimum Guaranteed Death Benefit is equal to the purchase payment. Thereafter, the Minimum Guaranteed Death Benefit will be: increased by any purchase payment made; and decreased by the percentage of any Contract Value surrendered.

Also, on the seventh anniversary and every seventh year anniversary thereafter, except as noted below, the Minimum Guaranteed Death Benefit will be recalculated. On each of these days the Minimum Guaranteed Death Benefit is equal to the greater of: the Minimum Guaranteed Death Benefit before the recalculation; and the Contract Value on the date of recalculation. If the Owner is not a person, the Minimum Guaranteed Death Benefit will be recalculated until the Annuitant is age 76. If the Contract is jointly owned, and both Owners are living, the Minimum Guaranteed Death Benefit will be recalculated until an Owner is age 71. Otherwise, it will be recalculated until the Owner is age 76.

The Death Valuation Date is the later of:

- The date on which the Company receives at its Home Office proof of death of that Owner; and
- The date on which the Company receives at its Home Office election of continuation of the contract or of payment in one sum or under a Payment Option; provided that if no election has been received by the end of the 90th day after the date proof of death was received, the Company will deem the following to have been elected on the 90th day: Spousal Continuation, if the surviving spouse qualifies for this right; or otherwise, Beneficiary Continuation, if the Beneficiary qualifies for this right; or otherwise, payment in one sum.

The Death Proceeds will be paid in one sum unless: all or part of the proceeds is applied to a Payment Option; or the Contract is continued under the Continuation provision. The obligations of the Company are subject to all payments made and actions taken by the Company before receipt by the Company at its Home Office of proof of the death.

Death Proceeds cannot be applied to the Variable Life Income for Two Lives Option or to the Variable Income Payment to Age 100 Option.

Upon payment of Death Proceeds, the Contract will terminate.

**Death of Owner on or After the Maturity Date**
If the Owner dies on or after the Maturity Date and before the entire interest has been distributed to the Annuitant, then the entire remaining interest must be distributed at least as quickly as under the method of distribution being used on the date of death of the Owner.

**Continuation**
The Company offers two types of Continuation rights: Spousal Continuation; and Beneficiary Continuation.

The Company must receive written notice of the election of one of these continuation rights by the end of the 90th day after it received proof of death. If the surviving spouse qualifies for Spousal Continuation and has not elected a method of payment for the Death Proceeds by the end of the 90 day period, election of Spousal Continuation will be deemed to have been elected on the 90th day. If a Beneficiary who does not qualify for Spousal Continuation but does qualify for Beneficiary Continuation, has not elected a method of payment for the Death Proceeds by the end of the 90 day period: election of Beneficiary Continuation will be deemed to have been elected on the 90th day; and the Contract will be continued for that Beneficiary; and the continued Contract will have a Maturity Date equal to the fifth anniversary of the Owner's death.

**Spousal Continuation**
The Contract can be continued under Spousal Continuation if the surviving spouse is less than age 95 and if:

(a) There are two joint owners and they are married to each other; and

One of the joint owners dies before the Contract is in force under a Payment Option; and

Both joint owners were the only named primary Beneficiaries on the date of death; or

(b) The Owner is a person; and

The Owner dies; and

The Owner's spouse is the only named primary Beneficiary on the Owner's date of death.

If the Contract is continued under Spousal Continuation: the Death Proceeds will not be paid; the surviving spouse will be the Owner; the surviving spouse will be the Annuitant, if the deceased Owner had been the Annuitant; and the surviving spouse will be the Contingent Annuitant, if the deceased Owner had been the Contingent Annuitant. The Maturity Date will then be the contract anniversary on which the surviving spouse (or Annuitant if older) will be the maximum maturity age allowed by the Company. No Contingent Deferred Sales Charge will apply to the Contract if: the Maturity Date is changed as a result of the election of Spousal Continuation; and a purchase payment was made less than seven years from the new Maturity Date.

**Beneficiary Continuation**

When Death Proceeds become payable, the Beneficary can elect: a one sum payment of the Death Proceeds; or the continuance of the Contract with a Maturity Date equal to the fifth anniversary of the Owner's death (see below); or a Payment Option. Payments under the Payment Option: must be payable for the life of the Beneficiary or for a term which is not longer than the life expectancy of the Beneficiary; and must start within one year after the death of the Owner.

The Contract can be continued under Beneficiary Continuation by a Beneficiary whose share of the Death Proceeds is at least equal to the Company's minimum for this right. This minimum shall be no greater than the Company's then current minimum for newly issued variable annuity contracts.

If the Contract is continued under Beneficiary Continuation: the Death Proceeds will not be paid to any Beneficiary continuing his/her share of the Proceeds; the Death Proceeds continued in the Contact will be allocated in the same proportion as the Contract Value was allocated to the sub-accounts and Fixed Account on the Death Valuation Date: each Beneficary will have the right to make transfers and partial and full surrenders of his/her share of the Contract; the Maturity Date will be the fifth anniversary of the Owner's death and cannot be changed; no purchase payments can be made; no Contingent Deferred Sales Charge will apply to the Contract; no Annual Fee will be deducted; and the Death Benefit during the period of continuation for each Beneficiary will be equal to the Beneficiary's share of the Contract Value on his/her Death Valuation Date. The Death Valuation Date is the date on which the Company receives at its Home Office proof of death of the Beneficiary. The Death Benefit payable at the Beneficiary's death will be paid in a one sum payment.

On the Maturity Date each living Beneficiary will receive his/her share of the Contract Value in a one sum payment and the Contract will terminate.

During the continuation period the Beneficary can elect: to receive his/her share of the Contract in a one sum payment; or to apply his/her share of the Contract to a Payment Option. Payments under the Payment Option: must be payable for the life of the Beneficiary or for a term which is not longer than the life expectancy of the Beneficiary; and must start within one year after the death of the Owner.

**Suspension of Payments**

The Company can suspend payment of any amounts due under the Contract when permitted under applicable Federal laws, rules and regulations.

**Election of Payment Options; Option Date**
The election of a Payment Option and the naming of the Payee must be in written form satisfactory to the Company. You can make or change or revoke the election before the Death Proceeds become payable or the Maturity Date, whichever occurs first. The Option Date is the effective date of the Payment Option, as stated in the form on which you made your choice.

**Payee**
A Payee is a person, a corporation, a partnership, a fiduciary or any other legal entity entitled to receive payment in one sum or under a Payment Option.

**Election By Payees**
Any proceeds payable upon surrender or maturity of the Contract can be applied to any Payment Option at the election of the Payee. Any Death Proceeds can be applied to a Variable Income for Specified Number of Years or Variable Life Income Payment Option at the election of the Payee. Further, subject to the consent of the Company, any Payee who is entitled to receive proceeds in one sum at the death of a prior Payee, or upon withdrawal of the proceeds, can elect to apply the proceeds to a Payment Option.

**Rights of Payees**
A Payee under the Variable Income for a Specified Number of Years and the Variable Income Payment to Age 100 Payment Options has the right to change to the Variable Life Income Payment Option.

A Payee under the Variable Income for a Specified Number of Years and the Variable Income Payment to Age 100 Payment Options has the right to withdraw the commuted value of payments certain. See the third paragraph of the Contingent Deferred Sales Charge provision in Section 6. If the Charge was waived when the Surrender Proceeds were applied to the Payment Option, the commuted value will be reduced by a portion of the Charge that was waived. The amount deducted from the commuted value will equal: (a) the Charge that was waived; TIMES (b) the number of whole months remaining from the date of the commutation until the date when the Charge would be zero; DIVIDED BY the number of whole months that were remaining when the Surrender Proceeds were applied to the Payment Option until the date when the Charge would be zero.

The Payee under the Variable Life Income or the Variable Life Income for Two Lives Payment Options can withdraw the commuted value of the payments certain. See the third paragraph of the Contingent Deferred Sales Charge provision. If the Charge was waived when the Surrender Proceeds were applied to the Payment Option, the commuted value will be reduced by a portion of the Charge that was waived. The amount deducted from the commuted value will equal: (a) the Charge that was waived; TIMES (b) the number of whole months remaining from the date of the commutation until the date when the Charge would be zero; DIVIDED BY the number of whole months that were remaining when the Surrender Proceeds were applied to the Payment Option until the date when the Charge would be zero.

No Payee can assign or withdraw the commuted value of payments under any Fixed Payment Option.

**Payments in One Sum**
Amounts payable in one sum will be payable:

- As of the Surrender Date in case of surrender;
- As of the Death Valuation Date in case of the payment of Death Proceeds;
- As of the Maturity Date in case of maturity;
- As of the date the request is received by the Company at its Home Office in case of request for withdrawal of amounts under Payment Options; or
- As of the date proof of death of the Payee is received by the Company at its Home Office in case of an amount to be paid in one sum at the death of the Payee.

An amount payable in one sum from the Account will be paid within 7 days of the date it is payable, subject to the Suspension of Payments provision.

**Limitations**
If instalments under an Option would be less than the Company's published minimum, proceeds can be applied to a Payment Option only with the consent of the Company.

**Variable Life Income Options**
Variable Life Income Options are based on the age of the Payee on the Payee's birthday nearest the Option Date and on the Assumed Interest Rate selected. The Company will require proof of age. The Life Income Payments will be based on rates not less than the rates shown in the Variable Life Income Tables (Section 10).

**Amount of Variable Monthly Payments**
The amount of the first monthly payment under a Variable Payment Option is equal to:

- The number of thousands of dollars of proceeds applied to the Option;
  TIMES
- The monthly payment rate per $1,000 for the Option.

The amount of each later monthly payment is equal to the number of Annuity Units times the applicable Annuity Unit Values for the most recent Valuation Period which ended at least 14 days prior to the date the payment is due.

**Annuity Units; Annuity Unit Values**
The number of Annuity Units credited under a Variable Payment Option is equal to the amount of the first monthly payment divided by the applicable Annuity Unit Value(s) as of the Option Date. The number of Annuity Units remains constant; except that: (a) the number is adjusted to reflect different Annuity Unit Values upon transfer of an interest of the Contract in a sub-account to another sub-account; and (b) the number decreases by one-third at the death of the first Payee under the Joint and 2/3 to Survivor Variable Life Income Option.

The Annuity Unit Values depend on the Assumed Interest Rate and on the Net Investment Factor. An Annuity Unit Value is determined for each sub-account for each Valuation Period. The Annuity Unit Value of each sub-account for its first Valuation Period was set at $1.00 taking into account the performance history of the underlying investment company. Each Annuity Unit Value for each later Valuation Period is equal to:

- The Annuity Unit Value for the immediately preceding Valuation Period;
  TIMES
- The Net Investment Factor for that Valuation Period;
  TIMES
- The daily Assumed Interest Factor for each day in that Valuation Period.

The Net Investment Factor depends on the investment performance of the series held in the sub-accounts elected. The Net Investment Factor multiplied by the Assumed Interest Factor can be greater or less than one. Therefore, the Annuity Unit Values can increase or decrease.

**Choice of an Assumed Interest Rate**
The amount of each monthly payment under a Variable Payment Option depends on an Assumed Interest Rate. In the election of any of these Options, the effective annual Assumed Interest Rate chosen can be:

- 0%; or
- 3 1/2%; or
- 5%, if allowed by applicable law or regulation.

If no choice is made, an effective annual interest rate of 3 1/2% will be used as the Assumed Interest Rate. The rates shown in Sections 9 and 10 for the Options are based on the 3 1/2% rate. The daily Assumed Interest Factor derived from an effective annual Assumed Interest Rate of 3 1/2% is 0.9999058.

**Correction of Benefits if Age Incorrect**
If the age of the Payee under a Life Income Option has not been correctly stated, the benefits will be corrected to the amounts which the proceeds would have provided for the correct age. Any amount by which the payments by the Company have been too large or too small, with interest at an effective annual interest rate of 6% per year compounded yearly, will be:

- Charged against the next payment or payments if the payments have been too large; or
- Added to the next payment if the payments have been too small.

**Death of Payee**
Amounts to be paid after the death of a Payee under a Payment Option will be paid as due to the successor Payee. If there is no successor Payee, amounts to be paid in one sum, or the commuted value of any unpaid payments certain, will be paid in one sum to the estate of the last Payee to die.

**Commutation Rate for Variable Payment Options**
The interest rate used to compute the commuted value of any unpaid payments certain will be the Assumed Interest Rate. Each payment under a Variable Payment Option will be assumed to be equal to the number of Annuity Units times the applicable Annuity Unit Value.

See the third paragraph of the Contingent Deferred Sales Charge provision in Section 6. If the Charge was waived when the Surrender Proceeds were applied to the Payment Option, the commuted value will be reduced by a portion of the Charge that was waived. The amount deducted from the commuted value will equal: (a) the Charge that was waived; TIMES (b) the number of whole months remaining from the date of the commutation until the date when the Charge would be zero; DIVIDED BY the number of whole months that were remaining when the Surrender Proceeds were applied to the Payment Option until the date when the Charge would be zero.

## 9. Payment Options

**Fixed Payment Options**
All or any part of the contract proceeds can be applied to Fixed Payment Options, subject to Section 8, to provide payments which do not depend on the investment performance of the Account. The proceeds to be applied to Fixed Payment Options will be transferred to the general account of the Company. The Fixed Payment Option rates will not be less than rates based on an effective annual interest rate of 3% per year; and on mortality: using a 50/50 male/female weighting; based on the Individual Annuitant Mortality Table for 1983; and with projection on Scale G to the year 2000 and then on Scale B Modified to the year 2035.

**Variable Payment Options**
All or part of any contract proceeds can be applied to any one of the following Variable Payment Options, subject to Section 8, Payment of Benefits.

**Variable Income for Specified Number of Years**
The Company will make variable monthly payments. Payments will start on the Option Date and will continue for the number of years chosen. The number of years chosen cannot be more than 30.

**Variable Life Income**
The Company will make variable monthly payments. Payments will start on the Option Date and will continue:

- During the life of the Payee, with no payment after the death of the Payee, called "Variable Life Income, No Refund"; or
- During the life of the Payee, but for at least 10 years, called "Variable Life Income, 10 Years Certain"; or
- During the life of the Payee, but for at least 20 years, called "Variable Life Income, 20 Years Certain".

**Variable Life Income for Two Lives**
The Company will make variable monthly payments. Payments will start on the Option Date and will continue:

- While either of two Payees is living, called "Joint and Survivor Variable Life Income"; or
- While either of two Payees is living, but for at least 10 years, called "Joint and Survivor Variable Life Income, 10 Years Certain"; or
- While two Payees are living, and after the death of one Payee while the other Payee is living, two-thirds of the monthly amount that would be payable if both Payees were living, called "Joint and 2/3 to Survivor Variable Life Income".

**Variable Income Payment to Age 100**
The Company will make variable monthly payments. Payments will start on the Option Date and will continue for a whole number of years. The number of years chosen must equal 100 minus the Payee's age on the Option Date.

EQUITABLE

*THE INSURED* MOSTAFA REYAD

*POLICY OWNER* MOSTAFA REYAD

*FACE AMOUNT* $100,000

*POLICY NUMBER* PN 86 097 685

*LIFE INSURANCE POLICY*

**THE EQUITABLE** *LIFE ASSURANCE SOCIETY OF THE UNITED STATES*

*Agrees*

- **To pay** the insurance benefits of this policy to the Beneficiary upon receiving proof of the Insured's death; and
- **To provide** *you (the policy Owner)* with the other rights and benefits of this policy.

These agreements are subject to the provisions of this policy.

**Ten Days to Examine Policy** - If for any reason you are not satisfied with your policy, you may cancel it by returning the policy to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

Richard H. Jenrette **Chairman and Chief Executive Officer**

Molly K. Heines **Vice President and Secretary**

Whole Life—Level Face Amount Plan. Insurance payable upon death. Premiums payable for life. Policy participates in dividends.

No. 126-51

# Contents

The Insurance Benefits We Pay 2

Who Benefits From This Policy 4

The Premiums You Pay 4
Grace Period
Lapse
Reinstatement

How Dividends Are Paid 5

The Cash Surrender Value of This Policy 5

How a Loan Can Be Made 6
Automatic Premium Loan Option

Options On Lapse 6

Other Important Provisions 7

How Benefits Are Paid 8

Any additional benefit riders and a copy of the application are included at the back of this policy.

## *In this policy:*

"We," "our" and "us" mean The Equitable Life Assurance Society of the United States.

"You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.

TH

POL

FA

OLI

LIFE

ACCI
DISA

HE F
OLIC
URIN

HILE
ONTH

OF
ICY
AR

1
2
3
4
5
6
7
8
9
0
1

HESE
EFLEC

# *The Insurance Benefits We Pay*

We will pay the insurance benefits of this policy to the Beneficiary when we receive proof of the Insured's death.

These insurance benefits include the following amounts, which we will determine as of the date of the Insured's death:

- the Face Amount of this policy;
- *plus* any other benefits then due from riders to this policy;
- *plus* any amount due from dividends left under this policy;
- *plus* any unearned policy loan interest;
- *plus* or *minus* any adjustment for the last premium;
- *minus* any loan (and any loan interest due and unpaid) on this policy.

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 8; or (b) the rate required by any applicable law.

We will pay these benefits only if premiums have been paid as called for by this policy. However, even if premiums have been discontinued we may still pay certain benefits. See Options on Lapse, Page 6.

Payment of these benefits may also be affected by other provisions of this policy. See Page 7 where we specify our right to contest the policy, what happens if age or sex has been misstated, and the suicide exclusion. Special exclusions or limitations (if any) are listed on Page 3.

| | | | |
|---|---|---|---|
| THE INSURED | MOSTAFA REYAD | REGISTER DATE | NOV 13, 1986 |
| POLICY OWNER | MOSTAFA REYAD | DATE OF ISSUE | JUL 28, 1998 |
| FACE AMOUNT | $100,000 | ISSUE AGE,SEX | 45, MALE |
| POLICY NUMBER | PN 86 097 685 | BENEFICIARY | WAFA REYAD |

------------ BENEFITS AND PREMIUMS ------------

| BENEFITS | MONTHLY PREMIUM | PREMIUM PERIOD |
|---|---|---|
| LIFE INSURANCE | $175.00 | FOR LIFE |
| ACCIDENTAL DEATH BENEFIT - $100,000 | 9.00 | TO AGE 70 |
| DISABILITY PREMIUM WAIVER | 10.00 | TO AGE 65 |

THE FIRST PREMIUM IS $194.00 AND IS DUE ON OR BEFORE DELIVERY OF THE POLICY. SUBSEQUENT PREMIUMS ARE DUE ON DEC 13, 1986 AND MONTHLY THEREAFTER DURING THE PREMIUM PERIOD IN ACCORDANCE WITH THE ABOVE PREMIUM TABLE.

WHILE THIS POLICY IS ON THE SYSTEM-MATIC PREMIUM COLLECTION ARRANGEMENT, THE MONTHLY PREMIUM WILL BE REDUCED BY $1.00.

---------------- TABLE OF VALUES ----------------
(SEE PAGES 5 AND 6 FOR DETAILS)

| END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS. YRS | EXTENDED TERM INS. DAYS | END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS. YRS | EXTENDED TERM INS. DAYS |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 0 | $ 0 | 0 | 90 | 12 | $21,500 | $43,600 | 11 | 255 |
| 2 | 0 | 0 | 0 | 90 | 13 | 23,600 | 46,600 | 11 | 319 |
| 3 | 3,400 | 9,600 | 4 | 176 | 14 | 25,700 | 49,500 | 11 | 358 |
| 4 | 5,200 | 14,000 | 6 | 59 | 15 | 27,800 | 52,100 | 12 | 8 |
| 5 | 7,000 | 18,200 | 7 | 161 | 16 | 29,900 | 54,700 | 12 | 2 |
| 6 | 8,900 | 22,200 | 8 | 183 | 17 | 32,000 | 57,100 | 11 | 342 |
| 7 | 10,900 | 26,200 | 9 | 143 | 18 | 34,200 | 59,500 | 11 | 313 |
| 8 | 13,000 | 30,100 | 10 | 49 | 19 | 36,400 | 61,800 | 11 | 271 |
| 9 | 15,200 | 33,800 | 10 | 268 | 20 | 38,500 | 63,900 | 11 | 207 |
| 0 | 17,400 | 37,300 | 11 | 59 | AGE 70 | 49,200 | 73,300 | 10 | 191 |
| 1 | 19,500 | 40,700 | 11 | 182 | | | | | |

THESE VALUES FOR THE POLICY ASSUME THAT ALL PREMIUMS ARE PAID. THEY DO NOT REFLECT DIVIDEND CREDITS OR LOANS.


(CONTINUED ON NEXT PAGE)

-------- ENDORSEMENTS --------

1. AMENDMENT TO THE "REPAYMENT" PROVISION. THE FIRST SENTENCE IS DELETED AND REPLACED BY THE FOLLOWING:

   YOU MAY REPAY ALL OR PART OF A LOAN AT ANY TIME WHILE THE INSURED IS LIVING. YOU MAY ALSO REPAY ALL OR PART OF A LOAN AT ANY TIME BEFORE THE END OF THE GRACE PERIOD OF AN UNPAID PREMIUM.

2. AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION. THE SECOND PARAGRAPH IS DELETED AND REPLACED BY THE FOLLOWING:

   THE CASH SURRENDER VALUES AND PAID-UP INSURANCE BENEFITS ARE EQUAL TO OR MORE THAN THOSE REQUIRED BY LAW. THE CASH VALUE AT THE END OF A POLICY YEAR AFTER THE TENTH YEAR IS EQUAL TO THE RESERVE. A DETAILED STATEMENT OF THE METHOD OF COMPUTING VALUES AND BENEFITS HAS BEEN FILED, IF REQUIRED, WITH THE INSURANCE SUPERVISORY OFFICIAL OF THE JURISDICTION IN WHICH THIS POLICY IS DELIVERED.

1.26-100

EQUITABLE

| | |
|---|---|
| *THE INSURED* | WAFA REYAD |
| *'OLICY OWNER* | WAFA REYAD |
| *FACE AMOUNT* | $100,000 |
| *)LICY NUMBER* | PN 86 108 388 |

*LIFE INSURANCE POLICY*

## *THE EQUITABLE* LIFE ASSURANCE SOCIETY OF THE UNITED STATES

*Agrees*

- **To pay** the insurance benefits of this policy to the Beneficiary upon receiving proof of the Insured's death; and
- **To provide** *you (the policy Owner)* with the other rights and benefits of this policy.

These agreements are subject to the provisions of this policy.

**Ten Days to Examine Policy** - If for any reason you are not satisfied with your policy, you may cancel it by returning the policy to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

Richard H. Jenrette **Chairman and Chief Executive Officer**

Molly K. Heines **Vice President and Secretary**

Whole Life—Level Face Amount Plan. Insurance payable upon death. Premiums payable for life. Policy participates in dividends.

No. 126-51

# Contents


The Insurance Benefits We Pay 2

Who Benefits From This Policy 4

The Premiums You Pay 4
- Grace Period
- Lapse
- Reinstatement

How Dividends Are Paid 5

The Cash Surrender Value of This Policy 5

How a Loan Can Be Made 6
- Automatic Premium Loan Option

Options On Lapse 6

Other Important Provisions 7

How Benefits Are Paid 8


Any additional benefit riders and a copy of the application are included at the back of this policy.

## *In this policy:*

"We," "our" and "us" mean The Equitable Life Assurance Society of the United States.

"You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.

TH

POL

FA

POLI

LII

THE
POL
DUR

WHI
MON

END OI
POLIC
YEAR

1
2
3
4
5
6
7
8
9
10
11
12

THE
REF

# *The Insurance Benefits We Pay*

We will pay the insurance benefits of this policy to the Beneficiary when we receive proof of the Insured's death.

These insurance benefits include the following amounts, which we will determine as of the date of the Insured's death:

- the Face Amount of this policy;
- *plus* any other benefits then due from riders to this policy;
- *plus* any amount due from dividends left under this policy;
- *plus* any unearned policy loan interest;
- *plus* or *minus* any adjustment for the last premium;
- *minus* any loan (and any loan interest due and unpaid) on this policy.

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 8; or (b) the rate required by any applicable law.

We will pay these benefits only if premiums have been paid as called for by this policy. However, even if premiums have been discontinued we may still pay certain benefits. See Options on Lapse, Page 6.

Payment of these benefits may also be affected by other provisions of this policy. See Page 7 where we specify our right to contest the policy, what happens if age or sex has been misstated, and the suicide exclusion. Special exclusions or limitations (if any) are listed on Page 3.

126

| | | | |
|---|---|---|---|
| THE INSURED | WAFA REYAD | REGISTER DATE | DEC 18, 1986 |
| POLICY OWNER | WAFA REYAD | DATE OF ISSUE | DEC 18, 1986 |
| FACE AMOUNT | $100,000 | ISSUE AGE,SEX | 41, FEMALE |
| POLICY NUMBER | PN 86 108 388 | BENEFICIARY | MOSTAFA REYAD |

------------ BENEFITS AND PREMIUMS ------------

| BENEFITS | MONTHLY PREMIUM | PREMIUM PERIOD |
|---|---|---|
| LIFE INSURANCE | $125.00 | FOR LIFE |

THE FIRST PREMIUM IS $125.00 AND IS DUE ON OR BEFORE DELIVERY OF THE POLICY. SUBSEQUENT PREMIUMS ARE DUE ON JAN 18, 1987 AND MONTHLY THEREAFTER DURING THE PREMIUM PERIOD IN ACCORDANCE WITH THE ABOVE PREMIUM TABLE.

WHILE THIS POLICY IS ON THE SYSTEM-MATIC PREMIUM COLLECTION ARRANGEMENT, THE MONTHLY PREMIUM WILL BE REDUCED BY $1.00.

---------------- TABLE OF VALUES ----------------
(SEE PAGES 5 AND 6 FOR DETAILS)

| END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS. YRS | DAYS | END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS. YRS | DAYS |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 0 | $ 0 | 0 | 90 | 13 | $16,800 | $43,100 | 17 | 26 |
| 2 | 0 | 0 | 0 | 90 | 14 | 18,300 | 45,600 | 17 | 109 |
| 3 | 2,400 | 8,900 | 5 | 191 | 15 | 19,900 | 48,200 | 17 | 176 |
| 4 | 3,600 | 12,900 | 7 | 233 | 16 | 21,600 | 50,800 | 17 | 220 |
| 5 | 4,900 | 16,800 | 9 | 183 | 17 | 23,300 | 53,300 | 17 | 222 |
| 6 | 6,200 | 20,400 | 11 | 4 | 18 | 25,000 | 55,600 | 17 | 188 |
| 7 | 7,600 | 24,000 | 12 | 162 | 19 | 26,800 | 57,900 | 17 | 142 |
| 8 | 9,100 | 27,600 | 13 | 278 | 20 | 28,600 | 60,000 | 17 | 71 |
| 9 | 10,600 | 30,900 | 14 | 273 | AGE 62 | 30,500 | 62,200 | 16 | 360 |
| 10 | 12,200 | 34,200 | 15 | 200 | AGE 65 | 36,300 | 68,200 | 16 | 58 |
| 11 | 13,700 | 37,300 | 16 | 57 | AGE 70 | 46,400 | 76,500 | 14 | 121 |
| 12 | 15,200 | 40,200 | 16 | 229 | | | | | |

THESE VALUES FOR THE POLICY ASSUME THAT ALL PREMIUMS ARE PAID. THEY DO NOT REFLECT DIVIDEND CREDITS OR LOANS.


(CONTINUED ON NEXT PAGE)

THIS PAGE 3-CONTINUED IS A PART OF POLICY NUMBER 86 108 388.

-------- ENDORSEMENTS --------

1. AMENDMENT TO THE "REPAYMENT" PROVISION. THE FIRST SENTENCE IS DELETED AND REPLACED BY THE FOLLOWING:

   YOU MAY REPAY ALL OR PART OF A LOAN AT ANY TIME WHILE THE INSURED IS LIVING. YOU MAY ALSO REPAY ALL OR PART OF A LOAN AT ANY TIME BEFORE THE END OF THE GRACE PERIOD OF AN UNPAID PREMIUM.

2. AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION. THE SECOND PARAGRAPH IS DELETED AND REPLACED BY THE FOLLOWING:

   THE CASH SURRENDER VALUES AND PAID-UP INSURANCE BENEFITS ARE EQUAL TO OR MORE THAN THOSE REQUIRED BY LAW. THE CASH VALUE AT THE END OF A POLICY YEAR AFTER THE TENTH YEAR IS EQUAL TO THE RESERVE. A DETAILED STATEMENT OF THE METHOD OF COMPUTING VALUES AND BENEFITS HAS BEEN FILED, IF REQUIRED, WITH THE INSURANCE SUPERVISORY OFFICIAL OF THE JURISDICTION IN WHICH THIS POLICY IS DELIVERED.

S.26-100