UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| INDYMAC BANK, F.S.B., <br>                Plaintiff, <br><br> v. <br><br> MOSTAFA REYAD and WAFA REYAD, <br>                Defendants. | CIVIL ACTION NO. <br> 3:00CV835(CFD) <br><br><br> JULY 17, 2007 |

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO
MOTION TO STAY JUDGMENT AND VACATE THE PREJUDGMENT REMEDY
AND MOTION TO INVALIDATE THE COURT CLERK EXECUTION**

Plaintiff IndyMac Bank, F.S.B. ("Plaintiff" or "IndyMac") submits the instant consolidated memorandum in opposition to the Motion to Stay Judgment and Vacate the Prejudgment Remedy (Doc. #505) and to the Motion to Invalidate the Court Clerk Writ of Execution (doc. # 509), filed by Defendant Mostafa Reyad on June 26, 2007, and July 7, 2007, respectively. In his Motion to Stay Judgment, Mr. Reyad seeks to stay execution of the Judgment entered in this matter on April 30, 2007, without posting a supersedeas bond as required by Fed. R. Civ. 62(d). Further, Defendant reiterates his prior request, denied by this Court on numerous occasions, to vacate the Prejudgment Remedy entered at the outset of this case, and voluntarily reduced on April 30, 2004 following the bench trial of this matter. See Doc. # 374 (4/30/04 Ruling reducing prejudgment remedy). In his Motion to Invalidate the Court Clerk Writ of Execution, Mr. Reyad erroneously maintains that Joint Notice of Appeal filed in this action on May 25, 2007 automatically divests this Court of jurisdiction to issue Writs of Execution. Defendant's motions should be summarily denied in all respects.

m:\docs\04127\001\9y1767.doc

As an initial matter, the subject motions are brought by Defendant Mostafa Reyad alone—Defendant Wafa Reyad has not moved to stay execution of the Judgment or joined Mostafa Reyad's motion seeking to invalidate the Writs of Execution issued in this case. While both Defendants filed "Defendants' Motion for Exemptions" on July 16, 2007, in which they seek to exempt certain assets from execution, there is no pending motion seeking to forestall execution on the Judgment as a whole with respect to Wafa Reyad.

Moreover, a stay of execution of Judgment entered in this matter is not appropriate in any event. As indicated above, Defendant has not posted a supersedeas bond, and is, therefore, not entitled to a stay pursuant to Fed. R. Civ. 62(d).[1] See Anderson, Kill & Olick, P.C. v. Pressman, 2003 U.S. Dist. LEXIS 22096, at *2 (D. Conn. Dec. 4, 2003) (Goettell, D.J.) (denying request for stay pending appeal pursuant to Fed. R. Civ. P. 62(d) absent posting bond or providing acceptable alternative means of securing the judgment); see also Peacock v. Thomas, 516 U.S. 349, 359 (1996) ("In the event a stay is entered pending appeal, the Rules require the district court to ensure that the judgment creditor's position is secured, ordinarily by a supersedeas bond.").

Additionally, a stay pursuant to Fed. R. Civ. P. 62(f) is not appropriate because the Judgment issued by this Court is not a "lien upon the property of the judgment debtor" under Connecticut state law. In Marandino v. D'Elia, 151 F.R.D. 227, 229 (D. Conn. 1993), Judge Eginton directly addressed this issue:

> In Connecticut, a judgment is not a lien. Further steps beyond mere ministerial acts must be taken to transform a judgment into a lien. For real

---

[1] As the Court has denied Defendants' most recent motions pursuant to Rule 60(b)(3) and Rule 59 dated April 25 and 27, 2007, respectively (Doc. ## 495 and 496), a stay of execution is not applicable pursuant to Fed. R. Civ. 62(b).

property, a judgment creditor must prepare a judgment lien certificate and file such certificate in the specific land records where the debtor's property is located. See Conn. Gen. Stat. § 52-380a. To obtain a lien on personal property, a judgment creditor must file in the office of the secretary of state a judgment lien certificate setting forth the judgment and describing the property. See Conn. Gen. Stat. § 52-355a. <u>Accordingly, in this district a debtor is not entitled to an automatic stay.</u> Defendant must comply with Fed. R. Civ. P. 62(d) in order to obtain a stay of execution. . . .

Id. at 229 (emphasis added), aff'd, 7 F.3d 221 (2d Cir. 1993) (Table); see also FDIC v. Ann-High Assoc's, No. 94 Civ. 96, slip op. (D. Conn. Aug. 28, 1997) (Arterton, D. J.) (denying request for stay pending appeal, holding that a Connecticut judgment is not a lien on the property of a judgment debtor within the meaning of Rule 62(f))[2]; Hill of Portsmouth Condo. Ass'n v. Parade Office, LLC, 2006 D.N.H. 85, 2006 U.S. Dist. LEXIS 51648, at * 2 (D.N.H. July 26, 2006) (concluding that defendants were not entitled to a stay under Fed. R. Civ. P. 62(f) because the judgment was not, under New Hampshire law, "a lien upon defendants' property", explaining that, "[a]s in Massachusetts, and Connecticut, in New Hampshire additional steps beyond mere ministerial acts are

---

[2] Following Judge Arterton's denial of the defendants' request for stay pending appeal, the appellants applied to the Second Circuit Court of Appeals for a stay.  The Appellate Court also declined to issue the requested stay, but in so doing suggested that "a per se rule that Rule 62(f) may never be satisfied under Connecticut's lien law would be overbroad." FDIC v. Ann-High Assoc's, 129 F.3d 113, 1997 U.S. App. LEXIS 35547, at *10 (2d Cir. 1997).  The Court suggested a more flexible approach under which, "in order to avoid posting a supersedeas bond a judgment debtor must demonstrate not only (1) that state law entitles it to appeal without a bond and (2) that a judgment can be made a lien against a judgment debtor's property under the state's lien law, but also (3) that the circumstances are such that the judgment creditor can readily establish a lien that will be adequate to secure the judgment." Id. at * 12. Because the defendants did not appear to have any real or personal property in Connecticut against which the judgment debtor could file a judgment lien, the Court concluded that the appellants were not entitled to a stay under Rule 62(f). Id. at *13.  Such is the case in the instant matter, where Plaintiff is unaware of any real or personal property of the Defendants located in Connecticut adequate to secure the Judgment, beyond the assets currently held by third parties which are subject to garnishment (not a judgment lien).

required to transform a judgment into a lien on real property"). Thus, Defendant is not entitled to an automatic stay pursuant to Fed. R. Civ. P. 62(f).

Finally, the equities of this case do not favor a stay. "In considering a motion to stay enforcement of a judgment the court must address four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc., 2007 U.S. Dist. LEXIS 31931, at *2-3 (S.D.N.Y. Mar. 12, 2007) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). Defendant has not satisfied his burden of demonstrating that any of these factors weigh in his favor. See De la Fuente v. DCI Telecomms., Inc., 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) ("Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons of why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment."); Gaus v. Conair Corp., 2003 U.S. Dist. LEXIS 2631, at *3 (S.D.N.Y. Feb. 14, 2003) ("The bond requirement should be eliminated or reduced only when this would not unduly endanger the judgment creditor's interest in ultimate recovery.") (internal quotation marks and citation omitted).

Other than Defendant's argument regarding the alleged expiration of attachments under California law, Defendant offers no justification for the requested stay. In fact, Defendant cannot make the requisite showing that he is likely to succeed on the merits of his appeal, particularly given the extensive factual findings of this Court concerning

4

Defendant's fraudulent conduct following the bench trial of this action. Defendant will not be irreparably injured absent a stay, particularly since the assets upon which Plaintiff intends to execute Judgment have been subject to garnishment since the outset of this action. Moreover, Defendant has not established that he is without funds to post a bond—in this regard, Plaintiff notes that Defendants have withdrawn over $150,000 from assets purportedly subject to garnishment since the outset of this case, and Defendants have filed numerous appeals in this matter, each time paying the $455.00 appeal fee. Conversely, the issuance of a stay may prejudice Plaintiff's ability to enforce its Judgment, as Defendants already have withdrawn a substantial amount of the funds purportedly subject to garnishment, and they may attempt to further dissipate those and other assets if granted a stay of execution. Finally, with respect to the public interest, this Court already has found that Defendant Mostafa Reyad engaged in substantial deceptive and unfair conduct in violation of the Connecticut Unfair Trade Practices Act. It would serve the public interest to ensure the ability of Plaintiff to execute promptly upon the Judgment in this case. Under these circumstances, a stay pending appeal clearly is not warranted.[3] See, e.g., U2 Home Entm't, Inc., 2007 U.S. Dist. LEXIS 31931, at * 3-6 (denying request for stay where, among other factors, defendants offered very little concrete information in support of their motion, defendants failed to make a strong showing of likelihood of success, defendants systematically sought to transfer and conceal assets during the action, thus suggesting a serious likelihood that if further time passed, plaintiff would be significantly prejudiced in its

---

[3] Indeed, Plaintiff notes that on July 13, 2007, the United States Court of Appeals for the Second Circuit denied Defendant's motion filed in that Court seeking an order staying execution pending appeal. See Exhibit 2 attached hereto.

ability to enforce the judgment, and the public interest, as embodied in the Copyright Act (which defendants were found to have violated), plainly favors ensuring the viability of a judgment entered to punish past acts of infringement and to deter future ones).

With respect to the prejudgment remedy ordered in this case, Defendant argues that the Writs of Garnishment issued by this Court in May 2000 have expired pursuant to California law that purportedly establishes a three-year limitation on attachments. Defendant's argument is unavailing, however, because California law does not govern the garnishments at issue in this matter.[4] Rather, pursuant to Fed. R. Civ. P. 64, the prejudgment remedy afforded in this case was ordered "under the circumstances and in the manner provided by the law of the state in which the District Court is held, existing at the time the remedy is sought", in this case, the State of Connecticut. Cf. APC Commodity Corp. v. Ram Dis Ticaret A.S., 965 F. Supp. 461, 466-67 (S.D.N.Y. 1997) (applying New York state attachment law pursuant to Fed. R. Civ. P. 64, despite choice of law analysis dictating application of foreign law for analysis of the likelihood of success on the merits); Bergesen d.y. v. Lindholm, 760 F. Supp. 976, 981, 984-85 (D. Conn. 1991) (Smith, M.J.) (in contract action governed by English law under choice of law provision, granting attachment under Connecticut state law pursuant to Fed. R. Civ. P. 64).

Moreover, Defendant's argument concerning the prejudgment remedy entered in this case is moot, in that the Judgment entered in this action well exceeds the value of the assets currently subject to garnishment pursuant to the prejudgment remedy

---

[4] Indeed, the referenced California law appears on its face to apply only to attachments—not to garnishments as were issued in this matter.

6

ordered in this case,[5] and Plaintiff has caused Writs of Execution to be served upon all of the financial institutions and other third parties which have been holding assets of Defendants pursuant to the prejudgment remedy ordered by the District Court at the outset of this action. Notwithstanding the issuance and service of Writs of Garnishment, however, Plaintiff has been informed by several garnishees that Defendants (impermissibly, in Plaintiff's view, and without prior Court approval) have obtained loans and other distributions from the garnished assets totaling over $150,000.00. See Exhibit A hereto.[6] Included in that amount is the unauthorized liquidation by Defendants in June 2006 of an account maintained by Ameriprise Financial d/b/a IDS Life Insurance Company valued at approximately $79,000. See Exhibit A at 3-4 (screen print-out reflecting value of garnished account as of 5/15/06, and letter dated 6/28/07 indicating that monies are no longer available for execution). On July 3, 2007, the undersigned counsel orally was advised by a representative of Ameriprise Financial that, pursuant to Defendant's request, all of the funds in the garnished account were electronically wired to a bank account of Defendant Wafa Reyad on June 23, 2006. Plaintiff submits that Defendants' conduct in this regard further weighs against the requested remedies at this time.

---

[5] In accordance with the final Judgment entered in this matter, Defendants are jointly and severally liable to Plaintiff in the amount of $679,148.56, and Defendant Mostafa Reyad is individually liable for an additional $487,699.56. Defendants' assets that are subject to garnishment pursuant to the prejudgment remedy ordered at the outset of this case were estimated in May 2006 to be worth approximately $425,000.00. Since then, as discussed further below, Defendants have managed to withdraw approximately $79,000 from an account maintained by Ameriprise Financial that was supposed to be held pursuant to the prejudgment remedy.

[6] Plaintiff has objected to these improper distributions and intends to challenge same through the proper channels during the execution process.

Finally, with respect to the Writs of Execution issued by this Court on June 26, 2007, the District Court maintained the jurisdiction to issue such Writs notwithstanding the pendency of Defendants' appeal, because no stay had issued at the time that such Writs were issued. See SEC v. Tome, 1987 U.S. Dist. LEXIS 3269, 4-5 (D.N.Y. Apr. 3, 1987) at *4-5 (ordering post-judgment asset discovery during pendency of appeal, expressly noting "the district court's power to act in aid of execution of its judgment is not impaired by the filing of an appeal") (citing cases). Contrary to Defendant's assertion, the filing of an appeal does not automatically stay execution on the judgment. See 12 James Wm. Moore, Moore's Federal Practice § 62.02[1], at 62-8 (3$^d$ ed. 2006) ("The filing of an appeal alone, without a request for a stay, will not protect the appealing party from execution or enforcement during the pendency of the appeal."); see also BASF Corp. v. Old World Trading Co., 979 F.2d 615, 616 (7th Cir. 1992) (appealing party is required to request stay or suffer possibility of execution during appeals process).

In the instant matter, final Judgment entered on April 30, 2007. On May 25, 2007, Defendants filed a Joint Notice of Appeal. Importantly, Defendants did not file a motion to stay the execution of proceedings to enforce the Judgment within ten days after its entry, pursuant to Fed. R. Civ. P. 62(a), nor have Defendants at any time given a supersedeas bond in order to obtain a stay pending appeal pursuant to Fed. R. Civ. P. 62(d). Following the expiration of the ten day post-judgment waiting period set forth in Fed. R. Civ. P. 62(a), Plaintiff on May 23, 2007 submitted Writs of Execution to the District Court for issuance upon the Judgment. On June 26, 2007, no stay of execution having been ordered, the District Court Clerk properly issued the Writs of Execution.

WHEREFORE, for the reasons discussed above, Plaintiff respectfully submits that both the Motion to Stay Judgment and Vacate the Prejudgment Remedy and the Motion to Invalidate the Court Clerk Writ of Execution should be denied in their entirety.

PLAINTIFF INDYMAC BANK, F.S.B.

By: _____
David R. Schaefer (ct04334)
Rowena A. Moffett (ct19811)
BRENNER, SALTZMAN & WALLMAN LLP
Its Attorneys
271 Whitney Avenue
P.O. Box 1746
New Haven, CT 06507-1746
Tel. (203) 772-2600
Fax. (203) 562-2098
Email: dschaefer@bslwlaw.com
        rmoffett@bswlaw.com

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served by United States first-class mail and via electronic mail this 17th day of July, 2007 upon:

Mostafa Reyad
2077 Center Ave
#22D
Fort Lee, NJ 07024
reyad@optonline.net

Wafa Reyad
2077 Center Ave
#22D
Fort Lee, NJ 07024
reyad@optonline.net.

_____
Rowena A. Moffett (ct19811)

# Exhibit A

Callie Clark
Senior Counsel
Direct Line: (713) 831-6080
FAX: (713) 831-5931
E-mail: callie_clark@aigvalic.com

**AIG** VALIC

The Variable Annuity
Life Insurance Company
2929 Allen Parkway
Houston, TX 77019

November 19, 2003

*Via Facsimile to #203/772-4008*
*and US Mail, First Class Postage*

David R. Shaeffer, Esquire
Brenner, Saltzman & Wallman, LLP
271 Whitney Avenue
New Haven, CT 06611

      Re:    <u>Indymac Mortgage Holdings, Inc. v. Mostafa Reyad and Wafa Reyad</u>;
            Civil Action No. 3:00 CV 835 (CFD); In the United States District
            Court; District of Connecticut

Dear Mr. Shaeffer:

I am writing on behalf of The Variable Annuity Life Insurance Company ("VALIC") to respond to your inquiry of November 17, 2003 concerning the reason for the decline in value of the Section 457(b) account of Wafa Reyad from a July 29, 2002 value of $91,990.17 to a November 12, 2003 value of $60,903.79.

Ms. Reyad's Section 457(b) Qualified Retirement Plan allows a participant to take loans against specified amounts in his or her account. In Ms. Reyad's case, under the terms of the Qualified Plan, she was eligible to borrow up to 50% of her Section 457(b) account, for a maximum amount of $50,000.00. In June 2003, Ms. Reyad submitted a loan request for $50,000.00, which was approved by the Plan Administrator. Under the terms of the loan agreement, Ms. Reyad is required to make quarterly payments over a period of five years. She has made an initial payment on the loan, with the second payment not due until December 2003. Payments received are credited to her Section 457(b) account. The current value of $60,903.79 reflects the $50,000.00 loan. The Internal Revenue Code, the Plan, and the Loan Agreement all provide that should Ms. Reyad default on the loan, the amount of outstanding principal and interest owed at the time of the default will be a deemed distribution and fully taxable.

                                       Very truly yours,

                                       Callie Clark

cc:    Ms. Wafa Reyad
        2077 Center Ave., #22A
        Fort Lee, NJ 07024-4905

        Manuel de la Torre
        Susan Daniel

# STERNS & WEINROTH
A PROFESSIONAL CORPORATION
## COUNSELORS AT LAW
50 WEST STATE STREET
SUITE 1400
P.O. BOX 1298
TRENTON, NEW JERSEY 08607-1298
(609) 392-2100
FACSIMILE
(609) 392-7956
WWW.STERNSLAW.COM

Writer's Direct Line: (609) 989-5059
e-mail: ctorkelson@sternslaw.com

File No.: 51387-15

December 6, 2006

**VIA FACSIMILE AND REGULAR MAIL**
Rowena A. Moffett, Esq.
Brenner, Saltzman & Wallman, LLP
271 Whitney Avenue
New Haven, CT 06511

RE: **Reyad v. AXA Financial, Inc.**
**Civil Action No.: 2:06-cv-04126-JAG-MCA**

Dear Ms. Moffett:

This will respond to your request for information regarding a possible additional account owned by Mostafa Reyad. This will confirm that Mr. Reyad owns Life Insurance Policy No. 86 097 685, which as of November 27, 2006 had a net cash surrender value of $4,206.54.

It appears that this account was inadvertently overlooked when the restraints were imposed on the specific accounts identified in Judge Greenaway's May 12, 2000 Order to Show Cause. Since June 2000, Mr. Reyad has taken two loans against the policy: the first on January 25, 2005, in the amount of $25,000.00; and the second on March 20, 2006, in the amount of $3,689.12. Historically, it appears that Mr. Reyad also may have taken loans against the policy prior to the year 2000. This account is now being held in accordance with the judicial restraints imposed by the Connecticut and New Jersey Federal courts.

Please call me if you have any questions.

Very truly yours,

Christopher E. Torkelson

CET/mr

ANNUITY SURRENDERS AS OF 05/12/06

| | | | |
|---|---|---|---|
| 211 FLEXIBLE ANNUITY | DE FGH I J KL | SER POLICY DATE | |
| NON-QUALIFIED | 17 220 0 7 70 | 006 05/13/97 | |
| TAX WITHHELD  YES    TELEPHONE XFER  YES | TSA 12/31/88 ACCUM VALUE | | N/A |
| FIXED PAID IN | 0.00 | LAST SURRENDER | |
| VARIABLE PAID IN | 69,179.92 | LAST F>V TRANSFER DATE | NONE |
| NET FIXED PAID IN | 0.00 | MINIMUM SURRENDER AMOUNT | 250.00 |
| NET VARIABLE PAID IN | 69,179.92 | MIN BAL REQ AFT PART SURR | 600.00 |
| PREMIUM TAX PAID TO DATE | 0.00 | SURRENDERS TOT TO DATE | 0.00 |
| TOTAL LOAD PAID TO DATE | 0.00 | SURRENDERS YR  TO DATE | 0.00 |
| TOTAL PURCHASE PYMTS | 69,179.92 | LOAN STAT/BAL    / | N/A |

| SURRENDER VALUES | FIXED | VARIABLE | TOTALS |
|---|---|---|---|
| CURRENT VALUE LESS PYMT OMIT | 8,602.71 | 71,181.56 | 79,784.27 |
| VALUE NOT SUBJECT TO CHARGE | 8,602.71 | 71,181.56 | 79,784.27 |
| SURRENDER CHARGE    7% | 0.65 | 5.35 | 6.00 |
| PREMIUM TAX REFUND | 0.00 | 0.00 | 0.00 |
| SURRENDER VALUE | 8,602.06 | 71,176.21 | 79,778.27 |
| PAYMENT OMITTED | 0.00 | 0.00 | 0.00 |

SEE SCREEN 16 FOR TEFRA ACCOUNT INFORMATION

**Ameriprise Financial**

June 28, 2007

Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT 06511

Re:   Letter dated June 26, 2007
      Taxpayer(s): Mostafa Reyad and Wafa Reyad
      Taxpayer ID: xxx-xx-1843 & xxx-xx-0790
      Directed To: AMEX/IDS

Dear Sir/Madam:

Please be advised that we have searched our records and have found that the account(s) in the above taxpayer's name is inactive. Therefore, no monies are available and we are unable to comply with the garnishment.

If you have any questions please call me at (612) 671-1764.

Sincerely,

*Mary Halvorson*

Mary Halvorson
Legal Analyst

Enclosure

CC:   Leg Cli 17366112-5-001

Insurance and annuities are issued by RiverSource Life Insurance Company, an Ameriprise Financial company. Ameriprise Brokerage is provided by Ameriprise Financial Services, Inc. Ameriprise Financial Services, Inc. Member NASD.

# Exhibit B

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse at Foley Square    40 Centre Street, New York, NY 10007    Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

Caption [use short title]

Docket Number(s): 07-2307-CV

Motion for: STAY EXECUTION

INDYMAC MORTGAGE
V.
REYAD

Set forth below precise, complete statement of relief sought:

ORDER STAYING EXECUTION PENDING APPEAL

[FILED JUL 0 2 2007 – UNITED STATES COURT OF APPEALS SECOND CIRCUIT, Catherine O'Hagan Wolfe, Clerk]

MOVING PARTY: DEFENDANT    OPPOSING PARTY: INDYMAC MORTGAGE
☐ Plaintiff  ☒ Defendant
☐ Appellant/Petitioner  ☐ Appellee/Respondent

MOVING ATTORNEY:
MOSTAFA REYAD AND WAFA REYAD
2077 CENTER AVE # 22D
FORT LEE, NJ 07024
EMAIL: reyad@optonline.net
201-621-3925

OPPOSING ATTORNEY [Name]:
ROWENA A. MOFFETT
BRENNER, SAZMAN, AND WALLMAN
271 WHITNEY AVENUE
NEW HAVEN, CT 06507
EMAIL: RMOFFETT@BSWLAW.COM
203-772-2600

Court-Judge/Agency appealed from: HON. CHRISTOPHER F. DRONEY, U.S.D.J., CONNECTICUT

Please check appropriate boxes:

Has consent of opposing counsel:
A. been sought?   ☒ Yes   ☐ No
B. been obtained?  ☐ Yes   ☒ No

Is oral argument requested?   ☒ Yes   ☐ No
(requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes   ☒ No
If yes, enter date _____

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:
Has request for relief been made below?   ☒ Yes   ☐ No
Has this relief been previously sought in this Court?   ☐ Yes   ☒ No

Requested return date and explanation of emergency:
ASAP, DEFENDANTS BEEN DEPRIVED FROM LIVING EXPENSES

Signature of Moving Attorney: [signature]    Date: 06/29/07

Has service been effected?   ☒ Yes   ☐ No
[Attach proof of service]

## ORDER

Before: Hon. Barrington D. Parker, *Circuit Judge*

IT IS HEREBY ORDERED that the motion is DENIED.

JUL 1 3 2007
Date

[FILED JUL 13 2007 – UNITED STATES COURT OF APPEALS SECOND CIRCUIT, Catherine O'Hagan Wolfe, Clerk]

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk
by [signature] Tracy W. Young
Tracy W. Young
Motions Staff Attorney