# EXHIBIT 11

Checkpoint Contents
  Federal Library
    Federal Source Materials
      Code, Regulations, Committee Reports & Tax Treaties
        Final, Temporary, Proposed Regulations & Preambles
          Prior Final & Temporary Regulations and Proposed Regulations & Preambles
            Prior Final & Temporary Regulations
              Regs. §§ 1.453-1 thru 1.460-8
                Reg §1.457-2 Eligible State deferred compensation plan defined [prior to amendment by TD 9075, 07/10/2003].

---

# Reg § 1.457-2. Eligible State deferred compensation plan defined [prior to amendment by TD 9075, 07/10/2003].

**Caution:** The Treasury has not yet amended Reg § 1.457-2 to reflect changes made by P.L. 107-147, P.L. 107-16, P.L. 104-188, P.L. 101-239, P.L. 100-647, P.L. 99-514

    **(a) In general.** For purposes of §§1.457-1 through 1.457-4, an "eligible State deferred compensation plan" (sometimes referred to as "eligible plan") is a plan satisfying the requirements of paragraphs (c) through (k) of this section.

    **(b) Plan.** For purposes of this section and §1.457-3, the term "plan" includes any agreement or arrangement between a State (within the meaning of paragraph (c) of this section) and a participant or participants, under which the payment of compensation is deferred, but only if such agreement or arrangement is not described in §1.457-3(b).

    **(c) State.** The plan must be established and maintained by a State. For this purpose, the term "State" includes:

        *(1)* The 50 states of the United States and the District of Columbia;

        *(2)* A political subdivision of a State;

        *(3)* Any agency or instrumentality of a State or political subdivision of a State;

        *(4)* An organization that is exempt from tax under section 501(a) and engaged primarily in providing electrical service on a mutual or cooperative basis; and

        *(5)* An organization that is described in section 501(c)(4) or (6) and exempt from tax under section 501(a) and at least 80% of the members of which are organizations described in subparagraph (4).

    Where it appears in this §1.457-2, the term "State" means the entity described in this paragraph (c) that sponsors the plan.

    **(d) Participants.** The plan must provide that only individuals who perform services for the State, either as an employee of the State or as an independent contractor, may defer compensation under the plan.

    **(e) Maximum deferrals.**

        *(1) In general.* The plan must provide that the amount of compensation that may be deferred under the plan for a taxable year of a participant shall not exceed an amount specified in the plan (the "plan ceiling"). Except as described in paragraph (f) of this section, a plan ceiling shall not exceed the lesser of:

(i) $7,500, or

(ii) 33 1/3 % of the participant's includible compensation for the taxable year, reduced by any amount excludable from the participant's gross income for the taxable year under section 403(b) on account of contributions made by the State.

*(2) Includible compensation.* For purposes of this section, a participant's includible compensation for a taxable year includes only compensation from the State that is attributable to services performed for the State and that is includible in the participant's gross income for the taxable year. Accordingly, a participant's includible compensation for a taxable year does not include an amount payable by the State that is excludable from the employee's gross income under section 457(a) and §1.457-1 or under section 403(b) (relating to annuity contracts purchased by section 501(c)(3) organizations or public schools), section 105(d) (relating to wage continuation plans) or section 911 (relating to citizens or residents of the United States living abroad). A participant's includible compensation for a taxable year is determined without regard to any community property laws.

*(3) Compensation taken into account at its present value.* For purposes of subparagraph (1) of this paragraph, compensation deferred under a plan shall be taken into account at its value in the plan year in which deferred. However, if the compensation deferred is subject to a substantial risk of forfeiture (as defined in section 457(e)(3)), such compensation shall be taken into account at its value in the plan year in which such compensation is no longer subject to a substantial risk of forfeiture.

**(f) Limited catch-up.**

*(1) In general.* The plan may provide that, for 1 or more of the participant's last 3 taxable years ending before the participant attains normal retirement age, the plan ceiling is an amount not in excess of the lesser of:

(i) $15,000, reduced by any amount excludable from the participant's gross income for the taxable year under section 403(b) on account of contributions made by the State, or

(ii) The amount determined under subparagraph (2) of this paragraph.

*(2) Underutilized limitations.* The amount determined under this subparagraph (2) is the sum of:

(i) The plan ceiling established under paragraph (e)(1) of this section for the taxable year, plus

(ii) The plan ceiling established under paragraph (e)(1) of this section for any prior taxable year or years, less the amount of compensation deferred under the plan for such prior taxable year or years.

A prior taxable year shall be taken into account under subdivision (ii) of this subparagraph (2) only if (A) it begins after December 31, 1978, (B) the participant was eligible to participate in the plan during all or any portion of the taxable year, and (C) compensation deferred (if any) under the plan during the taxable year was subject to a plan ceiling established under paragraph (e)(1) of this section. A participant will be considered eligible to participate in the plan for a taxable year if the participant is described in paragraph (d) of this section for any part of that taxable year. A prior taxable year includes a taxable year in which the participant was eligible to participate in an eligible plan sponsored by a different entity, provided that the entities sponsoring the plans are located within the same State as that term is used in §1.457-2(c)(1).

*(3) Restriction on limited catch-up.* The plan shall not provide that a participant may elect to have the limited catch-up provision of this paragraph (f) apply more than once, whether or not the limited catch-up is utilized in less than all of the three taxable years ending before the participant attains normal retirement age, and whether or not the participant or former participant rejoins the plan or participates in

another eligible plan after retirement. For example, if the participant elects to utilize the limited catch-up only for the one taxable year ending before normal retirement age, and, after retirement at that age, the participant renders services for the State as an independent contractor or otherwise, the plan may not provide that the participant may utilize the limited catch-up for any of the taxable years subsequent to retirement.

*(4) Normal retirement age.* For purposes of this paragraph (f), normal retirement age may be specified in the plan. If no normal retirement age is specified in the plan, then the normal retirement age is the later of the latest normal retirement age specified in the basic pension plan of the State, or age 65. A plan may define normal retirement age as any range of ages ending no later than age 70 1/2 and beginning no earlier than the earliest age at which the participant has the right to retire under the State's basic pension plan without consent of the State and to receive immediate retirement benefits without actuarial or similar reduction because of retirement before some later specified age in the State's basic pension plan. The plan may further provide that in the case of a participant who continues to work beyond the ages specified in the preceding two sentences, the normal retirement age shall be that date or age designated by the participant, but such date or age shall not be later than the mandatory retirement age provided by the State, or the date or age at which the participant separates from the service with the State.

**(g) Agreement for deferral.** The plan must provide that, in general, compensation is to be deferred for any calendar month only if an agreement providing for such deferral has been entered into before the first day of the month. However, a plan may provide that, with respect to a new employee, compensation is to be deferred for the calendar month during which the participant first becomes an employee, if an agreement providing for such deferral is entered into on or before the first day on which the participant becomes an employee.

**(h) Payments under the plan.**

*(1) In general.* The plan may not provide that amounts payable under the plan will be paid or made available to a participant or beneficiary before the participant separates from service with the State, or, if the plan provides for payment in the case of an unforeseeable emergency, before the participant incurs an unforeseeable emergency.

*(2) Separation from service; general rule.* An employee is separated from service with the State if there is a separation from the service within the meaning of section 402(e)(4)(A)(iii), relating to lump sum distributions, and on account of the participant's death or retirement.

*(3) Separation from service; independent contractor.*

(i) In general. An independent contractor is considered separated from service with the State upon the expiration of the contract (or in the case of more than one contract, all contracts) under which services are performed for the State, if the expiration constitutes a good-faith and complete termination of the contractual relationship. An expiration will not constitute a good faith and complete termination of the contractual relationship if the State anticipates a renewal of a contractual relationship or the independent contractor becoming an employee. For this purpose, a State is considered to anticipate the renewal of the contractual relationship with an independent contractor if it intends to again contract for the services provided under the expired contract, and neither the State nor the independent contractor has eliminated the independent contractor as a possible provider of services under any such new contract. Further, a State is considered to intend to again contract for the services provided under an expired contract, if the State's doing so is conditioned only upon the State's incurring a need for the services, or the availability of funds or both.

(ii) Special rule. Notwithstanding subdivision (i), if, with respect to amounts payable to a participant who is an independent contractor, a plan provides that—

(A) No amount shall be paid to the participant before a date at least 12 months after the day on which the contract expires under which services are performed for the State (or, in the

case of more than one contract, all such contracts expire), and

(B) No amount payable to the participant on that date shall be paid to the participant if, after the expiration of the contract (or contracts) and before that date, the participant performs services for the State as an independent contractor or an employee,

the plan is considered to satisfy the requirement described in subparagraph (1) that no amounts payable under the plan will be paid or made available to the participant before the participant separates from service with the State.

*(4) Unforeseeable emergency.* For purposes of this paragraph (h), an unforeseeable emergency is, and if the plan provides for payment in the case of an unforeseeable emergency must be defined in the plan as, severe financial hardship to the participant resulting from a sudden and unexpected illness or accident of the participant or of a dependent (as defined in section 152(a)) of the participant, loss of the participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant. The circumstances that will constitute an unforeseeable emergency will depend upon the facts of each case, but, in any case, payment may not be made to the extent that such hardship is or may be relieved—

(i) Through reimbursement or compensation by insurance or otherwise,

(ii) By liquidation of the participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship, or

(iii) By cessation of deferrals under the plan.

Examples of what are not considered to be unforeseeable emergencies include the need to send a participant's child to college or the desire to purchase a home.

*(5) Emergency withdrawals.* Withdrawals of amounts because of an unforeseeable emergency must only be permitted to the extent reasonably needed to satisfy the emergency need.

**(i) Distributions of deferrals.**

*(1) Commencement of distributions.* A plan is not an eligible plan unless under the plan the payment of amounts deferred will commence not later than the later of—

(i) 60 days after the close of the plan year in which the participant or former participant attains (or would have attained) normal retirement age (within the meaning of §1.457-2(f)(4)), or

(ii) 60 days after the close of the plan year in which the participant separates from service (within the meaning of §§ 1.457-2(h) (2) and (3)) with the State.

A plan is not other than an eligible plan merely because, prior to October 27, 1982, the distribution of amounts deferred under the plan may commence no later than the close of the participant's taxable year in which the participant attains age 70 1/2 .

*(2) Limitations on distributions.* Distributions must be made primarily for the benefit of participants (or former participants). Thus, the schedule selected by the participant for payments of benefits under the plan must be such that benefits payable to a beneficiary are not more than incidental. For example, if provision is made for payment of a portion of the amounts deferred to a beneficiary the amounts payable to the participant or former participant (as determined by use of the expected return multiples in §1.72-9, or, in the case of payments under a contract issued by an insurance company, by use of the mortality tables of such company), must exceed one-half of the maximum that could have been payable to the participant if no provision were made for payment to a beneficiary.

*(3) Distributions to beneficiaries.* A plan is not an eligible plan unless the plan provides that, if the participant dies before the entire amount deferred is paid to the participant, the entire amount deferred (or the remaining part of such deferrals if payment thereof has commenced) must be paid to a beneficiary over—

(i) The life of the beneficiary (or any shorter period), if the beneficiary is the participant's surviving spouse, or

(ii) A period not in excess of 15 years, if the beneficiary is not the participant's surviving spouse.

**(j) Administration of plan.** A plan is not an eligible plan unless all amounts deferred under the plan, all property and rights to property (including rights as a beneficiary of a contract providing life insurance protection) purchased with the amounts, and all income attributable to the amounts, property, or rights to property, remain (until paid or made available to the participant or beneficiary under the plan) solely the property and rights of the State (without being restricted to the benefits under the plan) subject to the claims of the general creditors of the State only. However, nothing in this paragraph (j) prohibits a plan's permitting participants to direct, from among different modes under the plan, the investment of the above amounts (see § 1.457-1(b)).

**(k) Plan-to-plan transfers.** The plan may provide for the transfer of amounts deferred by a former participant to another eligible plan of which the former participant has become a participant if the following conditions are met—

*(1)* The entities sponsoring the plans are located within the same State (as that term is used in §1.457-2(c)(1)),

*(2)* The plan receiving such amounts provides for the acceptance of the amounts, and

*(3)* The plan provides that if the participant separates from service in order to accept employment with another such entity, payout will not commence upon separation from service, regardless of any other provision of the plan, and amounts previously deferred will automatically be transferred.

**(l) Effect on plan when not administered in accordance with paragraphs (c) through (k).** A plan that is administered in a manner which is inconsistent with one or more of the requirements of paragraphs (c) through (k) of this section ceases to be an eligible plan on the first day of the first plan year beginning more than 180 days after the date of written notification by the Internal Revenue Service that the requirements are not satisfied, unless the inconsistency is corrected before the first day of that plan year.

**(m) Examples.** The provisions of this section may be illustrated by the following examples:

*Example (1).* A, born on June 1, 1917, is a participant in an eligible State deferred compensation plan providing a normal retirement age of 65. The plan provides limitations on deferrals up to the maximum permitted under §1.457-2(e) and (f).

For 1979, A, who will be 62, is scheduled to receive a salary of $20,000 from the State. A desires to defer the maximum amount possible in 1979. The maximum amount that A may defer under the plan is the lesser of $7,500, or 331/3 % of A's includible compensation (generally the equivalent of 25 percent of gross compensation). Accordingly, the maximum that A may defer for 1979 is $5,000 [$5,000 = $20,000 × .25]. Although A's taxable year 1979 is one of A's last 3 taxable years before the year in which A attains normal retirement age under the plan, A is not able to utilize the catch-up provisions of §1.457-2(f) in 1979 because only taxable years beginning after December 31, 1978, may be taken into account under those provisions.

*Example (2).* Assume the same facts as in example 1. In A's taxable year 1980, A receives a salary of $20,000, and elects to defer only $1,000 under the plan. In A's taxable year 1981, A again receives a salary of $20,000 and elects to defer the maximum amount permissible under the plan's catch-up provisions prescribed under §

1.457-2(f). The applicable limit on deferrals under the catch-up provision is the lesser of $15,000 or the sum of the normal plan ceiling for 1981, plus any underutilized deferrals for any taxable year before 1981. Thus, the maximum amount that A may defer in 1981 is $9,000, the normal plan ceiling for 1981, $5,000, plus the underutilized deferrals for 1980, $4,000.

*Example (3).* Assume the same facts as in examples 1 and 2. In A's taxable year 1982, the year in which A will attain age 65, normal retirement age under the plan, A desires to defer the maximum amount possible under the plan. For 1982 the normal limitations of §1.457-2(e) are applicable, and the maximum amount that A may defer is $5,000, assuming that A's salary for 1982 was again $20,000. The plan's catch-up provisions prescribed under § 1.457-2(f) are not applicable because 1982 is not a year ending before the year in which A attains normal retirement age.

---

T.D. 7836, 9/23/82 .

---

END OF DOCUMENT -
© 2007 Thomson/RIA. All rights reserved.