**EXHIBIT 12**

Checkpoint Contents
  Federal Library
    Federal Source Materials
      Code, Regulations, Committee Reports & Tax Treaties
        Final, Temporary, Proposed Regulations & Preambles
          Final, Temporary & Proposed Regulations
            Regs. §§ 1.453A-0 thru 1.460-6
              Reg §1.457-4 Annual deferrals, deferral limitations, and deferral agreements under eligible plans.

**Federal Regulations**

## Reg § 1.457-4. Annual deferrals, deferral limitations, and deferral agreements under eligible plans.

**(a) Taxation of annual deferrals.** Annual deferrals that satisfy the requirements of paragraphs (b) and (c) of this section are excluded from the gross income of a participant in the year deferred or contributed and are not includible in gross income until paid to the participant in the case of an eligible governmental plan, or until paid or otherwise made available to the participant in the case of an eligible plan of a tax-exempt entity. See §1.457-7.

**(b) Agreement for deferral.** In order to be an eligible plan, the plan must provide that compensation may be deferred for any calendar month by salary reduction only if an agreement providing for the deferral has been entered into before the first day of the month in which the compensation is paid or made available. A new employee may defer compensation payable in the calendar month during which the participant first becomes an employee if an agreement providing for the deferral is entered into on or before the first day on which the participant performs services for the eligible employer. An eligible plan may provide that if a participant enters into an agreement providing for deferral by salary reduction under the plan, the agreement will remain in effect until the participant revokes or alters the terms of the agreement. Nonelective employer contributions are treated as being made under an agreement entered into before the first day of the calendar month.

**(c) Maximum deferral limitations.**

    (1) Basic annual limitation.

        (i) Except as described in paragraphs (c)(2) and (3) of this section, in order to be an eligible plan, the plan must provide that the annual deferral amount for a taxable year (the plan ceiling) may not exceed the lesser of—

            (A) The applicable annual dollar amount specified in section 457(e)(15): $11,000 for 2002; $12,000 for 2003; $13,000 for 2004; $14,000 for 2005; and $15,000 for 2006 and thereafter. After 2006, the $15,000 amount is adjusted for cost-of-living in the manner described in paragraph (c)(4) of this section; or

            (B) 100 percent of the participant's includible compensation for the taxable year.

        (ii) The amount of annual deferrals permitted by the 100 percent of includible compensation limitation under paragraph (c)(1)(i)(B) of this section is determined under section 457(e)(5) and §1.457-2(g).

        (iii) For purposes of determining the plan ceiling under this paragraph (c), the annual deferral amount does not include any rollover amounts received by the eligible plan under §1.457-10(e).

        (iv) The provisions of this paragraph (c)(1) are illustrated by the following examples:

*Example (1).* (i) Facts. Participant A, who earns $14,000 a year, enters into a salary reduction agreement in 2006 with A's eligible employer and elects to defer $13,000 of A's compensation for that year. A is not eligible for the catch-up described in paragraph (c)(2) or (3) of this section, participates in no other retirement plan, and has no other income exclusions taken into account in computing includible compensation.

(ii) Conclusion. The annual deferral limit for A in 2006 is the lesser of $15,000 or 100 percent of includible compensation, $14,000. A's annual deferral of $13,000 is permitted under the plan because it is not in excess of $14,000 and thus does not exceed 100 percent of A's includible compensation.

*Example (2).* (i) Facts. Assume the same facts as in Example 1, except that A's eligible employer provides an immediately vested, matching employer contribution under the plan for participants who make salary reduction deferrals under A's eligible plan. The matching contribution is equal to 100 percent of elective contributions, but not in excess of 10 percent of compensation (in A's case, $1,400).

(ii) Conclusion. Participant A's annual deferral exceeds the limitations of this paragraph (c)(1). A's maximum deferral limitation in 2006 is $14,000. A's salary reduction deferral of $13,000 combined with A's eligible employer's nonelective employer contribution of $1,400 exceeds the basic annual limitation of this paragraph (c)(1) because A's annual deferrals total $14,400. A has an excess deferral for the taxable year of $400, the amount exceeding A's permitted annual deferral limitation. The $400 excess deferral is treated as described in paragraph (e) of this section.

*Example (3).* (i) Facts. Beginning in year 2002, Eligible Employer X contributes $3,000 per year for five years to B's eligible plan account. B's interest in the account vests in 2006. B has annual compensation of $50,000 in each of the five years 2002 through 2006. B is 41 years old. B is not eligible for the catch-up described in paragraph (c)(2) or (3) of this section, participates in no other retirement plan, and has no other income exclusions taken into account in computing includible compensation. Adjusted for gain or loss, the value of B's benefit when B's interest in the account vests in 2006 is $17,000.

(ii) Conclusion. Under this vesting schedule, $17,000 is taken into account as an annual deferral in 2006. B's annual deferrals under the plan are limited to a maximum of $15,000 in 2006. Thus, the aggregate of the amounts deferred, $17,000, is in excess of B's maximum deferral limitation by $2,000. The $2,000 is treated as an excess deferral described in paragraph (e) of this section.

*(2) Age 50 catch-up.*

(i) In general. In accordance with section 414(v) and the regulations thereunder, an eligible governmental plan may provide for catch-up contributions for a participant who is age 50 by the end of the year, provided that such age 50 catch-up contributions do not exceed the catch-up limit under section 414(v)(2) for the taxable year. The maximum amount of age 50 catch-up contributions for a taxable year under section 414(v) is as follows: $1,000 for 2002; $2,000 for 2003; $3,000 for 2004; $4,000 for 2005; and $5,000 for 2006 and thereafter. After 2006, the $5,000 amount is adjusted for cost-of-living. For additional guidance, see regulations under section 414(v).

(ii) Coordination with special section 457 catch-up. In accordance with sections 414(v)(6)(C) and 457(e)(18), the age 50 catch-up described in this paragraph (c)(2) does not apply for any taxable year for which a higher limitation applies under the special section 457 catch-up under paragraph (c)(3) of this section. Thus, for purposes of this paragraph (c)(2)(ii) and paragraph (c)(3) of this section, the special section 457 catch-up under paragraph (c)(3) of this section applies for any taxable year if and only if the plan ceiling taking into account paragraph (c)(1) of this section and the special section 457 catch-up described in paragraph (c)(3) of this section (and disregarding the age 50 catch-up described in this paragraph (c)(2)) is larger than the plan ceiling taking into

account paragraph (c)(1) of this section and the age 50 catch-up described in this paragraph (c)(2) (and disregarding the special section 457 catch- up described in paragraph (c)(3) of this section). Thus, if a plan so provides, a participant who is eligible for the age 50 catch-up for a year and for whom the year is also one of the participant's last three taxable years ending before the participant attains normal retirement age is eligible for the larger of—

>    (A) The plan ceiling under paragraph (c)(1) of this section and the age 50 catch-up described in this paragraph (c)(2) (and disregarding the special section 457 catch-up described in paragraph (c)(3) of this section) or
>
>    (B) The plan ceiling under paragraph (c)(1) of this section and the special section 457 catch-up described in paragraph (c)(3) of this section (and disregarding the age 50 catch-up described in this paragraph (c)(2)).

> (iii) Examples. The provisions of this paragraph (c)(2) are illustrated by the following examples:

> *Example (1).* (i) Facts. Participant C, who is 55, is eligible to participate in an eligible governmental plan in 2006. The plan provides a normal retirement age of 65. The plan provides limitations on annual deferrals up to the maximum permitted under paragraphs (c)(1) and (3) of this section and the age 50 catch-up described in this paragraph (c)(2). For 2006, C will receive compensation of $40,000 from the eligible employer. C desires to defer the maximum amount possible in 2006. The applicable basic dollar limit of paragraph (c)(1)(i)(A) of this section is $15,000 for 2006 and the additional dollar amount permitted under the age 50 catch-up is $5,000 for 2006.

> (ii) Conclusion. C is eligible for the age 50 catch-up in 2006 because C is 55 in 2006. However, C is not eligible for the special section 457 catch-up under paragraph (c)(3) of this section in 2006 because 2006 is not one of the last three taxable years ending before C attains normal retirement age. Accordingly, the maximum that C may defer for 2006 is $20,000.

> *Example (2).* (i) Facts. The facts are the same as in Example 1, except that, in 2006, C will attain age 62. The maximum amount that C can elect under the special section 457 catch-up under paragraph (c)(3) of this section is $2,000 for 2006.

> (ii) Conclusion. The maximum that C may defer for 2006 is $20,000. This is the sum of the basic plan ceiling under paragraph (c)(1) of this section equal to $15,000 and the age 50 catch-up equal to $5,000. The special section 457 catch-up under paragraph (c)(3) of this section is not applicable since it provides a smaller plan ceiling.

> *Example (3).* (i) Facts. The facts are the same as in Example 2, except that the maximum additional amount that C can elect under the special section 457 catch-up under paragraph (c)(3) of this section is $7,000 for 2006.

> (ii) Conclusion. The maximum that C may defer for 2006 is $22,000. This is the sum of the basic plan ceiling under paragraph (c)(1) of this section equal to $15,000, plus the additional special section 457 catch-up under paragraph (c)(3) of this section equal to $7,000. The additional dollar amount permitted under the age 50 catch-up is not applicable to C for 2006 because it provides a smaller plan ceiling.

> (3) *Special section 457 catch-up.*
>
>    (i) In general. Except as provided in paragraph (c)(2)(ii) of this section, an eligible plan may provide that, for one or more of the participant's last three taxable years ending before the participant attains normal retirement age, the plan ceiling is an amount not in excess of the lesser of—

  (A) Twice the dollar amount in effect under paragraph (c)(1)(i)(A) of this section; or

  (B) The underutilized limitation determined under paragraph (c)(3)(ii) of this section.

(ii) Underutilized limitation. The underutilized amount determined under this paragraph (c)(3)(ii) is the sum of—

  (A) The plan ceiling established under paragraph (c)(1) of this section for the taxable year; plus

  (B) The plan ceiling established under paragraph (c)(1) of this section (or under section 457(b)(2) for any year before the applicability date of this section) for any prior taxable year or years, less the amount of annual deferrals under the plan for such prior taxable year or years (disregarding any annual deferrals under the plan permitted under the age 50 catch-up under paragraph (c)(2) of this section).

(iii) Determining underutilized limitation under paragraph (c)(3)(ii)(B) of this section. A prior taxable year is taken into account under paragraph (c)(3)(ii)(B) of this section only if it is a year beginning after December 31, 1978, in which the participant was eligible to participate in the plan, and in which compensation deferred (if any) under the plan during the year was subject to a plan ceiling established under paragraph (c)(1) of this section. This paragraph (c)(3)(iii) is subject to the special rules in paragraph (c)(3)(iv) of this section.

(iv) Special rules concerning application of the coordination limit for years prior to 2002 for purposes of determining the underutilized limitation.

  (A) General rule. For purposes of determining the underutilized limitation for years prior to 2002, participants remain subject to the rules in effect prior to the repeal of the coordination limitation under section 457(c)(2). Thus, the applicable basic annual limitation under paragraph (c)(1) of this section and the special section 457 catch-up under this paragraph (c)(3) for years in effect prior to 2002 are reduced, for purposes of determining a participant's underutilized amount under a plan, by amounts excluded from the participant's income for any prior taxable year by reason of a nonelective employer contribution, salary reduction or elective contribution under any other eligible section 457(b) plan, or a salary reduction or elective contribution under any 401(k) qualified cash or deferred arrangement, section 402(h)(1)(B) simplified employee pension (SARSEP), section 403(b) annuity contract, and section 408(p) simple retirement account, or under any plan for which a deduction is allowed because of a contribution to an organization described in section 501(c)(18) (pre-2002 coordination plans). Similarly, in applying the section 457(b)(2)(B) limitation for includible compensation for years prior to 2002, the limitation is 33 1/3 percent of the participant's compensation includible in gross income.

  (B) Coordination limitation applied to participant. For purposes of determining the underutilized limitation for years prior to 2002, the coordination limitation applies to pre-2002 coordination plans of all employers for whom a participant has performed services, whether or not those are plans of the participant's current eligible employer. Thus, for purposes of determining the amount excluded from a participant's gross income in any prior taxable year under paragraph (c)(3)(ii)(B) of this section, the participant's annual deferrals under an eligible plan, and salary reduction or elective deferrals under all other pre-2002 coordination plans, must be determined on an aggregate basis. To the extent that the combined deferrals for years prior to 2002 exceeded the maximum deferral limitations, the amount is treated as an excess deferral under paragraph (e) of this section for those prior years.

  (C) Special rule where no annual deferrals under the eligible plan. A participant who, although eligible, did not defer any compensation under the eligible plan in any year before 2002 is not subject to the coordinated deferral limit, even though the participant may have

deferred compensation under one of the other pre-2002 coordination plans. An individual is treated as not having deferred compensation under an eligible plan for a prior taxable year if all annual deferrals under the plan are distributed in accordance with paragraph (e) of this section. Thus, to the extent that a participant participated solely in one or more of the other pre-2002 coordination plans during a prior taxable year (and not the eligible plan), the participant is not subject to the coordinated limitation for that prior taxable year. However, the participant is treated as having deferred an amount in a prior taxable year, for purposes of determining the underutilized limitation for that prior taxable year under this paragraph (c)(3)(iv)(C), to the extent of the participant's aggregate salary reduction contributions and elective deferrals under all pre-2002 coordination plans up to the maximum deferral limitations in effect under section 457(b) for that prior taxable year. To the extent an employer did not offer an eligible plan to an individual in a prior given year, no underutilized limitation is available to the individual for that prior year, even if the employee subsequently becomes eligible to participate in an eligible plan of the employer.

(D) Examples. The provisions of this paragraph (c)(3)(iv) are illustrated by the following examples:

*Example (1).* (i) Facts. In 2001 and in years prior to 2001, Participant D earned $50,000 a year and was eligible to participate in both an eligible plan and a section 401(k) plan. However, D had always participated only in the section 401(k) plan and had always deferred the maximum amount possible. For each year before 2002, the maximum amount permitted under section 401(k) exceeded the limitation of paragraph (c)(3)(i) of this section. In 2002, D is in the 3-year period prior to D's attainment of the eligible plan's normal retirement age of 65, and D now wants to participate in the eligible plan and make annual deferrals of up to $30,000 under the plan's special section 457 catch-up provisions.

(ii) Conclusion. Participant D is treated as having no underutilized amount under paragraph (c)(3)(ii)(B) of this section for 2002 for purposes of the catch-up limitation under section 457(b)(3) and paragraph (c)(3) of this section because, in each of the years before 2002, D has deferred an amount equal to or in excess of the limitation of paragraph (c)(3)(i) of this section under all of D's coordinated plans.

*Example (2).* (i) Facts. Assume the same facts as in Example 1, except that D only deferred $2,500 per year under the section 401(k) plan for one year before 2002.

(ii) Conclusion. D is treated as having an underutilized amount under paragraph (c)(3)(ii)(B) of this section for 2002 for purposes of the special section 457 catch-up limitation. This is because D has deferred an amount for prior years that is less than the limitation of paragraph (c)(1)(i) of this section under all of D's coordinated plans.

*Example (3).* (i) Facts. Participant E, who earned $15,000 for 2000, entered into a salary reduction agreement in 2000 with E's eligible employer and elected to defer $3,000 for that year under E's eligible plan. For 2000, E's eligible employer provided an immediately vested, matching employer contribution under the plan for participants who make salary reduction deferrals under E's eligible plan. The matching contribution was equal to 67 percent of elective contributions, but not in excess of 10 percent of compensation before salary reduction deferrals (in E's case, $1,000). For 2000, E was not eligible for any catch-up contribution, participated in no other retirement plan, and had no other income exclusions taken into account in computing taxable compensation.

(ii) Conclusion. Participant E's annual deferral equaled the maximum limitation of section 457(b) for 2000. E's maximum deferral limitation in 2000 was $4,000 because E's includible compensation was $12,000 ($15,000 minus the deferral of $3,000) and the applicable limitation for 2000 was one third of the individual's includible compensation (one-third of $12,000 equals $4,000). E's salary reduction deferral of $3,000 combined with E's eligible employer's matching contribution of $1,000 equals the limitation of section 457(b) for 2000

because E's annual deferrals totaled $4,000. E's underutilized amount for 2000 is zero.

(v) Normal retirement age.

(A) General rule. For purposes of the special section 457 catch-up in this paragraph (c)(3), a plan must specify the normal retirement age under the plan. A plan may define normal retirement age as any age that is on or after the earlier of age 65 or the age at which participants have the right to retire and receive, under the basic defined benefit pension plan of the State or tax-exempt entity (or a money purchase pension plan in which the participant also participates if the participant is not eligible to participate in a defined benefit plan), immediate retirement benefits without actuarial or similar reduction because of retirement before some later specified age, and that is not later than age 70 1/2. Alternatively, a plan may provide that a participant is allowed to designate a normal retirement age within these ages. For purposes of the special section 457 catch-up in this paragraph (c)(3), an entity sponsoring more than one eligible plan may not permit a participant to have more than one normal retirement age under the eligible plans it sponsors.

(B) Special rule for eligible plans of qualified police or firefighters. An eligible plan with participants that include qualified police or firefighters as defined under section 415(b)(2)(H)(ii)(I) may designate a normal retirement age for such qualified police or firefighters that is earlier than the earliest normal retirement age designated under the general rule of paragraph (c)(3)(i)(A) of this section, but in no event may the normal retirement age be earlier than age 40. Alternatively, a plan may allow a qualified police or firefighter participant to designate a normal retirement age that is between age 40 and age 70 1/2.

(vi) Examples. The provisions of this paragraph (c)(3) are illustrated by the following examples:

*Example (1).* (i) Facts. Participant F, who will turn 61 on April 1, 2006, becomes eligible to participate in an eligible plan on January 1, 2006. The plan provides a normal retirement age of 65. The plan provides limitations on annual deferrals up to the maximum permitted under paragraphs (c)(1) through (3) of this section. For 2006, F will receive compensation of $40,000 from the eligible employer. F desires to defer the maximum amount possible in 2006. The applicable basic dollar limit of paragraph (c)(1)(i)(A) of this section is $15,000 for 2006 and the additional dollar amount permitted under the age 50 catch-up in paragraph (c)(2) of this section for an individual who is at least age 50 is $5,000 for 2006.

(ii) Conclusion. F is not eligible for the special section 457 catch-up under paragraph (c)(3) of this section in 2006 because 2006 is not one of the last three taxable years ending before F attains normal retirement age. Accordingly, the maximum that F may defer for 2006 is $20,000. See also paragraph (c)(2)(iii) Example 1 of this section.

*Example (2).* (i) Facts. The facts are the same as in Example 1 except that, in 2006, F elects to defer only $2,000 under the plan (rather than the maximum permitted amount of $20,000). In addition, assume that the applicable basic dollar limit of paragraph (c)(1)(i)(A) of this section continues to be $15,000 for 2007 and the additional dollar amount permitted under the age 50 catch-up in paragraph (c)(2) of this section for an individual who is at least age 50 continues to be $5,000 for 2007. In F's taxable year 2007, which is one of the last three taxable years ending before F attains the plan's normal retirement age of 65, F again receives a salary of $40,000 and elects to defer the maximum amount permissible under the plan's catch-up provisions prescribed under paragraph (c) of this section.

(ii) Conclusion. For 2007, which is one of the last three taxable years ending before F attains the plan's normal retirement age of 65, the applicable limit on deferrals for F is the larger of the amount under the special section 457 catch-up or $20,000, which is the basic annual limitation ($15,000) and the age 50 catch-up limit of section 414(v) ($5,000). For 2007, F's special section 457 catch-up amount is the lesser of two times the basic annual limitation ($30,000) or the sum of

the basic annual limitation ($15,000) plus the $13,000 underutilized limitation under paragraph (c)(3)(ii) of this section (the $15,000 plan ceiling in 2006, minus the $2,000 contributed for F in 2006), or $28,000. Thus, the maximum amount that F may defer in 2007 is $28,000.

*Example (3).* (i) Facts. The facts are the same as in Examples 1 and 2, except that F does not make any contributions to the plan before 2010. In addition, assume that the applicable basic dollar limitation of paragraph (c)(1)(i)(A) of this section continues to be $15,000 for 2010 and the additional dollar amount permitted under the age 50 catch-up in paragraph (c)(2) of this section for an individual who is at least age 50 continues to be $5,000 for 2010. In F's taxable year 2010, the year in which F attains age 65 (which is the normal retirement age under the plan), F desires to defer the maximum amount possible under the plan. F's compensation for 2010 is again $40,000.

(ii) Conclusion. For 2010, the maximum amount that F may defer is $20,000. The special section 457 catch-up provisions under paragraph (c)(3) of this section are not applicable because 2010 is not a taxable year ending before the year in which F attains normal retirement age.

*(4) Cost-of-living adjustment.* For years beginning after December 31, 2006, the $15,000 dollar limitation in paragraph (c)(1)(i)(A) of this section will be adjusted to take into account increases in the cost-of-living. The adjustment in the dollar limitation is made at the same time and in the same manner as under section 415(d) (relating to qualified plans under section 401(a)), except that the base period is the calendar quarter beginning July 1, 2005 and any increase which is not a multiple of $500 will be rounded to the next lowest multiple of $500.

**(d) Deferrals after severance from employment, including sick, vacation, and back pay under an eligible plan.**

*(1) In general.* An eligible plan may provide that a participant who has not had a severance from employment may elect to defer accumulated sick pay, accumulated vacation pay, and back pay under an eligible plan if the requirements of section 457(b) are satisfied. For example, the plan must provide, in accordance with paragraph (b) of this section, that these amounts may be deferred for any calendar month only if an agreement providing for the deferral is entered into before the beginning of the month in which the amounts would otherwise be paid or made available and the participant is an employee on the date the amounts would otherwise be paid or made available. For purposes of section 457, compensation that would otherwise be paid for a payroll period that begins before severance from employment is treated as an amount that would otherwise be paid or made available before an employee has a severance from employment. In addition, deferrals may be made for former employees with respect to compensation described in §1.415(c)-2(e)(3)(i) (relating to certain compensation paid by the later of 2 1/2 months after severance from employment or the end of the limitation year that includes the date of severance from employment). For this purpose, the calendar year is substituted for the limitation year. In addition, compensation described in §1.415(c)-2(e)(4), (g)(4), or (g)(7) (relating to compensation paid to participants who are permanently and totally disabled or compensation relating to qualified military service under section 414(u)), provided those amounts represent compensation described in §1.415(c)-2(e)(3)(i).

*(2) Examples.* The provisions of this paragraph (d) are illustrated by the following examples:

*Example (1).* (i) Facts. Participant G, who is age 62 in year 2007, is an employee who participates in an eligible plan providing a normal retirement age of 65 and a bona fide sick leave and vacation pay program of the eligible employer. Under the terms of G's employer's eligible plan and the sick leave and vacation pay program, G is permitted to make a one-time election to contribute amounts representing accumulated sick pay to the eligible plan. G has a severance from employment on January 12, 2008, at which time G's accumulated sick and vacation pay that is payable on March 15, 2008, totals $12,000. G elects, on February 4, 2008, to have the $12,000 of accumulated sick and vacation pay contributed to the eligible plan.

(ii) Conclusion. Under the terms of the eligible plan and the sick and vacation pay program, G may elect

before March 1, 2008, to defer the accumulated sick and vacation pay because the agreement providing for the deferral is entered into before the beginning of the month in which the amount is currently available and the amount is bona fide accumulated sick and vacation pay, as described in §1.415(c)-2(e)(3)(ii), and that is payable by the later of 2 1/2 months after severance from employment or the end of the calendar year that includes the date of severance from employment by G. Thus, under this section and §1.415(c)-2(e)(3)(ii), the $12,000 is included in G's includible compensation for purposes of determining G's includible compensation in year 2008.

*Example (2).* (i) Facts. Same facts as in Example 1, except that G's severance from employment is on May 31, 2008, G's $12,000 of accumulated sick and vacation pay is payable on September 15, 2008 (which is by the later of 2 1/2 months after severance from employment or the end of the calendar year that includes the date of severance from employment by G), and G's election to defer the accumulated sick and vacation pay is made before May 1, 2008.

(ii) Conclusion. Under this section and §1.415(c)-2(e)(3)(ii), the $12,000 is included in G's includible compensation for purposes of determining G's includible compensation in year 2008.

*Example (3).* (i) Facts. Employer X maintains an eligible plan and a vacation leave plan. Under the terms of the vacation leave plan, employees generally accrue three weeks of vacation per year. Up to one week's unused vacation may be carried over from one year to the next, so that in any single year an employee may have a maximum of four weeks' vacation time. At the beginning of each calendar year, under the terms of the eligible plan (which constitutes an agreement providing for the deferral), the value of any unused vacation time from the prior year in excess of one week is automatically contributed to the eligible plan, to the extent of the employee's maximum deferral limitations. Amounts in excess of the maximum deferral limitations are forfeited.

(ii) Conclusion. The value of the unused vacation pay contributed to X's eligible plan pursuant to the terms of the plan and the terms of the vacation leave plan is treated as an annual deferral to the eligible plan for January of the calendar year. No amounts contributed to the eligible plan will be considered made available to a participant in X's eligible plan.

### (e) Excess deferrals under an eligible plan.

*(1) In general.* Any amount deferred under an eligible plan for the taxable year of a participant that exceeds the maximum deferral limitations set forth in paragraphs (c)(1) through (3) of this section, and any amount that exceeds the individual limitation under §1.457-5, constitutes an excess deferral that is taxable in accordance with §1.457-11 for that taxable year. Thus, an excess deferral is includible in gross income in the taxable year deferred or, if later, the first taxable year in which there is no substantial risk of forfeiture.

*(2) Excess deferrals under an eligible governmental plan other than as a result of the individual limitation.* In order to be an eligible governmental plan, the plan must provide that any excess deferral resulting from a failure of a plan to apply the limitations of paragraphs (c)(1) through (3) of this section to amounts deferred under the eligible plan (computed without regard to the individual limitation under §1.457-5) will be distributed to the participant, with allocable net income, as soon as administratively practicable after the plan determines that the amount is an excess deferral. For purposes of determining whether there is an excess deferral resulting from a failure of a plan to apply the limitations of paragraphs (c)(1) through (3) of this section, all plans under which an individual participates by virtue of his or her relationship with a single employer are treated as a single plan (without regard to any differences in funding). An eligible governmental plan does not fail to satisfy the requirements of paragraphs (a) through (d) of this section or §§1.457-6 through 1.457-10 (including the distribution rules under §1.457-6 and the funding rules under §1.457-8) solely by reason of a distribution made under this paragraph (e)(2). If such excess deferrals are not corrected by distribution under this paragraph (e)(2), the plan will be an ineligible plan under which benefits are taxable in accordance with §1.457-11.

*(3) Excess deferrals under an eligible plan of a tax-exempt employer other than as a result of the

*individual limitation.* If a plan of a tax-exempt employer fails to comply with the limitations of paragraphs (c)(1) through (3) of this section, the plan will be an ineligible plan under which benefits are taxable in accordance with §1.457-11. However, a plan may distribute to a participant any excess deferrals (and any income allocable to such amount) not later than the first April 15 following the close of the taxable year of the excess deferrals. In such a case, the plan will continue to be treated as an eligible plan. However, any excess deferral is included in the gross income of a participant for the taxable year of the excess deferral. If the excess deferrals are not corrected by distribution under this paragraph (e)(3), the plan is an ineligible plan under which benefits are taxable in accordance with §1.457-11. For purposes of determining whether there is an excess deferral resulting from a failure of a plan to apply the limitations of paragraphs (c)(1) through (3) of this section, all eligible plans under which an individual participates by virtue of his or her relationship with a single employer are treated as a single plan.

*(4) Excess deferrals arising from application of the individual limitation.* An eligible plan may provide that an excess deferral that is a result solely of a failure to comply with the individual limitation under §1.457-5 for a taxable year may be distributed to the participant, with allocable net income, as soon as administratively practicable after the plan determines that the amount is an excess deferral. An eligible plan does not fail to satisfy the requirements of paragraphs (a) through (d) of this section or §§1.457-6 through 1.457-10 (including the distribution rules under §1.457-6 and the funding rules under §1.457-8) solely by reason of a distribution made under this paragraph (e)(4). Although a plan will still maintain eligible status if excess deferrals are not distributed under this paragraph (e)(4), a participant must include the excess amounts in income as provided in paragraph (e)(1) of this section.

*(5) Examples.* The provisions of this paragraph (e) are illustrated by the following examples:

*Example (1).* (i) Facts. In 2006, the eligible plan of State Employer X in which Participant H participates permits a maximum deferral of the lesser of $15,000 or 100 percent of includible compensation. In 2006, H, who has compensation of $28,000, nevertheless defers $16,000 under the eligible plan. Participant H is age 45 and normal retirement age under the plan is age 65. For 2006, the applicable dollar limit under paragraph (c)(1)(i)(A) of this section is $15,000. Employer X discovers the error in January of 2007 when it completes H's 2006 Form W-2 and promptly distributes $1,022 to H (which is the sum of the $1,000 excess and $22 of allocable net income).

(ii) Conclusion. Participant H has deferred $1,000 in excess of the $15,000 limitation provided for under the plan for 2006. The $1,000 excess must be included by H in H's income for 2006. In order to correct the failure and still be an eligible plan, the plan must distribute the excess deferral, with allocable net income, as soon as administratively practicable after determining that the amount exceeds the plan deferral limitations. In this case, $22 of the distribution of $1,022 is included in H's gross income for 2007 (and is not an eligible rollover distribution). If the excess deferral were not distributed, the plan would be an ineligible plan with respect to which benefits are taxable in accordance with § 1.457-11.

*Example (2).* (i) Facts. The facts are the same as in Example 1, except that X uses a number of separate arrangements with different trustees and annuity insurers to permit employees to defer and H elects deferrals under several of the funding arrangements none of which exceeds $15,000 for any individual funding arrangement, but which total $16,000.

(ii) Conclusion. The conclusion is the same as in Example 1.

*Example (3).* (i) Facts. The facts are the same as in Example 1, except that H's deferral under the eligible plan is limited to $11,000 and H also makes a salary reduction contribution of $5,000 to an annuity contract under section 403(b) with the same Employer X.

(ii) Conclusion. H's deferrals are within the plan deferral limitations of Employer X. Because of the repeal of the application of the coordination limitation under former paragraph (2) of section 457(c), H's salary reduction deferrals under the annuity contract are no longer considered in determining H's applicable deferral limits under paragraphs (c)(1) through (3) of this section.

*Example (4).* (i) Facts. The facts are the same as in Example 1, except that H's deferral under the eligible governmental plan is limited to $14,000 and H also makes a deferral of $4,000 to an eligible governmental plan of a different employer. Participant H is age 45 and normal retirement age under both eligible plans is age 65.

(ii) Conclusion. Because of the application of the individual limitation under §1.457-5, H has an excess deferral of $3,000 (the sum of $14,000 plus $4,000 equals $18,000, which is $3,000 in excess of the dollar limitation of $15,000). The $3,000 excess deferral, with allocable net income, may be distributed from either plan as soon as administratively practicable after determining that the combined amount exceeds the deferral limitations. If the $3,000 excess deferral is not distributed to H, each plan will continue to be an eligible plan, but the $3,000 must be included by H in H's income for 2006.

*Example (5).* (i) Facts. Assume the same facts as in Example 3, except that H's deferral under the eligible governmental plan is limited to $14,000 and H also makes a deferral of $4,000 to an eligible plan of Employer Y, a tax-exempt entity.

(ii) Conclusion. The results are the same as in Example 3, namely, because of the application of the individual limitation under §1.457-5, H has an excess deferral of $3,000. If the $3,000 excess deferral is not distributed to H, each plan will continue to be an eligible plan, but the $3,000 must be included by H in H's income for 2006.

*Example (6).* (i) Facts. Assume the same facts as in Example 5, except that X is a tax-exempt entity and thus its plan is an eligible plan of a tax-exempt entity.

(ii) Conclusion. The results are the same as in Example 5, namely, because of the application of the individual limitation under §1.457-5, H has an excess deferral of $3,000. If the $3,000 excess deferral is not distributed to H, each plan will continue to be an eligible plan, but the $3,000 must be included by H into H's income for 2006.

---

T.D. 7836, 9/23/82 , amend T.D. 9075, 7/10/2003 , T.D. 9319, 4/4/2007 .

---

END OF DOCUMENT -
© 2007 Thomson/RIA. All rights reserved.