UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INDYMAC BANK, F.S.B.
                 Plaintiff

V.

MOSTAFA REYAD AND WAFA REYAD
                 Defendants

**CIVIL ACTION NO.
3:00CV835 (CFD)**

**DATE: AUGUST 14, 2007**

**DEFENDANTS' REPLY TO PLAINTIFF'S CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR EXEMPTIONS AND IN SUPPORT OF CROSS MOTION FOR TURNOVER ORDER**

    Defendant Mostafa Reyad and Co-Defendant Wafa Reyad, hereby respectfully Reply to their part of "Plaintiff's Consolidated Memorandum in Opposition to Defendants' Motion for Exemptions and in Support of Cross Motion for Turnover Order" dated August 7, 2007 (Doc # 522), and its amendment for same dated August 8, 2007 (Doc # 523).  For reasons demonstrated below, Defendants' Motion For Exemptions must be granted in its entirety as a matter of law.

**Plaintiff's New and False Allegation:**

    Plaintiff adding to the first time a new and false allegations, inconsistent with pretrial proceedings, inconsistent with Joint-Trial-Memorandum, and inconsistent

1

with Trial proceedings, it must be Rejected summarily by the Court. *See*

Plaintiff's opposition at p. 4 :

During 1997,1998,1999 and the four month period between January 1, 2000 and April 30, 2000, it appear that the Reyads "invested the following amounts in the annuity and life insurance identified above:

| | |
|---|---|
| 1997 | $ 27,900 |
| 1998 | $ 80,900 |
| 1999 | $169,900 |
| 2000 | $ 34,300 |
| **Total** | **$ 313,000** |

Plaintiff furtherly stated that the Reyads did not earn in that period the above amount. Plaintiff may be correct, as Plaintiff's attachment shown on Exhibit 5; Mostafa Reyad's deposition, that Mostafa has paid Wafa back part of the principal of the one million dollar, he borrowed it from her in 1995, as Mostafa declared in the same deposition, as it shown on Plaintiff's Exhibit 5 of Plaintiff's instant opposition. *See* Also Joint-Trial-Memorandum dated November 18, 2003 (Doc # 306), Article 6, the list of the disputed mortgage loans, and the date of funding those loans, it is between March 10 and April 19, 2000, provided that Mostafa Reyad did not receive a single penny for any of those 33 loans. Plaintiff false allegations must be rejected as a matter of evidence.

**Assets Released To Defendants**

Plaintiff claims that Defendants have obtained loans and other distributions from certain of the garnished assets. Plaintiff's assumption is incorrect, because at the time defendants obtained the said funds, none of it were under any legal process. In any event, any and all assets were and or

2

currently under garnishment are fully exempt from attachment, garnishment or any legal process.

**American Express & Aetna Annuities**

Both annuities, are insurance contracts, paying on daily basis mortality premiums, are fully exempt by law, either Connecticut law, California law, or New Jersey law, as it explained below in AXA and New England annuities.

**VALIC Annuity**

Wafa Reyad's VALIC annuity, funded 100 percent by the Government of the State of New Jersey, Borough of Fort Lee, as direct deductions from her salary, it is under the full control of the Government of the State of New Jersey. The annuity plan established by the State Government pursuant to 26 U.S.C. Sec.457(b), it is fully exempt by that section; C.G.S. Secs. 52-352b(m) and 52-321a(a)(5). On August 6, 2007, attorney Moffett conducted subpoena on attorney Joshua W. Cohen representing VALIC, and obtained a copy of Wafa Employer's VALIC retirement plan, and Wafa's contract with VALIC, the plan and the contract attached hereto as Appendix # 1. VALIC plan and the contract are under 26 U.S.C. 457(b), and in no where shows any application or relation to plan(s) under 403(b). Attorney Moffett, may be under constraint of time, may exhausted herself more than she can carry, combined with her lack of knowledge fails to read the documents obtained by her during the subpoena of attorney Cohen, which she provided Defendants with same, and Defendants included herein as

3

Appendix #1. She pleaded erroneously, jumped to threw unrelated accusations to Defendants, and implicitly to VALIC insurance company and to the Government of the State of New Jersey. At page 18, attorney Moffett stated " Defendants, however, have provided information that raises serious questions about whether the specific VALIC annuity contract issued for the benefit of Mrs. Reyad was operated in accordance with the provision of Code Sec. 457(b). Specifically, Mrs. Reyad's Personal Benefit Statements for plan year ending December 31,1996,1997,1998, and 1999(attached hereto **Exhibt 3**) suggest that Mrs. Reyad was permitted to contribute amounts well in excess of the contribution limits that were in place during 1996,1997,1998 and 1999.

    Attorney Moffett is totally mistakenly wrong <u>see</u>, Plaintiff **Exhibit 3,** at the upper left corner of each of the four pages " <u>*As of December 31, 1996, you were a member of* the Public Employees Retirement System (PERS)."</u> The document issued by the State Government of New Jersey, Division of Pensions and Benefits, and has no relation or nothing to do with, whatsoever to VALIC. Plaintiff's **Exhibits 11 & 12** are meaningless, unless she provide evidence of violation(s) to the contribution to VALIC plan.  Wafa Reyad's contract with VALIC, and VALIC contract with the Government of the State of New Jersey are in full compliance with the Federal Statute, and it is  the evidence of the fully exempt funds. If attorney Moffett is not satisfied, she has to provide evidence not false mere bold mistaken speculations as she did.

4

Again, attorney Moffett at p.19, making vague discussion upon VALIC plan, and making analogy with 403(b), supporting her discussion by the misplaced **Exhibit 13 as well as Amended Exhibit 13,** that analogy is completely misplaced, raising a question; is she challenging the Federal Provision 457(b).?. In any event, the Court Declaration that the funds contained in VALIC annuity is fully exempt must be issued pursuant to the Federal Statute. The exemption is fully valid before distribution and after distribution, pursuant to the United States Code Title 42 ; _McMullen v. Haycock_ (2007) 147 Cal. App.4th 753(Feb 13, 2007), at 755 (Under California law, assets held in private retirement plans are fully exempt from execution, both before and after distribution to the judgment debtor), _McMullen_ Court is consistent with Title 42 and 26 U.S.C. Sec 457(b).

**AXA and New England Annuities, and AXA Insurance Policies**

Defendants have discussed in the instant motion, the governing law of three States, California, Connecticut and New Jersey. Insurance laws are almost the same in every State. Insurance policies and insurance contracts are exempt from attachment, garnishment or any other legal process in every State. State insurance laws may differ only in the formulation of its phrase, e.g. the definitions in Connecticut insurance law; stipulated inTitle 38a, Sec. 1, are not clear versus New Jersey insurance law's definitions, in New Jersey, it are in more detail. Nevertheless, at the end, the insurance exemptions are the same in every State. Now, Defendants are centering on Connecticut law, and are not waiving their right to introduce additional non-frivolous argument to apply New Jersey law or California law, if determent by the Court. Notwithstanding the application of

Connecticut law, Defendants cites **Slurszberg** , 15N.J. Missc.423,192 A.451(February 11, 1936)at p5 of the instant motion, it Ruled (Some life policies are contracts of investments as well as insurance) **Id** , careful examination of Equitable Certificate number 98 501 734 (attached to Defendants memorandum ( Doc # 512-2 page 2 of 31 D. Conn. Computer website), the last paragraph, it reads:    " ***Daily Separate Account Charge (see Section 8.04)***"

    1.35%; this is subject to change as described in Section 8.04 and 8.05' subject to a  maximum of 2%. This Charge is for financial accounting and for death benefits, mortality risk expenses and expense risk that we assume.

And <u>see</u>, **SECTION 9.05 ASSIGNMENTS, NONTRANSFERABILITY**, **NONFOREFEITABILITY** at page 21 of 31. It is the concrete evidence that, it is an insurance contract of investment as well as life insurance, as *Slurszberg* Court Ruled above. *See* also four (4) AXA Equitable statements for the years 2007, 2005, 2004 and 2003, every statement includes Variable Death Benefits, as integral part of the contract, and AXA collects on daily basis a variable premium for morality depends on the age of the insured. The collection of variable mortality expenses is the evidence of insurability. <u>*See*</u> also C.G.S. Sec. 38a-1

    Annuities" means all agreements to make periodical payments where the making or continuance of all or some of the series of the payments, or the amount of the payment, is dependent upon the continuance of human life or is for a specified term of years. This definition does not apply under a policy of life insurance.

The Connecticut definition means, that there are two types of annuities, one is dependent on a human life, and the other is a contract for a specified term of years, not dependent on a continuation of human life, of course, the latter does not collect mortality expense. Connecticut law 38a-453 protect beneficiary from creditors of the insured, and 38a-454 protects the insured from creditors of the beneficiary. *See,* the more clear definition of annuity in New Jersey law 17B:17-5 Annuity Definition:

"Annuity" is a contract not coming within the definition of life insurance as set forth in section 17B:17-3, or health insurance as set forth in section 17B:17-4, under which an insurer obligates itself to make periodic payments for a specified period of time, such as a number of years, or until the happening of an event, or for life, or for a period of time determined by any combination thereof. Such a contract which includes extra benefits of the kinds set forth in section 17B:17-3 or 17B:17-4 shall nevertheless be deemed to be an annuity if such extra benefits constitute a subsidiary or incidental part of the entire contract.

Both definitions of annuities reveal the analysis, Connecticut differentiates annuity combined with insurance versus annuity without insurance, and New Jersey mandates, the insurance portion not to be subsidiary or incidental to be an insurance contract. Simply put, under Connecticut law or under New Jersey law, AXA Certificate number 98 501 734, New England Financial contract number V435143, are insurance contracts exempt from attachment, garnishment or any other legal process, similar to the two insurance policies numbers 86 097 685 & 86 108 388, all are exempt as a matter of Connecticut law.

Plaintiff at footnote 23 p.20 admits that the statute somehow were applicable in the instant case, and threw false and unfounded accusations,

7

stating that the policies which were procured in 1986 were with the intent to defraud creditors, a false and unreasonable statement must be rejected. _See_ ( Doc 512-3 page 26 of 31), New England Financial Contract, Article "2 Contract , par. 7 **Expense and Mortality Experience.** It means it is insurance contract, similar to AXA annuity. AXA two insurance policies are the same.

   It should be noted that the Connecticut judicial history, has only one case law _Hildreth Press Emp. Fed. Credit Union v. Connecticut General Life Ins. Co_., 30 Conn. Supp. 513,515-517(1972), the case was cited by Plaintiff more than once, Plaintiff at p.21 stating "There is no evidence that the policies at issue create a spendthrift trust on behalf of a beneficiary other than the policyholder". _Hidreth_ court, did not create a new legislation, it only stressed on the word trust, there is no existence to the word spendthrift in Connecticut law, in fact Connecticut insurance law stipulates "Trust or other agreement", moreover, that case was a group insurance, and employer was the policyholder, it is not controlling and no analogy can be applied. AXA and New England annuities, and AXA insurance policies are fully exempt under Connecticut Statute Title 38a, must be declared as fully exempt before distribution and after distribution as a matter of law.

     Plaintiff apparently has alack of knowledge about qualified annuities and nonqualified annuities, mistakenly explaining that the former are exempt and latter are not exempt. In fact the former deferred income tax and the latter contribution after tax.

Plaintiff is arguing "Bank accounts and Automobiles" , Defendants request in their motion exemption for the two bank accounts, each up to $ 1,000. Plaintiff claims

that she is not aware of any statutory provision, *see*, C.G.S. Sec. 352 b(r), any interest of value less than $1,000. Furthermore, Plaintiff cites 52-367b(c), at footnote 17 p.17. According to Plaintiff understanding, that a judgment debtor cannot maintain any bank account until he or she satisfy the judgment. Plaintiff must adhere to the Constitutional Amendments, specifically the Eighth Amendment, and also review United States Code Title 42., and C.G.C. 52-352(r). Defendants must be allowed to maintain bank accounts for living expenses, e.g. to cash social security check, and to cash the exempt properties. There is no levy on Defendants' automobiles, and a simple claim of exemption is warranted during this malicious proceedings.

Defendants reiterate their request stated on their motion that they are entitled to an award of $ 396,900 for the wrongful attachment levied on the exempt properties.

|  |  |
|---|---|
| The Defendant<br>Mostafa Reyad | The Defendant<br>Wafa Reyad |
| By:_____<br>  Mostafa Reyad<br>  2077 Center Ave # 22D<br>  Fort Lee, NJ 07024<br>  Day Phone 203-325-4100 | By: _____<br>  Wafa Reyad<br>  2077 Center Ave # 22D<br>  Fort Lee, NJ 07024<br>  Home Phone 201-585-0562 |

## CERTIFICATE OF SERVICE

The undersigned certifies that he hand delivered on the captioned date a true and correct copy to Attorney David Schaefer at 271 Whitney Avenue, New Haven, CT 06511

_____
Mostafa Reyad