UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INDYMAC BANK, F.S.B., | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:00CV835(CFD) |
| v. | : | |
| MOSTAFA REYAD and WAFA REYAD, | : | AUGUST 28, 2007 |
| Defendants. | : | |

### REPLY MEMORANDUM IN SUPPORT OF
### PLAINTIFF'S MOTION FOR TURNOVER ORDER

Pursuant to D. Conn. Loc. R. 7(d), Plaintiff IndyMac Bank, F.S.B. submits the instant reply memorandum in further support of its Cross-Motion for Turnover Order dated August 7, 2007 (doc. # 521), following Defendants submission on August 14, 2007 of their "Reply to Plaintiff's Consolidated Memorandum in Opposition to Defendants' Motion for Exemptions and in Support of Cross Motion for Turnover Order" doc. # 524) (Defendants' "Opposition Memo"). In their Opposition Memo, Defendants: admit that they obtained have obtained substantial loans and distributions of assets despite the issuance and service of Writs of Garnishment at the outset of this action; admit that they "invested" in the subject assets amounts well in excess of their reported income during the period from 1997-2000; and merely re-state their broad assertions that all of their assets are exempt from execution, misconstruing Connecticut law as well as inapplicable laws from other jurisdictions. Because Defendants have failed to meet their burden of demonstrating that the subject assets are properly exempt from execution, the Court should order, pursuant to Conn. Gen. Stat. §§ 52-356b and 52-381, that the disputed assets be turned over to Plaintiff immediately for execution.

## I. ASSETS IMPROPERLY RELEASED TO DEFENDANTS

Defendants in their Opposition Memo do not deny that they obtained loans and other distributions from certain of the garnished assets totaling approximately $240,000.00. Rather, Defendants attempt to justify their actions on the grounds that at the time they obtained the funds, "none of it were under any legal process. In any event, any and all assets were and or currently under garnishment are fully exempt from attachment, garnishment or any legal process." Opposition Memo at 2-3. Defendants' actions in liquidating these funds without Court approval, in defiance of the prejudgment remedy ordered by the Court, cannot be countenanced.

Plaintiff provides the following update concerning the garnishees that disbursed to Defendants assets subject to Writs of Garnishment in this action.

### A. American Express Annuity.

As indicated in Plaintiff's initial memorandum in support of its Motion for Turnover Order, a representative of American Express advised Plaintiff's counsel on July 3, 2007 that, pursuant the request of one or both of Defendants, all of the funds in the garnished account (valued in May 2006 at $79,778.27) were electronically wired to a bank account of Defendant Wafa Reyad on June 23, 2007. Despite being served with Plaintiff's Motion for Turnover Order and supporting memorandum, American Express still has not responded to Plaintiff's requests for explanation as to the disposition of the funds subject to garnishment, nor has American Express responded in any way to Plaintiff's demand that American Express replace the improperly withdrawn funds.

Notably, Defendants did not claim that the American Express Annuity was exempt from execution in their initial Motion for Exemptions (doc. # 511). In their Opposition Memo, Defendants belatedly assert that this asset is exempt from execution, relying upon their arguments in support of an exemption for Defendants' other non-qualified annuities. See Opposition Memo at 3. Having failed to claim an exemption for this asset in a timely manner, Defendants have waived their right to claim to any such exemption. See Conn. Gen. Stat. § 52-361b(d) (providing that a judgment debtor may claim an exemption as to property by returning a signed exemption claim form to the court within twenty days after levy on such property). Moreover, for the reasons discussed further below and in Plaintiff's initial memorandum in support of its turnover motion, non-qualified annuities are not exempt from claims of creditors under Connecticut law.

B.  Aetna Annuity.

On August 14, 2007, Plaintiff's counsel was advised by counsel for ING Life Insurance and Annuity Company ("ILIAC") (formerly Aetna Life Insurance and Annuity Company) that "Wafa Reyad's account with ING was inadvertently liquidated in June 2006 upon Ms. Reyad's request. ING is prepared to pay Indy Mac the account cash surrender value plus the guaranteed interest on the contract through the date of service of the writ of execution, pursuant to Indy Mac's writ of garnishment and writ of execution, which amount ILIAC calculates to be $78,600.35." See Exhibit A hereto.[1]

As with the American Express annuity, Defendants did not claim that the Aetna annuity was exempt from execution in their initial Motion for Exemptions, and their

---

[1] In light of Aetna's response, Plaintiff withdraws its request that the Court order that Aetna reimburse Plaintiff for its attorney's fees incurred in connection with its motion.

9Z8687.DOC                                 3

belated claim of exemption in their Opposition Memo is untimely. See Opposition Memo at 3. Also, as discussed further below, this asset is a non-qualified annuity which is not exempt from execution.

C. VALIC Annuity.

VALIC's counsel has informed the undersigned that VALIC is still working on its response to the subpoena served upon VALIC on August 2, 2007, requesting historical funding and distribution information for the VALIC annuity, which information may shed light upon whether the operation of the Plan has been consistent with the requirements of Code Section 457(b), and therefore whether the VALIC annuity contract (valued at $117,610.11, not including the earlier $50,000 loan to Wafa Reyad) would properly be deemed exempt from the claims of creditors under Conn. Gen. Stat. § 52-321a(a)(5).

Defendants claim in their Opposition Memo that the Personal Benefits Statements appended as Exhibit 3 to Plaintiff's initial memorandum is not related to Ms. Reyad's VALIC annuity contract. If the VALIC annuity contract is a retirement plan maintained for Ms. Reyad by her employer, The Borough of Fort Lee, New Jersey, as Defendants claim it to be, Plaintiff presumed that contributions to the plan would be reflected on Ms. Reyad's Personal Benefits Statements prepared by the Division of Pension and Benefits of the Public Employees' Retirement System. If such is not the case, then questions arise as to the nature and purpose of the contributions that are reflected on the Statements. Notably, Defendants do not offer any explanations in this regard. In any event, the historical funding and distribution information requested of

VALIC should assist in evaluating the exempt status of the VALIC annuity, and the parties will provide the Court with further information in this regard as it is uncovered.[2]

### D.  Equitable Life Insurance Policy.

Once again, Defendants in their Opposition Memo do not deny that Mostafa Reyad took two loans against his Equitable life insurance policy since the Writ of Garnishment was served at the outset of this action, the first loan taken on January 25, 2005 in the amount of $25,000; and the second loan taken on March 20, 2006 in the amount of $3,689.12. Rather, Defendants maintain their claim that unmatured life insurance policies generally are exempt from claims from creditors. As discussed further below, such is not the case.

## II.  DEFENDANTS' EXEMPTION CLAIMS

Defendants argue in their Opposition Memo that the Equitable (called AXA by Defendants) and New England annuities are exempt from execution because they include the collection of variable mortality expenses as part of their premiums. See Opposition Memo at 5-8. Annuities commonly provide for an incidental death benefit in the event that the owner or annuitant dies prior to the date upon which the annuity begins paying out benefits. This fact alone, however, does not change an annuity into a life insurance policy entitled to exemption from certain claims of creditors under Conn. Gen. Stat. § 38a-453 and 38a-454.[3]

---

[2] Plaintiff has no objection to a delay in the submission by VALIC of a response to Plaintiff's Motion for Turnover Order until the parties have completed their respective review of the historical information concerning the VALIC annuity, subject only to the caveat that such extension not delay any scheduled hearing on Plaintiff's Motion.
[3] Slurszberg v. Prudential Ins. Co., 15 N.J. Misc. 423, 192 A. 451 (N.J. Sup. Ct. 1936), cited by Defendants, although inapposite because it deals with NJ's statutory exemption

9Z8687.DOC                                5

The respective definitions of "annuities" and "life insurance" set forth in the Connecticut General Statutes are consistent with this distinction between the subject contracts.  <u>Compare</u> Conn. Gen. Stat. § 38a-1(3) (definition of "Annuities") <u>with</u> § 38a-1(10) ("Insurance"), (11) ("Life Insurance").  As these definitions make clear, an annuity provides a series of payments over a specified period of time, as is the case with the annuities at issue here, while a life insurance policy provides a benefit to beneficiaries of the insured only upon his or her death.  Indeed, the subject contracts themselves clearly state that they are annuities, not life insurance policies.  <u>See</u> Defs.' Mem. Supp. Motion for Exemption (doc. # 512-2) at 26 of 29; (doc. # 512-3) at 23 of 31.  Thus, Defendants' attempt to rely upon the exemptions for certain claims against life insurance policies to protect the Equitable and New England annuities is untenable.

Moreover, as explained in Plaintiff's initial memorandum, neither Conn. Gen. Stat. § 38a-453 nor § 38a-454 serves to exempt the challenged annuities or life insurance contracts from execution.  Both statutes are designed to protect beneficiaries (other than the policyholder) against claims of creditors.  Conversely, neither statute serves to insulate the insured from claims by a judgment creditor against the cash value of the policies during the annuitant/insured's life, as is the case here.

With respect to Defendants' claimed exemption of their respective bank accounts, the applicable execution statute for bank accounts, Conn. Gen. Stat. § 52-367b, does not provide for the blanket $1,000 exemption claimed by Defendants.  Finally, as noted in Plaintiff's initial memorandum in support of its Motion for Turnover

---

scheme for life insurance policies, itself recognizes that the addition of an investment feature to a life insurance policy "does not, however, divest the policy of its chief character, or make it other than a life insurance policy." <u>Slursberg</u>, 15 N.J. Misc. at 426, 192 A. at 454.

9Z8687.DOC                                                      6

Order, Defendants continue in their failure to provide the Court with any evidence to support their claim that their respective automobiles have a fair market value equal or less than $1,500.

## III. CONCLUSION

WHEREFORE, for the reasons discussed above and in Plaintiff's Consolidated Memorandum In Opposition to Defendants' Motion for Exemptions and In Support of Cross Motion for Turnover Order dated August 7, 2007, Plaintiff respectfully requests that (i) that Defendants' Motion for Exemption be denied, (ii) that the Court order that the disputed assets be turned over to Plaintiff immediately for execution, and (iii) that Garnishees American Express, Aetna and VALIC be ordered to turn over to Plaintiff the value of the non-exempt assets improperly distributed to Defendants, and that American Express and VALIC be ordered to reimburse Plaintiff for its costs incurred in connection with Plaintiff's Motion for Turnover Order.

PLAINTIFF INDYMAC BANK, F.S.B.

By: _____
David R. Schaefer (ct04334)
Rowena A. Moffett (ct19811)
BRENNER, SALTZMAN & WALLMAN LLP
Its Attorneys
271 Whitney Avenue
P.O. Box 1746
New Haven, CT 06507-1746
Tel. (203) 772-2600
Fax. (203) 562-2098
Email: dschaefer@bslwlaw.com
rmoffett@bswlaw.com

9Z8687.DOC                                   7

**CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing was served by United States first-class mail and by electronic mail this 28th day of August, 2007 upon:

Mostafa Reyad
2077 Center Ave
#22D
Fort Lee, NJ  07024
reyad@optonline.net

Wafa Reyad
2077 Center Ave
#22D
Fort Lee, NJ  07024
reyad@optonline.net.

This is to further certify that a true and accurate copy of the foregoing was served by United States first-class mail this 28th day of August, 2007 upon:

Variable Annuity Life Insurance Company
c/o Joshua Cohen, Esq.
Day Pitney LLP
One Audubon Street
New Haven, CT  06511

American Express IDS/Ameriprise Financial
c/o Gene Kodadek, Esq.
Ameriprise Financial
70100 Ameriprise Financial Center
Minneapolis, MN  55474

Aetna/ING Life Insurance and Annuity Company
c/o Melicent B. Thompson, Esq.
Litchfield Cavo LLP
40 Tower Lane, Suite 200
Avon, Connecticut 06001-4222

9Z8687.DOC                                  8

AXA Equitable Life Insurance Company
c/o Christopher E. Torkelson, Esq.
Sterns & Weinroth
50 West State Street
Suite 1400
P.O. Box 1298
Trenton, NJ  08607-1298

_____
Rowena A. Moffett (ct19811)

# Exhibit A

# LITCHFIELD CAVO LLP
Attorneys at Law

WRITER'S ADDRESS:
40 Tower Lane, Suite 200
Avon, CT 06001
(860) 255-5559
(860) 255-5566 Fax
email: cavo@litchfieldcavo.com

*Privileged and Confidential*
*Attorney-Client Communication*

August 14, 2007

SENT BY FACSIMILE (203) 562-2098
Rowena A. Moffett
Brenner Saltzman & Wallman, LLP
271 Whitney Avenue
New Haven, CT 06511

Re:   **Indy Mac v. Reyad**

Dear Rowena:

I am writing to confirm our telephone conversation today. As we discussed, ING Life Insurance and Annuity Company ("ILIAC") (formerly Aetna Life Insurance and Annuity Company) has confirmed that Wafa Reyad's account with ING was inadvertently liquidated in June 2006 upon Ms. Reyad's request. ING is prepared to pay Indy Mac the account cash surrender value plus the guaranteed interest on the contract through date of service of the writ of execution, pursuant to Indy Mac's writ of garnishment and writ of execution, which amount ILIAC calculates to be $78,600.35.

I further understand from our conversation today that Indy Mac will not seek attorney's fees from ING in return for ING's agreement to pay the account value stated above. Additionally, I understand that you have specifically requested on Indy Mac's behalf that ING not issue a check for the above stated account value at this time. Rather, you have requested that ING wait to issue the check until Indy Mac and/or the Court so instructs.

Accordingly, we will wait to hear from you to finalize ING's payment of the account value stated above.

In order to process the check, please provide me with Indy Mac's taxpayer identification number.

Very truly yours,

(dictated but not read)

Melicent B. Thompson

MBT/kmb