EXHIBIT 1

LEXSTAT N.J.S.A. 2A:49A-29

LexisNexis (TM) New Jersey Annotated Statutes

*** THIS SECTION IS CURRENT THROUGH NEW JERSEY 212TH LEGISLATURE ***
*** SECOND ANNUAL SESSION (P.L. 2007 CH. 176) & J.R. 11 ***
*** ANNOTATIONS CURRENT THROUGH SEPTEMBER 19, 2007 ***

TITLE 2A.  ADMINISTRATION OF CIVIL AND CRIMINAL JUSTICE
SUBTITLE 6.  CIVIL ACTIONS
CHAPTER 49A.  FOREIGN CLAIMS AND JUDGMENTS
ARTICLE 3.  ENFORCEMENT OF FOREIGN JUDGMENTS

**GO TO THE NEW JERSEY ANNOTATED STATUTES ARCHIVE DIRECTORY**

N.J. Stat. § 2A:49A-29 (2007)

§ 2A:49A-29. Appeal, stay of execution, enforcement

a. If the judgment debtor shows the Superior Court that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished security for the satisfaction of the judgment required by the state in which it was rendered.

b. If the judgment debtor shows the Superior Court any ground upon which enforcement of a judgment of the Superior Court would be stayed, the Superior Court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this State.

**HISTORY:** L. 1997, c. 204, § 5.

N.J. Stat. § 2A:49A-29

EXHIBIT 2

LEXSEE 392 N.J. SUPER. 227

**STATE OF MAINE, PLAINTIFF-RESPONDENT, v. SEKAP, S.A. GREEK COOPERATIVE CIGARETTE MANUFACTURING COMPANY, S.A., DEFENDANT-APPELLANT.**

**DOCKET NO. A-4284-05T2**

**SUPERIOR COURT OF NEW JERSEY, APPELLATE DIVISION**

**392 N.J. Super. 227; 920 A.2d 667; 2007 N.J. Super. LEXIS 111**

**January 24, 2007, Argued**
**April 17, 2007, Decided**

**SUBSEQUENT HISTORY:** Approved For Publication April 17, 2007. [***1] Approved for Publication April 17, 2007.

**PRIOR HISTORY:** On appeal from the Superior Court of New Jersey, Law Division, Mercer County, DJ-076048-05 and DJ-076049-05.

**DISPOSITION:** Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

**COUNSEL:** *Hubert C. Cutolo* argued the cause for appellant (*Sodini & Spina*, attorneys; *Mr. Cutolo*, on the brief).

*Cathy Melitski*, Deputy Attorney General, argued the cause for respondent (*Stuart Rabner*, Attorney General, attorney; *Edward D. Tan*, Deputy Attorney General, on the brief).

**JUDGES:** Before Judges WEFING, PARKER and MESSANO. The opinion of the court was delivered by MESSANO, J.S.C. (temporarily assigned).

**OPINION BY:** MESSANO

**OPINION**

[*231] [**669] The opinion of the court was delivered by

MESSANO, J.S.C. (temporarily assigned).

In this appeal, we are required to interpret provisions of New Jersey's version of the Uniform Enforcement of Foreign Judgments Act (the UEFJA), *N.J.S.A.* 2A:49A-25 to -33, and in particular, *N.J.S.A.* 2A:49A-29 which sets forth the procedure to stay execution of a foreign judgment domesticated in New Jersey. Defendant, SeKap, S. [***2] A. Greek Cooperative Cigarette Manufacturing Company, S.A. (SeKap), appeals the motion judge's orders vacating a stay of execution previously entered in its favor, and denying its cross-motion for summary judgment. We affirm the judge's decision, but remand the matter for further proceedings consistent with our opinion.

[**670] I.

In August, 2002, the state of Maine filed suit in Maine seeking to compel SeKap to deposit $ 312,945.38 into an escrow account. SeKap did not join in the 1998 national Master Settlement Agreement [*232] (MSA) wherein a number of states settled litigation against numerous cigarette manufacturers. After the settlement was reached, several states, including Maine, adopted model legislation which compelled non-settling cigarette manufacturers to establish escrow accounts in those various states and deposit monies in the accounts based upon the volume of cigarette sales in that particular state. These escrow accounts were designed to offset any competitive advantages non-settling manufacturers might otherwise gain by not participating in the MSA, and the monies in the escrow accounts were to be used to satisfy any judgments or settlements each state might obtain against the [***3] non-settling manufacturers. Maine's version of the model escrow statute is codified at 22 *M.R.S.A.* § 1580-I. Those manufacturers that do not establish and fund the mandatory escrow accounts are subject to monetary penalties pursuant to the statute.

Maine's complaint alleged that SeKap had not established or funded the required escrow account for its cigarette sales in Maine under the brand names, "Marathon" or "GR," during 2001. The complaint sought judgment requiring SeKap to post the required amount, as well as a statutory penalty in the amount of $ 938,836.14. Maine

392 N.J. Super. 227, *; 920 A.2d 667, **;
2007 N.J. Super. LEXIS 111, ***

alleged it had personal jurisdiction over SeKap because the company "transact[ed] business within . . . Maine by supplying tobacco products, either directly or through a distributor . . . within . . . Maine, to consumers within . . . Maine."

Maine served its complaint through the Hague Convention and SeKap does not challenge the sufficiency of service. When SeKap failed to answer or appear, Maine successfully moved for default. In September, 2003, the Maine court entered judgment against SeKap for $ 1,251,781.50 and enjoined the sales of its cigarettes in Maine. This procedure was repeated with the filing of [***4] a second complaint in Maine in July, 2003 seeking additional monies and penalties for SeKap's alleged 2002 tobacco sales. Once again, SeKap failed to appear, and a second judgment was entered against it in December, 2004, in the amount of $ 1,128,646.50 along with similar injunctive relief.

[*233] Utilizing the procedure set forth in *N.J.S.A.* 2A:49A-27 and -28, Maine applied to the Superior Court in New Jersey and docketed the two foreign judgments in March, 2005. In April, the New Jersey court entered writs of execution for both judgments which were served upon Wachovia Bank in Morristown. [1] In May, SeKap moved via an order to show cause to temporarily restrain any execution on the account, to vacate the writs of execution and to vacate the docketed judgments, alleging Maine lacked personal jurisdiction over it. The motion judge granted the order to show cause, entered temporary restraints and set the matter down for a further hearing.

    1 We were advised at oral argument that SeKap had established an account at this bank but no monies were on deposit.

[***5] After a hearing held on July 1, 2005, a second motion judge denied Maine's request to dissolve the temporary restraints, and entered an order that provided

        Defendant shall have sixty days in which to seek relief from judgment in Maine pursuant to *N.J.S.A.* 2A:49A-29(a) and (b). Upon proof of compliance with section (a) [**671] and the posting of security to satisfy the judgment, enforcement shall be stayed. Otherwise, enforcement shall take effect on September 6, 2005. Thereafter, plaintiff may move before the court to dissolve the restraints.

SeKap did not file an appeal in Maine, nor post security, within the sixty day period.

In December, Maine moved to dissolve the restraints; SeKap cross-moved for summary judgment seeking to vacate the writs of execution and the docketed New Jersey judgments. In support of its cross-motion, SeKap argued that it need not post any security in order to stay execution of the writs and challenge the New Jersey judgment because the Maine judgment was void for lack of personal jurisdiction. It supplied the certification of its Director, Yiannis Bitos, that contained the following facts: SeKap was organized as [***6] a Greek co-operative under Greek law; it has no offices, branches, employees or agents in any state in the United States; it does not maintain an agent for service of process in the United States; it owns no property in, has no assets in, and has [*234] never contracted with anyone in Maine; no officer, agent or director of SeKap has physically been present in Maine; and, SeKap has never solicited or advertised its products in Maine. The certification explained that SeKap contracted with a Cypriot corporation, Denova, Serives, Ltd. (Denova), for the distribution of tobacco products in North America. SeKap has no control or ownership interests in Denova, nor does it control the marketing, pricing or sales of its products in the United States. Lastly, Bitos certified that SeKap did not "dictate, require or request that [its] product be sold in Maine."

On February 6, 2006, a third judge heard the motion and cross-motion. He noted that SeKap had not complied with the prior order of the court since it had not filed an appeal in Maine challenging jurisdiction. He further found that defendant had not complied with *N.J.S.A.* 2A:49A-29(a) or (b) which "sets forth [***7] the applicable procedures for appealing the enforcement of domesticated judgments." He dissolved the restraints. Turning to SeKap's cross-motion, he concluded

        [T]here has been no showing that the defendant ever sought any relief from the judgment in the State of Maine and, basically, I'm denying the cross-motion because defendant counsel failed to provide the Court with any evidence that Maine lacked jurisdiction over the defendant. *That's an issue that they should be taking up in the court in Maine, not here.*

        (Emphasis added.)

The cross-motion was denied.

SeKap moved for reconsideration. In part, defense counsel requested the court to reconsider the Bitos certification which was apparently unsigned when it accompanied the original motion papers. He advised the court that a signed, notarized certification had indeed been

Case 3:00-cv-00835-CFD    Document 534-2    Filed 10/03/2007    Page 7 of 23

Page 3

392 N.J. Super. 227, *; 920 A.2d 667, **;
2007 N.J. Super. LEXIS 111, ***

faxed to the court prior to the original motion being heard. [2] Once again the motion judge concluded that SeKap [*235] had not "pa[id] the judgment, or deposit[ed] the security to stay the judgment pending resolution of the jurisdictional issue in the State of Maine." He found no basis for reconsideration and denied SeKap's motion. This appeal [***8] ensued.

> 2    Defendant's appendix contains a copy of the signed certification as well as a fax cover sheet and confirmation. Although the judge indicated he had not received the fully executed certification prior to his ruling on the motion, the confirmation indicates it was received by the court on February 2, 2006, four days before the motion was heard.

[**672] II.

We begin by considering New Jersey's version of the UEFJA which is this state's selected mechanism "for discharging its Full Faith and Credit obligations" under *U.S. Const.* art. IV, § 1. *Singh v. Sidana,* 387 N.J. Super. 380, 382, 904 A.2d 721 (App. Div. 2006), *certif. denied,* 189 N.J. 428, 915 A.2d 1051 (2007). As we held in *Sonntag Reporting Serv. Ltd. v. Ciccarelli,* 374 N.J. Super. 533, 540, 865 A.2d 747 (App. Div. 2005), "[t]he focus of the UEFJ is the *enforcement* of judgments." The statute was designed "merely as a facilitating device and was not intended to alter any substantive rights of the parties [***9] in an action for enforcement of a foreign judgment." *Id.* at 539, 865 A.2d 747. Therefore, "merit or substantive defenses," which could have been raised in the foreign state, must be raised in that state's proceedings and cannot be used to collaterally attack the domesticated New Jersey judgment. *Id.* at 540, 865 A.2d 747

However, the Constitutional requirements of the Full Faith and Credit Clause are predicated upon the judgment debtor having been accorded due process in the forum state. *Id.* at 538, 865 A.2d 747. A denial of due process occurs "when 'the rendering state 1) lacked personal jurisdiction over the judgment debtor, 2) lacked subject matter jurisdiction, [or] 3) failed to provide the judgment debtor adequate notice and an opportunity to be heard.'" *Ibid.* (quoting *Choi v. Kim,* 50 F.3d 244, 248 (3d Cir. 1995)). Thus, the judgment debtor may raise "due process defenses" in any enforcement action in New Jersey under the UEFJA. *Sonntag, supra,* 374 N.J. Super. at 540, 865 A.2d 747. This is consistent with our jurisprudence that pre-dates the 1997 passage of the UEFJA. *See James v. Francesco,* 61 N.J. 480, 485, 295 A.2d 633 (1972) [***10] (Full Faith and Credit Clause only applies to [*236] foreign judgment grounded upon proper jurisdiction over the debtor).

By asserting Maine lacked personal jurisdiction over the company, SeKap raised a "due process defense." It contends that until New Jersey courts decide the jurisdictional question, it is entitled to a stay of execution on any New Jersey assets if the writ of execution is based upon the challenged judgment. On this point, we disagree.

*N.J.S.A.* 2A:49A-29, entitled "Appeal of judgment pending; stay of execution," provides

> a. If the judgment debtor shows the Superior Court that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished security for the satisfaction of the judgment required by the state in which it was rendered.

> b. If the judgment debtor shows the Superior Court any ground upon which enforcement of a judgment of the Superior Court would be stayed, the Superior [***11] Court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this State.

SeKap argues that *N.J.S.A.* 2A:49A-29 only applies to valid foreign judgments--judgments predicated upon proper due process guarantees--and not to domesticated foreign judgments founded upon an improper extension of personal jurisdiction in the forum state. It contends that the UEFJA's definition of the term "foreign judgment" supports this interpretation.

[**673] *N.J.S.A.* 2A:49A-26 defines a "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court *which is entitled to full faith and credit in this State.*" (Emphasis added). Defendant argues since Maine's judgments were obtained without the required personal jurisdiction over SeKap, they are not entitled to full faith and credit in New Jersey, and, hence, are not foreign judgments for purposes of *N.J.S.A.* 2A:49A-29(a) or (b). We reject this circular argument.

No reported New Jersey case has considered the [***12] stay provisions contained in *N.J.S.A.* 2A:49A-29. However, a number of [*237] other jurisdictions have considered the equivalent statutory language found

Case 3:00-cv-00835-CFD    Document 534-2    Filed 10/03/2007    Page 8 of 23

Page 4

392 N.J. Super. 227, *; 920 A.2d 667, **;
2007 N.J. Super. LEXIS 111, ***

in their versions of the UEFJA in circumstances similar to those presented here. Almost uniformly, these other jurisdictions have required the judgment debtor to post adequate security in order to stay execution of any judgment domesticated in those states.

In *Jackson v. Alexander*, 706 So.2d 364, 365 (Fla. App. 1998), the Florida appellate court interpreted that state's version of the UEFJA which specifically provided for a stay of enforcement of a domesticated foreign judgment in two circumstances:

> (1) If, within 30 days after the date the foreign judgment is recorded, the judgment debtor files an action contesting the jurisdiction of the court which entered the foreign judgment or the validity of the foreign judgment and records a lis pendens directed toward the foreign judgment, the court shall stay enforcement of the foreign judgment and the judgment lien upon the filing of the action by the judgment debtor.
>
> (2) If the judgment debtor shows . . . any ground upon which enforcement [***13] of a judgment of any . . . court of this state would be stayed, the court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this state.
>
> [*Fla. Stat. § 55.509(1) and (2).*]

Thus, under subsection (1), the judgment debtor could specifically attack the forum state's lack of jurisdiction. Nevertheless, despite the omission of any security requirement in subsection (1), the Florida court, reading the statute in pari materia, concluded the debtor was required to post a bond before the action challenging jurisdiction and staying execution could proceed. *Ibid.; accord Expedia Inc. v. McKenney's Inc.*, 611 So.2d 98, 100 (Fla. App. 1992) (interplay of two subsections of *Fla. Stat.* § 55.509 requires posting security before stay of alleged invalid foreign judgment); *SCG Travel v. Westminster Financial*, 583 So.2d 723, 726 (Fla. App.), *app. dismissed*, 591 So.2d 185 (Fla. 1991).

In *Segal v. Segal*, 264 Conn. 498, 823 A.2d 1208 (Conn. 2003), the [***14] debtor sought a stay of enforcement of a domesticated Nevada judgment pending final decision of his appeal in Nevada. *Id.* at 1209. He argued that a judgment under appeal was not a judgment entitled to full faith and credit under the Constitution [*238] and, thus, not a "foreign judgment" under the

UEFJA. *Id.* at 1213-14. The lower court agreed, and determined that the Nevada judgment was not enforceable as a final judgment entitled to full faith and credit until the appeal was decided. *Id.* at 1210. The Connecticut Supreme Court rejected this argument and concluded that without posting adequate security, the debtor was not entitled to stay enforcement of the domesticated judgment. It reasoned that any other interpretation of the statute would nullify the express provisions of the UEFJA which required the posting of adequate security pending direct appeal. *Id.* at 1214.

[**674] In *Ex Parte Lyon Financial Servs., Inc.*, 775 So.2d 181 (Ala. 2000), the Alabama Supreme Court reversed the trial court's stay of enforcement of a Minnesota judgment against an Alabama debtor. *Id.* at 182. The debtor sought the stay based upon a third-party claim, initially brought [***15] in Minnesota, but dismissed by that court. *Ibid.* The debtor argued that it should be allowed to continue its litigation against the third-party in Alabama, and that all enforcement actions based upon the domesticated Minnesota judgment should be stayed pending the resolution of its suit. *Ibid.* Interpreting Alabama's version of N.J.S.A. 2A:49A-29(b), the court concluded that the debtor was not entitled to the stay because 1) the third-party claim would not properly result in a stay under Alabama law and 2) the debtor had not posted the required security. *Id.* at 184. *Accord Hinkle, Cox, Eaton, Coffield & Hensley v. The Cadle Co.*, 111 Ohio App. 3d 713, 676 N.E.2d 1256, 1257 (Ohio App.) (holding debtor must post security to obtain a stay under Ohio's equivalent of N.J.S.A. 2A:49A-29(b)), *discretionary appeal not allowed*, 77 Ohio St. 3d 1482, 673 N.E.2d 143 (Ohio 1996).

In *Dependable Ins. Co. v. Automobile Warranty Corp.*, 797 P.2d 1308 (Colo. App. 1990), the court interpreted Colorado's stay provisions which are identical to N.J.S.A. 2A:49A-29 [***16] . *Id.* at 1309-10. In that case, defendant debtor filed a direct appeal of the Florida judgment in Florida and then sought a stay of execution on its assets in Colorado based upon the domesticated Colorado judgment. *Id.* at 1309. Noting the "important purpose of a supersedeas [*239] bond" is "to protect the non-appealing party's rights during an appeal," the court concluded that despite the pending direct appeal in Florida, the debtor was required to post a bond to secure a stay of execution in Colorado. *Id.* at 1310. Otherwise, the statute's "purpose would be negated." *Ibid.* It then considered the debtor's second argument under Colorado's equivalent to N.J.S.A. 2A:49A-29(b). *Ibid.* The court concluded that since Colorado law required the posting of security to obtain a stay, defendant's failure to post security required denial of the stay. Ibid. *But see Pickwick Intern. v. Tomato Music Co., Ltd.*, 119 Misc. 2d 227, 462 N.Y.S.2d 781, 784 (Sup. Ct. Spec. Term 1983)

Case 3:00-cv-00835-CFD    Document 534-2    Filed 10/03/2007    Page 9 of 23

Page 5

392 N.J. Super. 227, *; 920 A.2d 667, **;
2007 N.J. Super. LEXIS 111, ***

(holding under New York's equivalent of *N.J.S.A.* 2A:49A-29(b), court may, in its discretion, stay [***17] execution without posting of security because New York law permitted a stay under such circumstances).

SeKap has not brought to our attention any authority to the contrary. Our Legislature specifically provided that the UEFJA "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." *N.J.S.A.* 2A:49A-33. We have looked to the decisional law of sister states in interpreting other provisions of the UEFJA. *Sonntag, supra,* 374 N.J. Super. at 540-41, 865 A.2d 747. Moreover, in other circumstances where the Legislature has spoken so clearly, we have held that sister-state's interpretations of uniform legislation are "persuasive authority." *New Jersey Lawyers' Fund for Client Protection v. Pace,* 374 N.J. Super. 57, 64, 863 A.2d 402 (App. Div. 2005), (noting out-of-state decisions are persuasive given requirement that the UCC be construed uniformly), *aff'd* 186 N.J. 123, 892 A.2d 661 (2006).

Returning to the issue presented in this case, SeKap failed to demonstrate "an appeal from the foreign judgment [was] pending or [would] be taken, or that [***18] a stay of execution [had] been granted" in Maine. Thus, separate and apart from the posting of any security, SeKap was not entitled to a stay of execution of [*240] Maine's domesticated judgments pursuant to *N.J.S.A.* 2A:49A-29(a).

[**675] Additionally, SeKap was not entitled to a stay of execution pursuant to *N.J.S.A.* 2A:49A-29(b). Although it may have "show[n] the Superior Court a[] ground upon which enforcement of a judgment of the Superior Court would be stayed"--Maine's lack of personal jurisdiction--it failed to post "the same security for satisfaction of the judgment which is required in this State." Although not specifically advanced as one of defendant's contentions, we note that *N.J.S.A.* 2A:49A-27 provides that a properly domesticated foreign judgment

> has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a Superior Court of this State and may be enforced in the same manner.

Thus, a judgment debtor might argue that the obligation to post security required by *N.J.S.A.* 2A:49A-29(b) [***19] is "subject to the same procedures . . . and proceedings for . . . staying [] a judgment" in New Jersey.

We recognize that SeKap's challenge to Maine's jurisdiction must be initially brought in the Law Division. As we noted in *Sonntag,*

> Trial courts of sister states may inquire into defenses of lack of jurisdiction in the foreign court or fraud in procurement of the judgment, provided that those issues have not been litigated in the forum court.

> [*Sonntag, supra,* 374 N.J. Super. at 538, 865 A.2d 747]

Therefore, our standard governing the granting of a stay of enforcement of a money judgment on appeal is not applicable. *See R.* 2:9-5(a) (while the court may exercise its discretion to consider each request on its facts, absent a showing of good cause, the posting of a bond or cash is required); Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 2:9-5(a) (2007).

*R.* 4:50-1 allows for the granting of relief from a judgment or order "upon such terms as are just." In the context of an application to vacate a default judgment, the court's discretion [***20] must be liberally exercised. *Housing Authority of the Town of Morristown v. Little,* 135 N.J. 274, 283-84, 639 A.2d 286 (1994). [*241] We have held that absent "extraordinary circumstances," a court should not condition the vacation of a default judgment upon the debtor's posting of a bond. *Regional Const. Corp. v. Ray,* 364 N.J. Super. 534, 544, 837 A.2d 421 (App. Div. 2003). Rather, a "less burdensome alternative"--permitting the judgment to remain in place while execution is stayed--should be employed. *Ibid.*

We have once before, however, limited the scope of *R.* 4:50-1 in the context of its application to the UEFJA. In *Sonntag,* we concluded that despite the language of *N.J.S.A.* 2A:49A-27, relief under the rule was limited to New Jersey judgments. *Sonntag, supra,* 374 N.J. Super. at 539, 865 A.2d 747; *Pressler, supra,* comment 1 on *R.* 4:50-1 (2007). Since "the UEFJA . . . was not intended to alter any substantive rights of the parties," we construed *N.J.S.A.* 2A:49A-27 and *R.* 4:50-1(f) [***21] to permit a collateral challenge in New Jersey to a domesticated foreign judgment only on due process grounds. *Sonntag, supra,* 374 N.J. Super. at 539, 865 A.2d 747. Such a narrow construction was necessary to harmonize the UEFJA with the Full Faith and Credit Clause. *Id.* at 539-40, 865 A.2d 747

We now hold that in order to stay execution of a foreign judgment pursuant to the UEFJA, a judgment debtor must strictly comply with the statute's provisions and post "security for satisfaction of the judgment" before a

Case 3:00-cv-00835-CFD    Document 534-2    Filed 10/03/2007    Page 10 of 23

Page 6

392 N.J. Super. 227, *; 920 A.2d 667, **;
2007 N.J. Super. LEXIS 111, ***

stay is issued. Any other interpretation would lead to the [**676] anomalous result that a judgment debtor would be required to post security or obtain a stay from the rendering state while directly appealing the judgment in that state, *N.J.S.A.* 2A:49A-29(a), but not be required to post security to obtain a stay while it raised an identical due process defense in New Jersey. Such a result would give the debtor "more rights here . . . than the rendering state gives him there." *SCG Travel, supra,* 583 So. 2d 726. We are satisfied that the Legislature never intended such a result since it would fail to "effectuate [the UEFJA's] [***22] general purpose to make uniform the law of those states which enact it." *N.J.S.A.* 2A:49A-33. Furthermore, construing *N.J.S.A.* 2A:49A-27 and 29(b) in this manner assures "the [*242] constitutional right of a judgment creditor to enforcement of the judgment in a sister state . . . is not curtailed." *Sonntag, supra,* 374 N.J. Super. at 539, 865 A.2d 747

III.

Although we conclude that SeKap was not entitled to stay the enforcement of Maine's judgments because it failed to comply with *N.J.S.A.* 2A:49A-29(a) or (b), we nonetheless remand the question of whether the judgments are void for lack of personal jurisdiction to the trial court. In this regard, the motion judge did not consider the Bitos certification at the first hearing. On the motion for reconsideration, he may have considered the certification, but he mistakenly applied the wrong standard to this aspect of SeKap's cross-motion for summary judgment. He concluded that SeKap could not raise the jurisdictional argument until it "pa[id] the judgment, or deposit[ed] the security to stay the judgment pending resolution of the jurisdictional [***23] issue in the State of Maine." As noted above, consistent with Constitutional mandates and the UEFJA, the judgment debtor may challenge jurisdiction collaterally in New Jersey by raising a due process defense. *Sonntag, supra,* 374 N.J. Super. at 540, 865 A.2d 747

The motion judge mistakenly applied the requirements of *N.J.S.A.* 2A:49A-29 to deny all the relief sought by SeKap, including the underlying challenge it made to the validity of the foreign judgments. The UEFJA requires neither the direct appeal of the default judgments in Maine, nor the posting of adequate security in New Jersey, before SeKap may assert a due process challenge to the domesticated judgments. By its express terms, the requirements of *N.J.S.A.* 2A:49A-29 only apply to the debtor's request of a stay of execution.

Therefore, on remand, the judge must decide SeKap's jurisdictional challenge to Maine's judgments and determine whether Maine possessed adequate personal jurisdiction over SeKap. A remand is required because we cannot resolve the issue on the current record.

[*243] In opposing the jurisdictional argument made in SeKap's cross-motion for [***24] summary judgment, and its motion for reconsideration, Maine provided little by way of factual proofs that demonstrated its basis for asserting personal jurisdiction over the company. Attached to counsel's certification were two unreported decisions, one from a court in Maine, and one from a court in Ohio, neither of which involved SeKap as a party. Counsel also submitted a copy of a contract between SeKap and ITW Manufacturing, dated December 14, 2000, in which SeKap agreed to manufacture "Marathon" brand cigarettes "for the United States market."

"When a defendant asserts lack of personal jurisdiction, 'the plaintiff bears the burden of demonstrating that the defendant's contacts with the forum [**677] state are sufficient to confer personal jurisdiction on the court.'" *Jacobs v. Walt Disney World,* 309 N.J. Super. 443, 454, 707 A.2d 477 (App. Div. 1998) (quoting *Giangola v. Walt Disney World Co.,* 753 F. Supp. 148, 154 (D.N.J. 1990). As we noted in *Jacobs,* "In the early stages of a proceeding 'where the factual record consists of only pleadings and affidavits, plaintiff's burden is satisfied by establishing a prima facie case of jurisdiction.'" *Jacobs, supra,* 309 N.J. Super. at 454, 707 A.2d 477 [***25] (quoting *Cresswell v. Walt Disney Prod.,* 677 F. Supp. 284, 286 (M.D.Pa. 1987)). While determination of the issue may be made upon affidavits, our Court Rules specifically allow for oral testimony, depositions and cross-examination when affidavits do not suffice. *R.* 1:6-6; *see also Jacobs, supra,* 309 N.J. Super. at 454, 707 A.2d 477. In short, further discovery is permitted and may be necessary to resolve the jurisdictional issues. *Id.* at 462, 707 A.2d 477; *see also Makopoulos v. Walt Disney World, Inc.,* 221 N.J. Super. 513, 518, 535 A.2d 26 (App. Div. 1987) (remand for further discovery required to determine whether solicitation provided basis for personal jurisdiction), *certif. denied,* 117 N.J. 661, 569 A.2d 1354 (1989). Maine authority recognizes that an evidentiary hearing may be necessary when "written submissions raise disputed issues of fact" as to personal [*244] jurisdiction. *Dorf v. Complastik, Corp.,* 1999 ME 133, 735 A.2d 984, 989 (Me. 1999).

Discovery may be particularly useful when the relationship between a party and an affiliate must be explored. *Jacobs, supra,* 309 N.J. Super. at 456, 707 A.2d 477. [***26] Here, the relationship between SeKap and Denova might properly be the subject of "[a]dditional discovery [that] may establish by competent evidence the mechanics of the arrangement." *Id.* at 457, 707 A.2d 477. Likewise, SeKap should be entitled to challenge Maine's conclusory statements that SeKap "transacted business in the State of Maine" because it contracted to manufacture cigarettes "for the United States market."

392 N.J. Super. 227, *; 920 A.2d 667, **;
2007 N.J. Super. LEXIS 111, ***

IV.

In summary, we hold that the motion judge properly concluded that SeKap was not entitled to any stay of execution because it failed to post the security required by *N.J.S.A.* 2A:49A-29. We also conclude that on the record presented, SeKap's cross-motion for summary judgment was properly denied. We hold that the assertion of a "due process defense" to the domesticated judgment may be properly raised without the posting of any security and we remand the matter to the motion judge to consider SeKap's jurisdictional challenge. In remanding the matter to the trial court, we do not imply any particular resolution of the jurisdictional issue. We only hold that the current record makes resolution of the issue impossible. The parties [***27] shall advise the motion judge whether they wish to engage in jurisdictional discovery, or otherwise supplement the record on the issue. We leave to the sound discretion of the judge control over the nature and scope of any discovery requested.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

EXHIBIT 3

As to specific jurisdiction to grant post-conviction bail, it has been held that a trial court has no such authority in respect of a petition for certiorari to the United States Supreme Court. State v. Kaufman, 175 N.J. Super. 548 (Law Div. 1980).

Where the state intends to appeal a sentence pursuant to R. 2:9-3(d), post-conviction bail must be set within a reasonable time after the appeal is taken. State v. Sanders, 107 N.J. 609, 621 (1987).

As to revocation of bail pending appeal, see State v. Maccioli, 110 N.J. Super. 352 (Law Div. 1970). There, while defendants' appeals from gambling convictions were pending, they were indicted for subsequent gambling offenses and the prosecutor moved for bail revocation on the basis of the new indictments. The approach of the trial court in determining the motion was to hold an in camera hearing as prescribed by State v. Obstein, 52 N.J. 516 (1968), mod in part by State v. Williams, 93 N.J. 39 (1983), to determine therefrom whether a jury could reasonably find them guilty of the subsequent offenses. Having so concluded, it granted the motion.

### 2:9-5. Stay of Judgment in Civil Actions and in Contempts

**(a) Stay on Order; Bond or Cash Deposit. Except as otherwise provided by R. 1:10 (Contempt), neither an appeal, nor motion for leave to appeal, nor a proceeding for certification, nor any other proceeding in the matter shall stay proceedings in any court in a civil action or summary contempt proceeding, but a stay with or without terms may be ordered in any such action or proceeding in accordance with R. 2:9-5(b). If a stay is denied after conviction in a summary contempt proceeding, bail shall be allowed as provided by R. 2:9-4. A judgment or order in a civil action adjudicating liability for a sum of money or the rights or liabilities of parties in respect of property which is the subject of an appeal or certification proceedings shall be stayed only upon the posting of a bond pursuant to R. 2:9-6 or a cash deposit pursuant to R. 1:13-3(c) unless the court otherwise orders on good cause shown. Such posting or deposit may be ordered by the court as a condition for the stay of any other judgment or order in a civil action.**

**(b) Court to Which Motion Made. A motion for a stay in a civil action or contempt proceeding prior to the date of the oral argument in the appellate court or of submission to the appellate court for consideration without argument shall be made first to the court which entered the judgment or order. Thereafter the motion shall be made to the appellate court. If the motion is denied below, it may be made again to the appellate court; if granted below, the appellate court may entertain a motion to dissolve the stay. The grant or denial of a stay by the Appellate Division may be reviewed on motion to the Supreme Court on notice to the Appellate Division without taking an appeal to the Supreme Court. Following disposition in the Appellate Division and pending proceedings in the Supreme Court, a stay shall be sought in the first instance from the Appellate Division. Further relief from its order may be sought in the Supreme Court.**

Note: Source—R.R. 1:4-5, 1:4-6, 1:4-7, 1:10-6(b), 2:4-3 (first three sentences). Paragraph (b) amended July 14, 1972 to be effective September 5, 1972; paragraph (a) amended July 16, 1981 to be effective September 14, 1981; paragraph (b) amended November 1, 1985 to be effective January 2, 1986; paragraph (a) amended July 13, 1994 to be effective September 1, 1994.

### COMMENT
#### History and Analysis of Rule Amendments Online

1. Paragraph (a); Stay on Order; Bond or Cash Deposit.
2. Paragraph (b); Court to Which Motion Made.

**1. Paragraph (a); Stay on Order; Bond or Cash Deposit.** This rule is applicable only to appeals from the trial courts. Stays of appellate court judgments are governed by R. 2:11-3(d)

The filing of a motion for leave to appeal does not operate to automatically stay the order that is the subject of the motion or the proceedings below. See further Comment 1 on R. 2:5-6(a) (appeals from interlocutory actions).

As a general rule, the appellant's obligation to perform under the order appealed from is not automatically stayed by the filing of an appeal. D'Arc v. D'Arc, 175 N.J. Super. 598, 601 (App. Div. 1980), certif. den. 85 N.J. 487 (1980), cert. den. 451 U.S. 971 (1981); McNair v. McNair, 332 N.J. Super. 195, 198 (App. Div. 2000). But see Elizabeth Police Super. Off. Ass'n v. Elizabeth, 180 N.J. Super. 511, 520 (App. Div. 1981), noting that the generally accepted practice "is that a defendant responsible for payment of a money judgment which is rejected by an appealing plaintiff is not required to seek a stay of the judgment plaintiff rejects."

The intent of the rule is that the court should exercise its discretion in each case based on its own merits but that where the appeal is from a judgment or order for payment of a sum of money or which adjudicates rights and liabilities in respect of property, the stay must be supported by a bond or cash deposit unless the court otherwise orders for good cause shown. A bond or deposit may be required as a condition for the stay with respect to any other judgment or order.

The standards for grant by an appellate court of a stay of judgment other than a money judgment are the same as those applicable to the trial court, requiring a balancing of the equities including the factors of irreparable harm, existence of a meritorious issue and the likelihood of success. See generally, as to those standards, Crowe v. DeGioia, 90 N.J. 126, 133 (1982).

This rule, to the extent that it provides that the trial court judgment is effective despite the pendency of an appeal unless stayed, does not apply to Tax Court judgments requiring a refund to the taxpayer. N.J.S. 54:3-27.2, permitting the municipality to withhold the refund until it has exhausted its right to appeal, has been held to constitute an appropriate exercise of legislative power. See Universal Folding Box v. Hoboken, 362 N.J. Super. 429 (App. Div. 2003).

Judgments of contempt, as all other civil judgments, may be stayed only on motion and order. If a stay of a contempt judgment is not granted, however, the rule permits the contemnor to apply for bail pending appeal pursuant to R. 2:9-4. See further Comments on R. 1:10-1 and 1:10-2.

**2. Paragraph (b); Court to Which Motion Made.** Because it is impractical for the appellate court to deal with the merits of the question until all briefs are filed, the revised rule required all initial applications for a stay to be made to the court below until the appeal is set down for oral argument. Since appeals are argued only on request, see R. 2:11-2(b), the cutoff date includes the alternative of the date on which the appeal is submitted to the Appellate Division for consideration when no oral argument request has been made.

Pending proceedings in the Supreme Court respecting an Appellate Division judgment, a stay shall be first sought in the Appellate Division. See R. 2:9-3, similarly providing for criminal actions.

**2:9-6. Supersedeas Bond; Exceptions**

**(a) Supersedeas Bond. Except as otherwise provided in paragraph (c), the supersedeas bond shall be presented for approval to the court or agency from which the appeal is taken, or to the court to which certification is sought, and**

**2:9-6**                         RULES GOVERNING APPELLATE PRACTICE

shall have such surety or sureties as the court requires. Unless the court otherwise orders after notice on good cause shown, the bond shall be conditioned for the satisfaction of the judgment in full, together with interest and trial costs, and to satisfy fully such modification of judgment, additional interest and costs and damages as the appellate court may adjudge. When the judgment determines the disposition of the property in controversy or when such property is in the custody of the sheriff or when the proceeds of such property or a bond for its value is in the custody or control of the court below, the amount of the supersedeas bond shall be fixed at such sum only as will secure the damages recovered for the use and detention of the property, trial and appellate costs, and interest. In all other cases not specifically provided for herein the amount of the supersedeas bond shall be fixed by the court.

(b) **Appellants Excepted.** When an appeal is taken or certification sought by the State or any political subdivision thereof or any of their respective officers or agencies or by direction of any of the principal departments of the State and the operation or enforcement of a judgment or order is stayed, no bond, obligation or other security shall be required from the appellant.

(c) **Bail Forfeiture Appeals.** Simultaneous with the filing of notice of appeal in respect of a bail forfeiture judgment by or on behalf of an insurer, the appellant shall deposit the full amount of the judgment with the Clerk of the Superior Court in cash or by certified, cashiers or bank check. The court for good cause shown may allow the posting of a supersedeas bond in lieu of the cash deposit. Good cause, however, shall not be satisfied by an application to extend the time to locate the defendant or to stay payment of a forfeited bond, entry of a judgment, or preclusion from the bail registry maintained by the Superior Court.

Note: Source—R.R. 1:4-8(a) (c); paragraph (a) amended and paragraph (c) adopted July 28, 2004 to be effective September 1, 2004.

## COMMENT
### History and Analysis of Rule Amendments Online

By the terms of the rule, a supersedeas bond or cash deposit in lieu thereof is required, unless otherwise ordered by the court for good cause, to include a sufficient sum to cover all anticipated post-judgment interest. DiBenedetto v. Estate of DiBenedetto, 219 N.J. Super. 440, 444 (App. Div. 1987). Nevertheless a supersedeas bond given by a mortgagor appealing from a foreclosure judgment is not required to cover the mortgagee's damages other than interest resulting from the delay occasioned by the appeal. Hudson City Sav. Bank v. Hampton Gardens Ltd., 88 N.J. 16 (1981).

With respect to the standard of good cause shown for posting a bond securing less than the full judgment, see Rosato v. Penton, 182 N.J. Super. 493 (Law Div. 1981), where the defendant's carrier was permitted to post a bond in the amount of that portion covered by insurance. As to the balance, plaintiff was given leave to proceed with supplementary proceedings against the defendant pursuant to R. 4:59-1(e) and to seek further relief with respect to any disclosed assets. That holding was confirmed by Courvoisier v. Harley Davidson, 162 N.J. 153 (1999), which recognized the problem posed by the insured's bad faith claim against the insurer but declined to compel a so-called Rova Farms determination prior to permitting the insurer to secure only the portion of the judgment within its coverage. Where an insurer is posting bond, whether the amount posted should cover interest on the judgment is determined by the terms of the policy. See Courvoisier v. Harley Davidson, 162 N.J. at 167.

**604**

An appellant's cost in procuring and posting a supersedeas bond is not allowable, even if he ultimately prevails, as part of the taxed costs allowable pursuant to R. 2:11-5. Hirsch v. Tushill, Ltd., Inc., 110 N.J. 644, 650 (1988).

Paragraph (c) complies with N.J.S. 17:31-12, requiring a cash deposit rather than a supersedeas bond on bail forfeiture appeals unless the court, for defined good cause, otherwise permits. See also R. 1:13-3 and Comment 4 thereon respecting the bail forfeiture registry and removal therefrom, intended as a means for maintaining control over bail sureties.

## 2:9-7. Temporary Relief in Administrative Proceedings

On or after the filing with the Appellate Division of a notice of appeal or of a notice of motion for leave to appeal from a state administrative agency or officer, a motion for ad interim relief or for a stay of the decision, action or rule under review shall be made in the first instance to the agency whose order is appealed from and, if denied, to the Appellate Division.

Note: Source—R.R. 4:88-12(a) (first sentence); amended July 24, 1978 to be effective September 11, 1978; amended November 1, 1985 to be effective January 2, 1986.

### COMMENT
#### History and Analysis of Rule Amendments Online

As to the application of this rule, see Asbury Park Bd. of Educ. v. NJ DOE, 369 N.J. Super. 481, 486-487 (App. Div.), aff'd in part 180 N.J. 109 (2004), where the court noted that appellant school districts could have appealed from Department of Education's regulations and sought a stay of those regulations pursuant to this rule.

## 2:9-8. Temporary Relief in Emergent Matters

When necessary, temporary relief, stays, and emergency orders may be granted, with or without notice, by a single Justice of the Supreme Court or, if the matter is pending in the Appellate Division, by a single judge thereof, to remain in effect until the court acts upon the application. The Chief Justice shall, in accordance with a schedule to be filed with the Clerk of the Supreme Court, designate for each county at least one Justice to whom an application for such relief in the Supreme Court shall be made, if such Justice is available.

Note: Source—R.R. 1:1-5A, 2:4-3 (fourth sentence), 4:88-12(a) (second sentence), 4:88-12(b); amended January 22, 1974, effective immediately; amended July 29, 1977 to be effective September 6, 1977.

### COMMENT
#### History and Analysis of Rule Amendments Online

Applications to a single Justice of the Supreme Court are to be made to the Justice designated by the Chief Justice to hear such matters for each county. If that Justice is not, however, available, any available Justice may be applied to. The list of designations is maintained by the Supreme Court Clerk's office which should be applied to for that information.

With respect to the single judge of the Appellate Division to whom to apply, the Clerk of the Appellate Division should be consulted.

See the discussion of emergent applications in the appellate courts in Comment 4 (emergent motions) on R. 2:8-1. It is there noted that the emergent judge or justice should enter whatever order is appropriate under the circumstances, including the one-judge interim relief ("temporary relief, stays and emergency orders") as authorized by this Rule. See, e.g., Statewide Hi-Way v. Dept. of Transp., 283 N.J. Super. 223 (App. Div. 1995) cautioning as to the need to grant a

EXHIBIT 4

LEXSTAT N.J. STAT. § 2A:16-1

LexisNexis (TM) New Jersey Annotated Statutes

\*\*\* THIS SECTION IS CURRENT THROUGH NEW JERSEY 212TH LEGISLATURE \*\*\*
\*\*\* SECOND ANNUAL SESSION (P.L. 2007 CH. 176) & J.R. 11 \*\*\*
\*\*\* ANNOTATIONS CURRENT THROUGH SEPTEMBER 19, 2007 \*\*\*

TITLE 2A.  ADMINISTRATION OF CIVIL AND CRIMINAL JUSTICE
SUBTITLE 4.  CIVIL ACTIONS
CHAPTER 16.  JUDGMENTS
ARTICLE 1.  GENERAL PROVISIONS

**GO TO THE NEW JERSEY ANNOTATED STATUTES ARCHIVE DIRECTORY**

N.J. Stat. § 2A:16-1 (2007)

§ 2A:16-1. Effective from time of entry


   No judgment of the superior court shall affect or bind any real estate, but from the time of the actual entry of such judgment on the minutes or records of the court.

**HISTORY:** L. 1951 (1st SS), c. 344. Amended 1981, c. 388, § 1.

EXHIBIT 5

LEXSEE 35 B.R. 785

**In the Matter of: Lonnie L. CLIFTON and Janice Clifton, Debtors; Lonnie L. CLIFTON and Janice Clifton, Plaintiffs, v. Mary & Joseph TAVARES, National Budgeting Co., Garden Budgeting Corp., Sam Zimmerman, and Bamberger's/Macy, Inc., Defendants**

**Bankruptcy No. 82-01665**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**

**35 B.R. 785; 1983 Bankr. LEXIS 5285**

**October 6, 1983**

**NOTICE:** [**1] Adversary No. 82-0754-TS On Complaint to Avoid Fixing of Liens Pursuant to 11 U.S.C. § 522(f)(1)

**COUNSEL:** Welton C. Johnson, Red Bank, New Jersey, Attorney for Debtors.

Sol Rosenberg, P.A., by: Arthur J. Raimon, Clifton, New Jersey, Attorneys for Defendants, National Budgeting Co. & Garden Budgeting Corp.

**JUDGES:** Amel Stark, Bankruptcy Judge.

**OPINION BY:** STARK

**OPINION**

[*786] AMEL STARK, Bankruptcy Judge:

The debtors, Lonnie L. Clifton and Janice Clifton, have filed a complaint under 11 U.S.C. § 522(f)(1) to avoid judicial liens placed on their family residence by five creditors from December 1975 to March 1978. Two of the defendants contend that section 522(f) effects an unconstitutional taking of property without just compensation. In view of the recent decision of the United States Court of Appeals for the Third Circuit in *Commonwealth National Bank v. United States (In re Ashe)*, 712 F.2d 864 (3d Cir. 1983), I reject the defendants' argument and determine that the liens on the debtors' residence are void.

*Facts and Procedural History*

1. The debtors have owned their home in New Jersey subject to a mortgage since June 1973.

2. Defendant National Budgeting Co. obtained a judgment against the debtors which was docketed in the Superior Court of New Jersey (No. DJ-10, 047-75) on [**2] December 15, 1975, in the amount of $374.40 plus costs of suit, $90.36, for a total of $464.76; interest on the judgment from 1975 until the date of debtors' petition was $217.09. Brief for Defendants at 1. National filed a proof of claim on July 27, 1983, however, stating that the debtors owed it a total of only $217.09 as of the filing of the petition.

3. Defendant Garden Budgeting Corp. obtained a judgment against the debtors which was docketed in the Superior Court of New Jersey (No. DJ-21, 729-75) on April 12, 1976, in the amount of $1,175.49 plus $73.98 for costs of suit; interest on the judgment as of the date of petition was $709.05. Brief for Defendants at 1.

4. The three remaining defendants obtained judgments in the Superior Court in January 1977 (Mary and Joseph Tavares, No. L-4302-76) and in Monmouth County District Court in February 1978 (Bamberger's/Macy, Inc.) and March 1978 (Sam Zimmerman). The complaint does not state whether the county court judgments were docketed in the Superior Court and none of these three defendants filed answers.

5. Debtors filed a Petition under Chapter 7 of the United States Bankruptcy Code in this court on March 17, 1982.

6. Debtors [**3] listed their home as their only piece of real property, stated the market value as $31,000 and the mortgage amount as $29,000, and claimed an exemption for the equity up to $15,000 under 11 U.S.C. § 522(d)(1).

Case 3:00-cv-00835-CFD    Document 534-2    Filed 10/03/2007    Page 21 of 23

Page 2
35 B.R. 785, *; 1983 Bankr. LEXIS 5285, **

7. The trustee abandoned the debtors' family residence under 11 U.S.C. § 554(a) on May 25, 1983, because the amount of lien or liens on the property was $28,614.09.

8. On May 12 and June 9, 1982, the debtors filed a complaint and an amended complaint to avoid the judicial liens of the five defendants; National Budgeting Co. and Garden Budgeting Corp. answered, alleging an unconstitutional taking of property.

9. On June 28, 1983, creditors were notified that the payment of a dividend may be possible, and August 22, 1983 was set as the last day for filing claims pursuant to Bankruptcy Rule 302(e)(4). Only three creditors filed claims: National Budgeting Co. ($217.09), Garden Budgeting Corp. ($1,958.52), and the state of New Jersey ($519.83). The record does not reveal whether the newly-discovered property will pay for all of these debts.

*Background*

In New Jersey, a final judgment for a sum certain entered in the Superior Court of New Jersey, or a judgment of a County [**4] [*787] District Court that has been docketed with the Superior Court, is a lien upon all real property owned by the judgment debtor that is located within this state. N.J. Stat. Ann. § 2A:16-1, -36 (West 1952 & Supp. 1983); *In re Blease,* 605 F.2d 97, 98 (3d Cir. 1979); *In re Fornabai,* 227 F. Supp. 928, 930 (D.N.J. 1964). For the lien to be created, it is only necessary that the judgment be entered upon the records of the Superior Court. It is not necessary that a levy and execution be made upon the real property owned by the judgment debtors. *In re Blease,* 605 F.2d at 98; *In re Fornabai,* 227 F. Supp. at 930.

At the time the defendants had their judgments docketed in the Superior Court, therefore, each held a judgment lien on the debtors' home which entitled them at least to the proceeds remaining after sale of the property and payment of the mortgage. At that time, under New Jersey law and pre-Code bankruptcy law, the creditors may have retained their liens on the property even after the debtors' bankruptcy because New Jersey did not provide a homestead exemption, *see* N.J. Stat. Ann. § 2A:17-1,:17-17,:26-4 (West Supp. 1983), and judgment liens survived [**5] discharge in bankruptcy, [1] N.J. Stat. Ann. § 2A:16-49.1 (West Supp. 1983); *Trend Mills v. Socher,* 4 B.R. 465, 468 (D.N.J. 1980); *Furnival Machinery Co. v. King,* 142 N.J. Super. 251, 256, 361 A.2d 91 (App. Div. 1976). With the Bankruptcy Code of 1978, however, Congress altered the legal effect of judicial liens.

[1]    This lien may have been voidable under section 70c of the Bankruptcy Act, however, and

may be voidable under its successor, 11 U.S.C. § 544(a)(1). *See infra* p. 7. Neither party has addressed this issue.

A substantial purpose of the bankruptcy laws is to give a fresh start to persons burdened by overwhelming debt and to thereby return them to productivity. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 125 (1977); LoPucki, *A General Theory of the State Remedies/Bankruptcy System,* 1982 Wis. L. Rev. 311, 321-22 (1982). The primary means by which the bankruptcy laws do so is to discharge the debtor from debts which cannot be paid from the sum of his property. He is not required to turn [**6] over all of his property to creditors, however; to give the debtor a meaningful fresh start he is allowed to keep certain items of property, and the first such exemption listed under the federal scheme is the equity in his home up to $7,500. [2] 11 U.S.C. § 522(d)(1). A person may in effect waive his right to such exemptions prior to petitioning for relief by giving creditors a security interest in otherwise-exempt property. And as suggested above, prior to the Bankruptcy Code of 1978, creditors could also overcome the debtor's right to exemptions by acquiring a judicial lien on otherwise-exempt property. But in enacting the Bankruptcy Code, Congress determined that the importance of granting a debtor a fresh start outweighed the creditor's rights under a judicial lien. Section 522(f)(1) states that

the debtor may avoid the fixing of a [judicial] lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have [otherwise] been entitled.

11 U.S.C. § 522(f)(1).

This section would deprive the creditors of any right to execute on the debtors' property or to obtain proceeds from its sale. They contend [**7] that Congress lacks power to deprive them of their liens without paying them just compensation. [3]

[2]    States may opt out of the federal exemption scheme, 11 U.S.C. § 522(b)(1), but New Jersey has not done so.

[3]    "Nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

*Discussion*

The United States Supreme Court resolved the constitutional attack on a related subsection of section 522(f) by interpreting the statute to apply prospectively only. In

Case 3:00-cv-00835-CFD     Document 534-2     Filed 10/03/2007     Page 22 of 23

Page 3

35 B.R. 785, *; 1983 Bankr. LEXIS 5285, **

*United States v. Security Industrial Bank,* 459 U.S. 70, 103 S. Ct. 407, 74 L. Ed. 2d 235 (1982), creditors challenged section 522(f)(2) of the Bankruptcy Code, which [*788] allows a debtor in bankruptcy to void nonpossessory, nonpurchase-money security interests in household goods and certain other personal items. The court did not decide that retroactive application would violate the Taking Clause of the Fifth Amendment, but found substantial doubt of its constitutionality and therefore attempted to [**8] construe the statute to avoid the constitutional issue. *Security Industrial Bank,* 74 L. Ed. 2d at 243. Following the rule of *Holt v. Henley,* 232 U.S. 637, 58 L. Ed. 767, 34 S. Ct. 458 (1914), the Court held that:

> No bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress.
>
> *Security Industrial Bank,* 74 L. Ed. 2d at 245.

The legislative history of section 522(f) not only failed to show such an explicit command, but revealed that Congress had deleted such an explicit command from an earlier proposed version of the statute. *Id.* The Court therefore held that section 522(f)(2) could not be used to avoid security interests acquired by creditors prior to its enactment.

In *Commonwealth National Bank v. United States (In re Ashe),* 712 F.2d 864 (3d Cir. 1983), the United States Court of Appeals for the Third Circuit concluded that *Security Industrial Bank* did not bar retroactive application of section 522(f)(1) to judicial liens because of critical distinctions between judicial liens and nonpossessory security interests. Retroactive application caused [**9] no Fifth Amendment violation because the change in the law wrought by the Bankruptcy Code "adds nothing of constitutional dimensions, with respect to the avoidance of judicial liens." *In re Ashe,* 712 F.2d at 868. This holding was not essential to the judgment that the judicial lien in *Ashe* could be avoided, because the lien had not been obtained until after the enactment of the Bankruptcy Code. 712 F.2d at 868; *id.* at 876 (Becker, J., dissenting). But the court made clear that it relied primarily on the following reasoning to void the liens.

Under the Bankruptcy Act of 1898, and until the effect date of the Bankruptcy Code of 1978, judicial liens could be avoided by the trustee if they were obtained (1) less than four months before the filing of a petition and (2) while the debtor was insolvent. *See* Bankruptcy Act § 67(a), 66 Stat. 420, 427 (1952). On November 6, 1978, the enactment date of the Bankruptcy Code, any judicial lien obtained prior to July 6, 1978 or while the debtor was solvent was therefore unassailable if the debtor had not yet filed a petition. The Bankruptcy Code, however, allowed debtors to avoid these liens to the full extent of their exemptions [**10] by simply filing after October 1, 1979. The Third Circuit concluded in *Ashe* that this change in the creditors' property rights was constitutionally insignificant and therefore found no taking of property. *In re Ashe,* 712 F.2d at 868.

The court acknowledged that in order to apply section 522(f)(1) retroactively it was necessary to overcome the rule of statutory construction announced in *Holt v. Henley, supra,* barring retroactive application absent a clear command from Congress. The court found that "plainly *Holt v. Henley* does not speak at all to the appropriate treatment of judicial liens, " 712 F.2d at 867, for two reasons. First: Prior to 1898, a creditor holding a debtor's warrant of attorney to confess judgment could enter judgment against the debtor and obtain a lien on his property at any time prior to a petition for bankruptcy. Section 67f of the 1898 Act changed the law, permitting trustees to void such liens if obtained within four months before the petition, and the Supreme Court permitted this change to apply retroactively to warrants of attorney obtained before 1898. *Wilson Bros. v. Nelson,* 183 U.S. 191, 46 L. Ed. 147, 22 S. Ct. 74 (1901). This [**11] decision voided warrants of attorney rather than judicial liens, but the *Ashe* court concluded that changes in law relating to judicial liens could apply retroactively even without a clear and unmistakable declaration of intent by Congress. *In re Ashe,* 712 F.2d at 866.

[*789] Second: The Supreme Court decided in 1913 that Congress could set aside judicial liens for the benefit of the debtor's exemptions. *Chicago, B. & Q.R. Co. v. Hall,* 229 U.S. 511, 57 L. Ed. 1306, 33 S. Ct. 885 (1913). This case did not involve retroactive effect. The *Ashe* court concluded that when *Holt v. Henley* announced its rule of construction for bankruptcy laws the following year, it did not apply to laws relating to judicial liens because "their status, as subject to the plenary power of Congress, had already been settled." *In re Ashe,* 712 F.2d at 867.

The reasoning of *Ashe* applies equally to all judicial liens. It is therefore of no consequence that, unlike in this case the judicial liens in *Ashe* were acquired by the creditors through confession of judgment and default judgment in Pennsylvania.

An additional reason, apart from the holding in *Ashe,* may justify [**12] applying section 522(f)(1) retroactively: the defendants' liens may have been voidable under section 70c of the Bankruptcy Act. Under New Jersey law, a junior judgment lien may gain priority over a senior judgment lien by executing first. None of the

35 B.R. 785, *; 1983 Bankr. LEXIS 5285, **

defendants have levied and the trustee is treated as having levied on the day of the petition, thus voiding the defendants' liens. *In re Blease,* 605 F.2d 97 (1979). The creditors therefore lost nothing as a result of the enactment of the Bankruptcy Code. This was not the situation in *Ashe* because Pennsylvania, like most states, fixes priority among judgment liens on the day the judgments are docketed. *Philadelphia National Bank v. Taylor,* 421 Pa. 35, 218 A.2d 246 (1966); 46 Am.Jur.2d *Judgments* § 322 at 517 (1969).

Because the trustee concluded that the property would yield no value to the estate after payment of the mortgage and the debtors' exemptions, I conclude that the judicial liens at issue would impair the debtors' right to a $15,000 exemption. Section 522(f)(1) therefore voids all liens challenged by the plaintiff-debtors.

An order should be submitted consistent with this opinion.

Dated at Trenton, New [**13] Jersey, this 6th day of October, 1983.

AMEL STARK, Bankruptcy Judge