## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

INDYMAC BANK, F.S.B.

Plaintiff

**CIVIL ACTION NO.
3:00CV835 (CFD)**

V.

MOSTAFA REYAD AND WAFA REYAD
Defendants

**DATE: NOVEMBER 1, 2007**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF RENEWAL OF MOTION FOR EXEMPTIONS

This is the Memorandum of Law of Defendant Mostafa Reyad and Co-Defendant Wafa Reyad in Support of Renewal Motion For Exemption. The propriety of the instant motion is to narrow the issues, however, the necessity of the renewal drives from:

1. Plaintiff expands the supplemental proceeding for exemptions by pleading false allegations, conducting subpoena on third parties, and serving third parties for turnover without complying with Fed. R. Civ. P. Rule 19.

2. Plaintiff acted contrary to the law; C.G.S.Sec. 52-361(b)(e) "Pending the hearing, the execution against the property shall be stayed. Such property, other than earning, shall continue to be held by the person in possession subject to the determination of the Court", see, Second Circuit Order,

1

dated October 16, 2007 Indymac Mortgage Holdings Inc., Indymac Inc., v.

Mostafa Reyad and Wafa Reyad, Docket Number 07-1256, the Second

Circuit Affirmed the automatic stay is in place based on the Appellants'

filing of their motion for exemption in the District Court. However Plaintiff

has executed on New England Financial contract number V435143 in the

amount of $ 26,288, before the Court determination of the exemption.

Plaintiff is liable for this violation; the Court must Order Plaintiff to return

that amount to New England Financial.

3. Plaintiff acts contrary to Federal Rules of Civil Procedure, Rule 7(a), and

filed the equivalent of surreply to Defendants' motion for exemption, in

Plaintiff's reply memorandum in support of Plaintiff's motion for turnover

order dated August 28, 2007 (Doc # 527). In Plaintiff's latest reply at p. 3

claims incorrectly that Defendants have waived their right to claim

exemption for American Express and Aetna Annuity, because it were not

claimed within the twenty days prescribed by C.G.S.Sec. 52-361 (b)(d).

Plaintiff misread the subsection; it stipulates in part "Any claim with

respect to a personal property execution under section 52-356a shall be

returned within twenty days after levy on such property". There were no

levy on American Express and Aetna Annuity at the time of execution to

count the twenty days.

4. Defendants lack standing to defend the garnishees, however, it should be

noted, the response of the five (5) insurance companies are different; a)

Variable Annuity Life Insurance Company "VALIC", defends the annuity; b)

2

American Express IDS/Ameriprise refrained from a clear response; c)
Aetna/ING Life Insurance and Annuity Company, responded by a letter
showing its readiness to pay whatever paid to Defendants and more; d)
AXA Equitable Life Insurance Company did not file appearance and
simply waiting the outcome; and e) New England transferred all its funds
belong to Co-Defendant before the Court determination of exemption.
Thus, the only insurance company defends its action, is VALIC, cites the
law for exemption and filed its appearance, but VALIC did not file its
defense with the Court, moreover the reluctance of the other said
insurance companies creates unfairness and Defendants' right to
intervene, and furtherly to renew the motion for exemption, based on the
Second Circuit Ruling dated October 16, 2007.

## CLAIMS OF EXEMPTION

1. VALIC, the Variable Annuity Life Insurance Company account number
4550744, in the amount approximately $ 125,000.

As stated in the contract between Wafa Reyad and VALIC, and between The
State Government of New Jersey and VALIC, all the funds are protected from
Creditor(s) by 26 U.S.C. 457(b), the internal revenue code of 1986, and Conn.
Stat. 52-352(m) and 52-321a(a)(5), **see** Appendix # 1 attached hereto.
Plaintiff unprofessionally attacked VALIC and claims incorrectly that Wafa
Reyad increased her contribution over the protected amount pursuant to 26
U.S.C. 457(b). It necessitates renewal of motion for exemption. **See** Appendix

3

# 2 <u>attached hereto</u>, it shows that all Wafa Reyad's contributions to VALIC are
exempt by the Federal Statute.

2. Equitable, the Equitable Life Assurance Society of the United States,
Certificate number 98 501 734, in the amount approximately $ 150,000. A copy
of the Certificate <u>attached hereto</u>. The Certificate reads; the Owner and the
Annuitant is Wafa Reyad and the Beneficiary is Mostafa Reyad. Simply put, it is
variable insurance contract, like any other variable insurance contract. Indeed, it
is not a mere annuity, see section 6.01, the death benefit "The Annuity Account
Value or, if greater, the sum of all Contributions made . . . ", the Certificate is not
limited to its current value, e.g. Wafa Reyad contributed $ 145,000, the value of
the annuity could go down to be zero, like any other investment, the Certificate
insures the amount paid and it will never reduced by market conditions. A mere
annuity does not charge mortality expenses. The Certificate does charge
mortality expenses, see section 8.04. Accordingly, the Certificate is an insurance
contract subject to exemption pursuant to C.G.S. 38a-453 and 38a-454.
Insurance law is protecting the beneficiaries, with the exception of the intent,
express or implied to defraud creditors, there is no law to attach insurance policy
or contract, because the legislators consider the beneficial interest of the
beneficiary. To that extent, Defendants challenge Plaintiff to bring any authority,
from any State allow attaching an insurance contract as a claim for creditor(s).
**See** also **Slurszberg**. 15 N.J. Misc. 423, 192 A. 451(February 11, 1936)

> at [**6] (Life insurance is not, however, necessarily insurance for the full
> term of one's life. Some life policies are contracts of investments as well

4

as insurance)and furtherly, (It is a matter of common knowledge that the life insurance policies are termed "general", "ordinary", "old line", "paid up", "tontine", "assignment", "endowment", & c. dependent upon the terms and conditions of the different forms of contracts. The newer forms of policies and their broader provisions are designed to meet competition between the companies and to attract purchasers).

Connecticut law does not have insurance precedents except one case irrelevant to the instant action, Defendants citation of **Slurszberg**, supra is a guidance from a sister State, all insurance laws are almost the same in every State.

3. New England, New England Financial, a Metlife Affiliate, contract number V435143 in the amount approximately $ 27,000, is an insurance contract. However, Plaintiff violates C.G.S. 52-361b(e), the Second Circuit Order cites the provision, is equivalent to a mandate, Ordering Plaintiff to return the funds to New England Financial, and if Plaintiff fails to comply, it must be held in contempt of the Second Circuit Order, pursuant to C.G.S. 52-361b(g).

The evidence that New England contract, is an insurance contract is the deduction of mortality premiums, and the inclusion of the stipulation of exemption to claims of creditors, pursuant to C.G.S. 38a-453 and 38a-454, which empower insurance companies to stipulate the exemption.

4 & 5. American Express, account number, Ameriprise client number 1730 3973 6001 in the amount approximately $ 80,000, and AETNA,ING account number C072168-AN in the amount approximately $ 80,000. Defendants lack standing to claim any of these contracts, however, both

5

are insurance contracts exempt by 38a-453 and 38a-454, are not subject
to attachment or execution.

6 & 7. Equitable, the Equitable Life Assurance Society of the United States,
policy numbers PN 86 097 685 and PN 86 108 388, attached hereto, are
Life Insurance policies are protected from attachment or execution
pursuant to 38a-453 & 38a-454.

8 & 9. Bank of America, and Hudson United Bank each account is protected
from execution, only up to $ 1,000 each, pursuant to C.G.S. 52-352b (r),
Plaintiff should be ordered to return to each bank, the amount of $ 1,000
dollar or less.

The Defendant
Mostafa Reyad

By: _____

Mostafa Reyad
2077 Center Ave # 22D
Fort Lee, NJ 07024
Day Phone 203-325-4100

The Defendant
Wafa Reyad

By: _____

Wafa Reyad
2077 Center Ave # 22D
Fort Lee, NJ 07024
Home Phone 201-585-0562

## CERTIFICATE OF SERVICE

The undersigned certifies that he hand delivered on the captioned date or before a true and correct copy to Attorney David Schaefer at 271 Whitney Avenue, New Haven, CT 06511

_____
Mostafa Reyad

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INDYMAC BANK, F.S.B.

        Plaintiff

**CIVIL ACTION NO.
3:00CV835 (CFD)**

V.

MOSTAFA REYAD AND WAFA REYAD
        Defendants

**DATE: JULY 16, 2007**

## **TABLE OF ATTACHMENTS**

1. Day Pitney LLP Letter to Mostafa Reyad

2. Day Pitney LLP Letter Wafa Reyad

3. Equitable Certificate number 98 501 734

4. New England Contract number V 435143

5. Equitable Policy number 86 097 685

6. Equitable Policy number 86 108 388

 **DAY PITNEY** LLP

BOSTON  CONNECTICUT  NEW JERSEY  NEW YORK  WASHINGTON, DC

JOSHUA W. COHEN
Attorney at Law

One Audubon Street
New Haven, CT 06511
T: (203) 752 5008 F: (203) 752 5001
jwcohen@daypitney.com

July 3, 2007

## VIA FEDERAL EXPRESS

Mr. Mostafa Reyad
2077 Center Avenue
#22D
Fort Lee, NJ 07024

> Re:    *Indymac Bank, F.S.B. v. Mostafa Reyad, et al.*
>        Civil Action No. 3:00CV00835 (CFD)

Dear Mr. Reyad:

This office represents The Variable Annuity Life Insurance Company ("VALIC"), which has been served with a property execution in connection with the above-referenced action. In accordance with Connecticut statute, I enclose a copy of the execution along with an Exemption Claim Form (Property Execution) on which you can assert a claim to an exemption from execution. An exemption could protect from execution an interest you may have in property in the possession of VALIC. You have twenty (20) days from the date of service of the execution (up to and including July 16, 2007, by my calculation) to file the Exemption Claim Form with the District Court in Connecticut.

We are not and cannot serve as your counsel in this matter. However, VALIC has an interest in seeing that your exemption claims are asserted in a timely manner. Our research suggests that you may have a valid exemption claim on the ground that any property held by VALIC on behalf of you and Mrs. Reyad is a beneficial interest of Mrs. Reyad in a retirement plan maintained for her by The Borough of Fort Lee, New Jersey under Section 457(b) of the Internal Revenue Code of 1986, as amended. Pursuant to Sections 52-352b(m) and 52-321a(a)(5) of the Connecticut General Statutes, this interest may be exempt from execution as an interest in a "pension plan, annuity or insurance contract...established by federal or state statute for federal, state or municipal employees for the primary purpose of providing benefits upon retirement...." As you may have exemption rights that may be asserted with respect to the attached property execution, we suggest that you consult counsel to ensure a timely and proper assertion of these rights.

41792304 1

**P DAY PITNEY** LLP

Mr. Mostafa Reyad
July 3, 2007
Page 2

Please do not hesitate to contact me with any questions.

Very truly yours,

Joshua W. Cohen

JC/JWC
Enclosure

cc:     Callie Clark, Esq.
        Daniel FitzMaurice, Esq.

United States District Court
District of Connecticut
Filed
5/23/07

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**WRIT OF EXECUTION
(APPLICATION)**

INDYMAC BANK, F.S.B.

v.                                    Civil No. 3:00 CV 835 (CFD)

MOSTAFA REYAD AND
WAFA REYAD

ADDRESS OF COURT: **450 MAIN STREET, HARTFORD, CT 06103;**
DATE OF JUDGMENT: **APRIL 30, 2007**

NAME OF JUDGMENT CREDITOR MAKING APPLICATION:
**INDYMAC BANK, F.S.B.**

NAME OF JUDGMENT DEBTOR:
**MOSTAFA REYAD**

| | |
|---|---|
| 1. AMOUNT OF JUDGMENT: | $1,022,866.18 |
| 2. AMOUNT OF COSTS: | $ 0.00 |
| 3. AMOUNT OF INTEREST (if applicable): | $ 143,981.94 |
| 4. TOTAL JUDGMENT AND COSTS: | $1,166,848.12 |
| 5. TOTAL PAID ON ACCOUNT: | $ 0.00 |
| 6. TOTAL UNPAID JUDGMENT: | $1,166,848.12 |

SIGNED:

Name of Attorney or party making application

5/22/07
Date

Brenner, Saltzman & Wallman LLP

271 Whitney Avenue

New Haven, CT 06511

(203) 772-2600
Address and Phone Number

Clerk of the District Court

By
Deputy Clerk

(Rev. 10/27/04)

9X9675.DOC

## INSTRUCTIONS FOR WRIT OF EXECUTION
## (APPLICATION)

Name and mailing address of Judgment Creditor or attorney

> Rowena A. Moffett, Esq.
> Brenner, Saltzman & Wallman LLP
> 271 Whitney Avenue
> New Haven, CT 06511

**PLAINTIFF OR PLAINTIFF'S ATTORNEY** - Type or Print. Complete original and 4 copies of the Application. If judgment debtor is a natural person, attach copy of Exemption Form. Present original and 3 copies to Clerk of Court.

**CLERK** - Check the file to ensure that no stay of enforcement has been entered on the judgment, the time for filing an appeal of the judgment has expired, no appeal has been filed staying enforcement of the judgment and that the information provided on the application is correct. Sign original execution; original and copies to the applicant. Retain a copy for the file.

**MARSHAL** - Make execution as directed in the "Execution" section. Make return on signed original within four months from the date this execution issued. If judgment debtor is a natural person, attach exemption form to copy(ies) of execution served. Complete Section II on exemption claim form.

**PERSON IN POSSESSION OF PROPERTY OF JUDGMENT DEBTOR WHO IS A NATURAL PERSON** - Pursuant to Conn. Gen. Stat. § 52-356a,, you *are* required to mail to the judgment debtor (indicated on reverse side) at his last known address, postage prepaid, a copy of this property execution and the attached property execution exemption claim form. Complete Section III on exemption claim form before mailing it to judgment debtor. Twenty days from the date of the service of this property execution, you must deliver to the marshal property owned by the judgment debtor, EXCEPT (1) If an exemption claim has been filed with the court you shall withhold delivery of the property or payment of the debt owed by you subject to the determination of the exemption claim by the court and (2) if the debt owed by you to the judgment debtor is not due at the expiration of the twenty days, you shall pay the amount to the marshal when the debt becomes due if it becomes due within four months after the date of issuance of this execution.

**PERSON IN POSSESSION OF PROPERTY OF JUDGMENT DEBTOR WHO IS NOT A NATURAL PERSON** - Pursuant to Conn. Gen. Stat. § 52-356a, you are required to deliver to the marshal, property in your possession owned by the judgment debtor or pay to the marshal the amount of a debt owed by you to the judgment debtor, provided, if the debt owed by you is not yet payable, payment shall be made to the marshal when the debt becomes due within four months after the date of issuance of this execution.

9X9675.DOC

## EXECUTION

### TO ANY PROPER OFFICER:

Whereas on said date of Judgment the above-named Judgment Creditor recovered a Judgment against the Judgment Debtor before the Court for the amount stated, as appears of record, whereof execution remained to be done. These are therefore, BY AUTHORITY OF THE UNITED STATES DISTRICT COURT TO COMMAND YOU: That of the nonexempt goods of said Judgment Debtor within your precincts, you cause to be levied (the same being seized and sold as the law directs), paid and satisfied to said Judgment Creditor the total unpaid amount of said judgment, plus your own fees in the following manner: You shall personally serve a copy of this execution on the Judgment Debtor, and make demand for payment by the Judgment Debtor of all sums due under the money judgment. On failure of the Judgment Debtor to make immediate payment you are commanded to levy on nonexempt personal property of the Judgment Debtor, other than debts due from a banking institution or earnings, sufficient to satisfy the judgment as follows: If such nonexempt property is in the possession of the Judgment Debtor, you shall take such personal property into your possession as is accessible without breach of the peace. If the Judgment Debtor has left the state prior to service of this execution, or if the Judgment Debtor cannot be found with reasonable effort at the last known address in this state, you shall proceed with the levy after (1) making demand for payment at such last known address and on any agent or attorney of the Judgment Debtor of record with the United States District Court for the District of Connecticut and (2) making a reasonable effort to ascertain and provide notice of the execution at any forwarding address.

On failure of the Judgment Debtor to make immediate payment of all sums due under the money judgment, and upon your being unable to levy on nonexempt personal property of the Judgment Debtor in the Judgment Debtor's possession and, if the Judgment Debtor has left the state prior to service of this execution, upon your being unable to obtain payment sufficient to satisfy the judgment by making demand for payment at the Judgment Debtor's last known address in this state and on any agent or attorney of the Judgment Debtor of record with the United States District Court, District of Connecticut, you are also commanded to make demand upon any third person having possession of nonexempt personal property or debt due said Judgment Debtor sufficient to satisfy the total amount of Judgment unpaid pursuant to Conn. Gen. Stat. § 52-356a(4)(c). After having made such demand you are directed to serve two true and attested copies of this execution; with your doings endorsed thereon, on the third person upon whom such demand was made.

9X9675.DOC

HEREOF FAIL NOT, AND MAKE DUE RETURN OF THIS WRIT WITH YOUR DOINGS THEREON, ACCORDING TO LAW, WITHIN FOUR MONTHS HEREOF.

NOTICE: THE JUDGMENT DEBTOR'S NONEXEMPT PERSONAL PROPERTY IS SUBJECT TO LEVY, SEIZURE AND SALE BY A PROPER OFFICER PURSUANT TO THIS EXECUTION.

WITNESS THE HONORABLE

DATE: 6/26/01

UNITED STATES DISTRICT JUDGE
KEVIN E. ROWE

CLERK OF THE COURT

DEPUTY CLERK

## RETURN OF SERVICE

STATE OF CONNECTICUT :
: ss:
COUNTY OF :

On the _____ day of _____, 20___, then and there I duly served the foregoing application, order and execution on _____

by leaving with or at the usual place of abode of _____ a true and attested copy of the original application, order and execution.

Attest: _____
Proper Officer

_____
Title

9W9135.DOC

**EXEMPTION CLAIM FORM**
**PROPERTY EXECUTION**
JD-CV-5b  Rev. 8-06
C.G.S. 52-321a, 52-352b, 52-361a, 52-361b

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.ct.gov

CLOEXM





NAME AND MAILING ADDRESS OF JUDGMENT DEBTOR OR ATTORNEY
(To be completed by judgment creditor or judgment creditor's attorney)

Mostafa Reyad
2077 Center Ave.
#22 D
Fort Lee, NJ 07024

**INSTRUCTIONS**

TO JUDGMENT CREDITOR OR JUDGMENT
CREDITOR'S ATTORNEY: Complete section I below
and follow instructions on form JD-CV-5.
TO PROPER OFFICER: Complete section II below
and follow instructions on form JC-CV-5.
TO THIRD PERSON: Complete section III below and
follow instructions on form JD-CV-5.
TO JUDGMENT DEBTOR: Read section IV below
and complete section V if applicable.

**SECTION I** (Must be completed by judgment creditor or judgment creditor's attorney)
ADDRESS OF COURT (Number, street, town, zip code)   ☐ G.A.   ☐ J.D.   ☐ HOUSING SESSION
UNITED STATES DISTRICT COURT, 450 MAIN STREET, HARTFORD, CT 06103

| NAME OF CASE | DOCKET NO. |
|---|---|
| Indymac Bank F.S.B. v. Mostafa Reyad, et al. | 3:00 cv 835 (CFD) |

NAME OF JUDGMENT DEBTOR
Mostafa Reyad

**SECTION II** (Must be completed by proper officer)

| DATE OF SERVICE OF EXECUTION | NAME AND ADDRESS OF PROPER OFFICER | |
|---|---|---|
| NAME AND ADDRESS OF THIRD PERSON SERVED WITH EXECUTION (if any) | | TELEPHONE NO. (if known) |

**SECTION III** (Must be completed by third person served with execution (if any))
DATE EXECUTION MAILED TO JUDGMENT DEBTOR
July  3,  2007

**SECTION IV**                    **NOTICE TO JUDGMENT DEBTOR**

As a result of a judgment entered against you the attached execution has been issued against your personal property.
SOME OF YOUR PERSONAL PROPERTY MAY BE EXEMPT FROM EXECUTION -- Certain classes of personal property may be protected from execution by state statutes or other laws or regulations of this state or of the United States. A checklist and description of the most common classes of personal property of a natural person exempt from execution are set forth on page 2 of this form.

HOW TO CLAIM AN EXEMPTION ESTABLISHED BY LAW -- If you wish to claim that the property levied on by the levying officer is exempt by law from execution you must fill out and sign the Claim of Exemption on page 2 of this form and return this exemption claim form to the clerk of the Superior court at the above address. The form must be received by the clerk of the Superior Court within 20 days after levy on the property.

Upon receipt of this form, the court clerk will notify you and the judgment creditor of the date on which a hearing will be held by the court to determine the issues raised by your claim.

RIGHT TO REQUEST INSTALMENT PAYMENT ORDER -- Pursuant to section 52-356d of the general statutes, if you are a consumer judgment debtor, you may seek to have the court issue an instalment payment order with a provision that compliance with the order prevents a levy on your property. An instalment payment order is an order of the court that you pay a weekly amount to the judgment creditor until the judgment is satisfied.

"Consumer Judgment" means a money judgment of less than five thousand dollars against a natural person resulting from a debt or obligation incurred primarily for personal, family, or household purposes.

SETTING ASIDE THE JUDGMENT -- If the judgment was rendered against you because of your failure to appear in court, you may, pursuant to section 52-212 of the general statutes, within four months of the date judgment was rendered and upon belief that you have reasonable cause, move the court to set aside the judgment rendered against you.

FOR COURT USE ONLY

## SECTION V CLAIM OF EXEMPTION ESTABLISHED BY LAW

I, the judgment debtor, hereby claim and certify under penalty of false statement that the property described below is exempt from execution as follows:

| NAME AND ADDRESS OF PERSON HOLDING PROPERTY | TELEPHONE NO. |
|---|---|

PROPERTY CLAIMED TO BE EXEMPT

DESCRIBE BASIS FOR EXEMPTION AS ESTABLISHED BY LAW

| COMPLETE MAILING ADDRESS OF JUDGMENT DEBTOR | TELEPHONE NO. |
|---|---|

| SIGNED (Judgment debtor) | DATE SIGNED |
|---|---|

## SECTION VI NOTICE OF HEARING ON EXEMPTION/MODIFICATION CLAIM

| DATE OF HEARING | TIME OF HEARING | COURTROOM NO. | BY THE ASSISTANT CLERK |
|---|---|---|---|
| | M. | | |

## SECTION VII ORDER OF COURT

ORDERED that the following item(s) are exempt from execution:

| SIGNED (Judge, Magistrate, Assistant Clerk) | | DATE SIGNED |
|---|---|---|
| | BY ORDER OF THE COURT | |

## CHECKLIST AND DESCRIPTION OF COMMON EXEMPTIONS ALLOWED BY LAW (C.G.S. § 52-352b)

(a) Necessary apparel, bedding, foodstuffs, household furniture and appliances;
(b) Tools, books, instruments, farm animals and livestock feed, which are necessary to the exemptioner in the course of his or her occupation, profession, farming operation or farming partnership;
(c) Burial plot for the exemptioner and his or her immediate family;
(d) Public assistance payments and any wages earned by a public assistance recipient under an incentive earnings or similar program;
(e) Health and disability insurance payments;
(f) Health aids necessary to enable the exemptioner to work or to sustain health;
(g) Worker's compensation, social security, veterans and unemployment benefits;
(h) Court approved payments for child support;
(i) Arms and military equipment, uniforms or musical instruments owned by any member of the militia or armed forces of the United States;
(j) One motor vehicle to the value of one thousand five hundred dollars, provided such value shall be determined as the fair market value of the motor vehicle less the amount of all liens and security interests which encumber it.
(k) Wedding and engagement rings;
(l) Residential utility deposits for one residence and one residential security deposit;
(m) Any assets or interests of an exemptioner in, or payments received by the exemptioner from, a plan or arrangement described in section 52-321a;
(n) Alimony and support, other than child support, but only to the extent that wages are exempt from execution under general statute section 52-361a;
(o) An award under a crime reparations act;
(p) All benefits allowed by any association of persons in this state towards the support of any of its members incapacitated by sickness or infirmity from attending to his usual business; and
(q) All moneys due the exemptioner from any insurance company on any insurance policy issued on exempt property, to the same extent that the property was exempt.
(r) Any interest of the exemptioner in any property not to exceed in value one thousand dollars;
(s) Any interest of the exemptioner not to exceed in value four thousand dollars in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the exemptioner under which the insured is the exemptioner or an individual of whom the exemptioner is a dependent; and
(t) The homestead of the exemptioner to the value of seventy-five thousand dollars or, in the case of a money judgment arising out of services provided at a hospital, to the value of one hundred twenty-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it.
(u) Irrevocable transfers of money to an account held by a bona fide nonprofit debt adjuster licensed pursuant to sections 36a-655 to 36a-665 inclusive for the benefit of creditors of the exemptioner.

 **DAY PITNEY** LLP

BOSTON  CONNECTICUT  NEW JERSEY  NEW YORK  WASHINGTON, DC

JOSHUA W. COHEN
Attorney at Law

One Audubon Street
New Haven, CT 06511
T: (203) 752 5008 F: (203) 752 5001
jwcohen@daypitney.com

July 3, 2007

## VIA FEDERAL EXPRESS

Ms. Wafa Reyad
2077 Center Avenue
#22D
Fort Lee, NJ 07024

> Re:   Indymac Bank, F.S.B. v. Mostafa Reyad, et al.
>       Civil Action No. 3:00CV00835 (CFD)

Dear Ms. Reyad:

This office represents The Variable Annuity Life Insurance Company ("VALIC"), which has been served with a property execution in connection with the above-referenced action. In accordance with Connecticut statute, I enclose a copy of the execution along with an Exemption Claim Form (Property Execution) on which you can assert a claim to an exemption from execution. An exemption could protect from execution an interest you may have in property in the possession of VALIC. You have twenty (20) days from the date of service of the execution (up to and including July 16, 2007, by my calculation) to file the Exemption Claim Form with the District Court in Connecticut.

We are not and cannot serve as your counsel in this matter. However, VALIC has an interest in seeing that your exemption claims are asserted in a timely manner. Our research suggests that you may have a valid exemption claim on the ground that any property held by VALIC on behalf of you and Mr. Reyad is your beneficial interest in a retirement plan maintained for you by The Borough of Fort Lee, New Jersey under Section 457(b) of the Internal Revenue Code of 1986, as amended. Pursuant to Sections 52-352b(m) and 52-321a(a)(5) of the Connecticut General Statutes, your interest in the retirement account may be exempt from execution as an interest in a "pension plan, annuity or insurance contract...established by federal or state statute for federal, state or municipal employees for the primary purpose of providing benefits upon retirement...." As you may have exemption rights that may be asserted with respect to the attached property execution, we suggest that you consult counsel to ensure a timely and proper assertion of these rights.

41792312.1

## 𝔓 DAY PITNEY ʟʟᴘ

Ms. Wafa Reyad
July 3, 2007
Page 2

Please do not hesitate to contact me with any questions.

Very truly yours,

Joshua W. Cohen

JC/JWC
Enclosure

cc:    Callie Clark, Esq.
       Daniel FitzMaurice, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**WRIT OF EXECUTION**
**(APPLICATION)**

INDYMAC BANK, F.S.B.

v.                                          Civil No. 3:00 CV 835 (CFD)

MOSTAFA REYAD AND
WAFA REYAD

ADDRESS OF COURT: **450 MAIN STREET, HARTFORD, CT 06103;**
DATE OF JUDGMENT: **APRIL 30, 2007**

NAME OF JUDGMENT CREDITOR MAKING APPLICATION:
    **INDYMAC BANK, F.S.B.**

NAME OF JUDGMENT DEBTOR:
    **WAFA REYAD**

| | |
|---|---|
| 1. AMOUNT OF JUDGMENT: | $ 535,166.62 |
| 2. AMOUNT OF COSTS: | $ 0.00 |
| 3. AMOUNT OF INTEREST (if applicable): | $ 143,981.94 |
| 4. TOTAL JUDGMENT AND COSTS: | $ 679,148.56 |
| 5. TOTAL PAID ON ACCOUNT: | $ 0.00 |
| 6. TOTAL UNPAID JUDGMENT: | $ 679,148.56 |

SIGNED:

_____          _5/22/07_
Name of Attorney or party making application    Date

Brenner, Saltzman & Wallman LLP

271 Whitney Avenue

New Haven, CT 06511

(203) 772-2600
Address and Phone Number

True Copy
ATTEST:
KEVIN F. ROWE
Clerk U.S. District Court
By_____
   Deputy Clerk

(Rev. 10/27/04)

9W9135.DOC

## INSTRUCTIONS FOR WRIT OF EXECUTION
## (APPLICATION)

Name and mailing address of Judgment Creditor or attorney

> Rowena A. Moffett, Esq.
> Brenner, Saltzman & Wallman LLP
> 271 Whitney Avenue
> New Haven, CT 06511

PLAINTIFF OR PLAINTIFF'S ATTORNEY - Type or Print. Complete original and 4 copies of the Application. If judgment debtor is a natural person, attach copy of Exemption Form. Present original and 3 copies to Clerk of Court.

CLERK - Check the file to ensure that no stay of enforcement has been entered on the judgment, the time for filing an appeal of the judgment has expired, no appeal has been filed staying enforcement of the judgment and that the information provided on the application is correct. Sign original execution; original and copies to the applicant. Retain a copy for the file.

MARSHAL - Make execution as directed in the "Execution" section. Make return on signed original within four months from the date this execution issued. If judgment debtor is a natural person, attach exemption form to copy(ies) of execution served. Complete Section II on exemption claim form.

PERSON IN POSSESSION OF PROPERTY OF JUDGMENT DEBTOR WHO IS A NATURAL PERSON - Pursuant to Conn. Gen. Stat. § 52-356a,, you *are* required to mail to the judgment debtor (indicated on reverse side) at his last known address, postage prepaid, a copy of this property execution and the attached property execution exemption claim form. Complete Section III on exemption claim form before mailing it to judgment debtor. Twenty days from the date of the service of this property execution, you must deliver to the marshal property owned by the judgment debtor. EXCEPT (1) If an exemption claim has been filed with the court you shall withhold delivery of the property or payment of the debt owed by you subject to the determination of the exemption claim by the court and (2) if the debt owed by you to the judgment debtor is not due at the expiration of the twenty days, you shall pay the amount to the marshal when the debt becomes due if it becomes due within four months after the date of issuance of this execution.

PERSON IN POSSESSION OF PROPERTY OF JUDGMENT DEBTOR WHO IS NOT A NATURAL PERSON - Pursuant to Conn. Stat. § *52-356a,* you are required to deliver to the marshal, property in your possession owned by the judgment debtor or pay to the marshal the amount of a debt owed by you to the judgment debtor, provided, if the debt owed by you is not yet payable, payment shall be made to the marshal when the debt becomes due within four months after the date of issuance of this execution.

9W9135.DOC

## EXECUTION

### TO ANY PROPER OFFICER:

Whereas on said date of Judgment the above-named Judgment Creditor recovered a judgment against the Judgment Debtor before the Court for the amount stated, as appears of record, whereof execution remained to be done. These are therefore, BY AUTHORITY OF THE UNITED STATES DISTRICT COURT TO COMMAND YOU: That of the nonexempt goods of said Judgment Debtor within your precincts, you cause to be levied (the same being seized and sold as the law directs), paid and satisfied to said Judgment Creditor the total unpaid amount of said Judgment, plus your own fees in the following manner: You shall personally serve a copy of this execution on the Judgment Debtor, and make demand for payment by the Judgment Debtor of all sums due under the money judgment. On failure of the Judgment Debtor to make immediate payment you are commanded to levy on nonexempt personal property of the Judgment Debtor, other than debts due from a banking institution or earnings, sufficient to satisfy the judgment as follows: If such nonexempt property is in the possession of the Judgment Debtor, you shall take such personal property into your possession as is accessible without breach of the peace. If the Judgment Debtor has left the state prior to service of this execution, or if the Judgment Debtor cannot be found with reasonable effort at the last known address in this state, you shall proceed with the levy after (1) making demand for payment at such last known address and on any agent or attorney of the Judgment Debtor of record with the United States District Court for the District of Connecticut and (2) making a reasonable effort to ascertain and provide notice of the execution at any forwarding address.

On failure of the Judgment Debtor to make immediate payment of all sums due under the money judgment, and upon your being unable to levy on nonexempt personal property of the Judgment Debtor in the Judgment Debtor's possession and, if the Judgment Debtor has left the state prior to service of this execution, upon your being unable to obtain payment sufficient to satisfy the judgment by making demand for payment at the Judgment Debtor's last known address in this state and on any agent or attorney of the Judgment Debtor of record with the United States District Court, District of Connecticut, you are also commanded to make demand upon any third person having possession of nonexempt personal property or debt due said Judgment Debtor sufficient to satisfy the total amount of judgment unpaid pursuant to Conn. Gen. Stat. § 52-356a(4)(c). After having made such demand you are directed to serve two true and attested copies of this execution; with your doings endorsed thereon, on the third person upon whom such demand was made.

9W9135.DOC

HEREOF FAIL NOT, AND MAKE DUE RETURN OF THIS WRIT WITH YOUR
DOINGS THEREON, ACCORDING TO LAW, WITHIN FOUR MONTHS HEREOF.

NOTICE: THE JUDGMENT DEBTOR'S NONEXEMPT PERSONAL PROPERTY IS
SUBJECT TO LEVY, SEIZURE AND SALE BY A PROPER OFFICER PURSUANT TO
THIS EXECUTION.

WITNESS THE HONORABLE

DATE: 6/26/07

UNITED STATES DISTRICT JUDGE

KEVIN F. HOWAY
CLERK OF THE COURT

DEPUTY CLERK

RETURN OF SERVICE

STATE OF CONNECTICUT :
                      : ss:
COUNTY OF             :

On the _____ day of _____, 20__, then and there I duly served the

foregoing application, order and execution on _____

by leaving with or at the usual place of abode of _____ a true and

attested copy of the original application, order and execution.

Attest: _____
                 Proper Officer

_____
Title

9W9135.DOC

## EXEMPTION CLAIM FORM
### PROPERTY EXECUTION
JD-CV-5b Rev. 8-06
C.G.S. 52-321e, 52-352b, 52-361a, 62-361b

### STATE OF CONNECTICUT
### SUPERIOR COURT
www.jud.ct.gov

**CLOEXM**




NAME AND MAILING ADDRESS OF JUDGMENT DEBTOR OR ATTORNEY
*(To be completed by judgment creditor or judgment creditor's attorney)*

Wafa Royad
2077 Center Ave.
#22 D
Fort Lee, NJ 07024

**INSTRUCTIONS**

TO JUDGMENT CREDITOR OR JUDGMENT
CREDITOR'S ATTORNEY: *Complete section I below
and follow instructions on form JD-CV-5.*
TO PROPER OFFICER: *Complete section II below
and follow instructions on form JC-CV-5.*
TO THIRD PERSON: *Complete section III below and
follow instructions on form JD-CV-5.*
TO JUDGMENT DEBTOR: *Read section IV below
and complete section V if applicable.*

---

**SECTION I** *(Must be completed by judgment creditor or judgment creditor's attorney)*
ADDRESS OF COURT *(Number, street, town, zip code)*  ☐ G.A.  ☐ J.D.  ☐ HOUSING SESSION
UNITED STATES DISTRICT COURT, 450 MAIN STREET, HARTFORD, CT 06103

| NAME OF CASE | DOCKET NO. |
|---|---|
| Indymac Bank F.S.B. v. Mostafa Royad, et al. | 3:00 cv 835 (CFD) |

NAME OF JUDGMENT DEBTOR
Wafa Royad

**SECTION II** *(Must be completed by proper officer)*
DATE OF SERVICE OF EXECUTION | NAME AND ADDRESS OF PROPER OFFICER

NAME AND ADDRESS OF THIRD PERSON SERVED WITH EXECUTION *(If any)*    |  TELEPHONE NO. *(if known)*

**SECTION III** *(Must be completed by third person served with execution (if any))*
DATE EXECUTION MAILED TO JUDGMENT DEBTOR
July 3, 2007

**SECTION IV**                **NOTICE TO JUDGMENT DEBTOR**

As a result of a judgment entered against you the attached execution has been issued against your personal property.
SOME OF YOUR PERSONAL PROPERTY MAY BE EXEMPT FROM EXECUTION -- Certain classes of personal property may be protected from execution by state statutes or other laws or regulations of this state or of the United States. A checklist and description of the most common classes of personal property of a natural person exempt from execution are set forth on page 2 of this form.

HOW TO CLAIM AN EXEMPTION ESTABLISHED BY LAW -- If you wish to claim that the property levied on by the levying officer is exempt by law from execution you must fill out and sign the Claim of Exemption on page 2 of this form and return this exemption claim form to the clerk of the Superior court at the above address. The form must be received by the clerk of the Superior court within 20 days after levy on the property.

Upon receipt of this form, the court clerk will notify you and the judgment creditor of the date on which a hearing will be held by the court to determine the issues raised by your claim.

RIGHT TO REQUEST INSTALMENT PAYMENT ORDER -- Pursuant to section 52-356d of the general statutes, if you are a consumer judgment debtor, you may seek to have the court issue an instalment payment order with a provision that compliance with the order prevents a levy on your property. An instalment payment order is an order of the court that you pay a weekly amount to the judgment creditor until the judgment is satisfied.

"Consumer Judgment" means a money judgment of less than five thousand dollars against a natural person resulting from a debt or obligation incurred primarily for personal, family, or household purposes.

SETTING ASIDE THE JUDGMENT -- If the judgment was rendered against you because of your failure to appear in court, you may, pursuant to section 52-212 of the general statutes, within four months of the date judgment was rendered and upon belief that you have reasonable cause, move the court to set aside the judgment rendered against you.

*FOR COURT USE ONLY*

PAGE 1 OF 2                                          EXEMPTION CLAIM FORM

## SECTION V. CLAIM OF EXEMPTION ESTABLISHED BY LAW

I, the judgment debtor, hereby claim and certify under penalty of false statement that the property described below is exempt from execution as follows:

| NAME AND ADDRESS OF PERSON HOLDING PROPERTY | TELEPHONE NO. |
|---|---|
| | |

PROPERTY CLAIMED TO BE EXEMPT

DESCRIBE BASIS FOR EXEMPTION AS ESTABLISHED BY LAW

| COMPLETE MAILING ADDRESS OF JUDGMENT DEBTOR | TELEPHONE NO. |
|---|---|
| | |

| SIGNED (Judgment debtor) | DATE SIGNED |
|---|---|
| | |

## SECTION VI. NOTICE OF HEARING ON EXEMPTION/MODIFICATION CLAIM

| DATE OF HEARING | TIME OF HEARING | COURTROOM NO. | BY THE ASSISTANT CLERK |
|---|---|---|---|
| | M. | | |

## SECTION VII. ORDER OF COURT

ORDERED that the following item(s) are exempt from execution:

| SIGNED (Judge, Magistrate, Assistant Clerk) | | DATE SIGNED |
|---|---|---|
| | BY ORDER OF THE COURT | |

### CHECKLIST AND DESCRIPTION OF COMMON EXEMPTIONS ALLOWED BY LAW (C.G.S. § 52-352b)

(a) Necessary apparel, bedding, foodstuffs, household furniture and appliances;
(b) Tools, books, instruments, farm animals and livestock feed, which are necessary to the exemptioner in the course of his or her occupation, profession, farming operation or farming partnership;
(c) Burial plot for the exemptioner and his or her immediate family;
(d) Public assistance payments and any wages earned by a public assistance recipient under an incentive earnings or similar program;
(e) Health and disability insurance payments;
(f) Health aids necessary to enable the exemptioner to work or to sustain health;
(g) Worker's compensation, social security, veterans and unemployment benefits;
(h) Court approved payments for child support;
(i) Arms and military equipment, uniforms or musical instruments owned by any member of the militia or armed forces of the United States;
(j) One motor vehicle to the value of one thousand five hundred dollars, provided such value shall be determined as the fair market value of the motor vehicle less the amount of all liens and security interests which encumber it.
(k) Wedding and engagement rings;
(l) Residential utility deposits for one residence and one residential security deposit;
(m) Any assets or interests of an exemptioner in, or payments received by the exemptioner from, a plan or arrangement described in section 52-321a;
(n) Alimony and support, other than child support, but only to the extent that wages are exempt from execution under general statute section 52-361a;
(o) An award under a crime reparations act;
(p) All benefits allowed by any association of persons in this state towards the support of any of its members incapacitated by sickness or infirmity from attending to his usual business; and
(q) All moneys due the exemptioner from any insurance company on any insurance policy issued on exempt property, to the same extent that the property was exempt.
(r) Any interest of the exemptioner in any property not to exceed in value one thousand dollars;
(s) Any interest of the exemptioner not to exceed in value four thousand dollars in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the exemptioner under which the insured is the exemptioner or an individual of whom the exemptioner is a dependent; and
(t) The homestead of the exemptioner to the value of seventy-five thousand dollars or, in the case of a money judgment arising out of services provided at a hospital, to the value of one hundred twenty-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it.
(u) Irrevocable transfers of money to an account held by a bona fide nonprofit debt adjuster licensed pursuant to sections 36a-655 to 36a-665 inclusive for the benefit of creditors of the exemptioner.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**WRIT OF EXECUTION
(APPLICATION)**

INDYMAC BANK, F.S.B.

v.                                    Civil No. 3:00 CV 835 (CFD)

MOSTAFA REYAD AND
WAFA REYAD

ADDRESS OF COURT: **450 MAIN STREET, HARTFORD, CT 06103;**
DATE OF JUDGMENT: **APRIL 30, 2007**

NAME OF JUDGMENT CREDITOR MAKING APPLICATION:
**INDYMAC BANK, F.S.B.**

NAME OF JUDGMENT DEBTOR:
**MOSTAFA  REYAD**

| | |
|---|---|
| 1. AMOUNT OF JUDGMENT: | **$1,022,866.18** |
| 2. AMOUNT OF COSTS: | **$      0.00** |
| 3. AMOUNT OF INTEREST (if applicable): | **$  143,981.94** |
| 4. TOTAL JUDGMENT AND COSTS: | **$1,166,848.12** |
| 5. TOTAL PAID ON ACCOUNT: | **$      0.00** |
| 6. TOTAL UNPAID JUDGMENT: | **$1,166,848.12** |

SIGNED:

_____
Name of Attorney or party making application

**5/22/07**
Date

____Brenner, Saltzman & Wallman LLP____

____271 Whitney Avenue____

____New Haven, CT 06511____

____(203) 772-2600____
Address and Phone Number

A TRUE COPY
ATTEST:
SANFORD P. LEVINE STATE MARSHAL
AN INDIFFERENT PERSON

(Rev. 10/27/04)

9X9675.DOC

## INSTRUCTIONS FOR WRIT OF EXECUTION
### (APPLICATION)

Name and mailing address of Judgment Creditor or attorney

> Rowena A. Moffett, Esq.
> Brenner, Saltzman & Wallman LLP
> 271 Whitney Avenue
> New Haven, CT 06511

PLAINTIFF OR PLAINTIFF'S ATTORNEY - Type or Print. Complete original and 4 copies of the Application. If judgment debtor is a natural person, attach copy of Exemption Form. Present original and 3 copies to Clerk of Court.

CLERK - Check the file to ensure that no stay of enforcement has been entered on the judgment, the time for filing an appeal of the judgment has expired, no appeal has been filed staying enforcement of the judgment and that the information provided on the application is correct. Sign original execution; original and copies to the applicant. Retain a copy for the file.

MARSHAL - Make execution as directed in the "Execution" section. Make return on signed original within four months from the date this execution issued. If judgment debtor is a natural person, attach exemption form to copy(ies) of execution served. Complete Section II on exemption claim form.

PERSON IN POSSESSION OF PROPERTY OF JUDGMENT DEBTOR WHO IS A NATURAL PERSON - Pursuant to Conn. Gen. Stat. § 52-356a,, you *are* required to mail to the judgment debtor (indicated on reverse side) at his last known address, postage prepaid, a copy of this property execution and the attached property execution exemption claim form. Complete Section III on exemption claim form before mailing it to judgment debtor. Twenty days from the date of the service of this property execution, you must deliver to the marshal property owned by the judgment debtor. EXCEPT (1) If an exemption claim has been filed with the court you shall withhold delivery of the property or payment of the debt owed by you subject to the determination of the exemption claim by the court and (2) if the debt owed by you to the judgment debtor is not due at the expiration of the twenty days, you shall pay the amount to the marshal when the debt becomes due if it becomes due within four months after the date of issuance of this execution.

PERSON IN POSSESSION OF PROPERTY OF JUDGMENT DEBTOR WHO IS NOT A NATURAL PERSON - Pursuant to Conn. Gen. Stat. § *52-356a,* you *are* required to deliver to the marshal, property in your possession owned by the judgment debtor or pay to the marshal the amount of a debt owed by you to the judgment debtor, provided, if the debt owed by you is not yet payable, payment shall be made to the marshal when the debt becomes due within four months after the date of issuance of this execution.

9X9675.DOC

## EXECUTION

**TO ANY PROPER OFFICER:**

Whereas on said date of Judgment the above-named Judgment Creditor recovered a judgment against the Judgment Debtor before the Court for the amount stated, as appears of record, whereof execution remained to be done. These are therefore, BY AUTHORITY OF THE UNITED STATES DISTRICT COURT TO COMMAND YOU: That of the nonexempt goods of said Judgment Debtor within your precincts, you cause to be levied (the same being seized and sold as the law directs), paid and satisfied to said Judgment Creditor the total unpaid amount of said judgment, plus your own fees in the following manner: You shall personally serve a copy of this execution on the Judgment Debtor, and make demand for payment by the Judgment Debtor of all sums due under the money judgment. On failure of the Judgment Debtor to make immediate payment you are commanded to levy on nonexempt personal property of the Judgment Debtor, other than debts due from a banking institution or earnings, sufficient to satisfy the judgment as follows: If such nonexempt property is in the possession of the Judgment Debtor, you shall take such personal property into your possession as is accessible without breach of the peace. If the Judgment Debtor has left the state prior to service of this execution, or if the Judgment Debtor cannot be found with reasonable effort at the last known address in this state, you shall proceed with the levy after (1) making demand for payment at such last known address and on any agent or attorney of the Judgment Debtor of record with the United States District Court for the District of Connecticut and (2) making a reasonable effort to ascertain and provide notice of the execution at any forwarding address.

On failure of the Judgment Debtor to make immediate payment of all sums due under the money judgment, and upon your being unable to levy on nonexempt personal property of the Judgment Debtor in the Judgment Debtor's possession and, if the Judgment Debtor has left the state prior to service of this execution, upon your being unable to obtain payment sufficient to satisfy the judgment by making demand for payment at the Judgment Debtor's last known address in this state and on any agent or attorney of the Judgment Debtor of record with the United States District Court, District of Connecticut, you are also commanded to make demand upon any third person having possession of nonexempt personal property or debt due said Judgment Debtor sufficient to satisfy the total amount of judgment unpaid pursuant to Conn. Gen. Stat. § 52-356a(4)(c). After having made such demand you are directed to serve two true and attested copies of this execution; with your doings endorsed thereon, on the third person upon whom such demand was made.

HEREOF FAIL NOT, AND MAKE DUE RETURN OF THIS WRIT WITH YOUR DOINGS THEREON, ACCORDING TO LAW, WITHIN FOUR MONTHS HEREOF.

NOTICE:    THE JUDGMENT DEBTOR'S NONEXEMPT PERSONAL PROPERTY IS SUBJECT TO LEVY, SEIZURE AND SALE BY A PROPER OFFICER PURSUANT TO THIS EXECUTION.

WITNESS THE HONORABLE

DATE: _6/26/01_    _____
UNITED STATES DISTRICT JUDGE
KEVIN F. ROWE
CLERK OF THE COURT

_PR usile_
DEPUTY CLERK

**RETURN OF SERVICE**

STATE OF CONNECTICUT    :
                        :    ss:
COUNTY OF               :

On the _____ day of _____, 20__, then and there I duly served the

foregoing application, order and execution on _____

by leaving with or at the usual place of abode of _____ a true and

attested copy of the original application, order and execution.

Attest: _____
                    **Proper Officer**


_____
**Title**

**EXEMPTION CLAIM FORM
PROPERTY EXECUTION**

JD-CV-5b  Rev. 8-06
C.G.S. 52-321a, 52-352b, 52-361a, 52-361b

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

CLOEXM





| NAME AND MAILING ADDRESS OF JUDGMENT DEBTOR OR ATTORNEY<br>*(To be completed by judgment creditor or judgment creditor's attorney)* | INSTRUCTIONS |
|---|---|
| Mostafa Reyad<br>2077 Center Ave.<br>#22 D<br>Fort Lee, NJ 07024 | TO JUDGMENT CREDITOR OR JUDGMENT<br>CREDITOR'S ATTORNEY: *Complete section I below<br>and follow instructions on form JD-CV-5.*<br>TO PROPER OFFICER: *Complete section II below<br>and follow instructions on form JC-CV-5.*<br>TO THIRD PERSON: *Complete section III below and<br>follow instructions on form JD-CV-5.*<br>TO JUDGMENT DEBTOR: *Read section IV below<br>and complete section V if applicable.* |

**SECTION I** *(Must be completed by judgment creditor or judgment creditor's attorney)*

ADDRESS OF COURT *(Number, street, town, zip code)*      ☐ G.A.   ☐ J.D.   ☐ HOUSING SESSION

UNITED STATES DISTRICT COURT, 450 MAIN STREET, HARTFORD, CT 06103

| NAME OF CASE | DOCKET NO. |
|---|---|
| Indymac Bank F.S.B. v. Mostafa Reyad, et al. | 3:00 cv 835 (CFD) |

NAME OF JUDGMENT DEBTOR

**Mostafa Reyad**

**SECTION II** *(Must be completed by proper officer)*

| DATE OF SERVICE OF EXECUTION | NAME AND ADDRESS OF PROPER OFFICER |
|---|---|

| NAME AND ADDRESS OF THIRD PERSON SERVED WITH EXECUTION *(if any)* | TELEPHONE NO. *(if known)* |
|---|---|

**SECTION III** *(Must be completed by third person served with execution (if any))*

DATE EXECUTION MAILED TO JUDGMENT DEBTOR

**SECTION IV**                          **NOTICE TO JUDGMENT DEBTOR**

As a result of a judgment entered against you the attached execution has been issued against your personal property. SOME OF YOUR PERSONAL PROPERTY MAY BE EXEMPT FROM EXECUTION -- Certain classes of personal property may be protected from execution by state statutes or other laws or regulations of this state or of the United States. A checklist and description of the most common classes of personal property of a natural person exempt from execution are set forth on page 2 of this form.

HOW TO CLAIM AN EXEMPTION ESTABLISHED BY LAW -- If you wish to claim that the property levied on by the levying officer is exempt by law from execution you must fill out and sign the Claim of Exemption on page 2 of this form and return this exemption claim form to the clerk of the Superior court at the above address. **The form must be received by the clerk of the Superior Court within 20 days after levy on the property.**

Upon receipt of this form, the court clerk will notify you and the judgment creditor of the date on which a hearing will be held by the court to determine the issues raised by your claim.

RIGHT TO REQUEST INSTALMENT PAYMENT ORDER -- Pursuant to section 52-356d of the general statutes, if you are a consumer judgment debtor, you may seek to have the court issue an instalment payment order with a provision that compliance with the order prevents a levy on your property. An instalment payment order is an order of the court that you pay a weekly amount to the judgment creditor until the judgment is satisfied.

"Consumer Judgment" means a money judgment of less than five thousand dollars against a natural person resulting from a debt or obligation incurred primarily for personal, family, or household purposes.

SETTING ASIDE THE JUDGMENT -- If the judgment was rendered against you because of your failure to appear in court, you may, pursuant to section 52-212 of the general statutes, within four months of the date judgment was rendered and upon belief that you have reasonable cause, move the court to set aside the judgment rendered against you.

| *FOR COURT USE ONLY* |
|---|
| |

## SECTION V       CLAIM OF EXEMPTION ESTABLISHED BY LAW

I, the judgment debtor, hereby claim and certify under penalty of false statement that the property described below is exempt from execution as follows:

| NAME AND ADDRESS OF PERSON HOLDING PROPERTY | TELEPHONE NO. |
|---|---|

PROPERTY CLAIMED TO BE EXEMPT

DESCRIBE BASIS FOR EXEMPTION AS ESTABLISHED BY LAW

| COMPLETE MAILING ADDRESS OF JUDGMENT DEBTOR | TELEPHONE NO. |
|---|---|

| SIGNED *(Judgment debtor)* | DATE SIGNED |
|---|---|

## SECTION VI      NOTICE OF HEARING ON EXEMPTION/MODIFICATION CLAIM

| DATE OF HEARING | TIME OF HEARING | COURTROOM NO. | BY THE ASSISTANT CLERK |
|---|---|---|---|
| | M. | | |

## SECTION VII      ORDER OF COURT

ORDERED that the following item(s) are exempt from execution:

| SIGNED *(Judge, Magistrate, Assistant Clerk)* | DATE SIGNED |
|---|---|
| BY ORDER OF THE COURT | |

## CHECKLIST AND DESCRIPTION OF COMMON EXEMPTIONS ALLOWED BY LAW *(C.G.S. § 52-352b)*

(a) Necessary apparel, bedding, foodstuffs, household furniture and appliances;

(b) Tools, books, instruments, farm animals and livestock feed, which are necessary to the exemptioner in the course of his or her occupation, profession, farming operation or farming partnership;

(c) Burial plot for the exemptioner and his or her immediate family;

(d) Public assistance payments and any wages earned by a public assistance recipient under an incentive earnings or similar program;

(e) Health and disability insurance payments;

(f) Health aids necessary to enable the exemptioner to work or to sustain health;

(g) Worker's compensation, social security, veterans and unemployment benefits;

(h) Court approved payments for child support;

(i) Arms and military equipment, uniforms or musical instruments owned by any member of the militia or armed forces of the United States;

(j) One motor vehicle to the value of one thousand five hundred dollars, provided such value shall be determined as the fair market value of the motor vehicle less the amount of all liens and security interests which encumber it.

(k) Wedding and engagement rings;

(l) Residential utility deposits for one residence and one residential security deposit;

(m) Any assets or interests of an exemptioner in, or payments received by the exemptioner from, a plan or arrangement described in section 52-321a;

(n) Alimony and support, other than child support, but only to the extent that wages are exempt from execution under general statute section 52-361a;

(o) An award under a crime reparations act;

(p) All benefits allowed by any association of persons in this state towards the support of any of its members incapacitated by sickness or infirmity from attending to his usual business; and

(q) All moneys due the exemptioner from any insurance company on any insurance policy issued on exempt property, to the same extent that the property was exempt.

(r) Any interest of the exemptioner in any property not to exceed in value one thousand dollars;

(s) Any interest of the exemptioner not to exceed in value four thousand dollars in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the exemptioner under which the insured is the exemptioner or an individual of whom the exemptioner is a dependent; and

(t) The homestead of the exemptioner to the value of seventy-five thousand dollars or, in the case of a money judgment arising out of services provided at a hospital, to the value of one hundred twenty-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it.

(u) Irrevocable transfers of money to an account held by a bona fide nonprofit debt adjuster licensed pursuant to sections 36a-655 to 36a-665 inclusive for the benefit of creditors of the exemptioner.

Owner:  WAFA REYAD

Annuitant:  WAFA REYAD

Certificate Number:  98 501 734

Issue Date:  MAR 25, 1998

Contract Date:  MAR 24, 1998

**THE**
# EQUITABLE
LIFE ASSURANCE SOCIETY OF THE U.S.

*Member of the Global* **AXA** *Group*

## CERTIFICATE

### The Equitable Life Assurance Society of the United States
("Equitable")

Processing Office: Individual Annuity Center, P.O. Box 2996, G.P.O.
New York, New York 10116-2996

This is the Certificate which is issued under the terms of the Contract defined in Section 1.09. This Certificate is issued in return for the application for coverage under the Contract and the Contributions to be made to us under the Contract.

In this Certificate, "we", "our" and "us" mean Equitable. "You" and "your" mean the Owner.

We will provide the benefits and other rights pursuant to the terms of this Certificate.

**TEN DAYS TO CANCEL** - Not later than ten days after you receive this Certificate, you may return it to us. We will cancel it and refund any Contribution made to us.

**New York,**

**THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES**

President and Chief Executive Officer

Vice President, Secretary and
Associate General Counsel

**THE PORTION OF ANNUITY ACCOUNT VALUE HELD IN THE SEPARATE ACCOUNT MAY INCREASE OR DECREASE IN VALUE (SEE PART II OF THIS CERTIFICATE).**

94ICA

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| Part I | - | DEFINITIONS | 3 |
| Part II | - | INVESTMENT OPTIONS | 6 |
| Part III | - | CONTRIBUTIONS AND ALLOCATIONS | 10 |
| Part IV | - | TRANSFERS AMONG INVESTMENT OPTIONS | 11 |
| Part V | - | WITHDRAWALS AND TERMINATION | 12 |
| Part VI | - | DEATH BENEFITS | 13 |
| Part VII | - | ANNUITY BENEFITS | 14 |
| Part VIII | - | CHARGES | 17 |
| Part IX | - | GENERAL PROVISIONS | 19 |
| TABLE OF GUARANTEED ANNUITY PAYMENTS | | | 21 |

DATA

## PART I - DEFINITIONS

### SECTION 1.01 ANNUITANT

"Annuitant" means the individual shown as such in the Data pages, or any successor Annuitant.

### SECTION 1.02 ANNUITY ACCOUNT VALUE

"Annuity Account Value" means the sum of the amounts held for you in the Investment Options.

### SECTION 1.03 ANNUITY BENEFIT

"Annuity Benefit" means a benefit payable by us as described in Part VII.

### SECTION 1.04 ANNUITY COMMENCEMENT DATE

"Annuity Commencement Date" means the date on which annuity payments are to commence as described in Section 7.03. Such date is the date shown in the Data pages and is subject to change as described in Section 7.03.

### SECTION 1.05 BUSINESS DAY

A "Business Day" is any day on which we are open and the New York Stock Exchange is open for trading, or any other day specified in the Data pages. Our Business Day ends at 4:00 p.m., Eastern time, or such other time as we state in writing to you.

### SECTION 1.06 CASH VALUE

"Cash Value" means an amount equal to the Annuity Account Value, less any charges that apply as described in Part VIII and any charges that may apply as described in any applicable Endorsement(s).

### SECTION 1.07 CERTIFICATE

"Certificate" means this certificate including the Data pages and any endorsement(s). It is a summary of the Contract terms which affect you.

### SECTION 1.08 CODE

"Code" means the Internal Revenue Code of 1986, as amended at any time, or any corresponding provisions of prior or subsequent United States revenue laws.

### SECTION 1.09 CONTRACT

"Contract" means the Group Annuity Contract named in the Data pages. A copy of the Contract is on file with us. You may ask to see it at any reasonable time.

## SECTION 1.10 CONTRACT DATE

"Contract Date" means the earlier of (a) the date on which the Annuitant is enrolled under the Contract according to our enrollment procedures and (b) the date of enrollment under a prior Contract. Such date is shown in the Data pages.

## SECTION 1.11 CONTRACT YEAR

"Contract Year" means the twelve month period starting on (i) the Contract Date and (ii) each anniversary of the Contract Date, unless we agree to another period.

## SECTION 1.12 CONTRIBUTION

"Contribution" means a payment made to us under the Contract. See Section 3.01.

## SECTION 1.13 EMPLOYER

"Employer" means, if applicable, an employer as defined in an endorsement hereto.

## SECTION 1.14 GUARANTEED INTEREST RATE

"Guaranteed Interest Rate" means the effective annual rate(s) at which interest accrues on amounts in the Guaranteed Interest Account.

## SECTION 1.15 INVESTMENT FUND

"Investment Fund" means a sub-fund of a Separate Account. An Investment Fund may invest its assets in a separate class (or series) or shares of a specified trust or investment company where each class (or series) represents a separate portfolio in such trust or investment company.

## SECTION 1.16 INVESTMENT OPTION

"Investment Option" means the Guaranteed Interest Account, a Separate Account, or an Investment Fund of a Separate Account or, if described in an Endorsement hereto, each Guarantee Period in the Guaranteed Period Account (Separate Account No. 46).

## SECTION 1.17 OWNER

"Owner" means the person or entity shown as such in the Data pages, or any successor owner.

## SECTION 1.18 PLAN

"Plan" means, if applicable, the annuity program sponsored by the Employer and as may be defined in an endorsement hereto.

## SECTION 1.19 PRIOR CONTRACT

"Prior Contract" means another contract or certificate issued by us and from which the Owner and we have agreed to transfer amounts to this Contract.

## SECTION 1.20 PROCESSING DATE

"Processing Date" means the day(s) we deduct charges from the Annuity Account Value. The Data pages show how often a Processing Date will occur.

## SECTION 1.21 PROCESSING OFFICE

"Processing Office" means the Equitable administrative office shown on the cover page of this Certificate, or such other location we may state upon written notice to you.

## SECTION 1.22 SEPARATE ACCOUNT

"Separate Account" means any of the Separate Accounts (except our Separate Account No. 46) described or referred to in Sections 2.02 and 2.05.

## SECTION 1.23 TRANSACTION DATE

The Transaction Date is the Business Day we receive at the Processing Office a Contribution or a transaction request providing the information we need. Transaction requests must be in a form acceptable to us.

# PART II · INVESTMENT OPTIONS

## SECTION 2.01 GUARANTEED INTEREST ACCOUNT

Any amount held in the Guaranteed Interest Account becomes part of our general assets, which support the guarantees of the Contract and other contracts.

The amount in such Account at any time is equal to:

- all amounts that have been allocated or transferred to such Account, plus

- the amount of any interest credited, less

- all amounts that have been withdrawn (including charges) or transferred from such Account.

We will credit the amount held in such Account with interest at effective annual rates that we set. We will also set a minimum Guaranteed Interest Rate that will remain in effect through a stated twelve-month period or a calendar year. The Data pages show the initial Rate(s) to apply.

We guarantee that any rate so set after your Contract Date will never be less than the minimum rate shown in the Data pages.

## SECTION 2.02 SEPARATE ACCOUNT

We have established the Separate Account(s) and maintain such Account(s) in accordance with the laws of New York State. Income, realized and unrealized gains and losses from the assets of the Separate Account(s) are credited to or charged against it without regard to our other income, gains or losses. Assets are placed in the Separate Account(s) to support the Contract and other variable annuity contracts and certificates. Assets may be placed in the Separate Account(s) for other purposes, but not to support contracts or policies other than variable annuities and variable life insurance.

The Data pages set forth the Separate Account(s). A Separate Account may be subdivided into Investment Funds.

The assets of a Separate Account are our property. The portion of such assets equal to the reserves and other contract liabilities will not be chargeable with liabilities which arise out of any other business we conduct. We may transfer assets of a Separate Account in excess of the reserves and other liabilities with respect to such Account to another Separate Account or to our general account.

We may, at our discretion, invest Separate Account assets in any investment permitted by applicable law. We may rely conclusively on the opinion of counsel (including counsel in our employ) as to what investments we may make as law permits.

No. 041CA

# SECTION 2.03 SEPARATE ACCOUNT ACCUMULATION UNITS AND UNIT VALUES

The amount you have in an Investment Fund at any time is equal to the number of Accumulation Units you have in that Fund multiplied by the Fund's Accumulation Unit Value at that time. "Accumulation Unit" means a unit which is purchased in a Separate Account. "Accumulation Unit Value" means the dollar value of each Accumulation Unit in a Separate Account on a given date. (If Investment Funds apply as described in Section 2.02, then the terms of this Section 2.03 apply separately to each Fund, unless otherwise stated).

Amounts allocated or transferred to a Separate Account are used to purchase Accumulation Units of that Account. Units are redeemed when amounts are deducted, transferred or withdrawn.

The number of Accumulation Units you have in a Separate Account at any time is equal to the number of Accumulation Units purchased minus the number of Units redeemed in that Account up to that time. The number of Accumulation Units purchased or redeemed in a transaction is equal to the dollar amount of the transaction divided by the Account's Accumulation Unit Value for that Transaction Date.

We determine Accumulation Unit Values for each Separate Account for each Valuation Period. A "Valuation Period" is each Business Day together with any consecutive preceding non-business days. For example, for each Monday which is a Business Day, the preceding Saturday and Sunday will be included to equal a three-day Valuation Period.

Unless the following paragraph applies, the Accumulation Unit Value for a Separate Account for any Valuation Period is equal to the Accumulation Unit Value for the immediately preceding Valuation Period multiplied by the ratio of values "(i)" and "(ii)". Value "(i)" is the value of the Separate Account at the close of business at the end of the current Valuation Period, before any amounts are allocated to or withdrawn from the Separate Account in that Period. Value "(ii)" is the value of the Separate Account at the close of business at the end of the preceding Valuation Period, after all allocations and withdrawals were made for that Period. For this purpose, "value of the Separate Account" means the market value or, where there is no readily available market, the fair value of the assets allocated to the Separate Account, as determined in accordance with our rules, accepted accounting practices, and applicable laws and regulations.

To the extent the Separate Account invests in Investment Funds, and the assets of the Funds are invested in a class or series of shares of a specified trust or investment company, the Accumulation Unit Value of an Investment Fund for any Valuation Period is equal to the Accumulation Unit Value for that Fund on the immediately preceding Valuation Period multiplied by the Net Investment Factor for that Fund for the current Valuation Period. The Net Investment Factor for a Valuation Period is (a) divided by (b) minus (c), where

(a)  is the value of the Investment Fund's shares of the related portfolio of the specified trust or investment company at the end of the Valuation Period (before taking into account any amounts allocated to or withdrawn from the Investment Fund for the Valuation Period and after deduction of investment advisory fees and direct operating expenses of the specified trust or investment company; for this purpose, we use the share value reported to us by the specified trust or investment company);

Part A--This part lists your personal data

Owner: WAFA REYAD

Annuitant: WAFA REYAD

Certificate Number: 98 501 734

Endorsements Attached: No. 94ENMVA1
No. 94ENNQI

Issue Date: MAR 25, 1998
Contract Date: MAR 24, 1998

Annuity Commencement Date: AUG 25, 2008
The maximum maturity age is 85 --see section 7.03

Beneficiary: MOSTAFA REYAD

Contract: Group Annuity Contract No. AC 6725

No. 94ICA                                                    DATA PAGE 1

ART B-
THIS PART LISTS THE CONTRACT TERMS WHICH AFFECT THE TYPE OF CERTIFCATE YOU HAVE.

## TABLE OF GUARANTEED VALUES

ISSUE AGE: 53 FEMALE

| NUMBER OF YEARS SINCE FIRST CONTRIBUTION | GUARANTEED CASH VALUE |
|---|---|
| 1 | 920 |
| 2 | 1,860 |
| 3 | 2,829 |
| 4 | 3,827 |
| 5 | 4,855 |
| 6 | 5,913 |
| 7 | 7,043 |
| 8 | 8,230 |
| 9 (AGE 62) | 9,453 |
| 12 (AGE 65) | 13,346 |

THIS TABLE ILLUSTRATES MINIMUM GUARANTEED CASH VALUES.  IT ASSUMES A $1,000
CONTRIBUTION MADE EACH YEAR ON THE FIRST MONTH WHICH FOLLOWS THE CONTRACT DATE.
THE TABLE REFLECTS A ANNUAL ADMINISTRATIVE CHARGE AS SHOWN ON THE DATA PAGES
(SEE SECTION 8.02) AND THE WITHDRAWAL CHARGE.  THE TABLE ASSUMES THAT 100% OF
ALL CONTRIBUTIONS AND EARNINGS ARE IN THE GUARANTEED INTEREST ACCOUNT.

YOUR ACTUAL VALUES MAY DIFFER FROM THOSE SHOWN ABOVE BASED ON THE AMOUNT AND
FREQUENCY OF YOUR CONTRIBUTIONS.

BASED ON THE ABOVE ASSUMPTIONS, THE GUARANTEED PAID-UP MONTHLY ANNUITY AT AGE
65 IS $ 55.65.  THIS AMOUNT ASSUMES A FIXED BENEFIT LIFE PERIOD CERTAIN ANNUITY
SEX-DISTINCT TABLE.  IT WILL BE REDUCED BY ANY CHARGE WE MAKE FOR ANY TAXES (SEE
SECTION 7.05).  OTHER FORMS OF ANNUITY BENEFITS MAY BE AVAILABLE.

**Part B (Cont'd.) This part lists the Contract terms which affect the type of Contract you have.**

| | |
|---|---|
| Initial Guaranteed Interest Rate: | 5.00% TO MAR 31, 1998 |
| Minimum Guaranteed Interest Rate: | 4.00% TO DEC 31, 1998 |
| | 3.00% AFTER DEC 31, 1998 |

Investment Options available (see Part II); your allocation percentage (until changed) is also shown:

| Investment Option | Type* | Allocation Percentage** |
|---|---|---|
| **HRT FUNDS:** | | |
| Alliance Common Stock Fund | Type A | 0 % |
| Alliance Balanced Fund | Type A | 0 % |
| Alliance Aggressive Stock Fund | Type A | 0 % |
| Alliance Global Fund | Type A | 0 % |
| Alliance Growth Investors Fund | Type A | 0 % |
| Alliance Growth and Income Fund | Type A | 0 % |
| Alliance Equity Index Fund | Type A | 0 % |
| Alliance International Fund | Type A | 0 % |
| Alliance Small Cap Growth Fund | Type A | 0 % |
| Alliance Conservative Investors Fund | Type B | 0 % |
| Alliance High Yield Fund | Type B | 20 % |
| Alliance Intermediate Government Securities Fund | Type B | 0 % |
| Alliance Money Market Fund | Type B | 20 % |
| Alliance Quality Bond Fund | Type B | 0 % |
| **EQ ADVISOR TRUST FUNDS:** | | |
| T. Rowe Price International Stock Fund | Type A | 20 % |
| T. Rowe Price Equity Income Fund | Type A | 20 % |
| EQ/Putnam Growth & Income Value Fund | Type A | 0 % |
| EQ/Putnam Balanced Fund | Type A | 0 % |
| MFS Research Fund | Type A | 0 % |
| MFS Emerging Growth Companies Fund | Type A | 0 % |
| Morgan Stanley Emerging Markets Equity Fund | Type A | 0 % |
| Warburg Pincus Small Company Value Fund | Type A | 0 % |
| Merrill Lynch World Strategy Fund | Type A | 0 % |
| Merrill Lynch Basic Value Equity Fund | Type A | 0 % |
| **GENERAL ACCOUNT FUND:** | | |
| Guaranteed Interest Account | N/A | 20 % |
| **FIXED MATURITY ACCOUNT:** | | |
| Guarantee Periods*** | Type B | 0 % |

\* Expiration Date and Guaranteed Rate
  All Type A and B Funds are Investment Funds of Separate Account A, except for the Fixed Maturity
  Account which is Separate Account No. 46
\*\* See Section 3.01
\*\*\* Guarantee Periods are offered with varying expiration dates spanning an approximate 10 year period
We reserve the right to limit the availability of Investment Options to not less than four investment funds as
described in Section 2.04.

**Processing Dates (see Section 1.20):** A Processing Date is generally the last business day of each Contract Year, but may be any other date on which a fee is deducted from the Annuity Account Value in accordance with Section 8.02.

**Contribution Limits (see Section 3.02):** Initial Contribution minimum is $1,000. Additional Contribution minimum is $50. We may refuse to accept any Contribution which is less than $50 or if the Annuitant's current age at last birthday is 80 or greater, or if the total Contributions would exceed:

(a) $500,000 if the current age at last birthday is 75 or less;

(b) $250,000 if the current age at last birthday is 76 - 79.

**Transfer Rules (see Section 4.02):**

If you have elected the Guaranteed Interest Account and any Type B Investment Option, whether or not amounts have actually been placed in any such Option, then the maximum amount which may be transferred from the Guaranteed Interest Account to any other Investment Option in any Contract Year is:

- (a) 25% of the amount you have in the Guaranteed Interest Account on the last day of the prior Contract Year or, if greater,

- (b) the total of all amounts transferred at your request from the Guaranteed Interest Account to any of the other Investment Options in the prior Contract Year.

**Minimum transfer amount (see Section 4.02):** $300 or the Annuity Account Value if less.

**Transfer Charges - Number of free transfers in a Contract Year (see Section 4.02):** Unlimited

We will deduct a $25 charge per occurrence for a direct transfer to a third party of amounts under your Contract or an exchange for another contract of another carrier.

**Minimum amount of Annuity Account Value after a withdrawal ( see Section 5.02(a) ):** $500

**Death benefit amount (see Section 6.01) -- subject to the terms, if any, in the Endorsement concerning a Successor Annuitant and Owner:**

The Annuity Account Value or, if greater, the sum of all Contributions made, less

- any tax charge that applies and
- the sum of all prior withdrawals

## Normal Form of Annuity (see Section 7.02):

Life Period Certain Annuity Form

## Minimum Amount to be Applied for an Annuity (see Section 7.06) :

$2,000, as well as minimum of $20 for initial annuity payment.

## Interest Rate to be Applied for Misstatement of Age or Sex (see Section 7.06):

6% per year.

## Withdrawal Charge (see Section 8.01):

6% of Contributions withdrawn, which were made in the current and 5 prior Contract Years. The amount of this Charge is subject to change for future Contributions; however, the amount will not exceed 8% of Contributions withdrawn nor will it apply to Contributions made earlier than the 12 Contract Years which precede the date of withdrawal.

The first-in, first-out basis described in Section 8.01 applies.

## Free Corridor Amount (see Section 8.01):

10% of Annuity Account Value on the Transaction Date minus withdrawals made in the current Contract Year.

## No Withdrawal Charges will apply in these events:

1. the Annuitant dies and a death benefit is payable to the beneficiary;
2. the receipt by us of a properly completed election form providing for the Annuity Account Value to be used to buy a life annuity as described in Section 7.03;
3. in the event any of these conditions apply:

   a. the Annuitant has qualified to receive Social Security disability benefits as certified by the Social Security Administration;

   b. you give us proof that the Annuitant's life expectancy is six months or less (such proof must include, but is not limited to, certification by a licensed physician);

   c. the Annuitant has been confined to a nursing home for more than 90 days as verified by a licensed physician. A nursing home for this purpose means one which is (i) approved by Medicare as a provider of skilled nursing care service, or (ii) licensed as a skilled nursing home by the state or territory in which it is located (it must be within the United States, Puerto Rico, U.S. Virgin Islands, or Guam and

meets all of the following:

- its main function is to provide skilled, intermediate or custodial nursing care;
- it provides continuous room and board to three or more persons;
- it is supervised by a registered nurse or practical nurse;
- it keeps daily medical records of each patient;
- it controls and records all medications dispensed; and
- its primary service is other than to provide housing for residents.

The withdrawal charge will apply with respect to a Contribution if the condition as described in this item (3) existed at the time the Contribution was remitted or if the condition began within the 12 month period following remittance.

## Administrative and Other Charges deducted from Annuity Account Value (see Section 8.02):

The lesser of $30 or 2% of the Annuity Account Value including the amount of any withdrawals pursuant to Section 5.01 made during that year for the first two Contract Years, and $30 for each Contract Year thereafter. The amount may be increased to a maximum of $65 in accordance with Section 8.02. It will be withdrawn from the Investment Options on a pro-rata basis unless you designate otherwise.

No Administrative Charge will apply if the Annuity Account Value is more than $25,000.

Premium taxes are generally incurred at annuitization and a charge for such taxes will then be deducted from the Annuity Account Value. Some jurisdictions impose a premium tax at the time each Contribution is made.

If withdrawals are made as described in Section 5.01 prior to the Annuity Commencement Date, any applicable tax charges we have paid with respect to your Certificate will be deducted. If we have previously deducted charges for applicable taxes from Contributions, we will not again deduct charges for the same taxes on withdrawals on withdrawals, unless a change in applicable law has occurred.

## Daily Separate Account Charge (see Section 8.04):

1.35%; this is subject to change as described in Sections 8.04 and 8.05, subject to a maximum of 2.00%. This Charge is for financial accounting and for death benefits, mortality risk expenses and expense risk that we assume.

**Part C - This part lists the terms which apply to the Market Value Adjustment Terms Endorsement.**

**Death Benefit Amount:** The larger of (a) the Annuity Account Value in Separate Account No. 48 and (b) the Guaranteed Period Amount.

**Transfer Rules (see Section 4.02):**

The minimum amount which may be transferred from the Guaranteed Period Amount, after the initial allocation, is $300 or the Guaranteed Period Amount, if less.

Transfers at Expiration Date (see item 1 of Endorsement): If no election is made with respect to amounts in the Guaranteed Period Account as of the Expiration Date, such amounts will be transferred into the Money Market Fund.

**MVA Formula (see item 3 of Endorsement):** The current rate percentage we use in item (c) of the formula is a maximum of 0.50%. If we are no longer offering new Guarantee Periods, we will use a rate equal to the most recent Moody's Corporate Bond Yield Average - Monthly Average Corporates, for the duration required, as published by Moody's Investor Services, Inc. If such Moody's rate is not available, a rate based on a substantially similar average will be used.

(b)  is the value of the Investment Fund's shares of the related portfolio of the specified trust or investment company at the end of the preceding Valuation Period (taking into account any amounts allocated or withdrawn for that Valuation Period);

(c)  is the daily Separate Account charges (see Section 8.04) for the expenses and risks of the Contract, times the number of calendar days in the Valuation Period, plus any charge for taxes or amounts set aside as a reserve for taxes.

# SECTION 2.04 AVAILABILITY OF INVESTMENT OPTIONS

Section 3.01 describes how Contributions are allocated among Investment Options based on your election. Your election is subject to the following:

(a)  If the Contributions are made pursuant to the terms of a Plan, then Investment Options available may be subject to the terms of such Plan, as reported to us by the Owner.

(b)  We have the right to limit the number of Options which you may elect.

The Data pages list which Options are available as of the Contract Date.

# SECTION 2.05 CHANGES WITH RESPECT TO SEPARATE ACCOUNT

In addition to the right reserved pursuant to subsection (b) of Section 2.04, we have the right, subject to compliance with applicable law, including approval of Certificate owners if required:

(a)  to add Investment Funds (or sub-funds of Investment Funds) to, or to remove Investment Funds (or sub-funds) from, the Separate Account, or to add other separate accounts;

(b)  to combine any two or more Investment Funds or sub-funds thereof;

(c)  to transfer the assets we determine to be the share of the class of contracts to which the Contract belongs from any Investment Fund to another Investment Fund;

(d)  to operate the Separate Account or any Investment Fund as a management investment company under the Investment Company Act of 1940, in which case charges and expenses that otherwise would be assessed against an underlying mutual fund would be assessed against the Separate Account;

(e)  to operate the Separate Account or any Investment Fund as a unit investment trust under the Investment Company Act of 1940;

(f)  to deregister the Separate Account under the Investment Company Act of 1940, provided that such action conforms with the requirements of applicable law;

No. 94ICA

(g) to restrict or eliminate any voting rights as to the Separate Account;

(h) to cause one or more Investment Funds to invest some or all of their assets in one or more other trusts or investment companies.

If the exercise of these rights results in a material change in the underlying investment of a Separate Account, you will be notified of such exercise, as required by law.

A Separate Account or Investment Fund which may be added by us as described above may be one with respect to which (i) there may be periods during which Contributions may be restricted pursuant to the maturity terms of such Account or Fund, (ii) amounts therein may be automatically liquidated pursuant to the investment policy of the Account, and (iii) investments therein may mature. We will have the right to reallocate amounts arising from liquidation or maturity according to your allocation instructions then in effect unless you specify other instructions with respect to such amounts. If no such allocation instructions have been made, the reallocation will be made to a designated Investment Option, or to the next established Account or Fund of the same type as described in this paragraph, if applicable, as specified in the Data pages.

## PART III - CONTRIBUTIONS AND ALLOCATIONS

## SECTION 3.01 CONTRIBUTIONS, ALLOCATIONS

You elect which Investment Options will be available under the Certificate subject to the terms of Section 2.04. Once this election is made, you may allocate Contributions to, or transfer among, only these Options. You may add or subtract Options by sending us a written request, but we have the right to decline your request.

You also elect how to allocate Contributions among the Options chosen. If you are not the Annuitant, you may delegate to the Annuitant authority to allocate Contributions. You need not allocate Contributions to each Option you have chosen. You may change the allocation election at any time by sending us the proper form. Allocation percentages must be in whole numbers (no fractions) and must equal 100%.

Each Contribution is allocated (after deduction of any charges that may apply) in accordance with the allocation election in effect on the Transaction Date. Contributions made to a Separate Account purchase Accumulation Units in that Account, using the Accumulation Unit Value for that Transaction Date.

## SECTION 3.02 LIMITS ON CONTRIBUTIONS

We have the right not to accept any Contribution which is less than the amount shown in the Data pages. The Data pages indicate other minimum and maximum Contribution requirements which may apply. We also have the right, upon advance notice to you, to

(a) change such requirements to apply to Contributions made after the date of such change, and

(b) discontinue acceptance of Contributions under the Contract with respect to all Owners or with respect to all Owners to whom the same type of Certificate applies.

## PART IV - TRANSFERS AMONG INVESTMENT OPTIONS

### SECTION 4.01 TRANSFER REQUESTS

You may request to transfer all or part of the amount held in an Investment Option to one or more of the other Options. The request must be in a form we accept. All transfers will be made on the Transaction Date. Transfers are subject to the terms of Section 4.02 and to our rules in effect at the time of transfer. With respect to a Separate Account, the transfers will be made at the Accumulation Unit Value for that Transaction Date.

### SECTION 4.02 TRANSFER RULES

The transfer rules which apply are described in the Data pages. A transfer request will not be accepted if it involves less than the minimum amount, if any, stated in the Data pages (unless the Annuity Account Value is less than such amount). We have the right to change our transfer rules. Any change will be made upon advance notice to you.

The Investment Funds may consist of funds which are classified as "Type A" Investment Options or "Type B" Investment Options or any other type which may be specified in the Data pages, as we designate in our discretion for purposes of the transfer rules described in the Data pages. The Data pages specify whether such Investment Options are designated Type A or Type B or another type as well as the minimum or maximum limits on transfers which apply.

# PART V - WITHDRAWALS AND TERMINATION

## SECTION 5.01 WITHDRAWALS

Unless otherwise stated in the Data pages, you may request, pursuant to our procedures then in effect, a withdrawal from the Investment Options before the Annuity Commencement Date and while the Annuitant is alive. The request must be in a form we accept.

On the Transaction Date, we will pay the amount of the withdrawal requested or, if less, the Cash Value. The amount to be paid plus any Withdrawal Charge which applies (see Section 8.01) will be withdrawn on a pro-rata basis from the amounts held for you in the Investment Options, unless you elect otherwise and unless otherwise stated in the Data pages.

We will not accept a withdrawal request if it involves less than the minimum amount, if any, stated in the Data pages. Further conditions or restrictions may apply if stated in the Data pages or in an endorsement hereto.

## SECTION 5.02 TERMINATION

This Certificate will terminate if one or more of the following events occurs, unless otherwise specified in the Data pages:

(a)   If a withdrawal made under Section 5.01 would result in an Annuity Account Value of an amount less than the minimum amount stated in the Data pages, we will so advise you and have the right to pay you such Value. In that case this Certificate will be terminated.

(b)   Before the Annuity Commencement Date, we have the right to pay the Cash Value and terminate this Certificate if no Contributions are made during the last three completed Contract Years, and the Annuity Account Value is less than the amount described in item (a) above.

(c)   We also have the right to terminate this Certificate if no Contributions have been made within 120 days of the Contract Date.

## PART VI - DEATH BENEFITS

## SECTION 6.01 DEATH BENEFIT

Upon receipt of due proof that the Annuitant has died before the Annuity Commencement Date, we will pay a death benefit to the beneficiary named under Section 6.02. Payment may be subject to the terms of Section 6.02 and any special rules which may apply as described in any endorsement hereto.

The amount of the death benefit is described in the Data pages.

The death benefit will be paid as an Annuity Benefit or in a single sum, as described in Section 6.02.

## SECTION 6.02 BENEFICIARY

You give us the name of the beneficiary who is to receive any death benefit payable on the Annuitant's death. You may change the beneficiary from time to time during the Annuitant's lifetime and while coverage under the Contract is in force. Any such change must be made in writing in a form we accept. A change will, upon receipt at the Processing Office, take effect as of the date the written form is executed, whether or not you are living on the date of receipt. We will not be liable as to any payments we made before we receive any such change.

You may name one or more persons to be primary beneficiary on the Annuitant's death and one or more other persons to be successor beneficiary if the primary beneficiary dies before the Annuitant. Unless you direct otherwise, if you have named two or more persons as beneficiary, the beneficiary will be the named person or persons who survive the Annuitant and payments will be made to such persons in equal shares or to the survivor.

Any part of a death benefit payable as described in Section 6.01 for which there is no named beneficiary living at the Annuitant's death will be payable in a single sum to the Annuitant's surviving children. The payments will be made in equal shares, or should none survive or should there be none, then to the Annuitant's estate.

If you so elect in writing, any amount that would otherwise be payable to a beneficiary in a single sum may be applied to provide an Annuity Benefit, on the form of annuity elected by you, subject to our rules then in effect. If at the Annuitant's death there is no election in effect, the beneficiary may make such an election. In the absence of any election by either you or the beneficiary, we will pay the death benefit in a single sum.

Any naming of a beneficiary is subject to the terms of the Plan, if one applies, including any terms requiring spousal consent.

No. 94ICA

## PART VII ANNUITY BENEFITS

### SECTION 7.01 ANNUITY BENEFIT

Payments under an Annuity Benefit will be made monthly. You may elect instead to have the Annuity Benefit paid at other intervals, such as every three months, six months, or twelve months, instead of monthly, subject to our rules at the time of your election or as otherwise stated in the Data pages or any endorsement hereto. This election may be made at the time the Annuity Benefit form as described in Section 7.02 is elected. In that event, all references in this Certificate to monthly payments will, with respect to the Annuity Benefit to which the election applies, be deemed to mean payments at the frequency elected.

### SECTION 7.02 ELECTION OF ANNUITY BENEFITS

As of the Annuity Commencement Date, provided the Annuitant is then living, the Annuity Account Value will be applied to provide the Normal Form of Annuity Benefit (described below). However, you may instead elect (i) to have the Cash Value paid in a single sum, (ii) to apply the Annuity Account Value or Cash Value, whichever applies pursuant to the first paragraph of Section 7.05, to provide an Annuity Benefit of any form offered by us or one of our subsidiary life insurance companies, or (iii) to apply the Cash Value to provide any other form of benefit payment we offer, subject to our rules then in effect and applicable laws and regulations. At the time an Annuity Benefit is purchased, we will issue a supplementary contract which reflects the Annuity Benefit terms.

We will provide notice and election forms to you not more than six months before the Annuity Commencement Date.

We will have the right to require you to furnish any information we need to provide an Annuity Benefit. We will be fully protected in relying on such information and need not inquire as to its accuracy or completeness.

### SECTION 7.03 COMMENCEMENT OF ANNUITY BENEFITS

Before the Annuity Commencement Date, you may elect to change such Date to any date after your election is filed (other than the 29th, 30th, or 31st of any month). You must do this in writing. The change will not take effect until your written election is received and accepted by us at our Processing Office.

However, no Annuity Commencement Date will be later than the first day of the month which follows the date the Annuitant attains the "maximum maturity age" or, if later, the tenth anniversary of the Contract Date. The current maximum maturity age is shown in the Data pages, but may be changed by us in conformance with applicable law.

### SECTION 7.04 ANNUITY BENEFIT FORMS

The "Normal Form" of Annuity Benefit is an Annuity Benefit payable on the Life-Period Certain Annuity Form described below, unless another Form is to apply pursuant to the terms of the Plan, if applicable, the requirements of the Employee Retirement Income Security Act of 1974 (ERISA),

as amended, or any other law that applies. The Data pages will state the Normal Form which applies. We may offer other annuity forms as available from us or from one of our affiliated or subsidiary life insurance companies. Such a form may, for example, include the Joint and Survivor Life Annuity Form which provides monthly payments while either of two persons upon whose lives such payments depend is living. The monthly amount to be continued when only one of the persons is living will be equal to a percentage, as elected, of the monthly amount that was paid while both were living.

The Life-Period Certain Annuity is an annuity payable during the lifetime of the person upon whose life the payments depend, but with 10 years of payments guaranteed (10 years certain period). That is, if the original payee dies before the certain period has ended, payments will continue to the beneficiary named to receive such payments for the balance of the certain period.

## SECTION 7.05 AMOUNT OF ANNUITY BENEFITS

If you elect pursuant to Section 7.02 to have an Annuity Benefit paid in lieu of the Cash Value, the amount applied to provide the Annuity Benefit will, unless otherwise stated in the Data pages or required by applicable laws or regulations, be (i) the Annuity Account Value if the annuity form elected provides payments for a person's remaining lifetime or (ii) the Cash Value if the annuity form elected does not provide such lifetime payments.

The amount applied to provide an Annuity Benefit may be reduced by a charge for any taxes which apply on annuity purchase payments. If we have previously deducted charges for taxes from Contributions, we will not again deduct charges for the same taxes before an Annuity Benefit is provided. The balance will be used to purchase the Annuity Benefit on the basis of either (i) the Tables of Guaranteed Annuity Payments or (ii) our then current individual annuity rates, whichever rates would provide a larger benefit with respect to the payee.

## SECTION 7.06 CONDITIONS

We may require proof acceptable to us that the person on whose life a benefit payment is based is alive when each payment is due. We will require proof of the age of any such person on whose life an Annuity Benefit is based.

If a benefit was based on information that is later found not to be correct, such benefit will be adjusted on the basis of the correct information. The adjustment will be made in the number or amount of the benefit payments, or any amount used to provide the benefit, or any combination. Overpayments by us will be charged against future payments. Underpayments will be added to future payments. Our liability is limited to the correct information and the actual amounts used to provide the benefits.

If the age (or sex, if applicable as stated in the Tables of Guaranteed Annuity Payments) of any person upon whose life an Annuity Benefit depends has been misstated, any benefits will be those which would have been purchased at the correct age (or sex). Any overpayments or underpayments made by us will be charged or credited with interest at (a) the rate shown in the Data pages or (b) the then current Guaranteed Interest Rate; we will choose which rate will apply on a uniform basis for like Certificates. Such interest will be deducted from or added to future payments.

No. 941CA                                                              Page 15

If we receive acceptable proof that (i) a payee entitled to receive any payment under the terms of the Contract is physically or mentally incompetent to receive such payment or a minor, (ii) another person or an institution is then maintaining or has custody of such payee, and (iii) no guardian, committee, or other representative of the estate of such payee has been appointed, we may make the payments to such other person or institution. In the case of a minor, the payments will not exceed $200, or such other amount as may be shown in the Data pages. We will have no further liability with respect to the payments so made.

If the amount to be applied hereunder is less than the minimum amount stated in the Data pages, we may pay the amount to the payee in a single sum instead of applying it under the annuity form elected.

## SECTION 7.07 CHANGES

We have the right, upon advance notice to you, to change at any time after the fifth anniversary of the Contract's register date and at intervals of not less than five years, the actuarial basis used in the Tables of Guaranteed Annuity Payments. However, no such change will apply to (a) any Annuity Benefit provided before the change or (b) Contributions made before such change which are applied to provide an Annuity Benefit.

## PART VIII - CHARGES

## SECTION 8.01 WITHDRAWAL CHARGES

The amount of the Withdrawal Charge is stated in the Data pages. We have the right to change the Charge shown in the Data pages with respect to future Contributions, subject to any maximum stated in the Data pages. We will give you notice of any change.

If specified in the Data pages, a "Free Corridor Amount" will apply as follows:

"Free Corridor Amount" means an amount equal to the percentage, stated in the Data pages, of the Annuity Account Value, minus the total of all prior withdrawals (and associated Withdrawal Charges) made as described in Section 5.01 in the current Contract Year. We have the right to change the Free Corridor Amount, but it will always be a percentage between 0% and 30% if so provided in the Data pages.

If the amount of a withdrawal made under Part V is more than the Free Corridor Amount (defined above), we will (a) first withdraw from the Investment Options, on the basis described in Section 5.01, an amount equal to the Free Corridor Amount, and (b) then withdraw from the Investment Options an amount equal to the excess of the amount requested over the Free Corridor Amount, plus a Withdrawal Charge if one applies.

For purposes of this Section, amounts withdrawn up to the Free Corridor Amount will not be deemed a withdrawal of any Contributions. We have the right to carry forward the Free Corridor Amount into a future Contract Year, if not used in any Year, if so stated in the Data pages.

Any withdrawals in excess of the Free Corridor Amount will be deemed withdrawals of Contributions in the reverse order in which they were made. That is, contributions will be withdrawn on a last-in, first-out basis unless the Data pages state that a first-in, first-out basis will apply.

In addition, the Annuitant's years of participation under the Prior Contract, if applicable, will be included for purposes of determining the Withdrawal Charge, if so specified in the Data pages in accordance with our rules then in effect.

If specified in the Data pages we have the right to reduce or waive the Withdrawal Charge upon such events as stated in the Data pages. Moreover, the Withdrawal Charge will be reduced if needed in order to comply with any applicable state or federal law.

## SECTION 8.02 ADMINISTRATIVE AND OTHER CHARGES DEDUCTED FROM ANNUITY ACCOUNT VALUE

As of each Processing Date, we will deduct Administrative Charges or other Charges related to the administration and/or distribution of this Certificate from the Annuity Account Value. Such Charges are shown in the Data pages.

No. 94ICA

If specified in the Data pages, the Charges will be deducted in full or prorated for the Contract Year, or portion thereof, in which the Contract Date occurs or in which the Annuity Account Value is withdrawn or applied to provide an Annuity Benefit or death benefit. If so, the Charges will be deducted when withdrawn or so applied.

The amount of any such Charge will in no event exceed any maximum amount shown in the Data pages, subject to any maximum amount permitted under any applicable law.

We have the right to change the amount of the Charges with respect to future Contributions. We will give you advance notice of any such change.

### SECTION 8.03 TRANSFER CHARGES

We have the right to impose a charge with respect to any transfer among Investment Options after the number of free transfers, shown in the Data pages, made on behalf of an Annuitant. The amount of such charge will be set forth in a notice from us to you and will in no event exceed any maximum amount stated in the Data pages.

### SECTION 8.04 DAILY SEPARATE ACCOUNT CHARGE

Assets of the Investment Funds will be subject to a daily asset charge. This daily asset charge is for mortality risk, expenses and expense risk that we assume, as well as for financial accounting and death benefits if specified in the Data pages. The charge will be made pursuant to item (c) of "Net Investment Factor" as defined in Section 2.03. Such charge will be applied after any deductions to provide for taxes. It will be at a rate not to exceed the maximum annual rate stated in the Data pages. We have the right to charge less on a current basis; the actual charge to apply, for at least the first Contract Year, is also stated in the Data pages.

### SECTION 8.05 CHANGES

In addition to our right to reduce or waive charges as described in this Part VIII, we have the right, upon advance notice to you, to increase the amount of any charge stated in the Data pages, subject to (a) any maximum amount provided in this Part VIII or the Data pages and (b) with respect to Withdrawal Charges and Administrative or Other Charges deducted from the Annuity Account Value, the application of any increase only to Contributions made after the date of the change.

## PART IX - GENERAL PROVISIONS

### SECTION 9.01 CONTRACT

The Contract is the entire contract between the parties. It will govern with respect to our rights and obligations.

The Contract may not be changed, nor may any of our rights or rules be waived, except in writing and by our authorized officer. In addition to the rights of change reserved by us as provided in this Certificate, the Contract may be changed by amendment or replacement upon agreement between the Contract Holder and us without the consent of any other person provided that any such change does not reduce any Annuity Benefit provided before such change and provided that no rights, privileges or benefits under the Contract and this Certificate with respect to Contributions made hereunder prior to the effective date of such change may be adversely affected by an amendment without the consent of the Contract Holder and each Certificate Owner.

### SECTION 9.02 STATUTORY COMPLIANCE

We have the right to change the Contract without the consent of any other person in order to comply with any laws and regulations that apply. Such right will include, but not be limited to, the right to conform the Contract to reflect changes in the Code, in Treasury regulations or published rulings of the Internal Revenue Service, ERISA, and in Department of Labor regulations.

The benefits and values available under the Contract will not be less than the minimum benefits required by any state law that applies.

### SECTION 9.03 DEFERMENT

The use of proceeds to provide a payment of a death benefit and payment of any portion of the Annuity Account Value (less any Withdrawal Charge that applies) will be made within seven days after the Transaction Date. Payments or use of proceeds from the Investment Funds can be deferred for any period during which (1) the New York Stock Exchange is closed or trading is restricted, (2) sales of securities or determination of the fair value of an Investment Fund's assets is not reasonably practicable because of an emergency, or (3) the Securities and Exchange Commission, by order, permits us to defer payment in order to protect persons with interests in the Investment Funds. We can defer payment or transfer of any portion of the Annuity Account Value in the Guaranteed Interest Account for up to six months while you are living.

### SECTION 9.04 REPORTS AND NOTICES

At least once each year until the Annuity Commencement Date, we will send you a report showing:

(a)  the dollar amount in the Guaranteed Interest Account;

(b)  the total number of Accumulation Units in each Separate Account or Investment Fund;

No. 941CA                                                                    Page 19

(c) the Accumulation Unit Value;

(d) the dollar amount in each Separate Account or Investment Fund;

(e) the Cash Value; and

(f) the amount of the death benefit.

The terms which require us to send you a report as described above or any written notice as described in any other Section will be satisfied by our mailing any such report or notice to your last known address as shown in our records.

All written notices sent to us will not be effective until received at the Processing Office. Your Certificate Number should be included in all correspondence.

## SECTION 9.05 ASSIGNMENTS, NONTRANSFERABILITY, NONFORFEITABILITY

No amounts payable under the Contract to a payee other than you may be assigned by that payee unless permitted herein, nor will they be subject to the claims of creditors or to legal process, except to the extent permitted by law. Other restrictions may apply if stated in any endorsement hereto.

## SECTION 9.06 MANNER OF PAYMENT

We will pay all amounts hereunder by check (in United States dollars) or, if so agreed by you and us, by wire transfer. All amounts payable to you will be paid by check payable to us (in United States dollars) or by any other method acceptable to us.

## TABLE OF GUARANTEED ANNUITY PAYMENTS

### APPLICABLE TO NON-QUALIFIED CERTIFICATES

**Amount of Annuity Benefit payable monthly on the Life Annuity Form with Ten Years Certain provided by application of $1,000.**

|      | Monthly Income |         |      | Monthly Income |         |
|------|----------------|---------|------|----------------|---------|
| Ages | Males          | Females | Ages | Males          | Females |
| 60   | 4.12           | 3.70    | 73   | 5.52           | 4.87    |
| 61   | 4.20           | 3.76    | 74   | 5.66           | 4.99    |
| 62   | 4.29           | 3.83    | 75   | 5.80           | 5.12    |
| 63   | 4.38           | 3.90    | 76   | 5.95           | 5.26    |
| 64   | 4.48           | 3.98    | 77   | 6.10           | 5.40    |
| 65   | 4.58           | 4.06    | 78   | 6.25           | 5.55    |
| 66   | 4.68           | 4.14    | 79   | 6.40           | 5.70    |
| 67   | 4.79           | 4.23    | 80   | 6.56           | 5.85    |
| 68   | 4.90           | 4.32    | 81   | 6.72           | 6.01    |
| 69   | 5.02           | 4.42    | 82   | 6.88           | 6.18    |
| 70   | 5.14           | 4.52    | 83   | 7.04           | 6.34    |
| 71   | 5.26           | 4.63    | 84   | 7.20           | 6.51    |
| 72   | 5.39           | 4.75    | 85   | 7.36           | 6.67    |

The amount of income provided under an Annuity Benefit payable on the Life Annuity form with Ten Years Certain is based on 2.5% interest and the 1983 Individual Annuity Mortality Table "a" projected with modified Scale G.

Amounts required for ages not shown in the above Table or for other annuity forms will be calculated by us on the same actuarial basis.

If a variable annuity form is available from us and elected pursuant to Section 7.02, then the amounts required will be calculated by us based on the 1983 Individual Annuity Mortality Table "a" projected with modified Scale "G" and a modified two year age setback and on an Assumed Base Rate of Net Investment Return of 3.5% or 5.0%, whichever will apply, as we will inform you.

NEF NEW ENGLAND FINANCIAL
A MetLife Affiliate

501 BOYLSTON STREET
BOSTON, MA 02116-3700

**New England Life
Insurance Company**

# Flexible Purchase Payment Deferred Variable Annuity Contract

**Annuitant**
WAFA REYAD

**Contract Number**
V435143

**Payment Option**

VARIABLE LIFE INCOME,
10 YEARS CERTAIN

**New England Life Insurance Company** Agrees to pay **monthly income to the Annuitant under the Payment Option shown in Section 1 starting on the Maturity Date unless Death Proceeds or full Surrender Proceeds have been paid; and** to provide **the other rights and benefits of the Contract.**

These agreements are subject to all of the provisions of the Contract.

Signed on the Date of Issue for the Company at its Home Office,
501 Boylston Street
Boston, MA 02117

*President*

*Secretary*

**Flexible Purchase Payment Deferred Variable Annuity Contract**
• Monthly income is payable starting on the Maturity Date.
• The Death Proceeds are payable if an Owner dies before the Maturity Date, unless the Contract is in force under a Payment Option or is continued under the Continuation provision. (See Death Proceeds provision in Section 8.)
• Purchase payments can be paid to the Company before the Maturity Date, before Death Proceeds are paid, and before full surrender, subject to the Amount and Frequency provision in Section 3.
• Purchase payments can be increased or decreased from time to time, subject to the Amount and Frequency provision in Section 3.

**Please Read Your Contract Carefully**
This is a legal contract between you and the Company.

Monthly payments and other values provided by this Contract, when based on the investment performance of a separate investment account, are variable; they are not guaranteed as to dollar amount.

**Ten Day Right to Return the Contract**
**When the Contract is issued, you have 10 days after you receive it from the Company to review it. Within those 10 days, you can return the Contract to the Company or its Agent for any reason. If you return the Contract: any Contract Value on the date you return the Contract will be paid to you; and the Contract will be cancelled from the start.**

V80-W

## Contract Provisions

## Alphabetical Guide

*Section*

1  Contract Schedule
2  Contract
3  Purchase Payments
4  The Variable Account
5  The Fixed Account
6  Contract Value
7  Owner, Beneficiary and
   Contingent Annuitant
8  Payment of Benefits
9  Payment Options
10 Variable Payment Option
   Tables
•  Riders, if any
•  Copy of the Application
•  Amendments and
   Endorsements

*Section*

6    Accumulation Units
6    Accumulation Unit Value
8    Amount of Variable
     Monthly Payments
6    Annual Administration Fee
7    Annuitant, Contingent
8    Annuity Unit
8    Annuity Unit Value
7    Assignments
8    Assumed Interest Factor
8    Assumed Interest Rate
7    Beneficiary
8    Benefits, Payment of
4    Change of Eligible Funds
2    Claims of Creditors
6    Contingent Deferred
     Sales Charges
7    Contingent Annuitant
2    Contract
1, 2 Contract Date
6    Contract Value
8    Death Proceeds
5    Fixed Account
9    Fixed Payment Options
1, 8 Maturity Date
8    Maturity Proceeds
6    Net Investment Factor
3    Net Purchase Payments
4    New England Zenith Fund
7    Owner
2    Periodic Reports
3    Purchase Payments
1    Schedule, Contract
8    Continuation
4    Sub-accounts
6    Surrender of the Contract
7    Suspension of Payments
4    Transfer Option
6    Valuation Dates
6    Valuation Periods
10   Variable Payment Option Tables
9    Variable Payment Options

**New England Life
Insurance Company**

| | |
|---|---|
| 1. Contract Schedule | **Owner and Beneficiary**<br>As named in the Application or as later changed. See<br>the Owner and Beneficiary Section of the Contract. |

**Annuitant**
WAFA REYAD

**Contract Date**
April  7, 1999

**Contract Number**
V435143

**Sex; Date of Birth**
FEMALE; August 25, 1945

**Date of Issue**
April  7, 1999

**Payment Option**
VARIABLE LIFE INCOME,
10 YEARS CERTAIN

**Maturity Date**
August 25, 2040

MINIMUM GUARANTEED DEATH BENEFIT RECALCULATION DATES: October  7 ; April  7

Total Purchase Payments Per Year
Based on the Purchase Payment Mode and Amount
Shown in the Application: $18,000.00

Maximum Contingent Deferred Sales Charge (See Section 6): Each purchase
payment is subject to a charge for 7 years from the date the payment is
received by the Company.

| During Year | Charge |
|---|---|
| 1 | 7.0% |
| 2 | 6.0% |
| 3 | 5.0% |
| 4 | 4.0% |
| 5 | 3.0% |
| 6 | 2.0% |
| 7 | 1.0% |
| Thereafter | 0% |

CONTINGENT ANNUITANT.  As named in the Application or as later changed.
See the Contingent Annuitant provision in Section 7.

AGS-98

*Secretary*

## 2. Contract

### The Contract
This Annuity Contract is a legal contract between the Owner of the Contract (called "you") and New England Life Insurance Company (called the "Company"). The Contract, which includes the attached Application, is the entire contract between you and the Company. All Riders are listed in Section 1. A change in or waiver of the provisions of the Contract must be signed by the President or the Secretary of the Company to be valid.

### Payments Under the Contract
All Contract amounts are in dollars of the United States of America. Payments by the Company under the Contract will be made from the Home Office of the Company.

### Dates
Contract years, months and anniversaries are all measured from the Contract Date. The Contract Date is shown in Section 1.

### Claims of Creditors
The Contract and payments under it will be exempt from the claims of creditors to the extent allowed by law.

### Not Contestable
This Contract is not contestable.

### Periodic Reports
The Company will send you an annual report which will show: the number of Accumulation Units, if any, standing to the credit of the Contract; the applicable Accumulation Unit Values; the Contract Value; and any other information required by law or regulation.

The Company will send you all reports required by applicable laws and regulations.

### Expense and Mortality Experience
Regardless of the Company's expense and mortality experience, the charges specified in this Contract will not be increased.

### Annuity Contract
The Company reserves the right to make any change to the provisions of this Contract to comply with or give the Owner or Beneficiary the benefit of any federal or state law, rule or regulation. This includes, but is not limited to, requirements for annuity contracts under the Internal Revenue Code (for example, the requirements for distribution on the death of a holder) or the laws of any state.

## 3. Purchase Payments

### Payment
Purchase payments are your payments to the Company for the Contract. Payments are to be made at the Home Office of the Company. A receipt for payment signed by the Secretary of the Company will be given on request. The Contract will not be in force until the first purchase payment is paid. Following payment of the first purchase payment, the Contract will be in force by its terms; and failure to make subsequent purchase payments will not cause the Contract to lapse.

The premium for any Rider is not a purchase payment for the Contract and is payable in addition to the purchase payment.

### Amount and Frequency
Your purchase payments can be made in any amounts, except that:

- No payment can be less than $250 except with the consent of the Company; and
- The Company reserves the right to limit purchase payments in any contract year to three times the amount per year shown, if the Purchase Payment Amount in Section 1 is shown as an amount per year; and
- The Company reserves the right to limit purchase payments to the Purchase Payment Amount, if the Purchase Payment Amount in Section 1 is shown as a Single Payment.

No payment can be made:

- Within seven years of the Maturity Date; or
- After a living Owner is age 86; or
- After the Annuitant is age 86, if the Contract is not owned by a person; or
- If the Contract is being continued under Beneficiary Continuation; or
- If the Contract is in force under a Payment Option.

You can arrange for purchase payments to be scheduled on dates which are the first day of annual, semi-annual, or quarterly payment periods, or at any other frequency agreed to by the Company.

### Net Purchase Payments
A net purchase payment is equal to:

- The purchase payment paid;
    LESS
- Any applicable state premium tax.
    (See the State Premium Tax Charge provision of Section 6.)

V80–W

## 4. The Variable Account

### New England Variable Annuity Separate Account

The New England Variable Annuity Separate Account (called "the Account") is a separate investment account established by the Company in accordance with Delaware law. The assets of the Account are owned by the Company. The assets of the Account will be used to provide values and benefits under this Contract and similar contracts, but the Account is not chargeable with liabilities arising out of any other business the Company may conduct.

### Sub-Accounts

The Account consists of sub-accounts, each of which is invested in shares of one series of the New England Zenith Fund or its successor or any other investment company in which the Account is invested. Shares of a series are purchased for a sub-account at their net asset value.

The Contract's first investment in the Account will be made as of the latest of:

* The Contract Date;

* The date the first purchase payment is received by the Company at its Home Office; and

* The effective date of the election of a sub-account.

Each future net purchase payment allocated to the Account will be applied as of the date it is received by the Company at its Home Office. Each transfer to a sub-account will be applied as of the date the transfer request is received by the Company at its Home Office. (See Transfer Option provision.)

Each distribution of income, dividends and capital gains from a series to the Account will be reinvested for the benefit of the owners of the contracts at net asset value in shares of the series which made the distribution.

The Contract Value at any time cannot be allocated among more than 10 sub-accounts, except with the consent of the Company; and the Fixed Account will be counted in the limit of 10.

The values of a contract depend on: the investment performance of the series in which the sub-accounts are invested; and the interest credited to the Fixed Account. You bear the investment risk for amounts invested in the sub-accounts for your Contract.

### Election of Sub-Accounts

You elect the sub-accounts in which the Contract Value is invested. The series that are available as of the Date of Issue are listed in the then current prospectus for the Account.

### Change in Series

The Company can add or remove series as sub-account investments as permitted by law. When a change is made, the Company will send you: a revised prospectus for the Account which will describe all of the series then available under the Contract in the New England Zenith Fund or its successor or any other investment company in which the Account is invested; and any notice required by law.

When a series is removed, the Company has the right to substitute a different series in which the sub-account will then invest the value of the removed series.

### Transfer Option

You can transfer the Contract's existing share of a sub-account to or from a sub-account or the Fixed Account, subject to the Company's rules for transfers. The Company will permit: at least four transfers in each contract year in which the Contract is not in force under a Payment Option; and at least one transfer in each contract year in which the Contract is in force under a Variable Payment Option. These transfers will not be subject to a transfer charge. However, the Company reserves the right to charge for each additional transfer. Any transfer charge will be no greater than: $10 per transfer made in years prior to 2006; $15 per transfer made in years 2006 through 2015; $25 per transfer made in years 2016 through 2025; and $50 per transfer made in each year thereafter. Each transfer is subject to: a maximum daily transfer limit that will never be less than $250,000; and a minimum transfer limit that will never be more than $1,000. However, the Company may allow: additional transfers; daily transfers greater than $250,000; and transfers of less than $1,000.

V80-W

There are certain transfers that the Company considers "market timing". These are transfers under different contracts that are being requested under Powers of Attorney with a common attorney-in-fact or that are in the Company's determination based on the recommendation of a common investment adviser or broker/dealer. If you choose to participate in market timing, the Company may restrict your transfers as follows: the Company may combine all related market timing transfers requested on the same day for all contracts and owners when applying the limit on the maximum daily transfer amount; and the Company may limit the frequency of market timing transfers resulting from a common attorney-in-fact, investment adviser, or broker/dealer to once every 30 days for any contract using that market timing "service". Requests for transfers can be made in writing or by telephone. The Company is not responsible for the authenticity of transfer instructions received by telephone.

## Rights Reserved by the Company

The Company reserves the right to take certain actions subject to compliance with law and, if required, the approval of the owners of the contracts. These actions are: (a) to create new investment accounts; (b) to combine any two or more separate investment accounts, including the Account; (c) to invest the assets of the Account other than in the New England Zenith Fund; (d) to invest some or all of the assets of the Account in any other investment company chosen by New England Life Insurance Company; (e) to remove a series in which the sub-account is invested or to substitute a different series; (f) to operate the Account as a management investment company and to charge investment advisory fees under the Investment Company Act of 1940 or in any other form permitted by law; and (g) to deregister the Account under the Investment Company Act of 1940 if registration is no longer required.

V80-w

## 5. The Fixed Account

### The Fixed Account

The Fixed Account is part of the general account of the Company.

If you elect the Fixed Account, the first date on which money is applied to the Fixed Account for the Contract is the latest of:

* The Contract Date;

* The date the first purchase payment is received by the Company at its Home Office; and

* The effective date of the election of the Fixed Account.

Each future net purchase payment allocated to the Fixed Account will be applied as of the date it is received by the Company at its Home Office. Each transfer to the Fixed Account will be applied as of the date the transfer request is received by the Company at its Home Office. (See the Restriction of Payments and Transfers to the Fixed Account provision.)

For each transfer from the Fixed Account, the Contract's share of the Fixed Account will be reduced by the amounts (plus the interest credited to the amounts) most recently applied to the Fixed Account.

For each surrender from the Fixed Account, the Contract's share of the Fixed Account will be reduced by the amounts (plus the interest credited to the amounts) in the same order in which they were applied to the Fixed Account.

### Fixed Account Interest

The rate of interest for each amount applied to the Fixed Account will be the rate set by the Company in advance for the date the amount is applied to the Fixed Account. This rate will apply for 12 months. Thereafter, each year a new rate will apply to the amount plus the interest credited to the amount. The new rate will be the renewal rate set by the Company in advance for that date and will apply for 12 months. No rate will be less than the rate equivalent to an annual effective rate of 3%.

Interest will be credited to the Fixed Account on a daily basis.

### Restriction of Payments and Transfers to the Fixed Account

The Company reserves the right to restrict payments and transfers to the Fixed Account for the Contract:

* If the effective annual rate of interest that would apply to the payment or transfer is 3%; or

* If the Contract's value in the Fixed Account equals or exceeds $500,000.

For 180 days from the date of any transfer out of the Fixed Account: you cannot make any transfers to the Fixed Account; and the Company reserves the right to restrict payments to the Fixed Account for the Contract.

### Transfers Out of the Fixed Account

Each contract year you can transfer a limited portion of the Contract's value in the Fixed Account to the sub-accounts, subject to the Company's published limits on the number and amount of transfers. (See Section 4.) Requests for transfers can be made in writing or by telephone. The Company is not responsible for the authenticity of transfer instructions received by telephone. Except with the consent of the Company, the transfer will be limited to the greater of: 25% of the Contract's value in the Fixed Account at the end of the first day of the contract year; and the amount transferred out of the Fixed Account in the prior contract year.

For 180 days from the date of any transfer out of the Fixed Account, you cannot make any transfers to the Fixed Account.

### Election of the Fixed Account

You can elect to have future net purchase payments applied to the Fixed Account. You can change the election for future net purchase payments at any time by notice to the Company in writing. (See the Restriction of Payments and Transfers to the Fixed Account provision.)

### Postponement of Surrenders, Partial Surrenders and Transfers From the Fixed Account

The Company can postpone for six months from the date of request: the payment of the portion of the Contract's Surrender Proceeds and partial surrender proceeds which is in the Fixed Account; and transfers from the Fixed Account. The effective date of the transfer is the date on which values are transferred from the Fixed Account.

## 6. Contract Value

**Contract Value**
On or before the Maturity Date and while the Contract is in force other than under a Payment Option, the Contract Value is equal to: the number of Accumulation Units standing to the credit of the Contract multiplied by the applicable Accumulation Unit Value(s); plus the Contract's value in the Fixed Account.

The Contract Value is not increased by the cash value of any Rider, unless stated in the Rider.

The Contract's Value in the Fixed Account is equal to (a) plus (b) minus (c); where

• (a) is equal to the portion of the net purchase payments applied to the Fixed Account;

    PLUS

the total of transfers into the Fixed Account for the Contract;

• (b) is equal to any interest credited for the Contract to the Fixed Account; and

• (c) is equal to the total of partial surrenders made from the Fixed Account for the Contract;

    PLUS

the total of transfers out of the Fixed Account for the Contract;

    PLUS

the total of any charges deducted for transfers and partial surrenders from the Fixed Account for the Contract.

**Purchase Payments Allocated to the Account**
Each net purchase payment allocated to the Account will be credited in the form of Accumulation Units to the sub-accounts you elect. The number of Accumulation Units credited to a sub-account will be equal to the portion of the net purchase payment credited to that sub-account divided by the Accumulation Unit Value for that sub-account for the applicable Valuation Period.

**Accumulation Unit Value**
An Accumulation Unit Value is determined fo each sub-account of each Valuation Period. Th Accumulation Unit Value of each sub-account fo its first Valuation Period was set at $1.00 takinc into account the performance history of the underlying investment company. Each Accumulation Unit Value for each later Valuation Period is equal to:

• The Net Investment Factor for that Valuation Period;

        TIMES

• The Accumulation Unit Value for the immediately preceding Valuation Period.

The Net Investment Factor depends on the investment performance of the sub-accounts elected and can be greater or less than one. Therefore, the Accumulation Unit Value can increase or decrease.

**Net Investment Factor**
The Net Investment Factor for each sub-account for each Valuation Period is determined by dividing (a) by (b) and subtracting (c) from the result; where:

• (a) is equal to the net asset value per share of the series held in the sub-account as of the end of that Valuation Period;
    PLUS

the per share amount of all dividend and capital gains distributions made by the series held in the sub-account if the ex-dividend date occurs during that Valuation Period;
    PLUS or MINUS

a per share charge or credit for any reserve for taxes which the Company determines to apply to the sub-account and to this Contract;

• (b) is equal to the net asset value per share of the series held in the sub-account for the immediately preceding Valuation Period;
    PLUS or MINUS

a per share charge or credit for any reserve for taxes which the Company determines to apply to the sub-account and to this Contract; and

V80-w

• (c) is equal to .0000369863 times the number of days in that Valuation Period.

The daily deduction of .0000369863 is equal to .0135 on an annual basis. The deduction of .0135 on an annual basis consists of: .007 for mortality risk assumptions; and .0055 for expense risk assumptions; and .001 for an administrative asset charge.

## Valuation Periods and Valuation Dates

Values for a date depend on the time of day for which they are to be determined; they will be determined with respect to each sub-account as of the next occurring end of a Valuation Period. A Valuation Period for each sub-account is a period:

• Which starts on a Valuation Date at the time of day specified by the applicable series for determining the net asset value of its shares; and

• Which ends on the next succeeding Valuation Date at that time of day.

Each day the New York Stock Exchange is open for trading is a Valuation Date.

## Annual Fees

The Company will charge an annual Administration Fee equal to the lesser of: 2% of the Contract Value; $30; and the Contract's value in the sub-accounts. The fee for a contract year will be charged on the first day of the next contract year unless:

• The Contract Value is at least $50,000 at the end of the contract year; or

• The total purchase payments made less surrenders taken in the contract year were at least $1,000 and the Contract Value at the end of the prior contract year was at least $25,000; or

• The Contract is in force under a Payment Option; or

• The Contract is being continued under Beneficiary Continuation.

If the Contract is surrendered or matures on a date which is not a contract anniversary, the charge will be the pro rata portion of the fee for the period beyond the most recent contract anniversary.

The fee will be charged against the sub-accounts proportionately. The portion of the fee charged to each sub-account will reduce the number of Accumulation Units standing to the credit of the Contract in that sub-account.

The fee will not be charged against the Fixed Account.

## Surrender of the Contract

While the Contract is in force other than under a Payment Option, you can surrender the Contract at any time prior to the Maturity Date by notice to the Company in writing. Upon surrender, the Contract will terminate. The Surrender Proceeds will be equal to: the Contract Value as of the Surrender Date; less any Administration Fee; less any Contingent Deferred Sales Charge; and less any State Premium Tax Charge. The Surrender Date is the date on which the Company receives at its Home Office:

• Written request in proper form for surrender and payment in one sum; or

• Written request in proper form for surrender and payment under one of the Payment Options; or any later date that may be specified in the request. (See Payment of Benefits, Section 8.)

You can also make a partial surrender, but the consent of the Company will be required if: the remaining Contract Value would be less than $1,000; or if the amount of partial surrender is less than the minimum allowed by the Company. The minimum will not be greater than $1,000; however, the Company may allow a lower amount. A partial surrender will reduce the Contract's share of the sub-accounts and the Fixed Account proportionately, unless you request otherwise. A partial surrender will reduce the Minimum Guaranteed Death Benefit (see Section 8) proportionately to the reduction in the Contract Value.

## Contingent Deferred Sales Charges

A Contingent Deferred Sales Charge will apply to certain partial or full surrender transactions.

When one of these transactions occurs, the Company will determine if a Charge applies. If a Charge applies, the Charge will be calculated as if purchase payments were surrendered in the same order in which they were made. The Charge is equal to the sum of: each purchase payment to be considered surrendered in the calculation; times the appropriate percentage from the table in Section 1. The total purchase payments subject to a Charge in the future will not be decreased as a result of the surrender of the Free Surrender Amount (see below).

No Charge will be deducted in the event of:

* Maturity of the Contract; or
* Payment of the Death Proceeds; or
* Surrender 30 days or more from the Contract Date, if the proceeds are applied: for a period of at least 15 years to the Income for Specified Number of Years Option or to the Income Payment to Age 100 Option; or to the Life Income Option; or to the Life Income for Two Lives Option.

In each contract year, the Free Surrender Amount will be exempt from any Contingent Deferred Sales Charge. The Free Surrender Amount is equal to the greater of: 10% of the Contract Value on the first day of the contract year; and the excess of the Contract Value over purchase payments subject to the Contingent Deferred Sales Charge on the date of surrender.

In no event will the total Charges exceed 8% of the first $50,000 of purchase payments made under the Contract plus 6.5% of purchase payments in excess of $50,000 made under the Contract.

## State Premium Tax Charge

A State Premium Tax Charge, as required by law, will be deducted from: proceeds applied to a Payment Option; Death Proceeds; and partial and full surrenders. The charge will equal the proceeds times the appropriate state premium tax rates. The Company reserves the right to deduct state premium taxes from purchase payments. (See the Net Purchase Payment provision of Section 3.)

## 7. Owner, Beneficiary and Contingent Annuitant

### Owner

The Owner of the Contract is named in the Application (see copy attached); but, with the consent of the Company the Owner can be changed. The new Owner will succeed to all rights of the Owner, including the right to make a further change of Owner. Joint Owners can be named. In this Contract "you" means the Owner, whether an Owner is a person, a partnership, a corporation, a fiduciary or any other legal entity. At the death of an Owner, Death Proceeds will be paid unless the Contract is continued under the Continuation provision.

If an Owner is not a person, the Annuitant will be treated as the Owner for the purposes of the Death Proceeds provision. (See Section 8.)

### Beneficiary

The Death Proceeds will be paid to the Beneficiary if an Owner dies before the Maturity Date, unless the Contract is in force under a Payment Option or is continued under the Continuation provision. The Beneficiary is named in the Application (see copy attached); but, the Beneficiary can be changed before the Death Proceeds become payable. The Beneficiary has no rights in the Contract until the death of an Owner. A person must be living when the Death Proceeds become payable to qualify as Beneficiary. If none survives and the Contract had joint Owners, the proceeds will be paid to the surviving Owner; otherwise, the proceeds will be paid to the estate of the Owner. The Beneficiary can also be a corporation, a partnership, a fiduciary, or any other legal entity.

### Change of Owner or Beneficiary

A change of Owner or Beneficiary must be in written form satisfactory to the Company, and must be dated and signed by the Owner making the change. The change will be subject to all payments made and actions taken by the Company under the Contract before the signed change form is received by the Company at its Home Office.

### Assignments

An absolute assignment of the Contract by the Owner is a change of Owner and Beneficiary to the assignee; but upon an absolute assignment after the Annuitant's death, the Contingent Annuitant must be an Owner of the Contract. A collateral assignment of the Contract by the Owner is not a change of Owner or Beneficiary; but their rights will be subject to the terms of the assignment. Assignments will be subject to all payments made and actions taken by the Company before a signed copy of the assignment form is received by the Company at its Home Office. The Company will not be responsible for determining whether or not an assignment is valid.

### Designation of Owner and Beneficiary

A numbered sequence can be used to name successive Beneficiaries. Co-Beneficiaries will receive equal shares unless otherwise stated. Joint Owners have equal rights under the Contract.

In naming Owners or Beneficiaries, unless otherwise stated:

* "Child" includes an adopted or posthumous child;

* "Provision for issue" means that if a Beneficiary is not living when Death Proceeds are paid, the share of that Beneficiary will be taken by his or her living issue by right of representation; and

* A family relation such as "wife", "husband", or "child" means the relation to the Annuitant.

At the time for payment of benefits the Company can rely on an affidavit of any Owner or other responsible person to determine family relations or members of a class.

## Contingent Annuitant

A Contingent Annuitant must be named in the Application: if the Annuitant is not an Owner of the Contract; and if an Owner is a person. The Contingent Annuitant must be an Owner of the Contract. The Contingent Annuitant cannot be changed after the death of the Annuitant.

## Death of Annuitant

If the Owner is a person and if the Annuitant dies before the Contract is in force under a Payment Option, the Contract will continue for the benefit of the Contingent Annuitant. The Maturity Date will then be the contract anniversary on which the older Owner will be the maximum maturity age allowed by the Company.

If the Owner is not a person, the Annuitant will be treated as Owner for the purposes of the Death Proceeds provision. (See Section 8.)

# 8. Payment of Benefits

## Maturity Date

The Maturity Date is shown in Section 1.

## Maturity Proceeds

The Maturity Proceeds will be equal to: the Contract Value on the Maturity Date; less any Administration Fee; and less any State Premium Tax Charge (see Section 6).

If the annuitant who is to receive monthly income benefits under the Contract is living on the Maturity Date, the Company will apply the Maturity Proceeds to the Payment Option shown in Section 1, with that individual as Payee.

Before the Maturity Date you can elect in writing that on the Maturity Date the Maturity Proceeds will instead be:

* Paid in one sum; or

* Applied to any other Payment Option.

## Death Proceeds

If an Owner is not a person, the Annuitant will be treated as the Owner for the purposes of the Death Proceeds provision.

If an Owner dies before the Maturity Date, the Company will pay a death benefit to the Beneficiary, unless the Contract is in force under a Payment Option or is continued under the Continuation provision. The Death Proceeds will equal the greater of:

* The Contract Value as of the Death Valuation Date; and

* The Minimum Guaranteed Death Benefit.

On the date the first purchase payment for the Contract is received, the Minimum Guaranteed Death Benefit is equal to the purchase payment. Thereafter, the Minimum Guaranteed Death Benefit will be: increased by any purchase payment made; and decreased by the percentage of any Contract Value surrendered.

## 9. Payment Options

### Fixed Payment Options

All or any part of the contract proceeds can be applied to Fixed Payment Options, subject to Section 8, to provide payments which do not depend on the investment performance of the Account. The proceeds to be applied to Fixed Payment Options will be transferred to the general account of the Company. The Fixed Payment Option rates will not be less than rates based on an effective annual interest rate of 3% per year; and on mortality: using a 50/50 male/female weighting; based on the Individual Annuitant Mortality Table for 1983; and with projection on Scale G to the year 2000 and then on Scale B Modified to the year 2035.

### Variable Payment Options

All or part of any contract proceeds can be applied to any one of the following Variable Payment Options, subject to Section 8, Payment of Benefits.

### Variable Income for Specified Number of Years

The Company will make variable monthly payments. Payments will start on the Option Date and will continue for the number of years chosen. The number of years chosen cannot be more than 30.

### Variable Life Income

The Company will make variable monthly payments. Payments will start on the Option Date and will continue:

- During the life of the Payee, with no payment after the death of the Payee, called "Variable Life Income, No Refund"; or

- During the life of the Payee, but for at least 10 years, called "Variable Life Income, 10 Years Certain"; or

- During the life of the Payee, but for at least 20 years, called "Variable Life Income, 20 Years Certain".

### Variable Life Income for Two Lives

The Company will make variable monthly payments. Payments will start on the Option Date and will continue:

- While either of two Payees is living, called "Joint and Survivor Variable Life Income"; or

- While either of two Payees is living, but for at least 10 years, called "Joint and Survivor Variable Life Income, 10 Years Certain"; or

- While two Payees are living, and after the death of one Payee while the other Payee is living, two-thirds of the monthly amount that would be payable if both Payees were living, called "Joint and 2/3 to Survivor Variable Life Income".

### Variable Income Payment to Age 100

The Company will make variable monthly payments. Payments will start on the Option Date and will continue for a whole number of years. The number of years chosen must equal 100 minus the Payee's age on the Option Date.

Also, on the seventh anniversary and every seventh year anniversary thereafter, except as noted below, the Minimum Guaranteed Death Benefit will be recalculated. On each of these days the Minimum Guaranteed Death Benefit is equal to the greater of: the Minimum Guaranteed Death Benefit before the recalculation; and the Contract Value on the date of recalculation. If the Owner is not a person, the Minimum Guaranteed Death Benefit will be recalculated until the Annuitant is age 76. If the Contract is jointly owned, and both Owners are living, the Minimum Guaranteed Death Benefit will be recalculated until an Owner is age 71. Otherwise, it will be recalculated until the Owner is age 76.

The Death Valuation Date is the later of:

• The date on which the Company receives at its Home Office proof of death of that Owner; and

• The date on which the Company receives at its Home Office election of continuation of the contract or of payment in one sum or under a Payment Option; provided that if no election has been received by the end of the 90th day after the date proof of death was received, the Company will deem the following to have been elected on the 90th day: Spousal Continuation, if the surviving spouse qualifies for this right; or otherwise, Beneficiary Continuation, if the Beneficiary qualifies for this right; or otherwise, payment in one sum.

The Death Proceeds will be paid in one sum unless: all or part of the proceeds is applied to a Payment Option; or the Contract is continued under the Continuation provision. The obligations of the Company are subject to all payments made and actions taken by the Company before receipt by the Company at its Home Office of proof of the death.

Death Proceeds cannot be applied to the Variable Life Income for Two Lives Option or to the Variable Income Payment to Age 100 Option.

Upon payment of Death Proceeds, the Contract will terminate.

### Death of Owner on or After the Maturity Date
If the Owner dies on or after the Maturity Date and before the entire interest has been distributed to the Annuitant, then the entire remaining interest must be distributed at least as quickly as under the method of distribution being used on the date of death of the Owner.

### Continuation
The Company offers two types of Continuation rights: Spousal Continuation; and Beneficiary Continuation.

The Company must receive written notice of the election of one of these continuation rights by the end of the 90th day after it received proof of death. If the surviving spouse qualifies for Spousal Continuation and has not elected a method of payment for the Death Proceeds by the end of the 90 day period, election of Spousal Continuation will be deemed to have been elected on the 90th day. If a Beneficiary who does not qualify for Spousal Continuation but does qualify for Beneficiary Continuation, has not elected a method of payment for the Death Proceeds by the end of the 90 day period: election of Beneficiary Continuation will be deemed to have been elected on the 90th day; and the Contract will be continued for that Beneficiary; and the continued Contract will have a Maturity Date equal to the fifth anniversary of the Owner's death.

### Spousal Continuation
The Contract can be continued under Spousal Continuation if the surviving spouse is less than age 95 and if:

(a) There are two joint owners and they are married to each other; and

One of the joint owners dies before the Contract is in force under a Payment Option; and

Both joint owners were the only named primary Beneficiaries on the date of death; or

(b) The Owner is a person; and

The Owner dies; and

The Owner's spouse is the only named primary Beneficiary on the Owner's date of death.

If the Contract is continued under Spousal Continuation: the Death Proceeds will not be paid; the surviving spouse will be the Owner; the surviving spouse will be the Annuitant, if the deceased Owner had been the Annuitant; and the surviving spouse will be the Contingent Annuitant, if the deceased Owner had been the Contingent Annuitant. The Maturity Date will then be the contract anniversary on which the surviving spouse (or Annuitant if older) will be the maximum maturity age allowed by the Company. No Contingent Deferred Sales Charge will apply to the Contract if: the Maturity Date is changed as a result of the election of Spousal Continuation; and a purchase payment was made less than seven years from the new Maturity Date.

### Beneficiary Continuation

When Death Proceeds become payable, the Beneficary can elect: a one sum payment of the Death Proceeds; or the continuance of the Contract with a Maturity Date equal to the fifth anniversary of the Owner's death (see below); or a Payment Option. Payments under the Payment Option: must be payable for the life of the Beneficiary or for a term which is not longer than the life expectancy of the Beneficiary; and must start within one year after the death of the Owner.

The Contract can be continued under Beneficiary Continuation by a Beneficiary whose share of the Death Proceeds is at least equal to the Company's minimum for this right. This minimum shall be no greater than the Company's then current minimum for newly issued variable annuity contracts.

If the Contract is continued under Beneficiary Continuation: the Death Proceeds will not be paid to any Beneficiary continuing his/her share of the Proceeds; the Death Proceeds continued in the Contact will be allocated in the same proportion as the Contract Value was allocated to the sub-accounts and Fixed Account on the Death Valuation Date: each Beneficary will have the right to make transfers and partial and full surrenders of his/her share of the Contract; the Maturity Date will be the fifth anniversary of the Owner's death and cannot be changed; no purchase payments can be made; no Contingent Deferred Sales Charge will apply to the Contract; no Annual Fee will be deducted; and the Death Benefit during the period of continuation for each Beneficiary will be equal to the Beneficiary's share of the Contract Value on his/her Death Valuation Date. The Death Valuation Date is the date on which the Company receives at its Home Office proof of death of the Beneficiary. The Death Benefit payable at the Beneficiary's death will be paid in a one sum payment.

On the Maturity Date each living Beneficiary will receive his/her share of the Contract Value in a one sum payment and the Contract will terminate.

During the continuation period the Beneficary can elect: to receive his/her share of the Contract in a one sum payment; or to apply his/her share of the Contract to a Payment Option. Payments under the Payment Option: must be payable for the life of the Beneficiary or for a term which is not longer than the life expectancy of the Beneficiary; and must start within one year after the death of the Owner.

### Suspension of Payments

The Company can suspend payment of any amounts due under the Contract when permitted under applicable Federal laws, rules and regulations.

V80-W

## Election of Payment Options; Option Date

The election of a Payment Option and the naming of the Payee must be in written form satisfactory to the Company. You can make or change or revoke the election before the Death Proceeds become payable or the Maturity Date, whichever occurs first. The Option Date is the effective date of the Payment Option, as stated in the form on which you made your choice.

## Payee

A Payee is a person, a corporation, a partnership, a fiduciary or any other legal entity entitled to receive payment in one sum or under a Payment Option.

## Election By Payees

Any proceeds payable upon surrender or maturity of the Contract can be applied to any Payment Option at the election of the Payee. Any Death Proceeds can be applied to a Variable Income for Specified Number of Years or Variable Life Income Payment Option at the election of the Payee. Further, subject to the consent of the Company, any Payee who is entitled to receive proceeds in one sum at the death of a prior Payee, or upon withdrawal of the proceeds, can elect to apply the proceeds to a Payment Option.

## Rights of Payees

A Payee under the Variable Income for a Specified Number of Years and the Variable Income Payment to Age 100 Payment Options has the right to change to the Variable Life Income Payment Option.

A Payee under the Variable Income for a Specified Number of Years and the Variable Income Payment to Age 100 Payment Options has the right to withdraw the commuted value of payments certain. See the third paragraph of the Contingent Deferred Sales Charge provision in Section 6. If the Charge was waived when the Surrender Proceeds were applied to the Payment Option, the commuted value will be reduced by a portion of the Charge that was waived. The amount deducted from the commuted value will equal: (a) the Charge that was waived; TIMES (b) the number of whole months remaining from the date of the commutation until the date when the Charge would be zero; DIVIDED BY the number of whole months that were remaining when the Surrender Proceeds were applied to the Payment Option until the date when the Charge would be zero.

The Payee under the Variable Life Income or the Variable Life Income for Two Lives Payment Options can withdraw the commuted value of the payments certain. See the third paragraph of the Contingent Deferred Sales Charge provision. If the Charge was waived when the Surrender Proceeds were applied to the Payment Option, the commuted value will be reduced by a portion of the Charge that was waived. The amount deducted from the commuted value will equal: (a) the Charge that was waived; TIMES (b) the number of whole months remaining from the date of the commutation until the date when the Charge would be zero; DIVIDED BY the number of whole months that were remaining when the Surrender Proceeds were applied to the Payment Option until the date when the Charge would be zero.

No Payee can assign or withdraw the commuted value of payments under any Fixed Payment Option.

## Payments In One Sum

Amounts payable in one sum will be payable:

- As of the Surrender Date in case of surrender;
- As of the Death Valuation Date in case of the payment of Death Proceeds;
- As of the Maturity Date in case of maturity;
- As of the date the request is received by the Company at its Home Office in case of request for withdrawal of amounts under Payment Options; or
- As of the date proof of death of the Payee is received by the Company at its Home Office in case of an amount to be paid in one sum at the death of the Payee.

An amount payable in one sum from the Account will be paid within 7 days of the date it is payable, subject to the Suspension of Payments provision.

## Limitations

If instalments under an Option would be less than the Company's published minimum, proceeds can be applied to a Payment Option only with the consent of the Company.

## Variable Life Income Options

Variable Life Income Options are based on the age of the Payee on the Payee's birthday nearest the Option Date and on the Assumed Interest Rate selected. The Company will require proof of age. The Life Income Payments will be based on rates not less than the rates shown in the Variable Life Income Tables (Section 10).

## Amount of Variable Monthly Payments

The amount of the first monthly payment under a Variable Payment Option is equal to:

- The number of thousands of dollars of proceeds applied to the Option;
  TIMES
- The monthly payment rate per $1,000 for the Option.

The amount of each later monthly payment is equal to the number of Annuity Units times the applicable Annuity Unit Values for the most recent Valuation Period which ended at least 14 days prior to the date the payment is due.

## Annuity Units; Annuity Unit Values

The number of Annuity Units credited under a Variable Payment Option is equal to the amount of the first monthly payment divided by the applicable Annuity Unit Value(s) as of the Option Date. The number of Annuity Units remains constant; except that: (a) the number is adjusted to reflect different Annuity Unit Values upon transfer of an interest of the Contract in a sub-account to another sub-account; and (b) the number decreases by one-third at the death of the first Payee under the Joint and 2/3 to Survivor Variable Life Income Option.

The Annuity Unit Values depend on the Assumed Interest Rate and on the Net Investment Factor. An Annuity Unit Value is determined for each sub-account for each Valuation Period. The Annuity Unit Value of each sub-account for its first Valuation Period was set at $1.00 taking into account the performance history of the underlying investment company. Each Annuity Unit Value for each later Valuation Period is equal to:

- The Annuity Unit Value for the immediately preceding Valuation Period;
  TIMES
- The Net Investment Factor for that Valuation Period;
  TIMES
- The daily Assumed Interest Factor for each day in that Valuation Period.

The Net Investment Factor depends on the investment performance of the series held in the sub-accounts elected. The Net Investment Factor multiplied by the Assumed Interest Factor can be greater or less than one. Therefore, the Annuity Unit Values can increase or decrease.

## Choice of an Assumed Interest Rate

The amount of each monthly payment under a Variable Payment Option depends on an Assumed Interest Rate. In the election of any of these Options, the effective annual Assumed Interest Rate chosen can be:

- 0%; or
- 3 1/2%; or
- 5%, if allowed by applicable law or regulation.

If no choice is made, an effective annual interest rate of 3 1/2% will be used as the Assumed Interest Rate. The rates shown in Sections 9 and 10 for the Options are based on the 3 1/2% rate. The daily Assumed Interest Factor derived from an effective annual Assumed Interest Rate of 3 1/2% is 0.9999058.

## Correction of Benefits if Age Incorrect

If the age of the Payee under a Life Income Option has not been correctly stated, the benefits will be corrected to the amounts which the proceeds would have provided for the correct age. Any amount by which the payments by the Company have been too large or too small, with interest at an effective annual interest rate of 6% per year compounded yearly, will be:

- Charged against the next payment or payments if the payments have been too large; or
- Added to the next payment if the payments have been too small.

## Death of Payee

Amounts to be paid after the death of a Payee under a Payment Option will be paid as due to the successor Payee. If there is no successor Payee, amounts to be paid in one sum, or the commuted value of any unpaid payments certain, will be paid in one sum to the estate of the last Payee to die.

## Commutation Rate for Variable Payment Options

The interest rate used to compute the commuted value of any unpaid payments certain will be the Assumed Interest Rate. Each payment under a Variable Payment Option will be assumed to be equal to the number of Annuity Units times the applicable Annuity Unit Value.

See the third paragraph of the Contingent Deferred Sales Charge provision in Section 6. If the Charge. was waived when the Surrender Proceeds were applied to the Payment Option, the commuted value will be reduced by a portion of the Charge that was waived. The amount deducted from the commuted value will equal: (a) the Charge that was waived; TIMES (b) the number of whole months remaining from the date of the commutation until the date when the Charge would be zero; DIVIDED BY the number of whole months that were remaining when the Surrender Proceeds were applied to the Payment Option until the date when the Charge would be zero.

**EQUITABLE**

| | |
|---|---|
| *THE INSURED* | MOSTAFA REYAD |
| *POLICY OWNER* | MOSTAFA REYAD |
| *FACE AMOUNT* | $100,000 |
| *POLICY NUMBER* | PN 86 097 685 |

*LIFE*
*INSURANCE*
*POLICY*

---

## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

### Agrees

- **To pay** the insurance benefits of this policy to the Beneficiary upon receiving proof of the Insured's death; and

- **To provide** *you (the policy Owner)* with the other rights and benefits of this policy.

These agreements are subject to the provisions of this policy.

**Ten Days to Examine Policy** - If for any reason you are not satisfied with your policy, you may cancel it by returning the policy to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

*[signature]* **Chairman and Chief Executive Officer**

*[signature]* **Vice President and Secretary**

Whole Life—Level Face Amount Plan. Insurance payable upon death. Premiums payable for life. Policy participates in dividends.

No. 126-51

## Contents

The Insurance Benefits We Pay   2

Who Benefits From This Policy   4

The Premiums You Pay   4
   Grace Period
   Lapse
   Reinstatement

How Dividends Are Paid   5

The Cash Surrender Value of This Policy   5

How a Loan Can Be Made   6
   Automatic Premium Loan Option

Options On Lapse   6

Other Important Provisions   7

How Benefits Are Paid   8

Any additional benefit riders and a copy of the application are included at the back of this policy.

### In this policy:

"We," "our" and "us" mean The Equitable Life Assurance Society of the United States.

"You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.

## The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the Beneficiary when we receive proof of the Insured's death.

These insurance benefits include the following amounts, which we will determine as of the date of the Insured's death:

* the Face Amount of this policy;

* *plus* any other benefits then due from riders to this policy;

* *plus* any amount due from dividends left under this policy;

* *plus* any unearned policy loan interest;

* *plus* or *minus* any adjustment for the last premium;

* *minus* any loan (and any loan interest due and unpaid) on this policy.

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 8; or (b) the rate required by any applicable law.

We will pay these benefits only if premiums have been paid as called for by this policy. However, even if premiums have been discontinued we may still pay certain benefits. See Options on Lapse, Page 6.

Payment of these benefits may also be affected by other provisions of this policy. See Page 7 where we specify our right to contest the policy, what happens if age or sex has been misstated, and the suicide exclusion. Special exclusions or limitations (if any) are listed on Page 3.

| THE INSURED | MOSTAFA REYAD | REGISTER DATE | NOV 13, 1986 |
|---|---|---|---|
| POLICY OWNER | MOSTAFA REYAD | DATE OF ISSUE | JUL 28, 1998 |
| FACE AMOUNT | $100,000 | ISSUE AGE, SEX | 45, MALE |
| POLICY NUMBER | PN 86 097 685 | BENEFICIARY | WAFA REYAD |

------------ BENEFITS AND PREMIUMS ------------

| BENEFITS | MONTHLY PREMIUM | PREMIUM PERIO[D] |
|---|---|---|
| LIFE INSURANCE | $175.00 | FOR LIFE |
| ACCIDENTAL DEATH BENEFIT - $100,000 | 9.00 | TO AGE 70 |
| DISABILITY PREMIUM WAIVER | 10.00 | TO AGE 65 |

THE FIRST PREMIUM IS $194.00 AND IS DUE ON OR BEFORE DELIVERY OF THE
POLICY.  SUBSEQUENT PREMIUMS ARE DUE ON DEC 13, 1986 AND MONTHLY THEREAFTER
DURING THE PREMIUM PERIOD IN ACCORDANCE WITH THE ABOVE PREMIUM TABLE.

WHILE THIS POLICY IS ON THE SYSTEM-MATIC PREMIUM COLLECTION ARRANGEMENT, THE
MONTHLY PREMIUM WILL BE REDUCED BY $1.00.

---------------- TABLE OF VALUES ----------------
(SEE PAGES 5 AND 6 FOR DETAILS)

| OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS. YRS DAYS | | END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDE[D] TERM IN[S] YRS DAY[S] | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 0 | $ 0 | 0 | 90 | 12 | $21,500 | $43,600 | 11 | 25 |
| 2 | 0 | 0 | 0 | 90 | 13 | 23,600 | 46,600 | 11 | 31 |
| 3 | 3,400 | 9,600 | 4 | 176 | 14 | 25,700 | 49,500 | 11 | 35 |
| 4 | 5,200 | 14,000 | 6 | 59 | 15 | 27,800 | 52,100 | 12 | |
| 5 | 7,000 | 18,200 | 7 | 161 | 16 | 29,900 | 54,700 | 12 | |
| 6 | 8,900 | 22,200 | 8 | 183 | 17 | 32,000 | 57,100 | 11 | 34 |
| 7 | 10,900 | 26,200 | 9 | 143 | 18 | 34,200 | 59,500 | 11 | 31 |
| 8 | 13,000 | 30,100 | 10 | 49 | 19 | 36,400 | 61,800 | 11 | 27 |
| 9 | 15,200 | 33,800 | 10 | 268 | 20 | 38,500 | 63,900 | 11 | 20 |
| 10 | 17,400 | 37,300 | 11 | 59 | AGE 70 | 49,200 | 73,300 | 10 | 19 |
| 11 | 19,500 | 40,700 | 11 | 182 | | | | | |

THESE VALUES FOR THE POLICY ASSUME THAT ALL PREMIUMS ARE PAID.  THEY DO NOT
REFLECT DIVIDEND CREDITS OR LOANS.

THIS PAGE 3-CONTINUED IS A PART OF POLICY NUMBER  86 097 685.

-------- ENDORSEMENTS --------

AMENDMENT TO THE "REPAYMENT" PROVISION.  THE FIRST SENTENCE IS DELETED
AND REPLACED BY THE FOLLOWING:

YOU MAY REPAY ALL OR PART OF A LOAN AT ANY TIME WHILE THE INSURED IS
LIVING.  YOU MAY ALSO REPAY ALL OR PART OF A LOAN AT ANY TIME BEFORE
THE END OF THE GRACE PERIOD OF AN UNPAID PREMIUM.

AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION.  THE SECOND
PARAGRAPH IS DELETED AND REPLACED BY THE FOLLOWING:

THE CASH SURRENDER VALUES AND PAID-UP INSURANCE BENEFITS ARE EQUAL TO
OR MORE THAN THOSE REQUIRED BY LAW.  THE CASH VALUE AT THE END OF A
POLICY YEAR AFTER THE TENTH YEAR IS EQUAL TO THE RESERVE.  A DETAILED
STATEMENT OF THE METHOD OF COMPUTING VALUES AND BENEFITS HAS BEEN
FILED, IF REQUIRED, WITH THE INSURANCE SUPERVISORY OFFICIAL OF THE
JURISDICTION IN WHICH THIS POLICY IS DELIVERED.

.26-100

**EQUITABLE**

| | |
|---|---|
| *THE INSURED* | WAFA REYAD |
| *POLICY OWNER* | WAFA REYAD |
| *FACE AMOUNT* | $100,000 |
| *POLICY NUMBER* | PN 86 108 388 |

*LIFE*
*INSURANCE*
*POLICY*

## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

### Agrees

- **To pay** the insurance benefits of this policy to the Beneficiary upon receiving proof of the Insured's death; and

- **To provide** *you (the policy Owner)* with the other rights and benefits of this policy.

These agreements are subject to the provisions of this policy.

**Ten Days to Examine Policy** - If for any reason you are not satisfied with your policy, you may cancel it by returning the policy to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

*[signature]*  Chairman and Chief Executive Officer

*[signature]* Molly K. Heines  Vice President and Secretary

Whole Life—Level Face Amount Plan. Insurance payable upon death. Premiums payable for life. Policy participates in dividends.

No. 126-51

# Contents

The Insurance Benefits We Pay    2

Who Benefits From This Policy    4

The Premiums You Pay    4
  Grace Period
  Lapse
  Reinstatement

How Dividends Are Paid    5

The Cash Surrender Value of This Policy    5

How a Loan Can Be Made    6
  Automatic Premium Loan Option

Options On Lapse    6

Other Important Provisions    7

How Benefits Are Paid    8

Any additional benefit riders and a copy of the application are included at the back of this policy.

## In this policy:

"We," "our" and "us" mean The Equitable Life Assurance Society of the United States.

"You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.

# The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the Beneficiary when we receive proof of the Insured's death.

These insurance benefits include the following amounts, which we will determine as of the date of the Insured's death:

- the Face Amount of this policy;

- *plus* any other benefits then due from riders to this policy;

- *plus* any amount due from dividends left under this policy;

- *plus* any unearned policy loan interest;

- *plus* or *minus* any adjustment for the last premium;

- *minus* any loan (and any loan interest due and unpaid) on this policy.

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 8; or (b) the rate required by any applicable law.

We will pay these benefits only if premiums have been paid as called for by this policy. However, even if premiums have been discontinued we may still pay certain benefits. See Options on Lapse, Page 6.

Payment of these benefits may also be affected by other provisions of this policy. See Page 7 where we specify our right to contest the policy, what happens if age or sex has been misstated, and the suicide exclusion. Special exclusions or limitations (if any) are listed on Page 3.

THE INSURED    WAFA REYAD                    REGISTER DATE    DEC 18, 1986

POLICY OWNER   WAFA REYAD                    DATE OF ISSUE    DEC 18, 1986

FACE AMOUNT    $100,000                      ISSUE AGE,SEX    41, FEMALE

POLICY NUMBER  PN  86 108 388                BENEFICIARY      MOSTAFA REYAD .


------------ BENEFITS AND PREMIUMS ------------

        BENEFITS                             MONTHLY PREMIUM      PREMIUM PERIO
  LIFE INSURANCE                                  $125.00        FOR LIFE

THE FIRST PREMIUM IS $125.00 AND IS DUE ON OR BEFORE DELIVERY OF THE
POLICY.  SUBSEQUENT PREMIUMS ARE DUE ON JAN 18, 1987 AND MONTHLY THEREAFTER
DURING THE PREMIUM PERIOD IN ACCORDANCE WITH THE ABOVE PREMIUM TABLE.

WHILE THIS POLICY IS ON THE SYSTEM-MATIC PREMIUM COLLECTION ARRANGEMENT, THE
MONTHLY PREMIUM WILL BE REDUCED BY $1.00.


--------------- TABLE OF VALUES ---------------
(SEE PAGES 5 AND 6 FOR DETAILS)

| END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS. YRS DAYS | END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE | REDUCED PAID-UP INSURANCE | EXTENDED TERM INS YRS DAYS |
|---|---|---|---|---|---|---|---|
| 1 | $      0 | $      0 | 0   90 | 13 | $16,800 | $43,100 | 17   26 |
| 2 |        0 |        0 | 0   90 | 14 | 18,300 | 45,600 | 17  105 |
| 3 | 2,400 | 8,900 | 5  191 | 15 | 19,900 | 48,200 | 17  176 |
| 4 | 3,600 | 12,900 | 7  233 | 16 | 21,600 | 50,800 | 17  220 |
| 5 | 4,900 | 16,800 | 9  183 | 17 | 23,300 | 53,300 | 17  222 |
| 6 | 6,200 | 20,400 | 11    4 | 18 | 25,000 | 55,600 | 17  188 |
| 7 | 7,600 | 24,000 | 12  162 | 19 | 26,800 | 57,900 | 17  142 |
| 8 | 9,100 | 27,600 | 13  278 | 20 | 28,600 | 60,000 | 17   71 |
| 9 | 10,600 | 30,900 | 14  273 | AGE 62 | 30,500 | 62,200 | 16  360 |
| 10 | 12,200 | 34,200 | 15  200 | AGE 65 | 36,300 | 68,200 | 16   58 |
| 11 | 13,700 | 37,300 | 16   57 | AGE 70 | 46,400 | 76,500 | 14  121 |
| 12 | 15,200 | 40,200 | 16  229 | | | | |

THESE VALUES FOR THE POLICY ASSUME THAT ALL PREMIUMS ARE PAID.  THEY DO NOT
REFLECT DIVIDEND CREDITS OR LOANS.


WL50(PREFERRED)

126-51-3                    PAGE 3                    (1)    TAR-RSO
              (CONTINUED ON NEXT PAGE)      00-08-07  00-08-07 1249

THIS PAGE 3-CONTINUED IS A PART OF POLICY NUMBER  86 108 388.

-------- ENDORSEMENTS --------

1.  AMENDMENT TO THE "REPAYMENT" PROVISION.  THE FIRST SENTENCE IS DELETED
    AND REPLACED BY THE FOLLOWING:

    YOU MAY REPAY ALL OR PART OF A LOAN AT ANY TIME WHILE THE INSURED IS
    LIVING.  YOU MAY ALSO REPAY ALL OR PART OF A LOAN AT ANY TIME BEFORE
    THE END OF THE GRACE PERIOD OF AN UNPAID PREMIUM.

2.  AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION.  THE SECOND
    PARAGRAPH IS DELETED AND REPLACED BY THE FOLLOWING:

    THE CASH SURRENDER VALUES AND PAID-UP INSURANCE BENEFITS ARE EQUAL TO
    OR MORE THAN THOSE REQUIRED BY LAW.  THE CASH VALUE AT THE END OF A
    POLICY YEAR AFTER THE TENTH YEAR IS EQUAL TO THE RESERVE.  A DETAILED
    STATEMENT OF THE METHOD OF COMPUTING VALUES AND BENEFITS HAS BEEN
    FILED, IF REQUIRED, WITH THE INSURANCE SUPERVISORY OFFICIAL OF THE
    JURISDICTION IN WHICH THIS POLICY IS DELIVERED.

S.26-100

WL50(PREFERRED)

126-51-3            PAGE 3-CONTINUED        (2-2) TAR-RSO
                                        00-08-07  00-08-07 1249