UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INDYMAC BANK, F.S.B.

Plaintiff

CIVIL ACTION NO.
3:00CV835 (CFD)

V.

MOSTAFA REYAD AND WAFA REYAD
Defendants

DATE: AUGUST 14, 2007

# **APPENDIX # 1**

**AIG** VALIC  The Variable Annuity
Life Insurance Company
2929 Allen Parkway
Houston, TX 77019

December 03, 2003

VCA000788976

REYAD, WAFA

Dear Valued Investor:

We applaud your decision to invest in your financial future and thank you for choosing AIG VALIC as your retirement plan provider. We have enclosed specific information about your account and related documents. Please take a moment to review these materials, and keep them in your permanent files.

You may access your account information 24 hours a day, 7 days a week, through our Web site, www.aigvalic.com, or through AIG VALIC by Phone at 1-800-428-2542. To ensure complete confidentiality for your account, you must first establish a personal identification number (PIN). It is easy to set up your PIN – the enclosed wallet card will guide you, step by step. Prospectuses and financial reports for all investments offered are available on AIG VALIC's Web site in the "products" section.

Electronic delivery of account statements, transaction confirmations and certain regulatory documents (prospectuses, semi-annual and annual reports, proxies, etc.) is now available. To choose this method of delivery, simply visit www.aigvalic.com and click on "View your account." After logging in, select "E-mail Delivery" from the client menu and follow the easy steps to register for this free service.

If you have any questions or would like assistance with your account including additional literature on the available investment options, call our toll-free number, 1-800-448-2542, to contact your AIG VALIC financial advisor or Client Service Professional.

We look forward to helping you achieve your retirement savings goals.

Best regards,

Robert P. Condon
President and Chief Executive Officer

Securities and investment advisory services offered through VALIC Financial Advisors, Inc., member NASD, SIPC and SEC registered investment adviser.

**REDACTED**                                    **VAL 00001**

WL100V03E

*Member of American International Group, Inc.*

Information for Account Number:

## PLEASE REVIEW FOR ACCURACY

The information you provided to us was used in establishing your account and is noted below. Please review this information and if corrections are necessary, submit them to us in writing or by contacting us at 1-800-448-2542. If any of this information should change in the future, please notify us so that we may update our records.

Annuitant Name:    REYAD, WAFA

Address:

Phone:

Occupation:

Employed by NASD Member Firm:

Investment Experience:

Investment Objective:

Client Risk Profile:

Social Security Number/Tax ID #:

Date of Birth:

Sex:

Marital Status:

Household Income:

Net Worth*:                          *(excluding value of primary residenc

Life Insurance:

Tax Bracket:           %

## ACCOUNT SPECIFIC INFORMATION

Group Name:      BOROUGH OF FORT LEE

Group Number:    42280

Subgroup #:    001

State of Issue:    NJ

Contribution Source:      Employer Basic

Contributions to account              are allocated as follows:

Product:  UITG-PD2

Plan Type:    QDCF

Plan #:    001

Region Code:    028

| Fund Name | Percentage | Fund Name | Percentage |
|---|---|---|---|
| Mid Cap Value Fund | 0.00% | Fixed Account Plus | 100.00% |
| Stock Index Fund | 0.00% | Science & Technology Fund | 0.00% |
| Income & Growth Fund | 0.00% | Vanguard Long-Term Treasury Fund | 0.00% |
| Vanguard Windsor II Fund | 0.00% | Evergreen Special Value Fund | 0.00% |

**REDACTED**

### Investment Objective Definitions

Safety of Principal – Suitable for clients with a low tolerance for investment risk and/or a short time horizon. The investor generally seeks to hold securities with little or no price fluctuation.

Long-term Growth – Suitable for clients with a moderate to high tolerance for investment risk and a long time horizon. The investor seeks capital appreciation and has little need for current income.

Retirement Income – Suitable for clients seeking income and protection from inflation. Accepts less fluctuations in investment results by emphasizing more income and capital preservation and less long-term growth.

Income – Suitable for clients seeking income and protection from inflation. Accepts less fluctuations in investment results by emphasizing more income and capital preservation and less long-term growth.        **VAL 00002**

 **VALIC**

The Variable Annuity Life Insurance Company
*Member of American International Group, Inc.*

PARTICIPANT: REYAD, WAFA

GROUP CONTRACT NUMBER: 42280

PARTICIPANT ACCOUNT NUMBER:

DATE OF ISSUE: 8/13/1997

ANNUITY DATE: 8/25/2020

This Certificate is issued to the named Participant under the Group Annuity Contract written in New Jersey. It contains a summary of the Participant's rights and benefits under the Group Annuity Contract, but it is not a part of the Contract and does not change any of the terms or provisions of the Contract. VALIC will pay annuity and other benefits as provided in the Contract.

### PLEASE READ YOUR CERTIFICATE CAREFULLY
### See Index on Page 2

- **Maintenance Charge** -- There is no account maintenance charge.
- **Separate Account Charge** -- There is a daily charge against the Separate Account at an annual rate ranging from 1% to 1.25% of the average daily net asset value of the Separate Account, based upon the Variable Investment Option to which assets are allocated. This charge only applies to assets under Variable Investment Options. See Section 2.06 for a complete description.
- **Cash Surrender or Withdrawal Charge** -- There is a charge at the time of surrender or withdrawal for transfer to another funding entity equal to 5% of (i) the amount withdrawn, or (ii) the amount of any Purchase Payments received during the most recent 60 months prior to the surrender or withdrawal, whichever is less. See Sections 4.03 through 4.06 for a complete description and conditions under which there is no charge.

The conditions and provisions of the Contract are subject to applicable state laws.

EXECUTED AT VALIC'S HOME OFFICE ON THE DATE OF ISSUE.

*Mary L. Cavanaugh*
(Secretary)

*Rob Condon*
(President)

ANNUITY PAYMENTS AND SURRENDER VALUES PROVIDED BY THE CONTRACT WHEN BASED ON INVESTMENT EXPERIENCE OF THE SEPARATE ACCOUNT ARE VARIABLE AND ARE NOT GUARANTEED AS TO FIXED DOLLAR AMOUNT.

### PARTICIPANT CERTIFICATE
### GROUP FIXED AND VARIABLE DEFERRED ANNUITY CONTRACT
### INDIVIDUAL ALLOCATIONS
### - NON-PARTICIPATING -

UITG-194P-SWMC

**REDACTED**

PDPCBSWMC104

VAL 00003

THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK.

**VAL 00004**

# INDEX

| Section 1 | DEFINITIONS | 3 |
| Section 2 | CONTRACT AND PURCHASE PAYMENTS | 3 |
| 2.01 | Incontestability | 3 |
| 2.02 | Minimum Account Value | 3 |
| 2.03 | Plan Provisions | 3 |
| 2.04 | Purchase Payments | 3 |
| 2.05 | Maintenance Charge | 3 |
| 2.06 | Separate Account Charge | 3 |
| Section 3 | INVESTMENT OPTIONS | 4 |
| 3.01 | Fixed Interest Options | 4 |
| 3.02 | Variable Investment Options | 4 |
| 3.03 | Accumulation Unit | 4 |
| 3.04 | Accumulation Unit Value | 4 |
| 3.05 | Transfers During the Accumulation Period | 4 |
| 3.06 | Transfers During the Annuity Period | 5 |
| Section 4 | BENEFITS | 6 |
| 4.01 | Cash Surrender | 6 |
| 4.02 | Withdrawals | 6 |
| 4.03 | Charges for Cash Surrender or Withdrawal | 6 |
| 4.04 | Conditions Under Which No Surrender or Withdrawal Charges Will Be Deducted | 6 |
| 4.05 | Annuity Period | 6 |
| 4.06 | Starting Annuity Income Benefits | 7 |
| 4.07 | Partial Annuitization | 7 |
| 4.08 | Minimum Annuity Payments | 7 |
| 4.09 | Misstatement of Age | 7 |
| 4.10 | Annuity Income (Payment) Options | 7 |
| 4.11 | Fixed or Variable Annuity Basis | 7 |
| 4.12 | Variable Annuity Payments | 7 |

| 4.13 | Assumed Investment Rate (AIR) | 8 |
| 4.14 | Annuity Units and Annuity Unit Value | 8 |
| 4.15 | Betterment of Rates | 8 |
| 4.16 | Annuity Rate Tables | 8-13 |
| 4.17 | Beneficiaries | 13 |
| 4.18 | Death Payment Provisions | 13 |
| Section 5 | CODE REQUIREMENTS AND RETIREMENT PLAN PROVISIONS | 15 |
| 5.01 | Salary Reduction Purchase Payments | 15 |
| 5.02 | Minimum Distributions After Age 70 1/2 | 15 |
| 5.03 | Minimum Death Benefit Distributions | 15 |
| 5.04 | Direct Rollovers | 16 |
| 5.05 | Plan Provisions | 16 |
| 5.06 | Nonqualified Deferred Compensation Plans | 16 |
| Section 6 | GENERAL PROVISIONS | 17 |
| 6.01 | Assignment | 17 |
| 6.02 | Vesting | 17 |
| 6.03 | Written Notices to Us | 17 |
| 6.04 | Reports | 17 |
| 6.05 | Voting Rights | 17 |
| 6.06 | Suspension of Payments | 17 |
| 6.07 | Deferral of Cash Surrender or Withdrawal | 17 |
| 6.08 | Proof of Survival | 17 |
| 6.09 | Substitution of Investment Fund Shares | 17 |
| 6.10 | Minimum Benefit | 17 |
| 6.11 | Separate Account | 17 |

VAL 00005

## Section 1 - DEFINITIONS

**Accumulation Period** - the time between the date of the first Purchase Payment and the Annuity Date for a Participant.

**Accumulation Value** - equals the sum of the values of the Fixed Interest Options and Variable Investment Options allocated to a Participant Account that have not been applied to provide annuity payments.

**Annuity Period** - the time during which VALIC makes annuity payments.

**Certificate Year** - a twelve month period starting with the issue date of a Participant's certificate and each anniversary of that date.

**Code** - the Internal Revenue Code of 1986, as amended.

**Company Reference** - "We," "Our," "Us," or "VALIC," means The Variable Annuity Life Insurance Company.

**Contract** - the legal agreement between VALIC and the Contract Owner, under which this Certificate is issued.

**Contract Owner** - the employer or other entity that makes application for the Contract.

**Investment Fund** - an investment portfolio which is the underlying investment medium for a Variable Investment Option.

**General Account** - the assets of VALIC other than those in the Separate Account or any other segregated asset account.

**Home Office** - the principal office of VALIC.

**Participant** - a person for whom or with respect to whom Purchase Payments are made under the Contract. Any reference to "You" or "Your" means Participant.

**Participant Account** - an individual account which is established for a Participant to record the Accumulation Value for the Participant.

**Plan** - the employer-sponsored retirement plan, annuity purchase arrangement, or deferred compensation program for which the Contract is issued.

**Purchase Payment** - an amount paid to VALIC for allocation to a Participant Account.

**Separate Account** - a segregated asset account established under the Texas Insurance Code (known as Separate Account A).

**Surrender Value** - the Accumulation Value of a Participant Account less any applicable surrender charge.

## Section 2 - CONTRACT AND PURCHASE PAYMENTS

2.01 **Incontestability** - The Contract is incontestable. The Contract is non-participating and does not share in the profits or surplus of VALIC.

2.02 **Minimum Account Value** - We can distribute the Surrender Value if the Accumulation Value for the Participant Account falls below $300 and there are no Purchase Payments for two Certificate Years.

2.03 **Plan Provisions** - As further explained in Section 5, the Contract is subject to the provisions of the Plan. To the extent provided by the Plan, any rights that may be exercised by a Participant under the Contract may instead be exercised by the Contract Owner or a Plan representative.

2.04 **Purchase Payments** - Purchase Payments may be made at any time during the Accumulation Period and may include amounts that are rolled over or directly transferred from another plan. We require no payment beyond the first. There is no penalty if any scheduled payments are omitted or stopped.

If only one Purchase Payment is to be allocated to a Participant's Account, it must be at least $1,000. Periodic payments must be at least $30 each. VALIC may waive this minimum.

We may deduct amounts from Purchase Payments or from the Accumulation Value for applicable premium taxes. We will allocate the net Purchase Payment to one or more Investment Options according to Your directions unless the Contract Owner has retained that right under the Plan.

2.05 **Maintenance Charge** - There is no maintenance charge.

2.06 **Separate Account Charge** - We deduct a daily charge from the Separate Account. The amount of the charge depends on the Variable Investment Option from which it is deducted, and is imposed at an annual rate which ranges from 1% to 1.25% of the assets of the Variable Investment Option.

VAL 00006

## Section 3 - INVESTMENT OPTIONS

We will allocate Purchase Payments (less any charges) to one or more Investment Options selected by You. We reserve the right to limit allocations among Investment Options to seven at any one time. Each selection must be a whole percentage of Purchase Payments.

3.01 **Fixed Interest Options** - Fixed Interest Options are based on the General Account. Allocations to Fixed Interest Options earn interest as credited by VALIC during the Accumulation Period. The interest credited will be at least 3% per year.

There are two Fixed Interest Options: Short Term Fixed Account and Fixed Account Plus.

(a) Short Term Fixed Account. We will credit interest to the Short Term Fixed Account on a portfolio basis. On the portfolio basis, all amounts accumulated will be credited with the same rate of interest for the current period.

(b) Fixed Account Plus. We will credit interest to the Fixed Account Plus on the following basis. Periodically, but not less than annually, We will declare interest rates that apply separately to amounts accumulated in separate time periods.

3.02 **Variable Investment Options** - Variable Investment Options are based upon Investment Funds available within Separate Account A. Separate Account A invests in a number of Investment Funds. Each Investment Fund underlying a Variable Investment Option has a different investment objective. Investment returns on Variable Investment Options may be positive or negative.

3.03 **Accumulation Unit** - An Accumulation Unit is a measuring unit for amounts allocated to a Variable Investment Option before annuity payments begin. The value of an Accumulation Unit will vary with the net investment return of the respective underlying Investment Fund. Accumulation Units may be credited to Your Account due to a Purchase Payment or a transfer from another Investment Option. The number of Accumulation Units credited to Your Account is determined by dividing the dollar amount of the transaction by the Accumulation Unit Value for that Variable Investment Option at the next time it is computed.

3.04 **Accumulation Unit Value** - The Accumulation Unit Value is the value of one Accumulation Unit of a Variable Investment Option. We will calculate it at the end of trading each day the New York Stock Exchange is open, except as otherwise permitted by the Securities and Exchange Commission. The value of an Accumulation Unit of a Variable Investment Option is the Accumulation Unit Value last computed, multiplied by one plus the Investment Rate for the period. The Investment Rate may be positive or negative.

The Investment Rate is the change in the value of the Investment Fund's portfolio (capital gains and losses whether or not realized and investment income) since the last computation, divided by the amount of assets at the beginning of the period, less a factor for

(a) the Separate Account Charge for the period at the applicable annualized rate ranging from 1% to 1.25%, and

(b) any taxes attributable to the Separate Account or reserve held for such taxes.

3.05 **Transfers During the Accumulation Period** - During the Accumulation Period, You may transfer amounts among Investment Options, except as provided below.

(a) We reserve the right to limit allocations among Investment Options to seven at any one time.

(b) We reserve the right to require transfers to be at least 30 days apart.

(c) Transfers from the Short Term Fixed Account. After a transfer to the Short Term Fixed Account, You may not make any transfer from the Short Term Fixed Account for 90 days. We may change this transfer restriction at any time. However, the transfer restriction period may not exceed 180 days.

(d) Transfers from Fixed Account Plus. You may transfer up to 20% of the Accumulation Value allocated to Fixed Account Plus during each Certificate Year. If multiple transfers are made in a Certificate Year, the percentages of the Accumulation Value transferred each time will be added together to determine the 20% transfer limit for that Certificate Year. For each transfer, the percentage transferred is the ratio of the amount transferred to the portion of the Accumulation Value allocated to Fixed Account Plus immediately prior to the transfer. However, if following a 20% transfer, the remaining amount allocated to Fixed Account Plus would be less than $500, You may transfer the remaining amount.

VAL 00007

4

7 of 75

3.06 **Transfers During the Annuity Period** - During the Annuity Period, You may transfer Annuity Unit values among the Variable Investment Options. You may also transfer Annuity Unit values from the Variable Investment Options underlying a Variable Annuity to provide a Fixed Annuity. Transfers must be at least 365 days apart. We will not permit any transfer from a Fixed Annuity during the Annuity Period.

5

VAL 00008

## Section 4 - BENEFITS

4.01 **Cash Surrender** - Subject to the restrictions in Sections 5.01 and 5.05, You may surrender Your Account before the Annuity Date for a cash payment equal to the Surrender Value as of the date We receive the request at the Home Office. The Surrender Value is the Accumulation Value less any charges, as described below.

The Surrender Value of the Fixed Interest Options will never be less than the amount of all Purchase Payments allocated to the Fixed Interest Options, less any amounts transferred to Variable Investment Options or withdrawn.

4.02 **Withdrawals** - Subject to the restrictions in Sections 5.01 and 5.05, You may withdraw a portion of the Accumulation Value in cash at any time before the Annuity Date. We may deduct a charge as described below.

### 4.03 Charges for Cash Surrender or Withdrawal

(a) General. The Cash Surrender or Withdrawal charges under the Contract will not apply unless You make a surrender or withdrawal for transfer to another funding entity. The charge is 5% of (1) the amount withdrawn, or (2) the amount of any Purchase Payments received during the most recent 60 months prior to the surrender or withdrawal, whichever is less.

For purposes of this charge, We treat withdrawals as withdrawals of Purchase Payments before any earnings. We treat the most recent Purchase Payments as being withdrawn first.

(b) 10% Withdrawal in Certificate Year. Subject to the provisions of Sections 4.04 and 4.05, in any Certificate Year You may withdraw up to 10% of the Accumulation Value without a charge. The surrender charge will be applicable only to the amount withdrawn that exceeds 10%. The percentage withdrawn will be calculated as the ratio of the amount withdrawn to the Accumulation Value immediately prior to the withdrawal. If multiple withdrawals are made in a Certificate Year, the percentages withdrawn for each withdrawal will be added together to determine whether the 10% limit has been exceeded.

4.04 **Conditions Under Which No Surrender or Withdrawal Charges Will Be Deducted** - We will not deduct charges from Your Account under any of the following conditions:

(a) You elect an Annuity Income Option; or

(b) After Your death; or

(c) You have become totally and permanently disabled. This means that You are unable, because of physical or mental impairment, to perform the material and substantial duties of any occupation for which You are suited by means of education, training or experience. The impairment must have been in existence for more than 180 days to qualify for this benefit.

Such impairment must be expected to result in death or be long-standing and indefinite.

We require proof of disability. We will accept a certified Social Security finding of disability or a doctor's verification; or

(d) The withdrawal and any earlier withdrawals from Your Account during the same Certificate Year do not exceed 10% of the Accumulation Value (see Section 4.03); or

(e) You are separated from service with the employer that maintains the Plan; or

(f) No Purchase Payments were made to Your Account in the five years preceding the date of the surrender or withdrawal; or

(g) You are at least 59 1/2 years old and Your Account was established at least five years before the date of the surrender or withdrawal; or

(h) Your Account was established at least fifteen years before the date of the surrender or withdrawal; or

(i) You are retired from service with the employer that maintains the Plan; or

(j) To the extent that a withdrawal or surrender is made on account of a hardship under the terms of the employer's Plan.

The surrender charge may be waived or reduced uniformly on all Participant Accounts for contracts issued under certain plans or arrangements which are expected to result in administrative cost savings. No reduction or waiver will be made that is unfairly discriminatory to any person.

We may waive any withdrawal or surrender charge attributable to Purchase Payments received during specific periods of time, and under conditions and limitations set by Us. Any such waiver will be made by Resolution of the Board of Directors. Notice of the right to surrender without charge will be mailed to the Contract Owner when such waiver is declared by the Board of Directors.

4.05 **Annuity Period** - The Annuity Period begins at the Annuity Date, when Your Accumulation Value is applied under an Annuity Income Option. You may change the Annuity Date shown on the first page of Your Certificate by giving Us at least 30 days notice. The selected Annuity Date may be the first

day of any calendar month, but if You choose a life Income option, the Annuity Date may not precede Your 50th birthday without Our permission.

4.06 **Starting Annuity Income Benefits** - At least 30 days in advance of the Annuity Date, You must choose one of the Annuity Income Options in Section 4.10 and provide acceptable proof of age for any person whose age is taken into account under a life income option. If You fail to select another Annuity Income Option, annuity payments will be made on the basis of the Second Option with payments guaranteed for a ten-year period, commencing on the Annuity Date.

4.07 **Partial Annuitization** - You may choose to apply less than the full Accumulation Value under an Annuity Income Option and may choose different Annuity Dates and different Annuity Income Options for different portions of the Accumulation Value. Therefore, the Contract may, at times, be in both an Accumulation Period and an Annuity Period. If You choose to do this, the provisions of the Contract relating to the Accumulation Period and the Annuity Period will be applied as though there were separate Contracts.

4.08 **Minimum Annuity Payments** - You may not choose any Annuity Income Option if the resulting initial payment would be less than $25 under either a Fixed or Variable Annuity. We reserve the right to convert monthly payments to quarterly, semi-annual or annual payments so the initial payment will be at least $25.

4.09 **Misstatement of Age** - If annuity payments depend upon an individual's survival and the date of birth of any individual was misstated, We will adjust the remaining payments. The amount remaining to be paid will be the amount that should have been paid with the correct information. We will credit or charge the amount of any underpayment or overpayment against the next succeeding payment or payments, if any remain. We reserve the right to collect any overpayment directly from the payee.

4.10 **Annuity Income (Payment) Options** - You may choose to receive payments under any of the Annuity Income Options below or any other option agreed to by VALIC. Any option chosen must comply with applicable state and federal laws and regulations.

FIRST OPTION - Life Annuity With No Guarantee Period - An income payable during Your life. All payments cease at Your death with no further amounts payable.

SECOND OPTION - Life Annuity With Guarantee Period of 5, 10, 15, or 20 Years - An income

payable during Your life. If, at Your death, We have made payments for fewer than the number of years selected, We will continue payments to the Beneficiary for the remainder of the guarantee period.

THIRD OPTION - Life Annuity With Cash or Unit Refund Option - An income payable during Your life. Payments cease at Your death. However, the Beneficiary may receive an additional payment.

For payments on a Fixed Annuity basis, the additional payment, if any, will be the Accumulation Value applied to this option less the total of all prior payments.

For payments on a Variable Annuity basis, the additional payment, if any, will be the current value of the number of Annuity Units credited at the Annuity Date less the number of Annuity Units that have been paid. For this purpose, the number of Annuity Units credited equals the Accumulation Value applied to this option divided by the Annuity Unit Value at the date used to calculate the first annuity payment.

FOURTH OPTION - Joint and Survivor Life Annuity - An income payable during the joint lives of You and a second person and thereafter during the life of the survivor.

FIFTH OPTION - Payments for a Designated Period - An income payable for a selected number of years between five and thirty. This option is available for Fixed Annuities only.

4.11 **Fixed or Variable Annuity Basis** - A Fixed Annuity provides benefit payments of a fixed dollar amount. A Variable Annuity provides benefit payments which vary with the investment return of the chosen Variable Investment Options.

You may elect to receive payments under any annuity option as a Fixed Annuity, a Variable Annuity, or a combination Fixed and Variable Annuity. If You make no election, amounts in Fixed Interest Options will provide a Fixed Annuity and amounts in Variable Investment Options will provide a Variable Annuity.

4.12 **Variable Annuity Payments** - We will determine the amount of each Variable Annuity payment by multiplying the number of Annuity Units payable by the Annuity Unit Value on the tenth day (or the preceding business day if the tenth day is not a business day) prior to the payment due date.

We will determine the number of Annuity Units payable at the beginning of the Annuity Period. We will divide the dollar amount of the first payment by the Annuity Unit Value for that Variable Investment Option on the tenth day before the Annuity Date. The number of Annuity Units payable from each

Variable Investment Option remains constant unless You transfer a portion of the annuity benefit between the Variable Investment Options or from a Variable Annuity to a Fixed Annuity. However, the dollar amount payable is not fixed and may change from month to month.

4.13 **Assumed Investment Rate (AIR)** - Since the future rate of return on Variable Options is unknown, You must choose an Assumed Investment Rate (AIR). The AIR is the assumed rate of return used to determine the first annuity payment for a Variable Annuity Option. Rates of 3%, 3 1/2%, 4 1/2%, 5% or a higher rate may be chosen if permitted by state law and regulations. If no AIR is chosen, the AIR will be 3 1/2%. A higher AIR will result in a higher initial payment. Choice of a lower AIR will result in a lower initial payment. Payments will increase whenever the actual return exceeds the chosen AIR. Payments will decrease whenever the actual return is less than the chosen AIR.

4.14 **Annuity Units and Annuity Unit Value** - An Annuity Unit is a measuring unit We use to determine the amount of the annuity payments to be made. All or a portion of the Accumulation Value is used to purchase a stream of annuity payments represented by a number of Annuity Units payable each period. The value of these Annuity Units represents the benefit amount paid each period.

For Fixed Annuity options the number of Annuity Units equals the dollar amount of each payment since the Annuity Unit Value is fixed at $1.00.

For Variable Annuity options, the Annuity Unit Value varies with the investment rate each period. The Annuity Unit Value is the value of one Annuity Unit of an Investment Option.

The value of a Variable Annuity Unit is A multiplied by B multiplied by C (AxBxC).

A = the Annuity Unit Value for the Variable Investment Option at the immediately preceding computation date

B = 1 + the investment rate for the variable fund for the period

C = the applicable AIR Factor from the following table raised to the power of the number of days in the period.

| AIR | AIR Factor |
|-----|-----------|
| 3% | 0.999919 |
| 3 1/2% | 0.999906 |
| 4 1/2% | 0.999879 |
| 5% | 0.999866 |

4.15 **Betterment of Rates** - Fixed Annuity – We will use the applicable current settlement option rates if these will provide higher fixed annuity payments to You. If a commutation (cash out of remaining annuity payments) is allowed, the rates previously used to calculate the annuity payments will be used for the commutation request.

4.16 **Annuity Rate Tables** - The value We use to determine annuity payments will be the applied portion of the Accumulation Value on the tenth day (or the preceding business day if the tenth day is not a business day) preceding the date of the first annuity payment, less any applicable premium taxes.

The following tables are based on the 1983a mortality table and assume births in the year 1900. The tables show the amount required to purchase a first monthly payment of $1.00. Quarterly, semiannual, and annual payments may also be selected.

The amount of each payment will depend upon Your adjusted age at the time the first payment is due. Adjusted age will be determined in accordance with the following:

| Calendar Year of Birth | Adjusted Age is Actual Age Minus |
|-----------------------|----------------------------------|
| Before 1916 | 0 |
| 1916 - 1935 | 1 |
| 1936 - 1955 | 2 |
| 1956 - 1975 | 3 |
| After 1975 | 4 |

Actual age, as used above, means Your age at the birthday nearest to the Annuity Date.

Table A is the Table to use for Variable Annuities with a 3% AIR (see Section 4.13) and to determine the minimum guarantees for Fixed Annuities. Tables B, C, and D are to be used for Variable Annuities with 3 1/2%, 4 1/2% and 5% AIRs respectively.

VAL 00011

## TABLE A
### DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
### WITH A FIRST MONTHLY PAYMENT OF $1.00
### AT AN ASSUMED INVESTMENT RATE OF 3%

Options 1, 2 and 3 -- Single Life Annuities

| Age | Monthly Payments Guaranteed | | | | | Unit Refund |
|-----|------|------|------|------|------|------|
| | None | 60 | 120 | 180 | 240 | |
| 50 | 250.48 | 250.83 | 251.98 | 254.04 | 257.21 | 259.24 |
| 51 | 246.41 | 246.79 | 248.04 | 250.27 | 253.72 | 255.69 |
| 52 | 242.26 | 242.68 | 244.03 | 246.45 | 250.21 | 252.09 |
| 53 | 238.03 | 238.49 | 239.95 | 242.58 | 246.69 | 248.43 |
| 54 | 233.73 | 234.23 | 235.81 | 238.67 | 243.15 | 244.71 |
| 55 | 229.35 | 229.88 | 231.60 | 234.72 | 239.60 | 240.94 |
| 56 | 224.89 | 225.46 | 227.32 | 230.73 | 236.05 | 237.12 |
| 57 | 220.34 | 220.96 | 222.98 | 226.71 | 232.52 | 233.24 |
| 58 | 215.71 | 216.38 | 218.59 | 222.65 | 229.01 | 229.31 |
| 59 | 210.99 | 211.72 | 214.14 | 218.58 | 225.54 | 225.33 |
| 60 | 206.19 | 206.99 | 209.63 | 214.50 | 222.12 | 221.29 |
| 61 | 201.30 | 202.18 | 205.08 | 210.42 | 218.75 | 217.19 |
| 62 | 196.35 | 197.31 | 200.50 | 206.34 | 215.47 | 213.04 |
| 63 | 191.32 | 192.39 | 195.88 | 202.30 | 212.28 | 208.83 |
| 64 | 186.24 | 187.41 | 191.25 | 198.29 | 209.20 | 204.54 |
| 65 | 181.11 | 182.40 | 186.61 | 194.34 | 206.25 | 200.18 |
| 66 | 175.92 | 177.34 | 181.97 | 190.46 | 203.44 | 195.73 |
| 67 | 170.70 | 172.26 | 177.35 | 186.66 | 200.79 | 191.41 |
| 68 | 165.43 | 167.15 | 172.75 | 182.97 | 198.31 | 186.93 |
| 69 | 160.13 | 162.01 | 168.18 | 179.39 | 196.00 | 182.35 |
| 70 | 154.78 | 156.86 | 163.66 | 175.95 | 193.89 | 178.01 |
| 71 | 149.41 | 151.71 | 159.21 | 172.66 | 191.97 | 173.43 |
| 72 | 144.01 | 146.56 | 154.85 | 169.54 | 190.26 | 169.01 |
| 73 | 138.61 | 141.44 | 150.59 | 166.61 | 188.73 | 164.46 |
| 74 | 133.21 | 136.35 | 146.45 | 163.88 | 187.41 | 159.83 |
| 75 | 127.84 | 131.33 | 142.46 | 161.36 | 186.26 | 155.48 |

Option 4 -- Joint and Survivor Life Annuity.

| Age of Older Annuitant | Number of Years Younger Than Older Annuitant | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 50 | 280.54 | 282.36 | 284.24 | 286.16 | 288.12 | 290.13 | 292.17 | 294.25 | 296.35 | 298.47 | 300.61 |
| 51 | 276.91 | 278.78 | 280.70 | 282.67 | 284.68 | 286.75 | 288.85 | 290.98 | 293.13 | 295.31 | 297.51 |
| 52 | 273.19 | 275.10 | 277.07 | 279.10 | 281.17 | 283.28 | 285.43 | 287.62 | 289.83 | 292.07 | 294.33 |
| 53 | 269.37 | 271.34 | 273.36 | 275.43 | 277.55 | 279.72 | 281.93 | 284.17 | 286.45 | 288.74 | 291.06 |
| 54 | 265.46 | 267.47 | 269.54 | 271.67 | 273.85 | 276.07 | 278.33 | 280.64 | 282.97 | 285.33 | 287.71 |
| 55 | 261.45 | 263.51 | 265.64 | 267.81 | 270.05 | 272.33 | 274.65 | 277.01 | 279.40 | 281.83 | 284.27 |
| 56 | 257.34 | 259.46 | 261.63 | 263.86 | 266.15 | 268.49 | 270.87 | 273.29 | 275.75 | 278.23 | 280.74 |
| 57 | 253.13 | 255.30 | 257.53 | 259.82 | 262.16 | 264.56 | 267.00 | 269.48 | 272.00 | 274.55 | 277.12 |
| 58 | 248.82 | 251.04 | 253.32 | 255.67 | 258.07 | 260.53 | 263.03 | 265.58 | 268.18 | 270.77 | 273.40 |
| 59 | 244.40 | 246.67 | 249.01 | 251.42 | 253.88 | 256.40 | 258.97 | 261.57 | 264.22 | 266.90 | 269.60 |
| 60 | 239.88 | 242.21 | 244.60 | 247.07 | 249.59 | 252.17 | 254.80 | 257.48 | 260.19 | 262.93 | 265.70 |
| 61 | 235.26 | 237.64 | 240.09 | 242.61 | 245.20 | 247.84 | 250.54 | 253.28 | 256.06 | 258.87 | 261.71 |
| 62 | 230.54 | 232.97 | 235.47 | 238.05 | 240.70 | 243.41 | 246.17 | 248.98 | 251.83 | 254.71 | 257.62 |
| 63 | 225.71 | 228.19 | 230.76 | 233.40 | 236.11 | 238.88 | 241.71 | 244.58 | 247.50 | 250.46 | 253.44 |
| 64 | 220.79 | 223.32 | 225.94 | 228.64 | 231.41 | 234.25 | 237.14 | 240.09 | 243.08 | 246.10 | 249.16 |
| 65 | 215.78 | 218.35 | 221.02 | 223.78 | 226.61 | 229.51 | 232.47 | 235.49 | 238.55 | 241.65 | 244.78 |
| 66 | 210.67 | 213.30 | 216.02 | 218.82 | 221.71 | 224.68 | 227.71 | 230.79 | 233.93 | 237.10 | 240.31 |
| 67 | 205.48 | 208.15 | 210.92 | 213.78 | 216.72 | 219.75 | 222.84 | 226.00 | 229.21 | 232.45 | 235.74 |
| 68 | 200.20 | 202.91 | 205.73 | 208.64 | 211.64 | 214.73 | 217.88 | 221.11 | 224.38 | 227.71 | 231.06 |
| 69 | 194.83 | 197.59 | 200.45 | 203.41 | 206.47 | 209.61 | 212.83 | 216.12 | 219.46 | 222.86 | 226.30 |
| 70 | 189.39 | 192.19 | 195.09 | 198.10 | 201.21 | 204.41 | 207.68 | 211.03 | 214.45 | 217.92 | 221.43 |
| 71 | 183.87 | 186.70 | 189.68 | 192.71 | 195.87 | 199.12 | 202.49 | 205.88 | 209.34 | 212.88 | 216.47 |
| 72 | 178.26 | 181.15 | 184.14 | 187.24 | 190.45 | 193.75 | 197.14 | 200.61 | 204.15 | 207.76 | 211.41 |
| 73 | 172.63 | 175.53 | 178.56 | 181.70 | 184.96 | 188.31 | 191.75 | 195.28 | 198.88 | 202.55 | 206.27 |
| 74 | 166.94 | 169.86 | 172.92 | 176.10 | 179.40 | 182.80 | 186.29 | 189.87 | 193.53 | 197.28 | 201.05 |
| 75 | 161.21 | 164.15 | 167.23 | 170.44 | 173.78 | 177.22 | 180.77 | 184.40 | 188.11 | 191.90 | 195.75 |

# TABLE B
## DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
### WITH A FIRST MONTHLY PAYMENT OF $1.00
### AT AN ASSUMED INVESTMENT RATE OF 3 1/2%

Options 1, 2 and 3 – Single Life Annuities

| Age | | Monthly Payments Guaranteed | | | | | Unit Refund |
|---|---|---|---|---|---|---|---|
| | None | 60 | 120 | 180 | 240 | |
| 50 | $233.36 | $233.71 | $234.82 | $236.75 | $239.66 | $240.70 |
| 51 | 229.87 | 230.25 | 231.45 | 233.54 | 236.72 | 237.65 |
| 52 | 226.30 | 226.72 | 228.01 | 230.29 | 233.74 | 234.54 |
| 53 | 222.65 | 223.10 | 224.51 | 226.98 | 230.75 | 231.36 |
| 54 | 218.93 | 219.41 | 220.93 | 223.62 | 227.73 | 228.12 |
| 55 | 215.11 | 215.64 | 217.28 | 220.22 | 224.70 | 224.82 |
| 56 | 211.21 | 211.78 | 213.57 | 216.77 | 221.66 | 221.45 |
| 57 | 207.23 | 207.84 | 209.79 | 213.28 | 218.62 | 218.02 |
| 58 | 203.15 | 203.81 | 205.94 | 209.76 | 215.60 | 214.53 |
| 59 | 198.98 | 199.70 | 202.03 | 206.21 | 212.60 | 210.98 |
| 60 | 194.73 | 195.51 | 198.06 | 202.64 | 209.63 | 207.33 |
| 61 | 190.38 | 191.24 | 194.04 | 199.05 | 206.70 | 203.63 |
| 62 | 185.95 | 186.90 | 189.97 | 195.47 | 203.84 | 199.85 |
| 63 | 181.45 | 182.50 | 185.86 | 191.89 | 201.06 | 195.99 |
| 64 | 176.88 | 178.03 | 181.73 | 188.35 | 198.37 | 192.18 |
| 65 | 172.25 | 173.52 | 177.57 | 184.84 | 195.78 | 188.25 |
| 66 | 167.56 | 168.95 | 173.41 | 181.39 | 193.31 | 184.24 |
| 67 | 162.81 | 164.34 | 169.24 | 178.00 | 190.97 | 180.31 |
| 68 | 158.01 | 159.70 | 165.09 | 174.70 | 188.78 | 176.25 |
| 69 | 153.16 | 155.01 | 160.95 | 171.49 | 186.75 | 172.11 |
| 70 | 148.26 | 150.30 | 156.85 | 168.40 | 184.88 | 168.10 |
| 71 | 143.31 | 145.57 | 152.79 | 165.44 | 183.18 | 163.94 |
| 72 | 138.33 | 140.83 | 148.81 | 162.62 | 181.65 | 159.70 |
| 73 | 133.32 | 136.10 | 144.91 | 159.98 | 180.30 | 155.88 |
| 74 | 128.31 | 131.39 | 141.11 | 157.51 | 179.12 | 151.45 |
| 75 | 123.30 | 126.73 | 137.44 | 155.22 | 178.10 | 147.15 |

Option 4 – Joint and Survivor Life Annuity

| Younger Annuitant: Age of Older Annuitant | Number of Years Younger Than Older Annuitant | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 50 | $259.51 | $261.02 | $262.56 | $264.14 | $285.75 | $267.38 | $269.05 | $270.72 | $272.42 | $274.13 | $275.84 |
| 51 | 256.50 | 258.05 | 259.64 | 261.26 | 262.92 | 264.61 | 266.32 | 266.06 | 269.80 | 271.57 | 273.33 |
| 52 | 253.39 | 254.99 | 256.63 | 258.30 | 260.01 | 261.75 | 263.52 | 265.30 | 267.11 | 268.92 | 270.75 |
| 53 | 250.19 | 251.84 | 253.53 | 255.25 | 257.01 | 258.80 | 260.62 | 262.47 | 264.33 | 266.20 | 268.08 |
| 54 | 246.90 | 248.59 | 250.33 | 252.11 | 253.92 | 255.77 | 257.64 | 259.54 | 261.46 | 263.39 | 265.33 |
| 55 | 243.51 | 245.25 | 247.04 | 248.87 | 250.74 | 252.64 | 254.57 | 256.53 | 258.51 | 260.50 | 262.50 |
| 56 | 240.02 | 241.82 | 243.66 | 245.54 | 247.47 | 249.42 | 251.41 | 253.43 | 255.48 | 257.52 | 259.58 |
| 57 | 236.43 | 238.28 | 240.17 | 242.11 | 244.09 | 246.11 | 248.16 | 250.23 | 252.33 | 254.44 | 256.57 |
| 58 | 232.74 | 234.64 | 236.59 | 238.58 | 240.62 | 242.70 | 244.81 | 246.94 | 249.10 | 251.28 | 253.47 |
| 59 | 228.94 | 230.89 | 232.90 | 234.95 | 237.05 | 239.19 | 241.36 | 243.56 | 245.78 | 248.03 | 250.28 |
| 60 | 225.03 | 227.04 | 229.10 | 231.22 | 233.38 | 235.58 | 237.81 | 240.08 | 242.37 | 244.68 | 247.00 |
| 61 | 221.02 | 223.08 | 225.20 | 227.38 | 229.60 | 231.87 | 234.17 | 236.50 | 238.85 | 241.23 | 243.62 |
| 62 | 216.90 | 219.02 | 221.20 | 223.43 | 225.72 | 228.05 | 230.42 | 232.82 | 235.24 | 237.69 | 240.15 |
| 63 | 212.68 | 214.85 | 217.09 | 219.38 | 221.73 | 224.13 | 226.56 | 229.03 | 231.53 | 234.05 | 236.58 |
| 64 | 208.35 | 210.58 | 212.87 | 215.23 | 217.64 | 220.10 | 222.61 | 225.15 | 227.71 | 230.31 | 232.91 |
| 65 | 203.92 | 206.20 | 208.55 | 210.97 | 213.44 | 215.97 | 218.55 | 221.16 | 223.80 | 226.46 | 229.15 |
| 66 | 199.40 | 201.73 | 204.13 | 206.60 | 209.14 | 211.74 | 214.38 | 217.06 | 219.78 | 222.52 | 225.28 |
| 67 | 194.78 | 197.16 | 199.61 | 202.14 | 204.74 | 207.40 | 210.11 | 212.87 | 215.66 | 218.48 | 221.31 |
| 68 | 190.06 | 192.49 | 195.00 | 197.58 | 200.24 | 202.98 | 205.74 | 208.57 | 211.43 | 214.33 | 217.24 |
| 69 | 185.25 | 187.72 | 190.28 | 192.92 | 195.64 | 198.42 | 201.27 | 204.16 | 207.10 | 210.07 | 213.07 |
| 70 | 180.35 | 182.87 | 185.48 | 188.17 | 190.95 | 193.79 | 196.70 | 199.66 | 202.67 | 205.72 | 208.79 |
| 71 | 175.35 | 177.92 | 180.58 | 183.33 | 186.16 | 189.06 | 192.03 | 195.06 | 198.14 | 201.26 | 204.41 |
| 72 | 170.28 | 172.89 | 175.60 | 178.40 | 181.28 | 184.24 | 187.27 | 190.37 | 193.51 | 196.70 | 199.93 |
| 73 | 165.14 | 167.78 | 170.53 | 173.38 | 176.32 | 179.34 | 182.43 | 185.58 | 188.80 | 192.06 | 195.36 |
| 74 | 159.93 | 162.60 | 165.39 | 168.29 | 171.28 | 174.35 | 177.50 | 180.72 | 183.99 | 187.32 | 190.69 |
| 75 | 154.67 | 157.37 | 160.19 | 163.13 | 166.16 | 169.29 | 172.49 | 175.77 | 179.11 | 182.51 | 185.95 |

10       VAL 00013

13 of 75

## TABLE C
### DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
### WITH A FIRST MONTHLY PAYMENT OF $1.00
### AT AN ASSUMED INVESTMENT RATE OF 4 1/2%

Options 1, 2 and 3 -- Single Life Annuities

| Age | None | 60 | 120 | 180 | 240 | Unit Refund |
|-----|------|------|------|------|------|------|
| 50 | $204.42 | $204.75 | $205.77 | $207.48 | $209.94 | $209.57 |
| 51 | 201.83 | 202.19 | 203.30 | 205.15 | 207.83 | 207.29 |
| 52 | 199.16 | 199.55 | 200.75 | 202.77 | 205.68 | 204.94 |
| 53 | 196.41 | 196.84 | 198.14 | 200.33 | 203.51 | 202.52 |
| 54 | 193.58 | 194.05 | 195.45 | 197.84 | 201.30 | 200.04 |
| 55 | 190.67 | 191.17 | 192.70 | 195.30 | 199.07 | 197.48 |
| 56 | 187.67 | 188.21 | 189.87 | 192.70 | 196.83 | 194.84 |
| 57 | 184.58 | 185.17 | 186.97 | 190.07 | 194.57 | 192.18 |
| 58 | 181.40 | 182.04 | 184.00 | 187.39 | 192.31 | 189.42 |
| 59 | 178.12 | 178.82 | 180.97 | 184.67 | 190.06 | 186.59 |
| 60 | 174.75 | 175.51 | 177.87 | 181.92 | 187.82 | 183.68 |
| 61 | 171.28 | 172.12 | 174.70 | 179.14 | 185.60 | 180.76 |
| 62 | 167.73 | 168.64 | 171.48 | 176.35 | 183.42 | 177.73 |
| 63 | 164.09 | 165.09 | 168.21 | 173.55 | 181.29 | 174.63 |
| 64 | 160.36 | 161.48 | 164.90 | 170.76 | 179.22 | 171.46 |
| 65 | 156.57 | 157.79 | 161.55 | 167.99 | 177.22 | 168.31 |
| 66 | 152.70 | 154.05 | 158.18 | 165.24 | 175.31 | 165.04 |
| 67 | 148.76 | 150.24 | 154.78 | 162.54 | 173.49 | 161.70 |
| 68 | 144.75 | 146.38 | 151.38 | 159.88 | 171.78 | 158.28 |
| 69 | 140.67 | 142.46 | 147.97 | 157.30 | 170.19 | 154.96 |
| 70 | 136.53 | 138.50 | 144.57 | 154.80 | 168.72 | 151.48 |
| 71 | 132.31 | 134.50 | 141.20 | 152.39 | 167.38 | 147.92 |
| 72 | 128.04 | 130.46 | 137.87 | 150.10 | 166.17 | 144.48 |
| 73 | 123.73 | 126.41 | 134.59 | 147.93 | 165.10 | 140.90 |
| 74 | 119.38 | 122.37 | 131.39 | 145.90 | 164.16 | 137.25 |
| 75 | 115.01 | 118.33 | 128.27 | 144.02 | 163.35 | 133.53 |

Option 4 -- Joint and Survivor Life Annuity

| Younger Annuitant: Age of Older Annuitant | Number of Years Younger Than Older Annuitant | | | | | | | | | | |
|-----|------|------|------|------|------|------|------|------|------|------|------|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 50 | $224.40 | $225.44 | $226.49 | $227.57 | $228.65 | $229.75 | $230.86 | $231.97 | $233.08 | $234.19 | $235.30 |
| 51 | 222.31 | 223.38 | 224.48 | 225.60 | 226.73 | 227.87 | 229.02 | 230.17 | 231.33 | 232.49 | 233.65 |
| 52 | 220.13 | 221.25 | 222.39 | 223.55 | 224.72 | 225.91 | 227.11 | 228.31 | 229.52 | 230.72 | 231.93 |
| 53 | 217.87 | 219.03 | 220.22 | 221.42 | 222.64 | 223.88 | 225.12 | 226.37 | 227.63 | 228.88 | 230.14 |
| 54 | 215.52 | 216.73 | 217.96 | 219.21 | 220.48 | 221.76 | 223.06 | 224.36 | 225.66 | 226.97 | 228.27 |
| 55 | 213.08 | 214.34 | 215.61 | 216.91 | 218.23 | 219.56 | 220.91 | 222.26 | 223.62 | 224.98 | 226.33 |
| 56 | 210.55 | 211.85 | 213.18 | 214.53 | 215.90 | 217.28 | 218.68 | 220.08 | 221.49 | 222.91 | 224.32 |
| 57 | 207.92 | 209.27 | 210.65 | 212.05 | 213.47 | 214.91 | 216.36 | 217.82 | 219.29 | 220.76 | 222.22 |
| 58 | 205.19 | 206.59 | 208.03 | 209.48 | 210.96 | 212.45 | 213.96 | 215.48 | 217.00 | 218.52 | 220.05 |
| 59 | 202.36 | 203.82 | 205.30 | 206.81 | 208.35 | 209.90 | 211.48 | 213.04 | 214.82 | 216.20 | 217.79 |
| 60 | 199.43 | 200.94 | 202.48 | 204.05 | 205.64 | 207.25 | 208.87 | 210.51 | 212.15 | 213.80 | 215.44 |
| 61 | 196.39 | 197.95 | 199.55 | 201.18 | 202.83 | 204.50 | 206.19 | 207.89 | 209.59 | 211.30 | 213.01 |
| 62 | 193.24 | 194.86 | 196.51 | 198.20 | 199.91 | 201.65 | 203.40 | 205.16 | 206.94 | 208.71 | 210.48 |
| 63 | 189.98 | 191.66 | 193.37 | 195.12 | 196.90 | 198.70 | 200.51 | 202.34 | 204.18 | 206.03 | 207.87 |
| 64 | 186.62 | 188.35 | 190.13 | 191.93 | 193.77 | 195.64 | 197.53 | 199.42 | 201.33 | 203.24 | 205.16 |
| 65 | 183.16 | 184.94 | 186.77 | 188.64 | 190.55 | 192.48 | 194.43 | 196.40 | 198.38 | 200.36 | 202.35 |
| 66 | 179.59 | 181.42 | 183.31 | 185.24 | 187.21 | 189.21 | 191.23 | 193.27 | 195.32 | 197.38 | 199.44 |
| 67 | 175.91 | 177.80 | 179.75 | 181.74 | 183.77 | 185.83 | 187.93 | 190.04 | 192.16 | 194.30 | 196.43 |
| 68 | 172.13 | 174.07 | 176.07 | 178.12 | 180.22 | 182.35 | 184.51 | 186.70 | 188.90 | 191.11 | 193.32 |
| 69 | 168.24 | 170.24 | 172.30 | 174.41 | 176.56 | 178.76 | 180.99 | 183.25 | 185.52 | 187.81 | 190.10 |
| 70 | 164.24 | 166.30 | 168.41 | 170.58 | 172.80 | 175.06 | 177.36 | 179.68 | 182.04 | 184.41 | 186.78 |
| 71 | 160.14 | 162.25 | 164.42 | 166.65 | 168.94 | 171.26 | 173.63 | 176.03 | 178.46 | 180.90 | 183.35 |
| 72 | 155.95 | 158.10 | 160.33 | 162.62 | 164.97 | 167.36 | 169.80 | 172.27 | 174.77 | 177.28 | 179.82 |
| 73 | 151.66 | 153.86 | 156.15 | 158.49 | 160.90 | 163.36 | 165.86 | 168.40 | 170.97 | 173.57 | 176.18 |
| 74 | 147.29 | 149.54 | 151.87 | 154.27 | 156.74 | 159.26 | 161.83 | 164.44 | 167.08 | 169.75 | 172.44 |
| 75 | 142.84 | 145.13 | 147.50 | 149.96 | 152.48 | 155.07 | 157.70 | 160.38 | 163.10 | 165.84 | 168.60 |

11

VAL 00014

## TABLE D
## DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
## WITH A FIRST MONTHLY PAYMENT OF $1.00
## AT AN ASSUMED INVESTMENT RATE OF 5%

Options 1, 2 and 3 – Single Life Annuities

| Age | Monthly Payments Guaranteed | | | | | Unit Refund |
|-----|------|------|------|------|------|------|
| | None | 60 | 120 | 180 | 240 | |
| 50 | $192.14 | $192.47 | $193.45 | $195.06 | $209.94 | $196.46 |
| 51 | 189.89 | 190.25 | 191.32 | 193.06 | 195.52 | 194.47 |
| 52 | 187.57 | 187.96 | 189.12 | 191.01 | 193.69 | 192.45 |
| 53 | 185.18 | 185.60 | 186.85 | 188.91 | 191.83 | 190.34 |
| 54 | 182.70 | 183.15 | 184.51 | 186.76 | 189.94 | 188.17 |
| 55 | 180.14 | 180.64 | 182.11 | 184.55 | 188.03 | 185.92 |
| 56 | 177.50 | 178.04 | 179.63 | 182.30 | 186.09 | 183.60 |
| 57 | 174.77 | 175.35 | 177.09 | 180.00 | 184.14 | 181.21 |
| 58 | 171.95 | 172.58 | 174.47 | 177.65 | 182.18 | 178.81 |
| 59 | 169.03 | 169.71 | 171.79 | 175.27 | 180.22 | 176.29 |
| 60 | 166.02 | 166.77 | 169.04 | 172.85 | 178.27 | 173.70 |
| 61 | 162.91 | 163.73 | 166.22 | 170.40 | 176.34 | 171.03 |
| 62 | 159.72 | 160.62 | 163.35 | 167.93 | 174.43 | 168.35 |
| 63 | 156.43 | 157.42 | 160.43 | 165.45 | 172.56 | 165.57 |
| 64 | 153.06 | 154.16 | 157.45 | 162.97 | 170.74 | 162.71 |
| 65 | 149.62 | 150.82 | 154.44 | 160.50 | 168.98 | 159.78 |
| 66 | 146.09 | 147.42 | 151.40 | 158.04 | 167.30 | 156.86 |
| 67 | 142.49 | 143.95 | 148.32 | 155.62 | 165.69 | 153.83 |
| 68 | 138.82 | 140.42 | 145.24 | 153.24 | 164.18 | 150.73 |
| 69 | 135.07 | 136.83 | 142.14 | 150.92 | 162.77 | 147.55 |
| 70 | 131.25 | 133.19 | 139.04 | 148.68 | 161.46 | 144.44 |
| 71 | 127.35 | 129.50 | 135.96 | 146.49 | 160.27 | 141.20 |
| 72 | 123.39 | 125.77 | 132.90 | 144.42 | 159.20 | 137.89 |
| 73 | 119.38 | 122.02 | 129.89 | 142.45 | 158.24 | 134.51 |
| 74 | 115.32 | 118.25 | 126.94 | 140.61 | 157.41 | 131.31 |
| 75 | 111.23 | 114.50 | 124.08 | 138.90 | 156.68 | 127.92 |

Option 4 – Joint and Survivor Life Annuity

| Younger Annuitant Age of Older Annuitant | Number of Years Younger Than Older Annuitant | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 50 | $209.89 | $210.56 | $211.44 | $212.32 | $213.22 | $214.12 | $215.03 | $215.93 | $216.84 | $217.74 | $218.64 |
| 51 | 207.94 | 208.84 | 209.76 | 210.69 | 211.62 | 212.56 | 213.51 | 214.46 | 215.41 | 216.35 | 217.29 |
| 52 | 206.11 | 207.05 | 208.01 | 208.98 | 209.96 | 210.94 | 211.93 | 212.92 | 213.91 | 214.90 | 215.88 |
| 53 | 204.21 | 205.19 | 206.18 | 207.19 | 208.21 | 209.24 | 210.28 | 211.31 | 212.35 | 213.38 | 214.40 |
| 54 | 202.21 | 203.24 | 204.28 | 205.33 | 206.40 | 207.47 | 208.55 | 209.63 | 210.71 | 211.79 | 212.86 |
| 55 | 200.14 | 201.21 | 202.29 | 203.39 | 204.50 | 205.62 | 206.75 | 207.88 | 209.01 | 210.13 | 211.25 |
| 56 | 197.97 | 199.09 | 200.22 | 201.37 | 202.53 | 203.69 | 204.87 | 208.05 | 207.22 | 208.40 | 209.57 |
| 57 | 195.72 | 196.88 | 198.06 | 199.26 | 200.46 | 201.68 | 202.91 | 204.14 | 205.37 | 206.60 | 207.82 |
| 58 | 193.37 | 194.58 | 195.81 | 197.05 | 198.32 | 199.59 | 200.86 | 202.15 | 203.43 | 204.71 | 205.99 |
| 59 | 190.92 | 192.18 | 193.46 | 194.76 | 196.07 | 197.40 | 198.73 | 200.07 | 201.41 | 202.75 | 204.08 |
| 60 | 188.36 | 189.68 | 191.01 | 192.37 | 193.74 | 195.12 | 196.51 | 197.91 | 199.30 | 200.70 | 202.09 |
| 61 | 185.71 | 187.08 | 188.47 | 189.88 | 191.31 | 192.75 | 194.20 | 195.65 | 197.11 | 198.56 | 200.01 |
| 62 | 182.95 | 184.37 | 185.82 | 187.29 | 188.78 | 190.28 | 191.79 | 193.31 | 194.83 | 196.34 | 197.85 |
| 63 | 180.09 | 181.56 | 183.07 | 184.60 | 186.15 | 187.71 | 189.28 | 190.87 | 192.45 | 194.03 | 195.61 |
| 64 | 177.12 | 178.65 | 180.21 | 181.80 | 183.41 | 185.04 | 186.68 | 188.33 | 189.98 | 191.62 | 193.27 |
| 65 | 174.04 | 175.63 | 177.25 | 178.90 | 180.57 | 182.26 | 183.97 | 185.69 | 187.40 | 189.12 | 190.83 |
| 66 | 170.86 | 172.50 | 174.18 | 175.89 | 177.62 | 179.38 | 181.16 | 182.94 | 184.73 | 186.52 | 188.30 |
| 67 | 167.57 | 169.27 | 171.00 | 172.77 | 174.57 | 176.40 | 178.24 | 180.10 | 181.96 | 183.82 | 185.68 |
| 68 | 164.18 | 165.93 | 167.72 | 169.55 | 171.41 | 173.30 | 175.21 | 177.14 | 179.08 | 181.01 | 182.95 |
| 69 | 160.67 | 162.48 | 164.33 | 166.22 | 168.14 | 170.10 | 172.08 | 174.08 | 176.09 | 178.10 | 180.11 |
| 70 | 157.06 | 158.92 | 160.83 | 162.78 | 164.77 | 166.79 | 168.84 | 170.91 | 173.00 | 175.09 | 177.18 |
| 71 | 153.34 | 155.25 | 157.22 | 159.23 | 161.29 | 163.38 | 165.50 | 167.64 | 169.80 | 171.96 | 174.13 |
| 72 | 149.51 | 151.48 | 153.51 | 155.58 | 157.70 | 159.86 | 162.05 | 164.26 | 166.49 | 168.74 | 170.98 |
| 73 | 145.59 | 147.61 | 149.69 | 151.83 | 154.01 | 156.24 | 158.49 | 160.78 | 163.08 | 165.40 | 167.73 |
| 74 | 141.58 | 143.65 | 145.78 | 147.97 | 150.22 | 152.51 | 154.84 | 157.19 | 159.57 | 161.97 | 164.37 |
| 75 | 137.49 | 139.59 | 141.77 | 144.02 | 146.33 | 148.68 | 151.08 | 153.51 | 155.96 | 158.43 | 160.91 |

VAL 00015

## DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
### WITH A FIRST MONTHLY PAYMENT OF $1.00

Option 5 -- Payment for a Designated Period

| Years of Payment | | Years of Payment | |
|---|---|---|---|
| 5 | $ 55.83 | 18 | $167.79 |
| 6 | 66.05 | 19 | 174.52 |
| 7 | 75.99 | 20 | 181.49 |
| 8 | 85.62 | 21 | 187.97 |
| 9 | 94.97 | 22 | 194.17 |
| 10 | 104.06 | 23 | 200.40 |
| 11 | 112.87 | 24 | 206.61 |
| 12 | 121.36 | 25 | 212.31 |
| 13 | 129.70 | 26 | 217.86 |
| 14 | 137.74 | 27 | 223.71 |
| 15 | 145.56 | 28 | 228.83 |
| 16 | 153.14 | 29 | 234.19 |
| 17 | 160.51 | 30 | 239.23 |

**Frequency of Payments.** Annuity payments under the Contract will be made monthly. If such payments would amount to less than $25 each, We reserve the right to make less frequent payments. If at any time the annual rate of payment to any payee is less than $100, We may make a lump sum payment of the remaining annuity value.

### 4.17 Beneficiaries

(a) Definition of Beneficiary. A Beneficiary is the person or entity You designate to receive any benefits payable upon Your death.

(b) Designation of Beneficiary. During Your lifetime, You have the right to designate a Beneficiary and to change the designation. The change may be made by sending a written request to Our Home Office. The change will take effect when We have recorded the change. However, after the change is recorded, the change will be deemed effective as of the date of the written request for change. The change will be subject to any payment made or action taken by Us before the request is recorded.

(c) Payments to Beneficiary. Unless otherwise provided in the Beneficiary designation:

(1) If any Beneficiary dies prior to You, that Beneficiary's interest will pass to any other Beneficiary according to the surviving Beneficiary's respective interest.

(2) If no Beneficiary survives You, death benefits will be paid to Your estate.

(3) If any Beneficiary dies after You, that Beneficiary's interest will pass to his or her Beneficiary or; if none, to his or her estate.

(d) Simultaneous Death Provision. If We cannot determine whether You or a Beneficiary died first in a common disaster, We will assume that the Beneficiary died first and make payments on that basis.

(e) Multiple Beneficiaries. You may designate two or more Beneficiaries to receive separate percentage interests in the death benefits payable under the Contract. Each such Beneficiary may separately exercise his or her rights.

(f) Trust or Estate as Beneficiary. Payments to a beneficiary that is a trust or estate will be made only in a lump sum or in installments over a period not to exceed five years.

### 4.18 Death Payment Provisions

(a) Death During Accumulation Period. If You die during the Accumulation Period, a death benefit described in (1) or (2) below is payable.

(1) If You die on or after age 70, the death benefit is the greater of (a) the Accumulation Value of Your Account on the date We receive proof of death, or (b) 100% of Purchase Payments reduced by the amount of any prior withdrawals and further reduced by any portion of the Accumulation Value that has been applied under an Annuity Income Option.

(2) If You die before age 70, the death benefit is the sum of the benefits under the Fixed Interest Options and the Variable Investment Options, as follows:

The benefit under the Fixed Interest Options is the greater of:

(a) the Fixed Interest Option Values on the date We receive proof of death; or

(b) 100% of Purchase Payments allocated to the Fixed Interest Options, reduced by the amount of any prior withdrawals or transfers from Fixed Interest Options and further reduced by any portion of the Accumulation Value that has been applied under an Annuity Income Option.

The benefit under the Variable Investment Options is the greater of:

(a) the Variable Investment Option Values on the date We receive proof of death, or

(b) 100% of Purchase Payments allocated to Variable Investment Options reduced by the amount of any prior withdrawals or transfers from the Variable Investment Options, plus interest at an annual rate of 3%. For this purpose, all amounts transferred into Variable Investment Options are considered Purchase Payments allocated to Variable Investment Options.

Subject to Section 5.03, the death benefit is payable at any time Your Beneficiary selects and in any form You could have selected under the Contract.

(b) Death During Annuity Period. If You die during the Annuity Period, the amount of the death benefit, if any, will be based on the terms of the Annuity Income Option. Unless You elected the Fourth Option, the Beneficiary may elect to receive the death benefit in one of the following forms:

(1) Continuing annuity payments under the terms of Your Annuity Income Option with the right, for Variable Annuities only, to receive the remaining payments in a lump sum at any time thereafter;

(2) A lump sum; or

(3) Annuity payments under another Annuity Income Option, based on the available lump sum and subject to the limitations of Section 5.03.

The lump sum available under these alternatives is the present value of remaining payments, discounted at the Assumed Investment Rate, and based on the current Annuity Unit Value for (2) and (3), or the value next determined after receipt of the request at VALIC's Home Office for (1).

(c) Investment Options and Other Rights. Until the death benefits have been fully paid, Your Beneficiary will be entitled to exercise all the Investment Options and other rights You can exercise under the Contract. Unpaid death benefits that have not been applied under an Annuity Income Option will have an Accumulation Value determined in the same manner as Your Accumulation Value.

(d) Proof of Death. Proof of death may be made by sending VALIC a certified copy of the death certificate, a certified copy of a decree of a court of competent jurisdiction as to death, a written statement by an attending physician, or any other proof satisfactory to VALIC .

·VAL 00017

## Section 5 - CODE REQUIREMENTS AND RETIREMENT PLAN PROVISIONS

5.01 **Salary Reduction Purchase Payments** - If Your Purchase Payments are made under a voluntary salary reduction agreement as part of a Tax-Deferred Annuity arrangement under Section 403(b) of the Code, i) there may not be a separate Plan document, in which case the Contract is the Plan, and ii) in either case the following restrictions apply:

(a) **Limit on Purchase Payments.** Your salary reduction Purchase Payments may not exceed the limits of Section 402(g) of the Code. We reserve the right to refund excess Purchase Payments.

(b) **Withdrawal Restrictions.** Your Accumulation Value attributable to salary reduction Purchase Payments cannot be withdrawn or otherwise distributed before You are 59 1/2 years old, unless You (1) have separated from service with the employer maintaining the Plan, (2) die, (3) become disabled (see Section 4.06(c)), or (4) have incurred a hardship (hardship withdrawals are not available for earnings on salary reduction purchase payments). Equivalent withdrawal restrictions apply to any portion of the Accumulation Value that is attributable to Purchase Payments representing amounts directly transferred from a custodial account under Section 403(b)(7) of the Code. This limitation will be applied in a manner consistent with the intent and requirements of Section 403(b)(11) of the Code. It is expressly provided, however, that such limitation shall not apply to (1) the transfer of amounts as otherwise permitted under the Code to another annuity contract or custodial account under Section 403(b) of the Code, nor (2) the withdrawal of amounts under the Contract to the extent such amounts are attributable to the amount the Participant held under a 403(b) annuity contract (but not a 403(b)(7) custodial account) as of December 31, 1988.

5.02 **Minimum Distributions After Age 70 1/2**

(a) **General Rules.** Your benefits under the Contract must satisfy minimum distribution rules of the applicable section of the Code and regulations issued by the Secretary of the Treasury under the applicable section. These minimum distribution rules generally require that benefits begin after You are 70 1/2 years old and that the minimum amount is paid each year. Payments may be made in the form of annual withdrawals or under an Annuity Income Option.

Code Sections which apply are: (i) Section 401(a)(9) for contracts issued for a Plan intended to meet Sections 401(a) and/or 403(a), (ii) Section 403(b)(10) for Section 403(b) contracts, and (iii) Section 457(d) for deferred compensation plans under Section 457.

(b) **Minimum Annual Withdrawals.** The minimum withdrawal is set each year based on the Accumulation Value and the life expectancy of You and Your Beneficiary. You may elect to have life expectancies computed for each year's distribution, or to use the life expectancies computed at the first distribution (reduced by one year for each annual withdrawal) for all later distributions. If Your Beneficiary is not Your spouse, the annual withdrawal must meet the minimum distribution incidental benefit requirements.

(c) **Annuity Income Option.** If You elect payments under an Annuity Income Option, the guaranteed or expected period of payments under the Annuity Income Option may not exceed Your life expectancy and that of Your Beneficiary at the Annuity Date, or a shorter period if Your Beneficiary is not Your spouse.

(d) **403(b) Exception to General Rule.** Any amount added to the Contract which was initially within a Section 403(b) contract prior to January 1, 1987 and continually since then, may either be paid in a manner which meets these rules or must (1) begin to be paid when You are age 75; and (2) the present value of payments expected to be made to You, over life, under the option chosen must exceed 50% of the present value of all payments expected to be made ("the 50% rule"). Notwithstanding, Your entire Section 403(b) Contract balance must meet the minimum distribution incidental benefit requirement of Section 403(b)(10).

5.03 **Minimum Death Benefit Distributions**

(a) **General Rules.** The death benefit, if any, payable to Your Beneficiary must also satisfy the rules of Section 401(a)(9)(B), Section 403(b)(10) or Section 457(d), whichever may be applicable, and the regulations issued under such sections by the Secretary of the Treasury. The post-death rules of these sections limit the extent to which a Beneficiary may delay payment of death benefits. Your Beneficiary may satisfy these rules by receiving a lump sum, annual withdrawals, or payments under an Annuity Income Option.

VAL 00018

(b) Death Before Distributions Begin. If You die before payments under an Annuity Income Option (or post-age 70 1/2 withdrawals) have begun, Your Beneficiary must either receive the whole benefit by the end of the fifth year following the year of Your death or receive the benefit in installment payments over his or her life or life expectancy if payments begin by the calendar year following the year of Your death. Your spouse beneficiary may delay distributions until You would have reached age 70 1/2.

(c) Death After Distributions Begin. If You die after payments under an Annuity Income Option (or post-age 70 1/2 withdrawals) have begun, the death benefit must be paid at least as fast as under the method You selected.

5.04 **Direct Rollovers** - If any benefit payable under this Contract constitutes an "eligible rollover distribution" within the meaning of Section 402 of the Code, You have the right to elect to have such distribution paid directly to an "eligible retirement plan" in a transaction designated under the Code as a "direct rollover." Before any eligible rollover distribution is made to You, we will provide You with a written explanation of Your right to make a direct rollover and the tax consequences of making or not making a direct rollover. No surrender, withdrawal, or other benefit distribution that constitutes an eligible rollover distribution will be made to You under the Contract, unless the Code's requirements applicable to eligible rollover distributions have been satisfied. Except for eligible rollover distributions, We reserve the right to make payments only to You or Your Beneficiary.

5.05 **Plan Provisions** - The Plan, including certain Plan provisions required by the Employee Retirement Income Security Act of 1974 (ERISA) or other applicable law, may limit Your rights under the Contract. The Plan provisions may:

(a) Limit Your right to make Purchase Payments;

(b) Restrict the time when You may elect to receive payments under the Contract;

(c) Require the consent of Your spouse before You may elect to receive payments under the Contract;

(d) Require that all distributions be made in the form of a joint and survivor annuity for You and Your spouse, unless both consent to a different form of distribution;

(e) Require that Your spouse be designated as Beneficiary;

(f) Require that You remain employed with the Contract Owner for a specified period of time before Your rights under the Contract become fully vested; or

(g) Otherwise restrict Your exercise of rights under the Contract or give the Contract Owner (or a Plan representative) the right to exercise certain rights on Your behalf.

No such Plan provision shall limit Your rights under the Contract, unless the Contract Owner has provided VALIC with written notification of such provision. In no event shall any such Plan provision enlarge VALIC's obligations under the Contract.

**VAL 00019**

UITG-104P.SW

PDPCBSWMC104

## Section 6 - GENERAL PROVISIONS

6.01 **Assignment** - No interest in the Contract may be sold, assigned, discounted, or pledged as collateral for a loan or as security for the performance of an obligation. The benefits, values, and rights are not subject to any creditor claims to the fullest extent permitted by law. The Contract and its rights cannot be transferred to anyone other than Us, except as provided under the Plan or under a domestic relations order properly issued by a court of competent jurisdiction and that complies with ERISA, if applicable.

6.02 **Vesting** - Except as may be provided in the Plan, Your rights under the Contract are fully vested and nonforfeitable. Separate Account A holds all assets for Variable Investment Options for the exclusive benefit of Participants, Beneficiaries, and other holders of annuity contracts.

6.03 **Written Notices to Us** - Except as specifically provided otherwise, any Notice of change, election, choice, option or other exercise of right given under the Contract must be in writing on a form provided by Us, or on a form and in a manner acceptable to Us. Such Notice will be effective when it is received in Our Home Office.

6.04 **Reports** - We will send You a Separate Account financial report twice each year if You have values in any Variable Investment Option.

We will send to You, at least annually, a statement showing the dollar value of all investment options, investment performance since the prior statement, and as applicable, the number and value of any Variable Accumulation Units credited to Your Account. All statements will be mailed within two months of the date of the information.

6.05 **Voting Rights** - We will hold the voting rights on all shares held in the Separate Account. To the extent of the Contract's participation in the Separate Account through one or more Variable Investment Options, We will vote those shares as instructed. You, or Your Beneficiary, if You have died, will have the voting instruction rights prior to the Annuity Date. The annuity payee will have the voting instruction rights on and after the Annuity Date.

6.06 **Suspension of Payments** - VALIC reserves the right to suspend payments under the Separate Account for any period when: (a) the New York Stock Exchange is closed (other than customary weekend and holiday closings); (b) when trading on the Exchange is restricted; (c) when an emergency prevents disposal of securities held in the Separate Account or it is not reasonably practicable to determine the value of the Separate Account's net assets; or (d) during any other period when the Securities and Exchange Commission, by order, so permits for the protection of security holders.

6.07 **Deferral of Cash Surrender or Withdrawal** - VALIC may defer payment of any surrender of amounts accumulated in Fixed Interest Options. Deferral shall not exceed six months from the receipt of written notice at the Home Office. Interest shall be paid if payment is deferred for thirty days or more at a rate as determined by VALIC.

6.08 **Proof of Survival** - We reserve the right to require satisfactory proof that You and any payee is alive on the date any benefit payment is due. If this proof is not received after requested in writing, VALIC will have the right to make reduced payments or to withhold payments entirely until such proof is received.

6.09 **Substitution of Investment Fund Shares** - If shares of a particular Investment Fund are not available or if, in the judgment of VALIC, such shares are no longer appropriate for a Variable Investment Option, shares of another Investment Fund may be substituted for the Investment Fund shares already held under the Variable Investment Option and for those to be purchased by future Purchase Payments or transfers under the Contract. In the event any substitution occurs, VALIC will notify the Contract Owner within five days.

6.10 **Minimum Benefit** - The paid up annuity, cash surrender or death payment available under the Contract will not be less than the minimum benefits required by any statute of the state in which the Contract is delivered.

6.11 **Separate Account** - That portion of the assets of the Separate Account equal to the reserves and other contract liabilities with respect to the Separate Account shall not be chargeable with liabilities arising out of any other business We may conduct. Income, gains and losses, whether or not realized, from assets allocable to the Separate Account are credited to or charged against such account without regard to Our other income, gains or losses.

**VAL 00020**

## THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

Houston, Texas

### ENDORSEMENT

This Endorsement is made a part of the Contract or Certificate to which it is attached.

- The amount of the Separate Account Charge depends on the Variable Investment Option from which it is deducted, and is imposed at an annual rate of up to 1.25% of the assets of the Variable Investment Option.

If there is any conflict between the provisions of this Endorsement and the Contract or Certificate, the Endorsement's provision will apply.

The effective date of this Endorsement is the Date of Issue.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

By: _Mary S. Cavanaugh_

Mary Cavanaugh
Secretary

VAL 00021

UITG 104 RSAC

21 of 75

# THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
## Houston, Texas

## · MARKET VALUE ADJUSTMENT OPTION ENDORSEMENT

The contract or certificate (hereinafter referred to collectively as "Contract") to which this Endorsement is attached is amended to add a market value adjusted option ("MVA Option") to the option or options otherwise available under the Contract during the Contract's accumulation period.

1. **Effective Date.** The effective date of this Endorsement is the date of issue of the Contract unless another date is shown below.

2. **Minimum Benefits.** The paid up annuity, cash surrender or death payment available under the Contract, including this MVA Option, will not be less than the minimum benefits required by any statute of the state in which the Contract is delivered.

3. **Definitions.** The following definitions will govern the interpretation of this Endorsement:

MVA Band: A single MVA allocation that will be credited with the stated MVA Interest Rate for the identified MVA Term.

MVA Interest Rate: The effective annual interest rate credited during the applicable MVA Term. The MVA Interest Rate will be declared in advance of the applicable MVA Term. Interest is credited to Your MVA Option daily. All interest rates quoted are effective annual rates. This is the yield that results after interest has compounded daily for a full year.

We set interest rates according to the following guidelines:

* We guarantee your MVA Option will earn at least the minimum interest rate applicable to fixed interest options in the Contract, regardless of future economic conditions.
* An amount allocated to the MVA Band will earn interest at the applicable MVA Interest Rate for the MVA Term. For subsequent MVA Terms, we will declare the MVA Interest Rate before the beginning of each MVA Term.

MVA Term: The period of time for which the MVA Interest Rate is guaranteed and during which a market value adjustment will be applied to any withdrawals. You may select from two or more MVA Terms at any time for an amount described in this endorsement. This amount may include new premium to the Contract and/or amounts transferred from one or more other options available under the Contract. Any transfer from another Contract option will be subject to any limitations imposed under the Contract. However, we may, from time to time, waive any such restrictions in a manner that is not unfairly discriminatory to any person. You may not elect an MVA Term that extends beyond a scheduled annuity commencement involving part or all of the amounts to be held under the MVA Band.

1

**VAL 00022**

MVA-200

**MVA Annuity Value:** The amount available to be applied to an annuity option offered under the Contract, equal to:

- The amounts allocated to this MVA Option, for any and all MVA Bands;
- Plus all interest earned under this MVA option;
- Minus any deductions otherwise applied under the Contract;
- Minus any previous withdrawals from any and all MVA Bands and related early withdrawal charges under the Contract.

**MVA Withdrawal Value:** The amount You will receive under the MVA Option, upon full withdrawal, after the market value adjustment has been applied and after any applicable early withdrawal charges have been deducted, equal to:

- The MVA Annuity Value;
- Plus or minus the Market Value Adjustment( see paragraph 7 of this Endorsement);
- Minus any early withdrawal charge applicable under the Contract;

**We, or Us:** Referes to the Variable Annuity Life Insurance Company, the issuer of the Contract and this Endorsement.

**You or Your:** Referes to the person, including any corporation, trustee, or other non-natural person, that is authorized to direct the allocation of amounts held under the Contract.

4. **Your Rights under this Endorsement.** You will have all rights described in the Contract under this MVA Option, subject to the rules and limitations described in the Contract or in this Endorsement.

5. **Allocations to MVA Option.** You may allocate or reallocate amounts under the Contract to the MVA Option, for one or more MVA Bands with the same or different MVA Terms, subject to any requirements and limitations described in the Endorsement or in the Contract. Except as otherwise provided in the Endorsement, once funds have been allocated to an MVA Band, no additional premimum or transfers may be made to that MVA Band. Multiple transfers or deposits to the MVA Option for a single MVA Band may be permitted if We receive them on the same day. The minimum amount to establish each MVA Band is determined by Us but will never be more than $25,000.

6. **Date of Withdrawal.** For purposes of determining the market value adjustment, all withdrawals will be deemed to have occurred on the date that We receive the withdrawal request, unless You specify a later date in the request.

7. **Market Value Adjustment.** Except as otherwise provided in this Endorsement, any withdrawal from an MVA Band, including transfers from the MVA Band to other available options in the Contract (including a different MVA Band), will be subject to the application of a Market Value Adjustment, except during the 30 days following the end of an MVA Term applicable to that MVA Band.

2

VAL 00023

The effect of the market value adjustment may be positive or negative. If, on the date of a withdrawal, the index rate described below (plus 0.5%) is higher than that index rate as of the contract's date of issue, the effect of the market value adjustment will be negative. If, on the date of a withdrawal, the index rate (plus 0.5%) is lower than that index rate as of the contract's date of issue, the effect of the market value adjustment will be positive. Any negative adjustment will be waived to the extent that it would decrease the withdrawal value below the minimum guaranteed value described in the definition of MVA Interest Rate.

The market value adjustment is determined by the formula below, using the following factors:

- A is an index rate determined at the begining of each MVA Term, for a security with time to maturity equal to that MVA Term;
- B is an index rate determined at the time of withdrawal, for a security with time to maturity equal to the current MVA Term;
- N is the number of months remaining in the current MVA Term (rounded up to the next higher number of months); and,
- The index rates for A and B the U.S. Treasury Yield as quoted by Bloomberg or a comparable financial market news service, for the maturity equal to the MVA term, using linear interpolation as appropriate.

The market value adjustment will equal:

The Amount surrendered or transferred out prior to the end of the MVA Term multiplied by:

$$[(1 + A) / (1 + B + 0.005)]^{(N/12)} -1$$

The market value adjustment will be added to or deducted from the amount being withdrawn or transferred.

Index rates for any calendar month will equal the average of index rates for the last 5 trading days of the previous calendar month.

8. **Early Withdrawal Charge.** In addition to any positive or negative market value adjustment, any early withdrawal charge which would otherwise apply under the Contract will be deducted from any amount withdrawn (after the application of the market value adjustment) which exceeds the amount of any permitted free withdrawals as described in the Contract.

9. **Partial Withdrawals.** You may withdraw a portion of the MVA Annuity Value any time after the Effective Date of this Endorsement for withdrawal from the Contract or for transfer to another option under the Contract, which could include another MVA Band. Withdrawal requests must be for a minimum determined by Us but not more than $500. Your withdrawal, plus or minus the market value adjustment, plus any early withdrawal charge, will be deducted from your MVA Annuity Value. To the extent that a partial withdrawal request would cause the value of an MVA Band to be less than an amount determined by Us but not more than $2,000, that portion of the request will be denied unless you agree to withdraw all amounts from the MVA Option, either for withdrawal from the Contract, where permitted, or for transfer to another Contract investment option that You select.

3

**VAL 00024**

withdraw all amounts from the MVA Option, either for withdrawal from the Contract, where permitted, or for withdrawal from the Contract, where permitted, or for transfer to another Contract Investment option that You select.

10. **Annuitization.** If You elect to apply some or all of the MVA Annuity Value under Your Contract to an annuity option, that amount will be applied to a fixed annuity option under the Contract, without application of the Market Value Adjustment.

11. **Subsequent MVA Terms.** At the end of any MVA Term, a subsequent MVA Term will begin for the MVA Band. Each subsequent MVA Term for the MVA Band will be of the same duration as the previous MVA Term, unless You notify Us in writing before the end of the then-current MVA Term that you are selecting an MVA Term of a different duration. You may not elect an MVA Term that extends beyond a scheduled annuity commencement involving part or all of the amounts to be held under the MVA Band. The MVA Interest Rate credited during a subsequent MVA Term will be the rate in effect on the date that subsequent MVA Term begins. You may take a full or partial withdrawal of the affected amount without a market value adjustment with 30 days following the end of an MVA Term (i.e., during the first 30 days of subsequent MVA Term).

12. **Loans, Automatic Allocations, Automatic Withdrawals and Other Automatic Transactions Affecting Contract Options.** Loans are not available from the MVA Option. However, if the Contract contains a loan feature, the MVA Annuity Value will be considered when determining the amount of any loan available from options other than the MVA Option. Automatic allocations to the MVA Option, or automatic withdrawals from or transactions involving the MVA Option, will not be processed without Your direction and Our consent.

13. **Withdrawals From Multiple MVA Bands.** In the event that you have allocated amounts to multiple MVA Bands, We reserve the right to establish uniform order rules with respect to partial withdrawals from the MVA Option, subject to any requirements or limitations under the laws of the state in which the Contract is issued.

14. **Distributions required by Law, or Upon Your Death.** We reserve the right to waive any otherwise applicable Market Value Adjustment in the event that a distribution is required by the Contract, by the plan under which the Contract is issued, or under the Internal Revenue Code. The Market Value Adjustment will not apply to a distribution following your death, or if You are not a natural person, upon the death of the annuitant designated under the Contract.

*Mary F. Cavanaugh*
(Secretary)

*Robb Condon*
(President)

Endorsement Effective Date:_____

## THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
2929 Allen Parkway
Houston, Texas 77019

### NON-ERISA LOAN ENDORSEMENT

#### I.   APPLICABILITY

This Endorsement applies only to loans granted or renewed after delivery of this Endorsement under VALIC annuity Contracts or Certificates sold under retirement plans not covered by the Employee Retirement Income Security Act of 1974, as amended. (ERISA). This Endorsement is made a part of the Contract or Certificate to which it is attached and will not change any other provisions of the Contract or Certificate.

#### II.   DEFINITIONS :

**Accumulation (Annuity) Value** – equals the sum of all Purchase Payments, including interest earned, less any partial withdrawals during the Accumulation Period. This value also includes any gains/losses from funds allocated to Variable Investment Options, if applicable.

**Adjusted Surrender Charge** – the Reserved Surrender Charge, reduced pro rata by Loan Balance repayments.

**Defaulted Loan Amount** – the Loan Balance, plus the interest on any delinquent quarterly payments.

**Employer** – the employer who sponsors the Plan under which the Contract or Certificate is maintained.

**Foreclosure Amount** – the Defaulted Loan Amount, plus Adjusted Surrender Charge.

**Loan Balance** – the principal loan balance outstanding at any given time.

**Loan Year** – a one-year period beginning on the effective date of the loan and subsequent anniversaries.

**Nonforfeitable portion** – the vested portion of the Accumulation Value allocated to a fixed option that is owned by the Participant.

**Participant** – the individual to whom a loan is made.

**Plan** – the employer-sponsored retirement plan or annuity purchase arrangement under which the Contract or Certificate was issued.

**Qualified Plan** – as used herein, employer-sponsored plans intended to meet the requirements of sections 401(a), 403(a), 403(b), or 457(b) of the Internal Revenue Code of 1986, as amended.

**Reserved Surrender Charge** – the Contract surrender charge that would apply as if the Loan balance had been surrendered at the start of the loan term.

**Security Reserve** – the portion of cash value held in reserve as security for the loan, made up of the Loan Balance, the loan interest due with a quarterly loan payment, the Reserved Surrender Charge, if applicable, and all interest credited to the foregoing amounts.

**Surrender (Cash) Value** – the Accumulation Value of a Participant Account less any applicable surrender charge.

#### III.   AMOUNT OF LOAN

The availability and amount of a loan are subject to any applicable restrictions in the Plan and federal tax law. Both fixed and variable investment options, if applicable, of the contract value will be considered for purposes of determining the amount that qualifies for a loan. However, only the nonforfeitable portion of a fixed investment option may be used as security for a loan. Such portion must equal or exceed the initial Security Reserve.

A loan, when added to the Participant's existing indebtedness under the Plan or any other Qualified Plan sponsored by the Employer, cannot exceed the lesser of $50,000 or 50% of the present value of the Participant's nonforfeitable accrued benefit under all such plans of the Employer. However, the $50,000 limit may be reduced by the excess, if any, of (a) the highest outstanding balance of loans from such plans during the one-year period ending on the day before the date on which the loan is made, over (b) the outstanding balance of loans from the plans on the date on which such loan was made. The 50% limit described above does not apply when the loan amount requested is $10,000 or less.

**VAL 00026**

LENF-NONERISA-1300-NJ

LENFNONER130NJ

26 of 75

The minimum loan amount is $1000. We reserve the right to limit the number of loans permitted to be outstanding at any given time to four.

### TERMS OF LOAN

VALIC may make loans to the Participant at any time before annuity payments begin. Loan interest will be charged at an annual effective rate not to exceed 3% above the minimum interest rate guaranteed in the Contract or Certificate. The loan, plus interest, will be repaid in equal amortized quarterly payments due on the last day of each quarter of each Loan Year.

The loan must be repaid within ten years if used to buy the Participant's principal residence. It must be repaid within five years if used for any other purpose. The loan may be repaid in full or in part before the Contract or Certificate is surrendered or annuity payments begin.

### IV.    SECURITY FOR LOAN

The Security Reserve as defined above provides the security for the loan. No withdrawals or transfers from the Security Reserve may be made until the loan is fully repaid or foreclosed upon.

### V.    EFFECTS OF LOAN BENEFITS

Until the loan is defaulted or repaid, the portion of the Security Reserve in the amount of the Loan Balance and accumulated loan interest thereon will earn the Contract's or Certificate's minimum guaranteed annual effective interest rate.    An interest rate, as declared by VALIC's Board of Directors, will be credited on the portion of the Security Reserve in excess of the Loan Balance and loan interest thereon. This rate will not be less than the Contract's or Certificate's minimum guaranteed annual effective interest rate.

Upon annuitization, surrender or death, the annuity value, cash value or death benefit, as applicable, will be reduced by the Foreclosure Amount.

### VI. LOAN DEFAULT

If a loan payment is not made within 30 days after the due date, the loan is in default and the Defaulted Loan Amount will become due and payable to VALIC. The Defaulted Loan Amount will be treated as a distribution under federal tax law and will be reported on an applicable tax reporting form. (Caution: Such a distribution before age 59½ may result in a tax penalty.) After default, the portion of the Security Reserve in an amount equal to the Loan Balance and loan interest will continue to earn interest at an annual effective rate equal to the minimum guaranteed interest rate under the Contract or Certificate until the loan is repaid or VALIC is permitted to foreclose on its Security Reserve to the extent of the Foreclosure Amount.

### VII.    LOAN FORECLOSURE

If the loan is not repaid, the Foreclosure Amount will be deducted from the Security Reserve and paid to VALIC. If any portion of the Security Reserve may not be withdrawn because of tax or Plan restrictions, foreclosure on the Security Reserve will not occur until such restrictions no longer apply.   The Adjusted Surrender Charge, if applicable, will be calculated at foreclosure.  Any Security Reserve in excess of the Foreclosure Amount will remain credited to the Contract or Certificate.

**THE VARIABLE ANNUITY LIFE INSURANCE COMPANY**

Mary J. Cavanaugh

**Mary L. Cavanaugh**
**Secretary**

VAL 00027

LENF-NONERISA-1300-NJ

LENFNONER130NJ

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
(the "Company")
2929 Allen Parkway
Houston, Texas 77019

## ECONOMIC GROWTH AND TAX RELIEF RECONCILIATION ACT ("EGTRRA") RETIREMENT PLAN ANNUITY CONTRACT ENDORSEMENT

This Endorsement is made a part of the individual annuity contract or group annuity certificate to which it is attached (the "Contract"). The Contract is issued in connection with certain employer-sponsored retirement plans or arrangements, which may be described under any of the following Code Sections: 401(a) (including 401(k)); 403(a); 403(b); 457(b) (the "Plan"). The Plan may limit the exercise by the Participant or a Beneficiary of rights under the Contract, including any endorsements thereto, and may limit the rights described in this Endorsement.

Section references are to the Code, which means The Internal Revenue Code of 1986 as now or hereafter amended. The term "Applicable Law" means laws that may either limit or compel the exercise of rights under the Contract, including, but not limited to, the Code, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the laws of the state in which the Contract was issued.

This Endorsement shall supersede any inconsistent provisions of the Contract or any endorsement issued prior to or concurrent with this Endorsement.

1. Contribution Limitations

    a. Contributions (not including transfers and rollovers) may be made to this Contract up to the applicable limits set forth in the Code and the Plan. If the Contract is issued under a Plan to which Code Section 402(g) applies, including Contracts issued under a 403(b) plan or arrangement, except as otherwise provided herein elective deferrals by the Participant to this Contract may not exceed the limit under Section 402(g).

    b. Contributions properly made pursuant to Code Section 414(v) by Participants who otherwise qualify to make such contributions shall be disregarded in determining whether contributions to the Contract have exceeded the limits imposed under the Contract.

    c. The Plan may require the Participant to temporarily cease contributions upon issuance of a distribution for financial hardship.

    d. Contributions determined to be in excess of applicable limits, that are identified by the Company, by the Plan, or by the Participant, shall be returned to the Participant or to the Employer or held in an unallocated account, according to the requirements of Applicable Law. The Company will cooperate with the Plan and the sponsoring employer in the correction of excess contributions identified in an IRS examination; provided, however, that the Plan sponsor shall consult with the Company before entering into any agreement with regard to such excess amounts in the Contract.

2. Distribution Eligibility and Portability

    a. A Plan Participant may receive a distribution from this Contract following severance of employment with the employer sponsoring the Plan.

EGTR-302

1.

VAL 00028

b.  A distribution to a Plan Participant, or to a former spouse or surviving spouse of the participant, which is an Eligible Rollover Distribution, may be transferred in a qualifying rollover to any Eligible Retirement Plan. For purposes of this paragraph, "Eligible Rollover Distribution" and "Eligible Retirement Plan" shall have the meaning given to them in the Code, as applicable to the type of plan under which the Contract is issued and/or maintained at the time of the distribution. Except as Applicable Law may otherwise provide, any Eligible Rollover Distribution from the Contract shall be subject to mandatory tax withholding if paid to the Participant, or where applicable, to the Participant's former spouse or spousal beneficiary.

c.  A Participant or Beneficiary may request a non-reportable plan-to-plan transfer of a portion of the Contract value to another plan or contract, subject to any applicable limitations in the Plan, the Contract, and Applicable Law.

d.  An employer may not request a distribution of a Participant's account to the Participant unless the employer is authorized to do so under the Plan and permitted to do so under Applicable Law.

e.  This Contract will accept Eligible Rollover Distributions from other plans, provided however that rollovers of after-tax amounts will be permitted only with the advance written consent of the Company. The Company may establish separate accounts for such rollover distributions, where administratively practicable, in order to maintain such separate records as may be necessary or appropriate.

3.   Required Distributions. Except as otherwise required by Applicable Law, distributions to the Participant must commence by April 1 of the year following the year in which the Participant attains age 70 ½ or, if later, retires from service with the Plan sponsor. Distributions to Participants and Beneficiaries shall be made in accordance with Code Section 401(a)(9) and regulations thereunder. Where permitted by Applicable Law, a Participant or a Beneficiary may aggregate this contract with other contracts issued under the plan, or in the case of 403(b) contracts, with other 403(b) contracts or accounts, in determining the distribution that must be taken from this Contract.

4.   In the absence of federal legislative action, one or more of the provisions of the Code that are reflected in this Endorsement will automatically expire on January 1, 2011. In the event of such automatic expiration, such provisions shall cease to apply under this Endorsement.

Except as Applicable Laws otherwise require, the provisions of this Endorsement shall be effective as of January 1, 2002, or the Contract Date of Issue, whichever is later.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

*Mary L. Cavanaugh*

Mary L. Cavanaugh
Secretary

2.

EGTR-302

VAL 00029

# NOTICE OF

# NEW JERSEY LIFE AND HEALTH INSURANCE

## GUARANTY ASSOCIATION ACT

Residents of New Jersey who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the New Jersey Life and Health Insurance Guaranty Association.

The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force.

The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

---

### DISCLAIMER

The New Jersey Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in New Jersey. You should not rely on coverage by the New Jersey Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.

The New Jersey Life and Health Insurance Guaranty Association

One Gateway Center
7th Floor
Newark, New Jersey 07102

State of New Jersey Department of Insurance
20 West State Street CN - 325
Trenton, New Jersey 08625

---

The state law that provides for this safety-net coverage is called the New Jersey Life and Health Insurance Guaranty Association Act, N.J.S.A. 17B:32A-1, et seq. (the "Act").

(please turn to back of page)

**VAL 00030**

DC0C8NJ1

## COVERAGE

The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in New Jersey and hold a life, health or long-term care insurance contract, annuity contract, or if they are insured under a group insurance contract, issued by a member insurer.

The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this Association if:
- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- the insurer was not authorized to do business in this state;
- the policy is issued by an organization which is not a member of the New Jersey Life and Health Insurance Guaranty Association.

The Association also does **not** provide coverage for:
- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate as more fully described in Section 3 of the Act;
- dividends;
- credits given in connection with the administration of a policy by a group contractholder;
- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them).

## LIMITS ON AMOUNT OF COVERAGE

The Act also limits the amount the Association is obligated to pay out. The Association cannot pay more than what the insurance company would owe under a policy or contract.

With respect to any one insured individual, regardless of the number of policies or contracts, the Association will pay not more than $500,000 in life insurance death benefits and present value annuity benefits, including net cash surrender and net cash withdrawal values. Within this overall limit, the Association will not pay more than $100,000 in cash surrender values for life insurance, $100,000 in cash surrender values for annuity benefits, $500,000 in life insurance death benefits or $500,000 in present value of annuities -- again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

The Association will not pay more than $2,000,000 in benefits to any one contractholder under any one unallocated annuity contract.

There are no limits on the benefits the Association will pay with respect to any one group, blanket or individual accident and health insurance policy.

VAL 00031

DC0CBMJ2

RECEIVED

OCT 2 4 2002

Group Plan Installation

## AMENDMENT
## TO
## DEFERRED COMPENSATION PLAN
### (Governmental)

Notwithstanding any provision of the Plan to the contrary and subject to any limitations under the Code, the Plan is hereby amended as follows, effective January 1, 2002, unless otherwise indicated:

1.    Includible Compensation:  Includible Compensation of a Participant shall mean, with respect to a taxable year, the Participant's compensation, as defined in Code section 415(c)(3), for services performed for the Employer.  The amount of Includible Compensation shall be determined without regard to any community property laws.

2.    Excess Deferrals.  Any amount deferred in excess of the Maximum Limitation or Age-Based Catch-Up Contribution shall be distributed to the Participant, with allocable net income, as soon as administratively practicable after the Plan determines that the amount is an excess deferral.  An excess deferral as a result of a failure to comply with the individual limitation under Prop. Treas. Reg. section 1.457-5 for a taxable year may be distributed to the Participant, with allocable net income, as soon as administratively practicable after the Plan determines that the amount is an excess deferral.

3.    Coordination of Catch-Up Contributions.  Utilization of the catch-up limitations under the Plan, including Age-Based Catch-Up Contributions, shall be subject to any limitations imposed under the Code.  Except as otherwise permitted under the Code, a Participant may not utilize both the Catch-Up Limitation and the Age-Based Catch-Up Contribution in the same year.  The Age-Based Catch-Up Contribution shall not apply for any taxable year for which a higher Catch-Up Limitation applies.

4.    Accumulated Sick Pay, Accumulated Vacation Pay and Back Pay.  A Participant may elect to defer accumulated sick pay, accumulated vacation pay and back pay for any calendar month if an agreement providing for the deferral is entered into before the beginning of the month in which the amounts would otherwise be paid or made available and the Participant is an Employee in that month.  Any deferrals made under this section are subject to the Maximum Limitation, including Age-Based Catch-Up Contributions.

5.    Distribution upon Plan Termination  In the event that the Plan is terminated, amounts deferred under the Plan (and all Plan assets) shall be distributed to all Plan Participants and Beneficiaries as soon as administratively practicable after the termination of the Plan.

1

**VAL 00109**

6.  Plan-to-Plan Transfers. A transfer from an eligible governmental deferred compensation plan is permitted only if the transferor plan provides for transfers, the Participant or Beneficiary whose amounts deferred are being transferred will have an amount deferred immediately after the transfer at least equal to the amount deferred with respect to that Participant or Beneficiary immediately before the transfer, and the Participant or Beneficiary whose amounts deferred are being transferred has had a severance from employment with the transferring employer and is performing services for the Employer maintaining this Plan. However, these conditions are not required to be satisfied if (a) all of the assets held by the eligible governmental plan are transferred; (b) the transfer is to another eligible governmental plan maintained by an eligible employer that is a state entity within the same state; and (c) the Participants whose deferred amounts are being transferred are not eligible for additional annual deferrals in the receiving plan unless they are performing services for the entity maintaining the receiving plan.

7.  Normal Retirement Age. For purposes of the Catch-Up Limitation, if the Participant will not be eligible to receive benefits under a basic retirement plan maintained by the Employer, the Participant's Normal Retirement Age may not be earlier than attainment of age 65 and may not be later than the calendar year in which the Participant attains age 70½.

Borough of Fort Lee,
Plan Name

Peggy E Thomas
Signature

Peggy E Thomas
Print Name

Borough Administrator
Title

10/17/02
Date

**AMENDMENT
TO
DEFERRED COMPENSATION PLAN
(Governmental)**

RECEIVED

OCT 2 4 2002

Group Plan Installation

Notwithstanding any provision of the Plan to the contrary, the Plan is hereby amended as follows, effective____|_|_____, 20⍬:

Loans. Loans shall be made available to all Participants on a reasonably equivalent basis, but only to the extent permitted under the Annuity Contract or other Plan investment and the provisions of this section. No loan shall be made available under this Plan unless it satisfies all of the requirements of Code section 72(p) and any other applicable regulatory guidance, including the limitations on the total of a Participant's non-taxable loans from all plans of the Employer for treatment as a tax-free loan. The making of loans under this Plan shall be subject to written guidelines set forth in a separate document (or under the Annuity Contract), which guidelines shall govern the availability, terms and procedures for Participants to obtain loans under the Plan. The availability of loans under the Plan may be suspended, terminated or modified at any time.

Borough of Fort Lee
Employer Name

Peggy E Thomas
Signature

PEGGY E Thomas
Print Name

Borough Administrator
Title

10/17/02
Date

1                                    **VAL 00111**

42 28

RECEIVED

OCT 2 4 2002

Group Plan Installation

## DEFERRED COMPENSATION PLAN
### (New Jersey Governmental)

## ARTICLE I.   INTRODUCTION

1.01   Establishment of Plan.   BoRouGH  of  FoRT  LEE
(hereinafter the "Employer"), a body of politic of the State of New Jersey,
hereby establishes the BoRouGH of FT. LEE DeFeRReD CompensATioN
(hereinafter the "Plan"). The Plan is intended to qualify as an eligible
deferred compensation plan under section 457(b) of the Internal Revenue
Code of 1986, as amended.

1.02   Purpose of the Plan.  The purpose of this Plan is to provide an optional
benefit to Employees whereby a designated amount of the Participant's
Compensation is withheld each month by the Employer and invested at the
discretion of and in a manner approved by the Employer until one of the
specified events occurs which permits all or part of the monies withheld,
together with earnings, if any, to be payable to the Participant or
Beneficiary. Nothing contained in this Plan shall be deemed to constitute an
employment agreement between any Participant and the Employer and
nothing contained herein shall be deemed to give any Participant any right
to be retained in the employ of the Employer.

## ARTICLE II.  PLAN ELECTIONS

2.01   Plan Effective Date. (Hereinafter the "Effective Date.") (Check one.)

[   ]   This Plan is being established by the Employer effective
_____, _____

[ X ]   This Plan replaces the Plan previously established by the Employer
and is effective on   JuLY   27   ,   19P7

2.02   Participant's Election to Receive In-Service Distribution.  A Participant may
elect to receive an in-service distribution of his account balance as
described in Section 8.09. (Check one.)

[ O ]   Yes, if the total amount payable to a Participant under the Plan does
not exceed 5 an   (insert an amount up to $5,000).

[   ]   No. Section 8.09 shall not apply to this Plan.

2.03   Distribution without Participant's Consent.  Small accounts of certain
inactive participants may be distributed without the participant's consent as
described in Section 8.10. (Check one.)

[ X ]   Yes, if the total amount payable to a participant under the Plan does
not exceed 5 an   (insert an amount up to $5,000).

VAL 00084

[ ] No. Section 8.10 shall not apply to this Plan.

## ARTICLE III. DEFINITIONS

3.01 Account: The account maintained for each Participant reflecting the cumulative amount of each Participant's Deferred Compensation, including any income, gains, losses, or increases or decreases in market value attributable to the investment of the Participant's Deferred Compensation, and further reflecting any amounts accepted as a transfer under Section 10.01, any distributions to the Participant or the Beneficiary and any fees or expenses charged against the Participant's Deferred Compensation.

3.02 Administrator: The official or officials of the Employer appointed by resolution of the Employer to administer the Plan and bear fiduciary responsibilities hereunder.

3.03 Annuity Contract: If selected by the Employer as an investment option, one or more group fixed, variable or combination fixed and variable annuity contracts issued by The Variable Annuity Life Insurance Company (VALIC) and approved for sale in the Employer's state, or by another insurance company qualified to do business in the Employer's state, which provides for periodic payments at regular intervals, whether for a period certain or during one or more lives, and which are non-transferable.

3.04 Beneficiary or Beneficiaries: The person or persons designated by the Participant in his Deferred Compensation Agreement who shall receive any benefits payable hereunder in the event of the Participant's death. If more than one designated Beneficiary survives the Participant, payments shall be made equally to the surviving Beneficiaries, unless otherwise provided in the Deferred Compensation Agreement. If no Beneficiary is designated in the Deferred Compensation Agreement or if no designated Beneficiary survives the Participant, then the estate of the Participant shall be the Beneficiary. However, a Participant may designate a contingent Beneficiary (or Beneficiaries) who shall become the primary Beneficiary (or Beneficiaries) under this Plan in the event that no primary Beneficiary survives the Participant.

3.05 Code: The Internal Revenue Code of 1986, as amended.

3.06 Contractor: The Variable Annuity Life Insurance Company, VALIC Retirement Services Company or such other entity as the Employer, designates to perform administrative services under this Plan.

3.07 Deferred Compensation: The amount of Normal Compensation otherwise payable to the Participant which the Participant and the Employer mutually agree to defer hereunder, any amount credited to a Participant's Account

22-PD-VALIC-E121201

VAL 00085

by reason of a transfer under Section 10.01, or any other amount which the Employer agrees to credit to a Participant's Account, and which does not exceed the Maximum Limitation.

3.08 Deferred Compensation Agreement: A Joinder Agreement entered into between an Employee and the Employer under which an Employee participates in the Plan, including any amendments or modifications thereof. Such Deferred Compensation Agreement shall fix the amount of Deferred Compensation, establish the time when the payment of benefits shall commence, specify the Participant's Investment Option or Investment Options with respect to his Deferred Compensation, designate the Participant's Beneficiary or Beneficiaries and incorporate the terms, conditions, and provisions of this Plan by reference.

3.09 Director: The Director of the Division of Local Government Services, Department of Community Affairs, of the State of New Jersey.

3.10 Eligible Retirement Plan: A plan described in section 402(c)(8)(B) to which an Eligible Rollover Distribution may be transferred pursuant to section 457(e)(16) of the Code.

3.11 Eligible Rollover Distribution: A qualifying distribution to a Participant, or to a spousal beneficiary of a deceased Participant, that is described in section 402(c)(4) of the Code.

3.12 Employee: Any individual, whether appointed, elected or under contract, Providing services for the Employer for which compensation is paid.

3.13 Includible Compensation: The amount of compensation payable to a Participant from the Employer which is includible in the Participant's gross income for federal income tax purposes. Such term does not include any amount excludible from gross income under this Plan or any other plan described in section 457(b) of the Code or any other amount excludible from gross income for federal income tax purposes. Includible gross income shall be determined without regard to any community property laws.

3.14 Investment Option: A form of investment made by the Administrator on behalf of the Employer and approved by the Director and approved for sale by the New Jersey Insurance Department of one or more of the following types: (1) a group fixed annuity contract issued by an insurance company authorized to do business in the State of New Jersey; (2) a group variable annuity contract issued by an insurance company authorized to do business in the State of New Jersey; (3) a combination group fixed and variable annuity contract issued by an insurance company authorized to do business in the State of New Jersey; or (4) shares of regulated investment company stock (i.e., mutual fund shares).

22-PD-VALIC-E121201                          2

VAL 00086

3.15  Normal Compensation: The amount of compensation which would be payable to a Participant by the Employer if no Deferred Compensation Agreement were in effect to defer compensation under this Plan.

3.16  Normal Retirement Age: Age 70½, unless the Participant has elected an alternative Normal Retirement Age by written instrument delivered to the Employer prior to Severance from Employment. A Participant's Normal Retirement Age determines the period during which a Participant may utilize the Catch-Up Limitation of Section 6.01(b) hereunder.

Once a Participant has to any extent utilized the Catch-Up Limitation of Section 6.01(b), his Normal Retirement Age may not be changed.

A Participant's alternative Normal Retirement Age may not be earlier than the earliest date that the Participant will become eligible to retire and receive unreduced retirement benefits under the Employer's basic retirement plan covering that Participant and may not be later than the calendar year in which the Participant attains age 70½.

If a Participant continues employment after attaining age 70½ not having previously elected an alternative Normal Retirement Age, the Participant's alternative Normal Retirement Age shall not be later than the mandatory retirement age, if any, established by the Employer or the age at which the Participant actually separates from service if the Employer has no mandatory retirement age.

If the Participant will not be eligible to receive benefits under a basic retirement plan maintained by the Employer, the Participant's Normal Retirement Age may not be earlier than attainment of age 55 and may not be later than the calendar year in which the Participant attains age 70½.

3.17  Participant: Any Employee who has enrolled in this Plan pursuant to the requirements of Article V.

3.18  Plan Year: The 12-month period commencing each January 1 and ending on the following December 31.

3.19  Retirement: The first date upon which each of the following shall have occurred with respect to a Participant: Severance from Employment and attainment of age 65.

3.20  Severance from Employment: Termination of the Participant's employment relationship with the Employer. For years prior to 2002, references in this Plan to Severance from Employment shall mean the Participant's severance of the Participant's employment with the Employer, within the meaning of section 402(d)(4)(A)(iii), rather than termination of the Participant's employment relationship with the Employer.

## ARTICLE IV. ADMINISTRATION

4.01 Duties of the Administrator. This Plan shall be administered under the direction of the Administrator who shall represent the Employer in all matters concerning the administration of this Plan. The Plan Administrator shall have full power and authority to issue directives affecting the administration of the Plan or to otherwise interpret the provisions of same, provided such action is not inconsistent with P.L. 1977, C. 381, P.L 1980, C. 78, or regulations promulgated thereunder. Any decision of the Administrator with respect to the administration of the Plan shall be final. The Administrator shall have the authority to make any discretionary decisions affecting the rights of benefits of Participants which may be required in the administration of this Plan; provided, however, that no person acting as Administrator may participate in any discretionary decision directly affecting his individual participation in the Plan.

4.02 Duties of the Contractor. The Contractor appointed by the Employer shall perform such nondiscretionary administrative functions in connection with the Plan as shall be set forth in its agreement with the Employer, including the maintenance of Participants' accounts and the provision of periodic reports of the status of each Account to the Administrator which reports shall remain the property of the Employer. All records regarding participation, the amount of deferrals, account balances, withdrawals, and any other information regarding a Participant's account shall be held confidential by the Contractor, the Administrator, and any other persons performing services in connection with the Plan. Summary plan information, including, but not limited to, cash flow analysis, investment reports, audits and quarterly reports, shall be made available by the Administrator and Contractor upon a written request from a Participant or the Director.

4.03 Contractor Disclosure. The Contractor must fully disclose to the Administrator, and to the Employees where appropriate, the fees charged by the Contractor, the fee and commission structure of the Contractor, the investment program offered by the Contractor, and any other pertinent information which the Employer may need in evaluating the Contractor's fee and service.

All service agreements or contracts entered into by the Employer shall contain termination clauses with respect to transfers of assets or responsibility under the Plan.

Any and all policies, contracts, or other legal documents executed by the Employer and any Contractor must be kept in a safe and secure place by the Administrator; the Administrator shall not permit a Contractor to keep the original and all copies of any policies, contracts, or other legal

VAL 00088

documents.

4.04 Annual Audit. The Employer's audit must be submitted within six (6) months of the conclusion of its fiscal year. The audit of the Employer's Plan is included as part of the annual audit of the Employer's books, accounts and financial transactions.

The Contractor shall transmit to the Employer a summary of financial data in a statement form giving a full accounting of the Plan transactions occurring during the Employer's fiscal year, including beginning and ending fund balances. The accounting must also reflect the amount of each Participant's account, the date of each contribution, the beginning and ending fund balances under each Investment Option chosen, earnings and/or losses incurred, administrative charges and fees assessed, any transfer made among Investment Options, the amount of any deposits and withdrawals, and any and all adjustments made to the account. The Contractor shall submit to the Employer applicable confirmation statements or applicable program statements, together with its most recent audit report of independent auditors. At the request of the Employer, the Contractor shall make available details of all transactions for each Participant.

The Contractor shall furnish annually to the Administrator a copy of the Contractor's Statement of Accounting Standards (SAS) 70 Report, as defined by the American Institute of Certified Public Accountants (AICPA).

The Contractor must further certify to the Director that the annual accounting data supplied to the Employer is accurate and complete.

The independent registered municipal accountant shall evaluate the Employer payroll records and Deferred Compensation Agreements against the information transmitted by the Contractor. The independent registered municipal accountant shall make an appropriate statement and express limited assurances thereon.

The assertions may be made a part of the Employer's annual audit pursuant to N.J.S.A. 40A:5-4 in addition to being transmitted under separate cover to the Director in accordance with AICPA's Statement on Standards for Accounting, Review Services 1 as defined in "Review of Financial Statement."

4.05 Conflict of Interest and Related Matters. No Employee or official of the Employer (or any family member of such person or business in which such person has a 10% or greater proprietary interest) shall have any interest, financial or otherwise, in any contract entered into by the Employer relating to the administration of the Plan. The Employer may not enter into a contract with a Contractor that pays money to an organization of which the Employer is a member for endorsement of the Contractor's Plan. There

22-PD-VALIC-E121201

VAL 00089

shall be no collusion, or evidence or appearance of collusion, between any Employee or official of the Employer, and any official or employee of any contractor, vendor, insurance company, bank, consultant, brokerage firm or any other firm that has attempted to solicit or that has been awarded a contract by the Employer. No organization seeking to be a Contractor shall by any means solicit Employees to participate in the Plan or support the efforts of that organization to become a Contractor or, without the knowledge and express written consent of the Employer, otherwise communicate with a prospective Participant.

4.06   Nondiscrimination. Any organization seeking to be a Contractor shall certify to the Director, as part of the solicitation of documents specified in N.J.A.C. 5:37-7.7, that it does not discriminate in its employment or investment policies and practices.

## ARTICLE V. PARTICIPATION IN THE PLAN

5.01   Initial Participation. An Employee becomes a Participant when he has executed and entered into a Deferred Compensation Agreement with the Employer. An Employee may become a Participant as of the first day of any calendar month by entering into a Deferred Compensation Agreement with respect to compensation not yet earned. A new Employee may become a Participant on the first day of employment by entering into a Deferred Compensation Agreement on or before the first day of employment with respect to compensation not yet earned. The Deferred Compensation Agreement shall defer compensation not yet earned, and each Deferred Compensation Agreement must be made on or before the beginning of the month in which it is to become effective or, with respect to a new employee, on or before the first day of employment.

5.02   Minimum Deferral Amount. At the time of entering into or amending a Deferred Compensation Agreement hereunder, a Participant must agree to defer a minimum of twenty dollars ($20.00) per payroll period or such greater amount as may be required under the Investment Option(s) selected in the Participant's Deferred Compensation Agreement.

5.03   Amendment of Deferred Compensation Agreement. A Participant may not amend or modify an executed Deferred Compensation Agreement to change the amount of Deferred Compensation except with respect to compensation to be earned in the subsequent calendar month and provided that notice is given prior to the beginning of the month for which such change is to be effective. A Participant and Employer may execute only one Deferred Compensation Agreement per calendar year. A Participant may change the Beneficiary designated in his Deferred Compensation Agreement at any time by giving written notice to the Employer.

5.04   Revocation of Deferred Compensation Agreement. A Participant may

22-PD-VALIC-E121201                           4

VAL 00090

revoke his Deferred Compensation Agreement and thereafter be restored to his Normal Compensation in the subsequent calendar month, by giving notice to the Employer prior to the beginning of the month for which such revocation is to be effective.

5.05 Recommencement of Participation. A Participant who returns to active service with the Employer after a Severance from Employment, or who has revoked his Deferred Compensation Agreement under Section 5.04, may again become an active Participant by executing a new Deferred Compensation Agreement with the Employer prior to the beginning of the calendar month as to which it is to be effective.

5.06 Leave of Absence. Compensation may continue to be deferred under this Plan with respect to a Participant who is on an approved leave of absence from the Employer with compensation, and all of the rules of this Article shall apply with respect to making, amending or revoking any Deferred Compensation Agreement for such a Participant. If a Participant is absent from work without compensation for a period of not more than six months, whether by reason of illness, strike, lockout, shutdown or otherwise, his Deferred Compensation Agreement will remain in effect and compensation will again be deferred thereunder when he returns to work.

## ARTICLE VI. DEFERRALS

6.01 Maximum Limitation: The maximum amount that may be deferred under this Plan (other than rollover amounts described in Section 10.03) for the taxable year of a Participant. Such amount shall be either the Normal Limitation or Catch-Up Limitation, whichever is applicable.

(a) Normal Limitation: The maximum amount deferred shall not exceed the lesser of the applicable dollar amount (as described in Section 6.01(c) below) or 100% of the Participant's Includible Compensation, as adjusted by Section 6.01(d) below. [Ordinarily this limit shall be the equivalent of the lesser of the applicable dollar amount (as described in Section 6.01(c) below) or 50% of Normal Compensation, assuming no other pre-tax reductions apply under Section 3.13.] Notwithstanding the preceding provisions of this paragraph, for calendar years prior to 2002, the maximum amount deferred shall not exceed such limit or limits in effect for the applicable year pursuant to section 457 of the Code.

(b) Catch-Up Limitation: For each one of the last three (3) taxable years of a Participant ending before the Participant's attainment of Normal Retirement Age, the maximum amount deferred for each such year shall be the lesser of:

(1) twice the applicable dollar amount (as described in Section

22-PD-VALIC-E121201

6.01(c) below); or

(2) the sum of the Normal Limitation, plus that portion of the Normal Limitation not used in each of the prior taxable years of the Participant commencing after 1978 in which (i) the Participant was eligible to participate in this Plan or the plan of another employer, and (ii) compensation deferred under this Plan (or such other plan) was subject to the deferral limitations set forth in this section.

A Participant may utilize the Catch-Up Limitation only if the Participant has not previously utilized it with respect to a different Normal Retirement Age under this Plan or any other plan.

For years prior to 2002, the limit under this paragraph (b) for any year shall not exceed $15,000.

(c) Applicable Dollar Amount. For contributions in 2002 and in subsequent years, the applicable dollar amount shall be the amount determined in accordance with the following table:

| For taxable years beginning in calendar year: | The applicable dollar amount: |
|---|---|
| 2002 | $11,000 |
| 2003 | $12,000 |
| 2004 | $13,000 |
| 2005 | $14,000 |
| 2006 or thereafter | $15,000 |

In the case of taxable years beginning after December 31, 2006, the applicable dollar amount will be adjusted for cost-of-living increases in accordance with section 457(e)(15) of the Code.

(d) Coordination with Other Plans. For contribution years prior to 2002, the amount excludible from a Participant's gross income for any taxable year under this Plan or any other plan under section 457(b) of the Code shall not exceed $7,500 (as adjusted for cost-of-living increases in accordance with section 457(e)(15) of the Code) or such greater amount allowed under paragraph (b) of this section, less any amount excluded from gross income under sections 403(b), 402(e)(3), or 402(h)(1)(B) or (k) of the Code, or any amount with respect to which a deduction is allowable by reason of a contribution to an organization under section 501(c)(18) of the Code.

(e) Age-Based Catch-Up Contributions. In addition to any other limit set forth in this section, and subject to any limitations that may be imposed under present or future federal tax laws and rules, a

VAL 00092

Participant who has attained age 50 may contribute an additional amount in such year or a subsequent year, according to the following schedule:

| Year of Contribution: | Additional Catch-Up Amount: |
|---|---|
| Prior to 2002 | $     0 |
| 2002 | $1,000 |
| 2003 | $2,000 |
| 2004 | $3,000 |
| 2005 | $4,000 |
| 2006 and later | $5,000 |

In the case of taxable years beginning after December 31, 2006, the additional catch-up amount will be adjusted for cost-of-living increases in accordance with section 414(v)(2)(C) of the Code.

A Participant may not make an age-based catch-up contribution in any year in which the Participant may utilize the Catch-Up Limitation in paragraph (b) above.

6.02   Timing. The amount of compensation deferral specified by each Participant in the Participant's Deferred Compensation Agreement shall be deferred by the Employer at the end of each pay period. Amounts withheld from the employees shall be turned over to the Contractor for investment within 72 hours, exclusive of Sundays and holidays, from the time the funds are withheld from the Participant.

6.03   Withholding. Notwithstanding any other provision in the Plan, the amount of Deferred Compensation credited to a Participant's Account pursuant to his Deferred Compensation Agreement shall not reduce or affect the amounts otherwise properly withheld and deducted from Normal Compensation for New Jersey Gross Income Tax, pensions, Social Security, Insurance and other fringe benefits. However, the computation of Federal Income Tax withholding shall be made after giving effect to the amount of Deferred Compensation to be credited to the Participant's Account subject to the limitations of Section 6.01.

# ARTICLE VII. INVESTMENT OF DEFERRED COMPENSATION

7.01   Annuity Contracts and Other Plan Investments. For the purposes of measuring and satisfying its obligation to provide benefits under this Plan, the Employer shall invest the amount of each Participant's Deferred Compensation in an Investment Option or Investment Options as specified in the Participants' Deferred Compensation Agreements. Responsibility for the selection of investment alternatives for Plan assets shall be retained by the Employer, and the Employer shall have the right to modify the selection of investment alternatives from time to time. However, Participants and

22-PD-VALIC-E121201

VAL 00093

Beneficiaries may allocate amounts held in their accounts or otherwise credited for their benefit under the Plan among the investment alternatives selected by the Employer, and the Employer shall cause such amounts to be so allocated within a reasonable time after the receipt of Participant instructions, or may instruct the issuer, trustee, or custodian to accept such allocation instructions directly from Participants and Beneficiaries as representatives of the Employer.

7.02    Crediting of Accounts. The Participant's Account shall reflect the amount and value of any investment of the Participant's Deferred Compensation. It is anticipated that the Employer's investments with respect to a Participant will conform to the Investment Option(s) selection made in the Participant's Deferred Compensation Agreement, but nothing herein shall be construed to require the Employer to make any particular investment of a Participant's Deferred Compensation; provided, however, that the Employer shall not cause any Deferred Compensation which has been invested in accordance with a Participant's selection of an Investment Option or Investment Options to be liquidated and reinvested under a different Investment Option except at the request of a Participant and in accordance with regulations or rulings promulgated under N.J.A.C. 5:37-9.2. Each Participant shall receive periodic reports, not less frequently than quarterly, showing: the value of his Account and the value of the entire Plan as of the end of the calendar year or other accounting period for which the report is made; the Participant's Account balance as of the end of the preceding accounting period; the amount of compensation deferred during the accounting period; and the amount of income, gains or losses credited to the Participant's Account during the accounting period. The Contractor shall credit to the Plan and to each Participant's Account the return or loss on investment no less than once per month, except for annuity programs.

7.03    Exclusive Benefit. Notwithstanding any provision of the Plan to the contrary, all amounts held under the Plan, including amounts deferred and earnings or other accumulations attributable thereto, shall be held for the exclusive benefit of Plan Participants and Beneficiaries (i) in annuity contracts, or (ii) in trust or in one or more custodial accounts pursuant to one or more separate written instruments. Any such annuity contract, trust, or custodial account must satisfy the requirements of section 457(g)(1) of the Code. For purposes of this section, the terms Participant and Beneficiary shall also include contingent beneficiaries and/or spouses, former spouses, or children of Participants for whose benefit amounts are being held under the Plan pursuant to the terms of a domestic relations order which has been recognized under the terms of the Plan. Any discretionary authority reserved to the Employer (or to any administrator or administrative committee) under the Plan or under any investment held under the Plan, to the extent the exercise thereof would otherwise be inconsistent with this section, shall be exercised for the exclusive benefit of Plan Participants and Beneficiaries. Any issuer of an annuity contract or trustee or custodian of

22-PD-VALIC-E121201                                6

VAL 00094

other investments held under the Plan shall have no authority to pay any amounts from such Plan investments to any creditor of the Employer, and shall have no duty to inquire into the validity of any request by the Employer or by an administrator or administrative committee for distribution of amounts for the benefit of a Participant or a Beneficiary under the Plan.

7.04  Employer Liability.  The benefits paid to a Participant or Beneficiary pursuant to Article VII of this Plan shall be based upon the value of the Participant's Account.  In no event shall the Employer's liability to pay benefits exceed the value of the Participant's Account, and neither the Employer nor the Contractor shall not be liable for losses arising from depreciation or other decline in the value of any investments acquired under this Plan.

7.05  Employer-Directed Accounts.  Notwithstanding any provision of the Plan to the contrary, if so elected by the Employer, the Employer shall direct the issuer, trustee or custodian with respect to the investment of any contributions that are forwarded to the issuer, trustee or custodian prior to the date on which the Participant or Beneficiary completes the necessary paperwork with the issuer, trustee or custodian (or takes such other action or actions as may be necessary) to direct the investment of such amounts. Such direction shall be communicated to the issuer, trustee or custodian by means of a separate written agreement between the Employer and issuer, trustee or custodian, which agreement will include a default investment option and a default beneficiary designation.  This direction shall be effective only until such time as the Participant or Beneficiary exercises his right to direct the investment of such amounts.

## ARTICLE VIII. BENEFITS

8.01  Retirement Benefits on Severance from Employment.  Except as otherwise provided in this Article, a Participant's Account shall become distributable upon a Participant's Severance from Employment.  The distribution of a Participant's Account shall commence no later than April 1 of the calendar year following the year of the Participant's Retirement or attainment of age 70½, whichever is later.  Distributions shall be made in accordance with one of the payment options described in Section 8.03.  Notwithstanding the other provisions of this section, Accounts established prior to January 1, 2002 will be subject to the additional distribution requirements, and rules regarding permitted distribution elections, to which such Account may have been or may be subject under Code section 457.

8.02  Distribution Procedures.  The Employer may from time to time establish procedures for Participant distribution elections, provided that such procedures are not inconsistent with the requirements of Section 8.01.

8.03  Payment Options.  A Participant (or a Beneficiary as provided in Section

22-PD-VALIC-E121201

VAL 00095

8.06) may elect to have the value of the Participant's Account distributed in accordance with one of the following payment options provided that such option is consistent with the limitations set forth in Section 8.04:

(a)    life annuity;

(b)    life annuity with 60, 120, or 180 monthly payments guaranteed;

(c)    unit refund life annuity;

(d)    joint and last survivor annuity (spouse only);

(e)    lump sum;

(f)    term certain annuity with 36, 48, 60, 72, 84, 96, 108, 120, 132, 144, 156, 168 or 180 monthly payments guaranteed;

(g)    withdrawals for a specified number of years (once this payment option is chosen, neither the amount of the payments nor the period over which the payments are taken can be changed);

(h)    withdrawals of a specified amount (once this payment option is chosen, neither the amount of the payments nor the period over which the payments are taken can be changed); or

(I)    any other method of payment agreed upon between Participant and Employer and accepted by the Contractor.

If a Participant fails to elect a payment option, any required payments shall be made under a payment option designated by the Employer.

Notwithstanding the options above, any option that involves a life contingency (or a joint life contingency) shall only be available under an Annuity Contract offered or obtained under the terms of the Plan.

8.04    Limitation on Options. No payment option may be selected by the Participant (or a Beneficiary) unless it satisfies the requirements of Code section 401(a)(9) and any additional Code limitations applicable to the Plan. Notwithstanding the other provisions of this section, Accounts established prior to January 1, 2002 will be subject to the additional distribution requirements, and rules regarding permitted distribution elections, to which such Account may have been or may be subject under Code section 457.

8.05    Post-Retirement Death Benefits. Should the Participant die after he has begun to receive benefits under a payment option, the guaranteed or remaining payments, if any, under the payment option shall be payable to the Participant's Beneficiary commencing with the first payment due after

the death of the Participant. Payment to the Participant's Beneficiary must comply with section 401(a)(9) of the Code, and with any additional Code limitations applicable to the Plan. If the Beneficiary does not continue to live for the remaining period of payments under the payment option, then the remaining benefits under the payment option shall be paid to the Beneficiary's beneficiary or, if none, the Beneficiary's estate. In no event shall the Employer be liable for any payments made in the name of the Participant or a Beneficiary before the Employer or its agent receives proof of the death of the Participant or Beneficiary.

8.06    Pre-Retirement Death Benefits. Should the Participant die before he has begun to receive benefits under Section 8.01, a death benefit equal to the value of the Participant's Account shall be payable to the Beneficiary. Such death benefit shall be paid in a lump sum unless the Beneficiary elects a different payment option. Payment to the Participant's Beneficiary must comply with section 401(a)(9) of the Code, and with any additional Code limitations applicable to the Plan. Should the Beneficiary die before the completion of payments under the payment option, the value of the remaining payments under the payment option shall be paid to the Beneficiary's beneficiary or, if none, the Beneficiary's estate. Notwithstanding the other provisions of this section, Accounts established prior to January 1, 2002 will be subject to the additional distribution requirements, and rules regarding permitted distribution elections, to which such Account may have been or may be subject under Code section 457.

8.07    Unforeseeable Emergency Withdrawals. Except as provided in this section, no amount shall be distributable to a Participant or Beneficiary prior to the Participant's Severance from Employment.    In the event of an unforeseeable emergency before or after Severance from Employment or the commencement of Retirement Benefits, a Participant may apply to the Employer to receive that part of the value of his Account that is reasonably needed to satisfy the emergency needs. If such application for withdrawal is approved by the Employer, the Employer shall direct the issuer to pay the Participant such value as the Employer deems necessary to meet the emergency needs.    The Employer may establish written guidelines for nondiscretionary unforeseeable emergency determinations to be made by the Contractor. The regulations under section 457(d)(1)(A)(iii) of the Code define an unforeseeable emergency as a severe financial hardship to the Participant resulting from a sudden and unexpected illness or accident of the Participant or a dependent, loss of property due to casualty, or other similar extraordinary or unforeseeable circumstances arising as a result of events beyond the control of the Participant which would cause severe financial hardship to the Participant if early withdrawal were not permitted. Payment may not be made to the extent that such hardship is or may be relieved by other financial resources available to the Participant, including insurance reimbursement, cessation of deferrals under this Plan or liquidation of other assets, to the extent the liquidation of such assets would

not itself cause severe financial hardship. Unforeseeable emergencies do not include the need to send a child to college or the desire to purchase a home.

8.08  Transitional Rule for Annuity Payment Option Elections.  If this Plan document constitutes an amendment and restatement of the Plan as previously adopted by the Employer and if a Participant or Beneficiary has commenced receiving benefits under an annuity payment option, that annuity payment option shall remain in effect notwithstanding any other provision of this Plan.

8.09  Participant's Election to Receive In-Service Distribution. If the Employer so elects under Section 2.02, a Participant may elect to receive an in-service distribution of the total amount payable to the Participant under the Plan if:

   (a)  such amount does not exceed the dollar amount under section 411(a)(11)(A) of the Code,

   (b)  no amount has been deferred under the Plan with respect to the Participant during the two-year period ending on the date of the distribution, and

   (c)  there has been no prior distribution under the Plan to the Participant under this Section 8.09 or under Section 8.10.

8.10  Distribution without Participant's Consent. If the Employer so elects under Section 2.03, the total amount payable to a Participant under the Plan may be distributed to the Participant without his consent if:

   (a)  such amount does not exceed the dollar amount under section 411(a)(11)(A) of the Code,

   (b)  no amount has been deferred under the Plan with respect to the Participant during the two-year period ending on the date of the distribution, and

   (c)  there has been no prior distribution under the Plan to the Participant under this Section 8.10 or under Section 8.09.

## ARTICLE IX. NON-ASSIGNABILITY

9.01  In General.  Except as provided in Section 9.02, no Participant or Beneficiary shall have any right to commute, sell, assign, pledge, transfer or otherwise convey or encumber the right to receive any payments hereunder, which payments and rights are expressly declared to be non-assignable and non-transferable; nor shall any unpaid benefits be

subject to attachment. garnishment, or execution, or be transferable by operation of law in the event of bankruptcy or insolvency, except to the extent required by law.

9.02  Domestic Relations Orders.

(a)    Allowance of Transfers: To the extent required under a final judgment, decree, or order (including approval of a property settlement agreement) made pursuant to a state domestic relations law, any portion of a Participant's Account may be paid or set aside for payment to a spouse, former spouse, or child of the Participant. Where necessary to carry out the terms of such an order, a separate Account may be established with respect to the spouse, former spouse, or child who shall be entitled to make investment selections with respect thereto in the same manner as the Participant; any amount so set aside for a spouse, former spouse, or child shall be paid out in a lump sum at the earliest date that benefits may be paid to the Participant, unless the order directs an earlier time, to the extent allowed under the Code, or a different form of payment. Where the final judgment, decree or order does not define a form or time of payment that is available under this Plan, the Employer shall have the right to interpret the final judgment, decree or order in a manner that is consistent with the terms of this Plan. Any payment made to a person other than the Participant pursuant to this section shall be reduced by required income tax withholding.

(b)    Release from Liability to Participant: The Employer's liability to pay benefits to a Participant shall be reduced to the extent that amounts have been paid or set aside for payment to a spouse, former spouse, or child pursuant to paragraph (a) of this section. No such transfer shall be effectuated unless the Employer or Contractor has been provided with satisfactory evidence that the Employer and the Contractor are released from any further claim by the Participant with respect to such amounts. The Participant shall be deemed to have released the Employer and the Contractor from any claim with respect to such amounts, in any case in which (i) the Employer or Contractor been served with legal process or otherwise joined in a proceeding relating to such transfer, (ii) the Participant has been notified of the pendency of such proceeding in the manner prescribed by the law of the jurisdiction in which the proceeding is pending by service of process in such action or by mail from the Employer or Contractor to the Participant's last known mailing address, and (iii) the Participant fails to obtain an order of the court in the proceeding relieving the Employer or Contractor from the obligation to comply with the judgment, decree, or order. The Participant shall also be deemed to have released the Employer or Contractor if the Participant has consented to the transfer pursuant to the terms of a property settlement agreement and/or a final judgment, decree, or order as described in paragraph (a).

VAL 00099

(c)    Participation in Legal Proceedings: The Employer and the Contractor shall not be obligated to defend against or seek to have set aside any judgment, decree, or order described in paragraph (a) or any legal order relating to the garnishment of a Participant's benefits, unless the full expense of such legal action is borne by the Participant. In the event that the Participant's action (or inaction) nonetheless causes the Employer or Contractor to incur such expense, the amount of the expense may be charged against the Participant's Account and thereby reduce the Employer's obligation to pay benefits to the Participant. In the course of any proceeding relating to divorce, separation, or child support, the Employer and Contractor shall be authorized to disclose information relating to the Participant's Account to the Participant's spouse, former spouse, or child (including the legal representatives of the spouse, former spouse, or child), or to a court.

## ARTICLE X.   TRANSFERS

10.01   Transfers from Other Plans. This Plan shall accept transfers, pursuant to section 457 of the Code, of amounts deferred by an individual under another eligible deferred compensation plan meeting the requirements of section 457(g) of the Code. In the event of a request by a Participant for a transfer to a plan under which amounts are not held in the manner described in Section 7.03, such transfer shall be permitted only if otherwise permitted by the Plan and applicable law. In no event may the Employer cause such a transfer to be made, except at the request of a Participant. Any such transferred amount shall not be treated as a deferral subject to the limitations of Section 6.01, except that, for purposes of applying the limit of Section 6.01, an amount deferred during any taxable year under the plan from which the transfer is accepted shall be treated as if it had been deferred under this Plan during such taxable year and compensation paid by the transferor employer shall be treated as if it had been paid by the Employer.

10.02   Transfers to Other Plans. A Participant may elect to have any portion of the amount payable to him transferred to another eligible deferred compensation plan. In the event of a request by a Participant for a transfer to another eligible deferred compensation plan under which amounts are not held in the manner described in Section 7.03, such transfer shall be permitted only if otherwise permitted by the Plan and applicable law. Subject to any limitations imposed by an investment provider, the Plan may also permit transfers of a portion of an amount payable to a Participant to a defined benefit governmental plan in conformity with section 457(e)(17) of the Code.

10.03   Rollovers. A Participant may elect to roll an Eligible Rollover Distribution to an Eligible Retirement Plan. The Participant shall be provided with a description of available rollover rights and rules in advance of such a

22-PD-VALIC-E121201                                        9

VAL 00100

distribution. A distribution that is an Eligible Rollover Distribution and that is paid in a form other than a rollover will be subject to mandatory withholding of 20%, or such other mandatory withholding rate as may be imposed under the Code from time to time. This Plan shall be permitted to accept a rollover distribution from an Eligible Retirement Plan (including a distribution from an IRA) to this Plan, subject to any administrative restrictions imposed by the Plan or by the investment provider. To the extent necessary to satisfy the requirements of the Code, any such rollover distribution to the Plan shall be subject to the same restrictions on distributions applicable to other amounts held under the Plan.

## ARTICLE XI. AMENDMENT OR TERMINATION OF PLAN

11.01 Amendment or Termination. The Employer may at any time amend this Plan or terminate this Plan and distribute the Participants' accounts in conformity with the Code and applicable regulations; provided, however, that such amendment or termination shall not impair the rights of Participants or their Beneficiaries with respect to any compensation deferred before the date of the amendment or termination of this Plan except as may be required to maintain the tax status of the Plan under the Code. Prior to effectuating any material amendment to the Plan, the Administrator shall notify all Participants in writing setting forth the nature of the amendment, why it is being made, and likely impact on Participants. If the amendment will have any adverse impact on Participants, they shall have the right to modify their Deferred Compensation Agreements as provided in Article V to reduce or eliminate that impact. Participants shall thereafter receive their Normal Compensation and benefits shall be paid as provided in Article VIII.

11.02 Amendment and Restatement of Previously Adopted Plan. If this Plan document constitutes an amendment and restatement of the Plan as previously adopted by the Employer, the amendments contained herein shall be effective as of the Effective Date, and the terms of the preceding plan document shall remain in effect through such date.

11.03 Director Approval. Any amendment made to this Plan must be submitted to the Director for approval prior to implementation, together with a resolution of the governing body of the Employer adopting the amendment. Any amendment required by law does not require Director approval before implementation; however, such amendment must be filed with the Director.

## ARTICLE XII. USERRA

Notwithstanding any other provision of this Plan to the contrary, contributions and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

VAL 00101

## ARTICLE XIII. RELATIONSHIP TO OTHER PLANS

This Plan serves in addition to any other retirement, pension or benefit plan or system presently in existence or hereinafter established.

## ARTICLE XIV. APPLICABLE LAW

14.01 State and Federal Law. This Plan shall be construed under the laws of the State of New Jersey and is established with the intent that it meet the requirements of an "eligible deferred compensation plan" under section 457 of the Code. The provisions of this Plan shall be interpreted wherever possible in conformity with the requirements of that section.

14.02 Contract Approval. Every contract or agreement entered into by the Employer pursuant to this Plan is subject to the rules and regulations of the Division of Local Government Services and such rules and regulations to the extent applicable are made a part hereof.

IN WITNESS WHEREOF, the Employer has caused this Plan to be executed by its duly authorized officer on this _____ day of _____, _____.

Employer

By: _____

Name: _____

Title: _____

Attest

BURLINGTON CITY

By: _____

Name: _____

VAL 00102

OCT 24 2002

## *RESOLUTION*
## **BOROUGH OF FORT LEE**
### **BERGEN COUNTY, NJ**

Group Plan Installation
CA - 6

| COUNCIL | Motion | Second | Yes | No | Abstain | Absent |
|---------|--------|--------|-----|-----|---------|--------|
| Meyers | | | | | | √ |
| Kasofsky | | | | | | √ |
| Villano | | | | | | |
| J. Goldberg | | | | | | |
| Voss | | | | | | |
| Cervieri | | | | | | |

**DATE**   September 26, 2002

Carried ☐    Defeated ☐    Tabled ☐

**Approved on Consent Agenda** ☒

### FOR ADOPTING CHANGES REQUIRED BY THE ECONOMIC GROWTH AND RECONCILIATION ACT OF 2001 TO AN EXISTING DEFERRED COMPENSATION PLAN AND SERVICE AGREEMENT

WHEREAS, the Borough of Fort Lee (hereinafter referred to as the "Employer") by resolution adopted a Deferred Compensation Plan(hereinafter referred to as the "Plan") effective July 27, 1987, for the purpose of making available to eligible employees the accrual of tax benefits under a Section 457 Deferred Compensation Plan; and

WHEREAS, the Employer by resolution retained [The Variable Annuity Life Insurance Company ("VALIC")] as the contractor under the Deferred Compensation Plan and executed a Service Agreement with said contractor; and

WHEREAS, the *Economic Growth and Tax Relief Reconciliation Act of 2001* amended Section 457 of the Internal Revenue Code (the "Code"); and

WHEREAS, the Employer desires its Plan and Service Agreement to conform with the changes in the Code brought about by the *Economic Growth and Tax Relief Reconciliation Act of 2001*; and

VAL 00103

**VALIC**

# Memo

*Kim Davis, A7-25*

| | |
|---|---|
| **To:** | ~~Melinda Gatlin, A7-25~~ |
| **From:** | Randy Spulak, North Jersey District |
| **CC:** | Sandy Stimmler, Philadelphia Region |
| **Date:** | 10/22/02 |
| **Re:** | Borough of Fort Lee (GA# 42280) EGTRRA Update |

RECEIVED

OCT 2 4 2002

Group Plan Installation

Melinda:

Please use the enclosed Resolution, Administrative Service Agreement and Plan Document to update the above referenced group with EGTRRA 2001.

If you have any questions and/or problems, please let me know.

Thank you,

Randy

● Page 1

VAL 00104

## BOROUGH OF FORT LEE
## OFFICE OF THE BOROUGH CLERK
(201) 592-3570

Ext 1595                    8/19/05

DATE

TO: _____ Linnn Robinson _____

√ For your information    ____ Please sign and return

√ As you requested        ____ Please handle

____ Review and advise     ____ Please discuss

                           ____ Call to discuss

If you have any questions
please call me.

Sincerely

LIO        X _____ Neil Gram _____
                 Neil  Lß

**VAL 00068**

**BOROUGH OF FORT LEE**
**OFFICE OF THE BOROUGH CLERK**
(201) 592-3570

Ext 1505                    8/19/05

DATE

TO: ___LINDA ROBINSON___

_√_ For your information     ____ Please sign and return

_√_ As you requested        ____ Please handle

____ Review and advise      ____ Please discuss

                            ____ Call to discuss

If you have any questions
please call Me.

                            Sincerely
LIO            x ___Neil Gram___
                            Neil Gram

VAL 00069

57 of 75

## *RESOLUTION*
## **BOROUGH OF FORT LEE**
### BERGEN COUNTY, NJ

[A- 17]

| COUNCIL | Motion | Second | Yes | No | Abstain | Absent |
|---------|--------|--------|-----|-----|---------|--------|
| Pohan | | | | | | |
| Sokolich | | | | | | |
| Villano | ✓ | | | | | |
| Sargenti | | | | | | ✓ |
| Kasofsky | | | | | | |
| Cervieri | | ✓ | | | | |

DATE    August 18, 2005

Carried ☐    Defeated ☐    Tabled ☐

Approved on Consent Agenda ☒

WHEREAS, the BOROUGH OF FORT LEE (hereinafter referred to as the "Employer") by resolution adopted a Deferred Compensation Plan (hereinafter referred to as the "Plan") effective October 22, 1992, for the purpose of making available to eligible employees the accrual of tax benefits under a Section 457 Deferred Compensation Plan; and

WHEREAS, Section 657 of the Economic Growth and Tax Relief Reconciliation Act of 2001 amended Section 401 (A)(31)(B) of the Internal Revenue Code (the "Code"); and

WHEREAS, the Employer desires its Plan to conform with this change in the Code brought about by the Economic Growth and Tax Relief Reconciliation Act of 2001; and

WHEREAS, such amendment shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this amendment,

NOW, THEREFORE, BE IT RESOLVED, that the Employer hereby adopts the attached Amendment [22-PD-VALIC-E657A033005] to Deferred Compensation Plan Document [22-PD-VALIC-E121201] to be part of and incorporated into its existing Deferred Compensation Plan Document; and

BE IT FURTHER RESOLVED that a certified copy of this resolution shall be forwarded to the Director of the Division of Local Government Services.

**I HEREBY CERTIFY THAT the foregoing is a true copy of a resolution adopted by the Mayor and Council of the Borough of Fort Lee on:**
AVGUST 18, 2005

_Neil Bro_

**BOROUGH CLERK**

VAL 00070

## RESOLUTION
### FOR ADOPTING A CHANGE REQUIRED BY
### THE ECONOMIC GROWTH AND TAX RELIEF RECONCILIATION ACT OF 2001
### TO AN EXISTING DEFERRED COMPENSATION PLAN
### AND SERVICE AGREEMENT

### DEFERRED COMPENSATION PLAN

WHEREAS, the BOROUGH OF FORT LEE (hereinafter referred to as the "Employer") by resolution adopted a Deferred Compensation Plan (hereinafter referred to as the "Plan") effective _____ _____, for the purpose of making available to eligible employees the accrual of tax benefits under a Section 457 Deferred Compensation Plan; and

WHEREAS, Section 657 of the Economic Growth and Tax Relief Reconciliation Act of 2001 amended Section 401(a)(31)(B) of the Internal Revenue Code (the "Code"); and

WHEREAS, the Employer desires its Plan to conform with this change in the Code brought about by the Economic Growth and Tax Relief Reconciliation Act of 2001; and

WHEREAS, such amendment shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of this amendment;

NOW, THEREFORE, BE IT RESOLVED that the Employer hereby adopts the attached Amendment [22-PD-VALIC-E657A033005] to Deferred Compensation Plan Document [22-PD-VALIC-E121201] to be part of and incorporated into its existing Deferred Compensation Plan Document.

BE IT FURTHER RESOLVED that a certified copy of this resolution shall be forwarded to the Director of the Division of Local Government Services.

I, _____, _____ of the Employer, in the County of _____ and the State of New Jersey, do hereby certify the foregoing to be a true and correct copy of a RESOLUTION adopted by the Employer on the _____ day of _____, 20_____.

Witness my hand and seal of the Employer on the _____ day of _____, 20_____.

_____
Signature

VAL 00071

42280

## MANDATORY DISTRIBUTION AMENDMENT
### (Code Section 401(a)(31)(B))

### ARTICLE I
### APPLICATION OF AMENDMENT

1.1 **Effective Date.** Unless a later effective date is specified in Article III of this Amendment, the provisions of this Amendment will apply with respect to distributions made on or after March 28, 2005.

1.2 **Precedence.** This Amendment supersedes any inconsistent provision of the Plan.

### ARTICLE II
### DEFAULT PROVISION: AUTOMATIC ROLLOVER
### OF AMOUNTS OVER $1,000

Unless the Employer otherwise elects in Article III of this Amendment, the provisions of the Plan concerning mandatory distributions of amounts not exceeding $5,000 are amended as follows:

In the event of a mandatory distribution greater than $1,000 that is made in accordance with the provisions of the Plan providing for an automatic distribution to a Participant without the Participant's consent, if the Participant does not elect to have such distribution paid directly to an "eligible retirement plan" specified by the Participant in a direct rollover (in accordance with the direct rollover provisions of the Plan) or to receive the distribution directly, then the Administrator shall pay the distribution in a direct rollover to an individual retirement plan designated by the Administrator.

### ARTICLE III
### EMPLOYER'S ALTERNATIVE ELECTIONS

3.1 ( ) **Effective Date of Plan Amendment**

This Amendment applies with respect to distributions made on or after _____
_____ (may be a date later than March 28, 2005, only if the terms of the Plan already comply with Code Section 401(a)(31)(B)).

3.2 ( ) **Election to apply Article II of this Amendment to distributions of $1,000 or less**

In lieu of the default provision in Article II of this Amendment, the provisions of the Plan that provide for the involuntary distribution of vested accrued benefits of $5,000 or less, are modified as follows:

In the event of a mandatory distribution of $1,000 or less that is made in accordance with the provisions of the Plan providing for an automatic distribution to a Participant without the Participant's consent, if the Participant does not elect to have such distribution paid directly to an "eligible retirement plan" specified by the Participant in a direct rollover (in accordance with the direct rollover provisions of the Plan) or to receive the distribution directly, then the Administrator shall pay the distribution in a direct rollover to an individual retirement plan designated by the Administrator.

**VAL 00072**                    42280

3.3    ( )    **Election to reduce or eliminate mandatory distribution provisions of Plan (may not be elected if 3.2 above is elected)**

In lieu of the default provision in Article II of this Amendment, the provisions of the Plan that provide for the Involuntary distribution of vested accrued benefits of $5,000 or less, are modified as follows (choose a, b, or c below):

a.    (X) No mandatory distributions. Participant consent to the distribution now shall be required before the Plan may make the distribution.

b.    ( ) Reduction of $5,000 threshold to $1,000. The $5,000 threshold in such provisions is reduced to $1,000 and the value of the Participant's interest in the Plan for such purpose shall include any rollover contributions (and earnings thereon) within the meaning of Code Sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16).

c.    ( ) Reduction of $5,000 threshold to amount less than $1,000. The $5,000 threshold in such provisions is reduced to $_____ (enter an amount less than $1,000) and the value of the Participant's Interest in the Plan for such purpose shall include any rollover contributions (and earnings thereon) within the meaning of Code Sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(Ii), and 457(e)(16).

This amendment is executed as follows:

Name of Plan: _____ MASTER DEFERRED COMPENSATION PLAN _____

Name of Employer: BOROUGH OF FORT LEE _____

By: _____    Date: _____ AUGUST 19 2005 _____

EMPLOYER

RECEIVED

AUG 2 4 2005

Group Plan Installatio,
Analyst: _____



RECEIVED

APR 2 2 2004

Group Plan Installation
Analyst: _____

# VALIC FINANCIAL ADVISORS, INC.

# Guided Portfolio Services℠ Program

# Plan Services Agreement
*Bap Ft lee*    *#42280*

Send signed and completed to:

AIG VALIC

P.O. Box 4598

Houston, TX 77210

Attn: Plan Implementation Dept.

Copyright ©2003, American International Group, Inc.
Houston, Texas
www.aigvalic.com
VL 15072 (7/2003)

**VAL 00074**

**AIG VALIC**

# VALIC FINANCIAL ADVISORS, INC.
## Guided Portfolio Services Program

### PLAN SERVICES AGREEMENT

This Plan Services Agreement (Plan Agreement) is entered into between you (Plan Representative, or You) and VALIC Financial Advisors, Inc. (VFA), a Texas corporation registered as an investment advisor with the United States Securities and Exchange Commission, for the investment advisory services program (Guided Portfolio Services Program) described in this Plan Agreement to participants in your employer-sponsored retirement plan or plans (Plan).

#### 1. Investment Advisory Services

Each Plan participant, beneficiary or alternate payee (as permitted under the Plan hereinafter collectively referred to as "Participant") electing to have investment advisory services provided by VFA must complete the Investment Advisory Services Agreement (Participant Agreement), which describes the features of the program as well as the rights and responsibilities of the Participant under the program.

By entering into this Plan Agreement, you acknowledge and agree that you have received and reviewed, and to the extent appropriate or necessary your legal counsel has received and reviewed, this Plan Agreement and the Participant Agreement, including the terms, conditions, and details of the Guided Portfolio Services Program described in those agreements, and that as a Plan Fiduciary:

• By initialing below, You hereby select the Guided Portfolio Services Program and designate the following services to be offered and available to Plan participants:

_____ Portfolio Advisor Service: This service enables a Participant to obtain individualized advice, including individualized investment allocation recommendations from VFA, via an online program created for VFA which applies methodology developed, maintained and overseen by an independent financial expert, Ibbotson Associates, Inc. (Ibbotson). The recommendations will consist of model portfolios constructed by Ibbotson from the investment options selected by You or by another Plan Representative (which does not include VFA), applied to the Participant's individual information and account. The advice is based upon a wealth forecast that takes into account not only the Participant's plan account values and contribution rates, but also, to the extent provided by the Participant and relevant to the forecast, other assets held by the Participant or the Participant's spouse or family member. The advice reflects the results of Monte Carlo simulations to determine the

probable result of various account allocations, savings rates, etc. The Participant may elect whether to use this service, and if so, when and how often to use it. The Participant will be responsible for implementing any advice recommendations using the ordinary means available under the Plan, and for subsequent monitoring or review of the account and of the information utilized in arriving at the advice.

_____ Portfolio Manager Service: Under this service, a Participant requests that VFA exercise discretionary authority to allocate and reallocate his or her account, to implement individualized advice generated from a program created by Ibbotson, acting as an independent financial expert. The advice is the same as that provided under the Portfolio Advisor service. However, the advice is implemented by VFA. Initially and once each year thereafter, the Participant is given an opportunity to review and confirm the accuracy and completeness of the information upon which the advice is based, before the allocations or reallocations are implemented. For all other periods any reallocations are processed automatically following the end of a calendar quarter. Because the Participant is directing VFA to manage the account on his or her behalf, certain automatic transactions otherwise available under the account, such as contribution and account allocation and reallocation, either systematic or otherwise, will not be processed unless or until the Participant has terminated participation in the Portfolio Manager Service. A Participant's request for such an allocation or reallocation may be interpreted as a direction to terminate the Portfolio Manager Service for the Participant's account.

_____ Both Services:
    Portfolio Advisor and Portfolio Manager

VFA Financial Advisors will also provide plan investments and services, as separately selected by you or by another plan representative, including education services.

• The Service(s) will be available for the following Plan(s):

457     D/C
Roth    IRA

• If the Plan is subject to the requirements of the Employee Retirement Income Security Act of 1974, as amended (ERISA), you are designating VFA as a Plan Fiduciary solely for the provision of investment advice under this Agreement.

VAL 00075

• You have determined that the compensation to VFA for services under the Guided Portfolio Services Program, taking into account any other compensation to VFA or its affiliates for investments and services provided to Plan accounts, is reasonable in light of the investment advisory services to be rendered.

• You have designated, or you will designate, the individual investment products offered by VFA that will be available to participants under the Plan and under the Program and they are or will be listed in Appendix A to this Plan Agreement. In making such designation, you acknowledge and agree to any limits on the VFA-provided investment options to which the advice may apply, and to any limitations imposed by the investment option or by the Plan, provided that, except in the case of Plan limitations, such limitations have been disclosed to you prior to making such designation.

• You will receive regular periodic summaries of the performance of the underlying Plan investment options used in the Guided Portfolio Services Program, including rates of return, as well as periodic information regarding the fees assessed by the underlying investment option and the fees assessed for the Guided Portfolio Services Program.

## 2. Status of Plan

VFA or an affiliate may be providing additional services, including investment, plan record keeping, plan compliance, and other related plan administrative services. However, the Plan Representative retains its existing responsibility for taking necessary steps to adopt, amend and maintain the qualification of the Plan. If the plan is subject to the requirements of ERISA, the Plan Representative must be a Plan Fiduciary.

## 3. Prohibited Transactions

If the plan is described in section 401(a) of the Internal Revenue Code (Code), or if the plan is subject to the requirements of ERISA, certain types of transactions are prohibited, including, generally, the provision of investment advice by an entity or an individual that is providing other services to the Plan for compensation. VFA cannot provide tax or legal advice to you or to the Plan.

The United States Department of Labor ("DOL") has issued Advisory Opinion 2001-09A ("Advisory Opinion") to SunAmerica Retirement Markets, Inc. ("AIG SunAmerica"), a sister company of VFA. The Advisory Opinion provides that investment advice that is based on a computer program controlled by an independent financial expert ("IFE") and delivered to a Participant by an organization or advisor that is also providing plan investments from which it receives

income, will not constitute a prohibited transaction if certain requirements are satisfied. The Advisory Opinion was issued by the DOL in response to a request for a prohibited transaction exemption ("PTE") by AIG SunAmerica. The AIG SunAmerica PTE request identified Ibbotson as the IFE for the AIG SunAmerica program. AIG SunAmerica, Inc. and VFA have entered into an agreement with Ibbotson to provide the services described in AIG SunAmerica's PTE request and in the Advisory Opinion.

A VFA financial advisor(s) will be, or is already, providing services to your Plan, which may include enrollment and contribution processing, plan record keeping and compliance, education and other services. Based upon your selections above, VFA will also provide investment advisory services. As described above, VFA will provide advice under the Portfolio Advisor service through an online program that the participant may use at any time the system is available, and as frequently as desired. VFA will provide advice under the Portfolio Manager through a VFA Investment Advisor Representative (Facilitator). The Facilitator will continue to provide many of the same plan and investment services to the Plan that he or she would otherwise provide, in the absence of the selected investment advice services. However, pursuant to the Advisory Opinion, the Facilitator will present the advice exactly as it has been determined under the computer program developed by Ibbotson, and may not alter that advice or provide other investment advice.

## 4. Investment Advice Process

From the investment options that you select to be available to Plan participants, Ibbotson will select the funds to be included in the model advice portfolios under the Guided Portfolio Services Program. The list of funds selected by Ibbotson will be attached hereto as Appendix B. (You will be notified by VFA if the investment options you select fail to include one or more asset categories required by the Ibbotson portfolios.) If advice is being provided for a Participant's accounts in multiple plans or for multiple accounts on separate record keeping systems under a single plan, the advice will be provided separately for each such plan or account. On an ongoing basis Ibbotson will monitor the asset-class portfolios and the individual investment options included in the advice portfolios, and make changes to either or both as appropriate. With certain exceptions, any such changes will generally occur not more frequently than quarterly.

For purposes of either the Portfolio Advisor or the Portfolio Manager service, each Plan participant selecting the program will be assigned to one of a fixed number of model portfolios based upon the information provided to VFA by the Plan or

by the Participant. As described in the Participant Agreement, a minimum set of data items will be required in order to assign the participant to a model portfolio. They include gender, date of birth, state of residence, annual earned income, current annual plan savings rate, employment date, number of dependents, desired retirement age, and desired retirement need (% or $).

Additional information can be provided, by the Plan or the participant, to further assist in selection of the appropriate portfolio, including additional information about the participant and/or the participant's spouse and/or family, if applicable. This additional information can include (but is not limited to):

Outside Plan Assets: Account Type; Account Name; Annual Contribution $; Annual Contribution %; Fund Name; Ticker/Symbol/CUSIP; Qty/# of Units; Market Price per Share; Cost Basis per Share; Market Value; Cash; Stock Option Grant Year; Vest Year; Qualified; Asset Class; Qty; Strike Price; Underlying Price; Expiration Year; Cash Equivalents; Other Assets

Liabilities: Loan ID; Effective Date; Maturity Date; Balance; Repayment Amount; Interest Rate; Repayment Frequency; Loan Name; Loan Start Date; Loan End Date; Loan Payment; Interest Rate; Appraisal Value

Cash Flow: Cash Flow Type (income or expense); Begin Date; End Date; Amount; Premium over inflation (%); Adjust for inflation (now, later, no); College Cost Begin Year; College Cost End Year; Type of School; Cost

Benefits/Retirement Information: Pension Description; Start Age; Inflation Premium; Pension Monthly Payment; Inflation Adjust; Social Security Description; Monthly Estimate ($); Age to Collect; % Reduction

About Your Spouse: First Name; Last Name; Date of Birth; Number of Dependents; Gender; Annual Savings Rate $; Annual Savings Rate %; State of Residence; Employment Date; Annual Salary; Retirement Age; Retirement Needs $; Retirement Needs %; Pre-Tax Match Calculation %; Max Pre-Tax % Saved; Dollar Cap for Pre-Tax Match; Max Pre-Tax Employee Svgs Rate; Company Stock Match Pre-Tax %; Profit Sharing Match Pre-Tax %; Employer Profit Sharing %; Post-Tax Match Calculation %; Max Post-Tax % Saved; Dollar Cap for Post-Tax Match; Max Post-Tax Employee Svgs Rate; Company Stock Match Post-Tax %; Profit Sharing Match Post-Tax %; Other Employee Match %

Assets: Account Type; Account Name; Annual Contribution $; Annual Contribution %; Fund Name; Ticker/Symbol/ CUSIP; Qty/Units; Market Price per Share; Cost Basis per Share; Market Value; Cash; Stock Option Grant Year; Vest Year; Qualified; Asset Class; Qty; Strike Price; Underlying Price; Expiration Year; Cash Equivalents; Other Assets

Plan participants will be permitted to enroll into the Guided Portfolio Services Program at any time, provided however that, in the case of a Plan participant electing the Portfolio Manager service, if the participant previously terminated the service with respect to a Plan, he or she must wait at least twelve months before re-enrolling in the service for that Plan.

Upon enrollment in the Portfolio Advisor service the Plan participant may use the online advice service as often as desired, in the manner (and subject to any limitations) described in the Participant Agreement. A Plan participant enrolling in Portfolio Manager will receive a statement summarizing the data provided to VFA that will be used to formulate the advice, and will be given an opportunity to correct or modify that data before the service is initiated. Thereafter, the participant can revise, add, or change his or her data at any time during VFA's normal operating hours, and he or she will also receive a summary of his or her data in a quarterly advice statement. The participant enrolled in the Portfolio Manager service will be further contacted at least once per year, and may ask to speak with a VFA Facilitator at any time. A comprehensive review of Portfolio Manager accounts will be performed annually by Ibbotson, and the accounts will be rebalanced quarterly if thresholds established by Ibbotson are exceeded. Participants are responsible for contacting VFA with any new or revised information that might warrant an additional review and/or rebalancing of the account. Allocations or reallocations may be limited by the Plan or by the underlying investment. Such limitations will be taken into account by Ibbotson in the development and implementation of the advice.

## 5. Cost Assessed to Participant Accounts

Participants who elect to enroll in Portfolio Manager are assessed an annual fee which is paid quarterly from their account(s), reflected in the enclosed Fee Schedules and described in the Participant Agreement. The cost will be applied to the account of each participant not less than five and not more than 15 days following the end of a calendar quarter. The cost will be calculated as a percentage of account value and applied to the account as a fixed dollar amount, as described in the Participant Agreement. For Portfolio Advisor, a fixed annual fee will be charged to the Participant's account following enrollment and will entitle the Participant to use of the service for one year. At the end of that year, and each succeeding year for which the advice is initiated or continued, the Participant will be required to re-enroll in order to continue receiving the service.

Plan Representative hereby directs that these costs be withdrawn from participant accounts as an expense of the plan. You will be provided at least 90 days' advance written notice of any change in the rate of fees assessed to Participant accounts. Fees will be assessed to Participant accounts on a pro-rata basis among investments.

VAL 00077

## 6. Cost Assessed to Plan Sponsor

You are responsible for an annual fee of $ _0_ related to the portfolio construction, monitoring, maintenance and reporting performed by Ibbotson under the Guided Portfolio Services Program. You will be sent at least 90 days' advance written notice of any change in the rate of fees assessed to the Plan.

Circle one:  Standard Portfolio Set    Custom Portfolio Set

## 7. Term and Termination of Guided Portfolio Services Program

This Agreement will become effective on the last signature date hereof and will remain in effect from calendar quarter to calendar quarter until otherwise terminated. A termination will be effective with respect to all plans identified in this Agreement unless otherwise specified by You and agreed by VFA following provision of not less than 90 days' advance written notice, provided however that some or all of the notice period may be waived upon a demonstration that only an earlier termination will comply with the independent fiduciary's fiduciary duties. You or another authorized Plan Representative may terminate the services at any time for all Plan participants, subject to a reasonable advance written notice requirement consistent with applicable law. Such termination shall be effective as soon as reasonably practicable thereafter. A Plan Participant may terminate the Portfolio Manager services with respect to his or her account, subject to a reasonable advance written notice requirement consistent with applicable law. Such termination shall be effective as soon as reasonably practicable thereafter. VFA may terminate the Portfolio Manager services to the Plan, including all participants thereunder, by not less than 90 days advance written notice to the Plan and to each Plan Participant who is enrolled in the Guided Portfolio Services Program.

## 8. Notice

Any notice permitted or required under this Plan Agreement shall be provided as follows:

Notice to Plan Representative (name, title and mailing address):
PEGGY   THOMAS - PLAN  ADMIN,
BORD  OF  FT. LEE
309  MAIN  ST
FT  LEE  NJ  07024
Notice to VFA:
VALIC Financial Advisors, Inc.
Guided Portfolio Services Program
c/o Advisory Services Team
2929 Allen Parkway
Houston, Texas 77019

## 9. No Guarantee

You understand, acknowledge and accept that the advice provided hereunder relies on historical performance and other data, all of which have limitations. Past performance of investments is no guarantee of future results. The analysis and advice provided depends upon a number of factors, including the information provided, various assumptions and estimates and other considerations. As a result, the wealth forecast developed and advice and recommendation provided are not guarantees that a Plan participant will achieve his or her retirement goals or anticipated returns. You understand that there remains a risk of loss within variable investment options.

## 10. Form ADV

Part II of VFA's Form ADV, the registration document filed with the United States Securities and Exchange Commission, contains additional information about the advice VFA will provide. By entering into this Agreement, you represent that you received and reviewed a copy of Part II of VFA's Form ADV.

## 11. Limitation of Liability

The use and storage by the Plan or a participant of any information including, without limitation, account numbers, passwords, identification, portfolio information, account balances and any other information available on an employer's or a participant's personal computer is the sole risk and responsibility of the employer and/or the participant. VFA is not responsible for providing and maintaining the communications and equipment (including personal computers and modems) and telephone or alternative services required for accessing and utilizing electronic or automated services, or for communications service fees and charges incurred by the Plan or a participant in accessing these services.

You understand and agree that there is no guarantee that the recommendations generated by VFA or pursuant to the computer program developed by Ibbotson will be successful. You acknowledge that the outcome of the Guided Portfolio Services Program's calculations are estimates only, and there is no guarantee of the future financial performance of your investments or that you will meet your desired goal(s).

You agree, understand, and acknowledge that we are basing our advice on the responses provided and other information furnished to us through the Advice Program and updated as necessary. We shall not be liable for any misstatement or omission contained in the information furnished to us, or any loss, liability, claim damage or expense whatsoever arising out of or attributable to such misstatement or omission.

VAL 00078

## 12. Assignability

This Agreement shall not be assignable by any party without the prior written consent of the other party.

## 13. Extraordinary Events

We shall not be liable for loss caused directly or indirectly by governmental restrictions, exchange or market rulings, suspension of trading, war, strikes or other conditions beyond our control. We shall not be responsible for loss or damages caused by equipment failure, communications lines failure, unauthorized access, theft, systems failure and other consequences beyond our control.

## 14. Privacy

Protection of Nonpublic Personal Information. VFA is subject to various privacy requirements for the protection of its clients under the Gramm-Leach-Bliley Act ("Act") and regulations promulgated pursuant to the Act.

Definition of Nonpublic Personal Information. Nonpublic personal information of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, Social Security numbers, taxpayer identification numbers, and sensitive, financial and health information. NPI includes information on our forms or in a database of any kind, information created by us, information collected by or on behalf of us and personally identifiable information derived from NPI.

Disclosure and Use of NPI. All NPI that VFA obtains as a result of this relationship shall not be used, disclosed, reused or redisclosed to any unaffiliated third party, except to carry out the purposes for which the information was disclosed. All NPI shall be held in confidence to the same extent and in at least the same manner as VFA protects its own NPI, but in no case in a lesser manner than a reasonable degree of care under the circumstances.

VFA shall be permitted to disclose relevant aspects of the NPI to its officers, agents, subcontractors, independent financial expert and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement; provided that VFA shall take all reasonable measures to ensure that the NPI is not disclosed or reproduced in contravention of the provisions of this Section by VFA officers, agents, subcontractors, investment subadvisors and employees.

The obligations of this Section shall not restrict any disclosure by VFA pursuant to any applicable state or federal laws, or by request or order of any court or government agency (provided that the disclosing party or parties in order

that any other party will have a reasonable opportunity to oppose the disclosure, request or order).

The obligations of this Section shall not apply to information which, without breach of obligation of confidentiality: (1) is independently developed by us; (2) is or becomes publicly known; (3) is already known by us as evidenced by the written records; or (4) is obtained from an independent source.

Security of NPI. VFA further agrees to establish and maintain policies and procedures designed to ensure the confidentiality and security of NPI. This shall include procedures to protect against any anticipated threats or hazards to the security or integrity of the information and unauthorized access to or use of the information.

## 15. Separability

If any provision or condition of this Agreement shall be held to be invalid or unenforceable by any court or regulatory or self regulatory agency or body, such invalidity or unenforceability shall attach only to such provision or condition. The validity of the remaining provisions and conditions shall not be affected thereby and this Agreement shall be carried out as if any such invalid or unenforceable provision or condition were not contained herein.

## 16. Entire Agreement; Governing Law

This Agreement represents the entire agreement between the parties with respect to the subject matter hereof and may not be modified or amended except in writing signed by you and VFA. It shall be governed by and construed and enforced under the Laws of the State of Texas.

4/13/04
Date

_Gary E Thomas_
Plan Representative Signature

Second Signature if Required

4/13/04
Date

_signature_  1168

Authorized VALIC Financial Advisors, Inc., Signatory

_Financial Advisor_
Title

VAL 00079

**VALIC**
An American General Company

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed to be effective as of the date herein above.

EMPLOYER:
~~Borough of Fort Lee~~
_____
Name
BY: ~~Roseann C Thomas~~
_____
Signature
~~Administrator~~
Name & Title

HOME OFFICE:
THE VARIABLE ANNUITY LIFE
INSURANCE COMPANY

_____
Name
BY: _____
Signature
Mary C. Birmingham, Vice President
Name & Title

03-SA-VALIC-E121201

**VAL 00080**



4.8  VALIC shall incur a portion of the expense in an amount not to exceed $250.00 annually, and the Employer shall incur all expense in excess of $250.00 annually, for a review of all plan funds administered by VALIC to be conducted by an independent registered municipal accountant within five (5) months after the close of the Employer's fiscal year; and a copy of each review shall be transmitted to the Employer and the Director of the Division of Local Government Services, Department of Community Affairs, of the State of New Jersey, within five (5) days after the review is completed. The independent registered municipal accountant shall be mutually agreed upon by the Employer and VALIC.

4.9  VALIC shall transmit to the Employer a summary of financial data in statement form providing a full accounting of all plan transactions occurring during the Employer's fiscal year, including beginning and ending fund balance and transactions. The accounting for these transactions must reflect the amount and date of each contribution received, the beginning fund balance by investment option, earnings or losses incurred, administrative charges and fees assessed, any transfers made among funds, all deposits and withdrawals, and the ending fund balance, including any and all adjustments made to such plan. At the request of Employer, VALIC shall make available details of all transactions for each Participant. VALIC shall furnish annually to the local plan administrator of each local governmental unit a copy of VALIC's Statement of Accounting Standards (SAS) 70 Report.

## ARTICLE V - MISCELLANEOUS

5.1  Term. This Agreement shall become effective immediately upon execution and shall remain in force until terminated by either party as provided below.

5.2  Termination. This Agreement may be terminated by either party upon sixty (60) days' written notice to the other party of the intent to terminate. Upon any such termination, Agent shall deliver to the Employer all records and reports required by this Agreement.

5.3  Information. VALIC relies on the information provided to it by the Employer and Plan Participants and beneficiaries, and VALIC will not be responsible for claims resulting from the use by VALIC of any incorrect or misleading information provided to it by the Employer or Plan Participant or beneficiary.

5.4  Assignment. This Agreement may not be assigned without the written consent of the other party.

5.5  Amendment. The parties may amend this Agreement only in writing. Any such amendment must be approved by the President or a Vice President of Agent and a person authorized to act on behalf of Employer.

5.6  Notice. Any notice provided for herein shall be in writing and shall be deemed to have been given when received by personal delivery or United States mail addressed to the Employer at the address given in section 2..3 or to VALIC at the address below:

> Client Services
> The Variable Annuity Life Insurance Company
> 2929 Allen Parkway
> Houston, TX 77019

5.7  Governing Law. This Agreement is subject to the rules and regulations of the Division of Local Government Services of the State of New Jersey and such rules and regulations are made a part hereof.

5.8  Entire Agreement. This Agreement and any written amendments hereto constitute the entire agreement of the parties. This Agreement shall supersede all previous communications, representations or agreements, either oral or written, between the parties.

5.9  No Additional Cost. The services rendered by VALIC pursuant to this Agreement shall be performed without additional cost to the Participants other than administrative and sales charges provided for in the Annuity Contract.

03-SA-VALIC-E121201                    2

VAL 00081

# VALIC
an American General Company

3.4 The Employer shall be responsible for approval of all requests for unforeseeable emergency withdrawals under the Plan and direct VALIC to make approved disbursements in amounts specified by the Employer. Unforeseeable Emergency Withdrawal requests shall be processed as follows (check one below):

    a. _____ Employer has reviewed VALIC'S Unforeseeable Emergency Withdrawal procedures and, having determined such procedures to be consistent with the terms of the Plan, hereby adopts such procedures and delegates the determination function to VALIC. By signature on this Agreement, Employer approves all unforeseeable emergency withdrawal requests made and processed in accordance with VALIC'S procedures adopted by Employer for the Plan.

    b. ___✗___ Employer will review all requests for and make all determinations regarding unforeseeable emergency withdrawals and will indicate distribution approval by signature on all Unforeseeable Emergency Withdrawal request forms.

## ARTICLE IV - VALIC RESPONSIBILITIES

4.1 VALIC shall furnish periodic confirmation statements of accounts showing activity and the total value of each Participant's account(s) (check one below):

    a. ___✗___ Participants; or
    b. _____ the Employer.

4.2 VALIC shall issue the disbursements in accordance with the provisions of the Annuity Contract and the Plan at the direction of and in amounts specified by the Employer. Such disbursements shall be made payable and mailed to participants.

4.3 Disbursements shall be made from the account maintained by VALIC on behalf of the Employer in accordance with the terms of the Annuity Contract and the Plan; provided, however, that if the Employer terminates the Annuity Contract, VALIC shall be obligated to make disbursements only to the extent that funds are still available in the account of the Employer.

4.4 VALIC shall compute and deduct income taxes required by law to be withheld from distributions from the Plan. A report of such withheld Federal income taxes will be forwarded by VALIC to the Internal Revenue Service within the time prescribed by law.

4.5 VALIC shall furnish to each Participant tax reporting form(s) required by the applicable taxing authority, including a statement of gross amounts paid to the Participant and the amount of Federal, state and local income tax withheld by VALIC, if any.

4.6 VALIC shall furnish to the Employer, upon request, annual and semi-annual reports for The Variable Annuity Life Insurance Company Separate Account(s) for distribution to Participants.

4.7 VALIC shall establish and maintain records of notifications from Employer concerning Participants who are to receive disbursements, gross payments under the Agreement, amounts of Federal, state and local income withheld by VALIC on behalf of the Employer and reports of such income and deposits filed with the appropriate governmental agencies by VALIC on behalf of the Employer.

03-SA-VALIC-E121201

VAL 00082

**VALIC**
An American General Company

# ADMINISTRATIVE SERVICES AGREEMENT

This Agreement is made and entered into by and between BOROUGH OF FT. LEE (the "Employer" ) and The Variable Annuity Life Insurance Company ("VALIC"), a Texas corporation, on this 26 day of SEPT., 20 02 (insert date on or after 01/01/02).

## ARTICLE I - PURPOSE

The Employer maintains a deferred compensation plan (the "Plan"). In the interest of economy and efficiency, the Employer deems it desirable to contract for administrative services pertaining to accounting for deferrals, disbursements of funds, proper reporting to participants and the Internal Revenue Service, and withholding of taxes, if applicable. Therefore, the Employer designates VALIC its agent to perform the services outlined in this Agreement and deposit income tax amounts as required by law. VALIC's undertaking to provide administrative services hereunder is limited to those amounts of deferred compensation under the Plan that the Employer has invested in annuity contracts issued by VALIC.

## ARTICLE II - DEFINITIONS

RECEIVED

OCT 2 4 2002

Group Plan Installation

As used in this Agreement, the following definitions shall apply unless the context indicates otherwise:

2.1  Agent - The Variable Annuity Life Insurance Company ("VALIC").

2.2  Annuity Contract - The group or individual annuity contract(s) between the Employer or Plan Participants and VALIC.

2.3  Employer BOROUGH OF FORT LEE 305 MAIN ST FT. LEE NS 07024

2.4  Participant - An employee or independent contractor of the Employer electing to participate in the Plan.

2.5  Plan - The BOROUGH OF FORT LEE Deferred Compensation Plan, an "eligible" deferred compensation plan described under section 457(b) of the Internal Revenue Code of 1986, as amended.

## ARTICLE III - RESPONSIBILITIES OF EMPLOYER

3.1  The Employer shall forward a Participant's deferred compensation to VALIC within the time limitations imposed by applicable Federal and/or state law.

3.2  The Employer shall notify VALIC in writing of all Participant information requested by VALIC, including, but not limited to, age, Social Security number and beneficiary information.

3.3  The Employer shall direct VALIC to make benefit payments under the Plan in accordance with the annuity option specified by the Employer or Participant and shall supply VALIC with the amount of the account to be distributed.

**03-SA-VALIC-E121201**

1

VAL 00083

# We are updating this information on your account

f Group: BOROUGH OF FORT LEE

# (See letter): GA- 42280

f Payroll Contact: JOAN BRODEUR

s: 309 MAIN STREET

FORT LEE, NEW JERSEY 07024

201-592-3559

Name of Plan Administrator:

PEGGY E. THOMAS

Address: 309 MAIN STREET

FORT LEE, NEW JERSEY 07024

Phone: 201-592-3546

Thank you

PD

VAL 00107

AMERICAN
GENERAL
FINANCIAL GROUP

BUSINESS REPLY MAIL
FIRST-CLASS MAIL    PERMIT NO 11805    HOUSTON, TX

POSTAGE WILL BE PAID BY ADDRESSEE

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
GROUP PLAN SERVICES
P.O. BOX 3206, A 7-25
HOUSTON, TX 77019-9934

VAL 00108

April 18, 2001

Dear Plan Administrator:

Pursuant to federal regulations, VALIC will compute tax withholding for distributions from your employees' 457 Deferred Compensation Plan based on the wage bracket method for Federal and State income tax purposes, and the employees' wage withholding elections that they indicate on IRS Form W-4.

In order for us to effect tax withholding for your employees currently receiving systematic payments, we will be mailing them an IRS Form W-4 to be completed and returned. A copy of the letter that will be mailed to our clients is enclosed. If we do not receive the W-4 by May 15, 2001, VALIC will apply tax withholding based on a status of married with zero dependents, for any distribution requests received after June 1, 2001. This status may result in a higher rate of withholding than would otherwise apply in the client's situation, and the clients will be informed of this in our mailing. The client may also submit a Form W-4 or change their withholding at the time of a distribution request, and we will apply withholding beginning with that distribution.

All future systematic distributions will be based on the wage bracket method and will require a Form·W-4 to be submitted with the request form.

Our goal is to provide you and your employees with the highest level of customer service possible. If you have any questions or require additional information, please do not hesitate to contact a Client Service Professional at 1-800-448-2542 or your VALIC financial professional. We will be glad to assist you.

Sincerely,
Fred M. Lowery, Jr.
Director, Client Support Services

Enclosures: Client letter

VAL 00105

Wage bracket client letter Final vers...·.do

April 18, 2001

Dear Valued Client:

Pursuant to federal regulations, tax withholding for distributions from your 457 Deferred Compensation Plan should be based on your wage withholding elections that you indicate on IRS Form W-4.

In order for us to effect this tax withholding, please complete the enclosed IRS Form W-4 and return it to us in the envelope provided. If we have not received your completed W-4 by May 15, 2001, VALIC will apply tax withholding based on a status of married with zero dependents, for any distribution requests received after June 1, 2001. Please note that this status may result in a higher rate of withholding than would otherwise apply in your situation. You may also submit a Form W-4 or change your withholding at the time of a distribution request, and we will apply withholding beginning with that distribution.

Our goal is to provide you with the highest level of customer service possible. We are truly honored to have you as a client and look forward to helping you realize your retirement dreams. If you have any questions or require additional information, please do not hesitate to contact a Client Service Professional at 1-800-448-2542. We will be glad to assist you.

Sincerely,
Fred M. Lowery, Jr.
Director, Client Support Services

Enclosures: IRS Form W-4, return envelope

VAL 00106